49. In the late summer of 2012, Retrophin entered negotiations with Novartis to purchase the rights to manufacture and sell Synacthen in the US. After approximately nine months of due diligence and negotiations, Retrophin and Novartis agreed to terms on which Retrophin would acquire the rights to Synacthen. Final documents had been prepared and were merely awaiting the parties' signatures. The signing was set for June 11, 2013. Retrophin had prepared a press release announcing the deal.

50. In anticipation of the transaction, Retrophin had prepared a plan to obtain regulatory approvals for, and sell Synacthen. It devised a strategy for going directly to Phase III clinical drug trials in order to obtain FDA approval for the use of Synacthen to treat Infantile Spasms and Nephrotic Syndrome. It also planned to file a Treatment Investigational New Drug Application which, if approved by the FDA, would have allowed Retrophin to offer Synacthen to patients for free while it was awaiting FDA approval to market Synacthen for Infantile Spasms and Nephrotic Syndrome. This would have given patients immediate relief from Questcor's pricing and would have developed substantial goodwill for Retrophin and Synacthen in both the patient and medical communities. Retrophin believed that the history of Synacthen's use in other countries would aid it in obtaining FDA approval.

51. In anticipation of the product launch, Retrophin had put in place a clinical apparatus to conduct clinical trials necessary to obtain FDA approval. It planned to begin to market Synacthen upon FDA approval.

52. Given its expertise as a biopharmaceutical company focusing on rare diseases, Retrophin was ready, willing and able to enter the Relevant Markets with Synacthen subject to FDA approval. Retrophin's entry into the Relevant Markets would have broken Questcor's monopoly. The result would have been unambiguously procompetitive. Retrophin's entry into the market and its introduction of Synacthen as an alternative to Acthar would have benefitted all participants in the markets – other than Questcor. Prices to patients and payors would have dropped;

Case# 2018-14059-0 Docketed at Montgomery County Prothonotary on 05/25/2018 5:11 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

patients who were unable to pay for the drug would have been able to get it; other patients who were forced by Questcor's pricing to limit their dosages of the drug would have been able to take the medically prescribed amounts; and Retrophin would have earned substantial profits from sales of its product.

### Questcor Illegally Acquires Synacthen to Preserve its Monopoly

53. Faced with a direct threat to its monopoly, Questcor acted to preserve its market dominance and its ability to charge extraordinary prices for Acthar. It swept in and secretly negotiated a deal to buy the rights to Synacthen from Novartis.

54. On June 11, 2013, the very day that Retrophin and Novartis were to sign their agreement, Questcor acquired the rights to Synacthen. The acquisition was closed on the day of the announcement. Questcor made no Premerger Notification filing with the Department of Justice and the Federal Trade Commission under the Hart Scott Rodino Act Antitrust Improvements Act of 1976. Nor did it observe the waiting period provided by the Hart Scott Act before closing the acquisition.

55. As part of the Agreement, the entire risk of an antitrust challenge to the transaction is borne by Questcor. The Agreement between Novartis and Questcor provides that Novartis receives the full consideration it is entitled to from Questcor even if the US antitrust enforcement agencies (The Federal Trade Commission or the Department of Justice) force Questcor to divest its rights in Synacthen. If such a divestiture occurs, the Agreement provides that Novartis keeps the entire $60 million that Questcor has paid it and Questcor will make all future milestone payments required by the Agreement – an amount in excess of $75 million. In short, the acquisition of the rights to Synacthen was so important to Questcor that it put at least $135 million at risk to keep Synacthen out of Retrophin's hands. There was no procompetitive aspect of Questcor's acquisition of Synacthen.

56. Questcor's acquisition of the rights to Synacthen unreasonably restrained trade, maintained Questcor's monopolies and may result in a substantial lessening of competition in the Relevant Markets. As a result of Questcor's acquisition of the

rights to Synacthen, prices to patients and payors for Acthar will remain at monopoly levels; patients who are unable to pay for the drug will not be been able to get it; other patients who are forced by Questcor's pricing to limit their dosages of the drug will not be able to take the medically prescribed amounts; and Retrophin will not earn the substantial profits it expected to earn from selling Synacthen at a fraction of the price Questcor charges for Acthar.

### Retrophin Is Continuing to Try to Enter the Relevant Markets

57. Despite Questcor's anticompetitive and monopolistic conduct, Retrophin is continuing to try to enter the Relevant Product Markets. To that end, it has taken the highly unusual step of trying to create from scratch a drug – that it has designated as RE-034 – that will match Synacthen. Retrophin is endeavoring to create a new formulation of the drug that will incorporate the same active pharmaceutical ingredient used in Synacthen and match Synacthen's therapeutic effects for patients suffering from Infantile Spasms and Nephrotic Syndrome.

58. Retrophin's efforts to develop RE-034 will take substantial time and money and will require FDA approval. It will also require that the drug successfully complete both Phase I and Phase III clinical trials for both Infantile Spasms and Nephrotic Syndrome. There is no guarantee that RE-034 will succeed in the clinical trials or that Retrophin will succeed in obtaining FDA approval or entering the Relevant Markets.

59. Entering the Relevant Markets through RE-034 is more difficult, risky and time consuming than entering those markets through Synacthen. Synacthen is an existing product that has been manufactured and used outside of the US for decades in the treatment of a variety of illnesses, including Infantile Spasms and Nephrotic Syndrome. The owner of the rights to Synacthen has the information, know-how and ability to manufacture the drug and has decades of clinical data from outside the United States that can be used to facilitate and speed the regulatory approval process

1 in the US. Retrophin will need to develop all of that knowledge from scratch in
2 seeking to enter the Relevant Markets with RE-034.

3     60. Entering the Relevant Markets through RE-034 will be more difficult,
4 less likely to succeed and take longer than entry into those markets through the
5 acquisition of Synacthen. Questcor's conduct has delayed, and may entirely foreclose,
6 Retrophin from entering the Relevant Markets.

**Questcor Has Damaged Competition in the Relevant Markets and Has Caused Retrophin to Suffer Both Injury in Fact and Antitrust Injury**

    61. Questcor's unlawful acquisition of the rights to Synacthen has foreclosed or delayed Retrophin from entering the Relevant Markets, has restrained trade, and has preserved and entrenched Questcor's monopoly and may substantially lessen competition. As a result, competition in the Relevant Markets has been damaged and Retrophin has been injured. Those injuries are intertwined and inseparable. Excluding or delaying Retrophin from entering the Relevant Markets with Synacthen was and is an integral aspect of Questcor's anticompetitive conduct.

    62. Retrophin has suffered and continues to suffer injury in fact from Questcor's acquisition of the rights to Synacthen and the preservation of its monopoly.

    63. Retrophin has suffered and continues to suffer antitrust injury from Questcor's acquisition of the rights to Synacthen and the preservation of its monopoly. Retrophin has been injured directly as a result of Questcor's unlawful conduct. Retrophin is a potential entrant into the Relevant Markets and, but for Questcor's unlawful conduct, would be entering those markets with Synacthen. There are no aspects of Questcor's conduct that are beneficial to competition. Retrophin's injury is an integral aspect of Questcor's unlawful conduct; flows from that which renders Questcor's conduct unlawful; and its injury is of the type the antitrust laws were intended to prevent.

# FIRST CAUSE OF ACTION

## (COMBINATION IN THE RESTRAINT OF TRADE IN VIOLATION OF SECTION 1 OF THE SHERMAN ACT)

64. Retrophin repeats and realleges the allegations set forth in paragraphs 1 through 63 as if fully set forth herein.

65. In acquiring the rights to Synacthen, Questcor entered into a contract, conspiracy or combination that unreasonably restrains trade in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

66. Questcor's acquisition of the rights to Synacthen unlawfully and unreasonably restrains trade by preventing or delaying Retrophin from entering the Relevant Markets and challenging Questcor's market power in those markets.

67. Questcor's violation of Section 1 of the Sherman Act has caused, and will cause, damages to Retrophin in an amount to be determined at trial, such damages to be trebled in accordance with Section 4 of the Clayton Act, 15 U.S.C. § 15.

68. Questcor's unlawful conduct is ongoing, irreparably injures Retrophin, harms the public interest, and unless restrained will continue. Retrophin has no adequate remedy at law.

# SECOND CAUSE OF ACTION

## (MONOPOLIZATION IN VIOLATION OF SECTION 2 OF THE SHERMAN ACT)

69. Retrophin repeats and realleges the allegations set forth in paragraphs 1 through 68 as if fully set forth herein.

70. Questcor has monopoly power in the Relevant Markets. In acquiring the rights to Synacthen in the US, Questcor has intentionally acted to maintain and entrench its monopoly position in Relevant Markets, and has done so, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

71. Questcor's violation of Section 2 of the Sherman Act has caused, and will cause, damages to Retrophin in an amount to be determined at trial, such damages to be trebled in accordance with Section 4 of the Clayton Act, 15 U.S.C. § 15.

72. Questcor's unlawful conduct is ongoing, irreparably injures Retrophin, harms the public interest, and unless restrained will continue. Retrophin has no adequate remedy at law.

## THIRD CAUSE OF ACTION
## (ATTEMPTED MONOPOLIZATION IN VIOLATION OF SECTION 2 OF THE SHERMAN ACT)

73. Retrophin repeats and realleges the allegations set forth in paragraphs 1 through 72 as if fully set forth herein.

74. In acquiring the rights to Synacthen, Questcor has engaged in monopolistic and anticompetitive conduct with the specific purpose and intent of monopolizing the Relevant Markets in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

75. The sole purpose of Questcor's acquisition of the rights to Synacthen is to enable Questcor to gain or maintain a monopoly position in the Relevant Markets.

76. A dangerous probability exists that Questcor has succeeded, and if not restrained, will continue to succeed in monopolizing the Relevant Markets.

77. Questcor's acts of attempted monopolization has unlawfully prevented and delayed Retrophin from entering the Relevant Markets and otherwise injure competition in those markets by reducing choice, inflating prices, and lessening innovation.

78. Questcor's violation of Section 2 of the Sherman Act has caused, and will cause, damages to Retrophin in an amount to be determined at trial, such damages to be trebled in accordance with Section 4 of the Clayton Act, 15 U.S.C. § 15.

16

79. Questcor's unlawful conduct is ongoing, irreparably injures Retrophin, harms the public interest, and unless restrained will continue. Retrophin has no adequate remedy at law.

## FOURTH CAUSE OF ACTION

## (UNLAWFUL MERGER IN VIOLATION OF SECTION 7 OF THE CLAYTON ACT)

80. Retrophin repeats and realleges the allegations set forth in paragraphs 1 through 79 as if fully set forth herein.

81. Questcor's acquisition of the rights to Synacthen is likely to substantially lessen competition in interstate trade and commerce in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

82. Questcor's acquisition of the rights to Synacthen is likely to result in a substantial lessening of competition in the Relevant Markets.

83. Questcor's violation of Section 7 of the Clayton Act has caused, and will cause, damages to Retrophin in an amount to be determined at trial, such damages to be trebled in accordance with Section 4 of the Clayton Act, 15 U.S.C. § 15.

84. Questcor's unlawful conduct is ongoing, irreparably injures Retrophin, harms the public interest, and unless restrained will continue. Retrophin has no adequate remedy at law.

## FIFTH CAUSE OF ACTION

## (VIOLATION OF CALIFORNIA ANTITRUST LAWS)

85. Retrophin repeats and realleges the allegations set forth in paragraphs 1 through 84 as if fully set forth herein.

86. In acquiring the rights to Synacthen, Questcor entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of the California antitrust laws referenced below. Questcor has acted in violation of these laws in an effort to maintain, entrench, and/or create a monopoly,

and otherwise injure competition in the Relevant Markets. Questcor's conduct substantially affected commerce in California.

87. In acquiring the rights to Synacthen in the US, Questcor has maintained and entrenched its monopoly position in the Relevant Markets.

88. Questcor's acquisition of the rights to Synacthen is likely to result in a substantial lessening of competition in the Relevant Markets.

89. By reason of the foregoing, Questcor violated California's Cartwright Act, California Business and Professions Code §§ 16720 *et seq.*

90. Questcor's violation of California's Cartwright Act, California Business and Professions Code §§ 16720 *et seq.* has caused, and will cause, damages to Retrophin in an amount to be determined at trial, with such damages to be trebled.

91. Questcor's unlawful conduct is ongoing, irreparably injures Retrophin, harms the public interest, and unless restrained will continue. Retrophin has no adequate remedy at law.

## SIXTH CAUSE OF ACTION
## (UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*)

92. Retrophin repeats and realleges the allegations set forth in paragraphs 1 through 91 as if fully set forth herein.

93. California Unfair Competition Law, Business and Professions Code Section 17200 *et seq.*, provides that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act."

94. Questcor's conduct as alleged herein meets the "unlawfulness" prong of California Business and Professions Code §§ 17200 *et seq.* Questcor has committed and continues to commit unlawful business practices by illegally acquiring the rights to Synacthen and engaging in anticompetitive and monopolistic conduct in violation of antitrust laws.

18

95. Questcor's conduct as alleged herein also meets the "unfair" prong of California Business and Professions Code §§ 17200 *et seq*. Questcor's anticompetitive and monopolistic conduct harms the public interest, threatens an incipient violation of an antitrust law and/or violates the policy or spirit of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.

96. Pursuant to California Business and Professions Code § 17203, Retrophin seeks the disgorgement of Questcor's profits earned by its unlawful and/or unfair business practices to the extent it constitutes restitution to Retrophin.

97. Pursuant to California Business and Professions Code § 17203, Retrophin seeks an order of this court enjoining Questcor from continuing to engage, use, or employ the unlawful and/or unfair business practices complained of herein.

98. Questcor's wrongful conduct has caused and, if it continues, will continue to cause irreparable harm to Retrophin that cannot be fully compensated by money and for which Retrophin has no adequate remedy at law. Retrophin is thus entitled to permanent injunctive relief preventing Questcor from continuing to engage in the conduct alleged in this Complaint.

## **PRAYER FOR RELIEF**

WHEREFORE, Retrophin respectfully demands judgment against Questcor:

A. DECLARING that Questcor's acquisition of the rights to Synacthen is an unlawful contract, combination or conspiracy in restraint of trade in violation of Section 1 of the Sherman Act;

B. DECLARING that Questcor's acquisition of the rights to Synacthen constitutes unlawful monopolization of the Relevant Markets in violation of Section 2 of the Sherman Act;

C. DECLARING that Questcor's acquisition of the rights to Synacthen constitutes an unlawful attempt to monopolize the Relevant Markets in violation of Section 2 of the Sherman Act;

D.   DECLARING that Questcor's acquisition of the rights to Synacthen constitutes an acquisition that may result in a substantial lessening of competition in the Relevant Markets in violation of Section 7 of the Clayton Act;

E.   DECLARING that Questcor's acquisition of the rights to Synacthen constitutes an unlawful trust in restraint of trade and commerce in violation of California Business and Professions Code §§ 16720 *et seq.*;

F.   DECLARING that Questcor's acquisition of the rights to Synacthen constitutes unfair competition in violation of California Business and Professions Code § 17200 *et seq.*;

G.   PERMANENTLY ENJOINING Questcor from enforcing or maintaining its Rights to Synacthen under its agreement with Novartis or any similar formal or informal agreement;

H.   PERMANENTLY ENJOINING Questcor from engaging in further anticompetitive conduct in violation of Section 1 of the Sherman Act;

I.   PERMANENTLY ENJOINING Questcor from engaging in further anticompetitive conduct in violation of Section 2 of the Sherman Act;

J.   PERMANENTLY ENJOINING Questcor from engaging in further anticompetitive conduct in violation of Section 7 of the Clayton Act;

K.   PERMANENTLY ENJOINING Questcor from engaging in further anticompetitive conduct in violation of California Business and Professions Code §§ 16720, *et seq.*;

L.   PERMANENTLY ENJOINING Questcor from engaging in further unlawful and/or unfair business practices in violation of California Business and Professions Code § 17200 *et seq.*;

M.   DISGORGING any profits generated by Questcor as a result of its unlawful and/or unfair business practices to the extent it constitutes restitution to Retrophin;

1  N. AWARDING Retrophin damages in an amount to be proved at trial, such
2  damages to be trebled, including its costs and attorneys' fees, pursuant to Section 4 of
3  the Clayton Act, 15 U.S.C. § 15 and/or California's Cartwright Act, California
4  Business and Professions Code §§ 16720, *et seq.*;

5  O. AWARDING Retrophin its costs, expenses and attorneys' fees incurred
6  in connection with the action;

7  P. AWARDING Retrophin interest to the maximum extent permitted by
8  law; and

9  Q. GRANTING Retrophin such other and further relief as this Court deems
10 just and proper.

11 Dated: January 7, 2014                KATTEN MUCHIN ROSENMAN LLP

13                                       By: *K. Holland*

14                                       Kristin L. Holland
15                                       Attorneys for Plaintiff Retrophin, Inc.

## DEMAND FOR JURY TRIAL

Retrophin hereby demands a trial by jury on all of its claims and causes of action.

Dated: January 7, 2014

KATTEN MUCHIN ROSENMAN LLP

By: _____

Kristin L. Holland
Attorneys for Plaintiff Retrophin, Inc.

22

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

Retrophin, Inc.

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

Questcor Pharmaceuticals, Inc.

**(b) County of Residence of First Listed Plaintiff**  New York, NY
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**County of Residence of First Listed Defendant**  Orange, CA
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c) Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.
Katten Muchin Rosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310-788-4400

**Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.
N/A

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff
☒ 3. Federal Question (U.S. Government Not a Party)
☐ 2. U.S. Government Defendant
☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No  (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No  ☒ **MONEY DEMANDED IN COMPLAINT:** $ Over $75k, TBD

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Plaintiff is suing defendant for entering an illegal agreement and engaging in conduct that violates federal and state antitrust and competition laws, 15 U.S.C. §§ 1, 2, 18, and California Business and Professions Code §§ 16720, et seq, California Business and Professions Code §§ 17200, et seq

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☒ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS PERSONAL INJURY** | **TORTS PERSONAL PROPERTY** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 340 Marine | **BANKRUPTCY** | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 710 Fair Labor Standards Act | |
| | **REAL PROPERTY** | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | | ☐ 445 American with Disabilities-Employment | ☐ 740 Railway Labor Act | |
| | ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | | ☐ 448 Education | ☐ 790 Other Labor Litigation | |
| | | | | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:**  Case Number: CV14-00026

CV-71 (11/13)                                CIVIL COVER SHEET                             Page 1 of 3

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court?<br>☐ Yes ☒ No<br>If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action?<br>☐ Yes ☒ No<br>If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF?<br>Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT?<br>Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A.<br>Los Angeles County | B.<br>Ventura, Santa Barbara, or San Luis Obispo Counties | C.<br>Orange County | D.<br>Riverside or San Bernardino Counties | E.<br>Outside the Central District of California | F.<br>Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose: | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ |

**C.1.** Is either of the following true? If so, check the one that applies:

☒ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
**SOUTHERN DIVISION.**
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right. ➡

**C.2.** Is either of the following true? If so, check the one that applies:

☐ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
**EASTERN DIVISION.**
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the
**WESTERN DIVISION.**
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | Southern Division |

Case# 2018-14059-0 Docketed at Montgomery County Prothonotary on 05/25/2018 5:11 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):** _K. Holland_ (signature)   DATE: 1/7/2014

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

Case# 2018-14059-0 Docketed at Montgomery County Prothonotary on 05/25/2018 5:11 PM, Fee = $290.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.