Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

INTERNATIONAL UNION OF
OPERATING ENGINEERS LOCAL 542

VS.      :   NO.   2018-14059

MALLINCKRODT ARD, INC., *et al.*

## COVER SHEET OF MOVING PARTY

Date of Filing  August 6, 2018      Moving Party  Express Scripts Holding Company, Express Scripts, Inc., Curascript, Inc., Curascript SD, Accredo Health Group, Inc., and United Biosource Corporation

Counsel for Moving Party  Joanne C. Lewers          I.D. No.  81195

Document Filed (Specify)  Preliminary Objections to Plaintiff's Complaint

Matter is:  __X__ (Appealable) _____ (Interlocutory)

Oral Argument: _____ (Yes)  __X__ (No)   Discovery Needed: _____ (Yes)  __X__ (No)

--------------------------------------------------------------------------------

**CERTIFICATIONS** - Check **ONLY** if appropriate:

_____ Counsel certify that they have conferred in a good faith effort to resolve the subject discovery dispute. **(Required by Local Rule 208.2(e) on motions relating to discovery.)**

_____ Counsel for moving party certifies that the subject **civil motion** is **uncontested** by all parties involved in the case. (If checked, skip Rule to Show Cause section below.)

By:  _____
Counsel for Moving Party

--------------------------------------------------------------------------------

**RULE TO SHOW CAUSE** - Check **ONE** of the Choices Listed Below:

_____ Respondent is directed to show cause why the moving party is not entitled to the relief requested by filing an **answer** in the form of a **written response** at the **Office of the Prothonotary** on or before the _____ day of _____ 20___.

_____ Respondent is directed to show cause, in the form of a **written response**, why the attached Family Court Discovery Motion is not entitled to the relief requested. Rule Returnable and Argument the _____ day of _____, 20___ at **1:00 p.m.** at **321 Swede Street, Norristown, Pa**.

_____ Respondent is directed to file a **written response** in conformity with the Pennsylvania Rules of Civil Procedure.

_____ Rule Returnable at time of trial.

By:  _____
Court Administrator

9/12

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL
542

vs.

MALLINCKRODT ARD INC FKA QUESTCOR
PHARMACEUTICALS INC

NO.  2018-14059

## COVER SHEET OF MOVING PARTY

Date of Filing   August 06  2018

Moving Party   ACCREDO HEALTH GROUP INC; CURASCRIPT INC; CURASCRIPT SD; EXPRESS SCRIPTS HOLDING COMPANY; UNITED BIOSOURCE CORPORATION NKA UNITED BIOSOURCE LLC

Counsel for Moving Party   JOANNE CELIA LEWERS, Esq., ID: 81195

Document Filed (Specify)   PRELIMINARY OBJECTIONS TO PLAINTIFF'S COMPLAINT

Matter is (Check One)   [X] (Appealable)   [ ] (Interlocutory)

Discovery Needed   [ ] (Yes)   [X] (No)

-----------------------------------------------------------------------------------------------

## CERTIFICATIONS - Check **ONLY** if appropriate:

Counsel certify that they have conferred in a good faith effort to resolve the subject <u>discovery</u> dispute.
**(Required by Local Rule 208.2(e) on motions relating to discovery.)**

[ ] (Yes)   [ ] (No)   [X] (Not a Discovery Motion)

[ ] Counsel for moving party certifies that the subject **civil motion** is **uncontested** by all parties involved in the case.
(If checked, skip Rule to Show Cause section below.)

By: _____
Counsel  for Moving Party

-----------------------------------------------------------------------------------------------

**RULE TO SHOW CAUSE** - Check **ONE** of the Choice Listed Below:

_____   Respondent is directed to show cause why the moving party is not entitled to the relief requested by filing

an **answer** in the form of a **written response** at the **Office of the Prothonotary** on or before the

_____ day of _____, 20____

_____   Respondent is directed to show cause, in the form of a **written response**, why the attached Family

Court Discovery Motion is not entitled to the relief requested.  Rule Returnable and Argument the_____ day of

_____, 20____ at **1:00 p.m.** at **321 Swede Street, Norristown, Pa.**

_____   Respondent is directed to file a **written response** in conformity with the Pennsylvania Rules of Civil Procedure

_____ Rule Returnable at time of trial.

By: _____
Court Administrator

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**IN THE COURT OF COMMON PLEAS**
**FOR MONTGOMERY COUNTY, PENNSYLVANIA**

|  |  |  |
|---|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 542, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2018-14059 |
| MALLINCKRODT ARD, INC., *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

<u>**NOTICE TO PLEAD**</u>

**To:**
Donald E. Haviland, Jr., Esquire
William H. Platt, II, Esquire
Christina M. Philipp, Esquire
Haviland Hughes
201 South Maple Way, Suite 110
Ambler, PA 19002

You are hereby notified to file a written response to the enclosed Preliminary Objections of Defendants Express Scripts Holding Company, Express Scripts, Inc., CuraScript, Inc., CuraScript SD, Accredo Health Group, Inc., and United BioSource Corporation within twenty (20) days of the date of service hereof or the Preliminary Objections may be sustained.

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Dated:  August 6, 2018                     /s/ Joanne C. Lewers

                                        Joanne C. Lewers (ID No. 81195)
Victoria L. Andrews (ID No. 321143)
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Facsimile (215) 988-2757
joanne.lewers@dbr.com
victoria.andrews@dbr.com

Matthew M. Martino (admitted *pro hac vice*)
Michael H. Menitove (admitted *pro hac vice*)
Evan R. Kreiner (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
Telephone: (212) 735-3000
matthew.martino@skadden.com
michael.menitove@skadden.com
evan.kreiner@skadden.com

*Attorneys for Defendants Express Scripts Holding Company, Express Scripts, Inc., CuraScript, Inc., CuraScript SD, Accredo Health Group, Inc., and United BioSource Corporation, now known as United BioSource LLC*

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**IN THE COURT OF COMMON PLEAS
FOR MONTGOMERY COUNTY, PENNSYLVANIA**

|  |  |  |
|---|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 542, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2018-14059 |
| MALLINCKRODT ARD, INC., *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS EXPRESS SCRIPTS HOLDING COMPANY'S,
EXPRESS SCRIPTS, INC.'S, CURASCRIPT, INC.'S, CURASCRIPT
SD'S, ACCREDO HEALTH GROUP, INC.'S, AND UNITED BIOSOURCE
CORPORATION'S PRELIMINARY OBJECTIONS TO PLAINTIFF'S COMPLAINT**

Pursuant to Pennsylvania Rule of Civil Procedure 1028 and Montgomery County Local

Civil Rule 1028(c), Defendants Express Scripts Holding Company ("ESHC"), Express Scripts,

Inc. ("ESI"), CuraScript, Inc., CuraScript SD,[1] Accredo Health Group, Inc. ("Accredo"), and

United BioSource Corporation ("UBC")[2] (each, an "Express Scripts Entity" and collectively, the

"Express Scripts Entities"), by and through their undersigned counsel, submit the following

Preliminary Objections to the Complaint filed by the International Union of Operating Engineers

Local 542 ("Plaintiff").  In support of their Preliminary Objections, together with the

accompanying Memorandum of Law that is incorporated by reference as if fully set forth herein,

---

[1] The correct corporate name is Priority Healthcare Distribution, Inc.

[2] The Complaint names UBC as a defendant, but that entity ceased to exist in approximately
2013 when UBC became United BioSource LLC.

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

the Express Scripts Entities aver as follows:

## I.        RELEVANT FACTUAL ALLEGATIONS[3]

### A.        Mallinckrodt's[4] Alleged Monopoly in the Purported Market for ACTH Drugs

1.        Mallinckrodt manufactures, markets, distributes and sells Acthar, an injection containing adrenocorticotropic hormone ("ACTH"). Compl. ¶ 2. Mallinckrodt acquired the rights to Acthar in 2014 when it bought Questcor Pharmaceuticals, Inc. ("Questcor"), which obtained those rights in 2001. *Id.* ¶¶ 3, 23, 45. Among other conditions, Acthar is prescribed to treat infantile spasms, a rare seizure disorder. *Id.* ¶¶ 41, 46.

2.        Acthar is the only therapeutic ACTH product sold in the United States. *Id.* ¶ 2. According to the Complaint, "Acthar has a 100% share of the market for ACTH drugs in the United States. No other ACTH drug is FDA-approved for therapeutic use." *Id.* ¶ 122. The alleged "ACTH market is characterized by high barriers to entry." *Id.* ¶ 123.

3.        In 2013, Questcor allegedly maintained its monopoly in the purported market for ACTH drugs by acquiring the rights to develop, market, and sell Synacthen, "a synthetically derived ACTH medication, which, like Acthar, could be injected intra-muscularly." *Id.* ¶¶ 109, 112. Although it has not been approved by the FDA, Synacthen allegedly is used as an alternative to Acthar in other countries. *Id.* ¶ 109. Plaintiff alleges that neither Questcor nor Mallinckrodt ever sought "FDA approval to bring [Synacthen] to market." *Id.* ¶ 142.

4.        In January 2017, the Federal Trade Commission sued Mallinckrodt for unlawful monopolistic conduct based on Questcor's acquisition of the Synacthen rights and entered a

---

[3] The Express Scripts Entities accept the allegations in the Complaint as true only for purposes of these Preliminary Objections.

[4] Mallinckrodt ARD, Inc. and Mallinckrodt plc are referred to collectively as "Mallinckrodt."

2

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

settlement pursuant to which Mallinckrodt paid $100 million.  *Id.* ¶ 152.[5]

5.      Due to Mallinckrodt's alleged monopoly in the purported market for ACTH drugs and the absence of "competitive constraints," *id.* ¶ 118, Plaintiff asserts that "Mallinckrodt has been able to raise prices unchecked," *id.* ¶ 117.  Since 2001, Questcor and Mallinckrodt allegedly have raised the price of Acthar from $40 per vial to $43,658.40 per vial.  *Id.* ¶¶ 92-96.

**B.      The Services Provided by CuraScript SD, Accredo, and UBC**

6.      Plaintiff alleges that CuraScript SD has been the exclusive distributor of Acthar since July 2007.  *Id.* ¶¶ 49, 52, 59.  CuraScript SD purchases Acthar from Mallinckrodt and distributes the drug to specialty pharmacies, including Accredo, which dispense the product to patients.  *See id.* ¶ 72, Fig. 2.

7.      Plaintiff vaguely alleges that "Accredo dealt with [Plaintiff's] patient members." *Id.* ¶ 68.

8.      Plaintiff further alleges that in July 2007, Questcor began requesting that doctors submit new Acthar prescriptions through the Acthar Support & Access Program ("ASAP"), which is administered by UBC.  *Id.*  Specifically, UBC "confirms the patient's insurance coverage or other source of payment, and then arranges for Acthar to be delivered" to the patient. *Id.* ¶ 52.  The patient authorizes UBC "to provide certain services to [the patient], including reimbursement and coverage support, patient assistance and access programs, medication shipment tracking, and home injection training."  *Id.* ¶ 54 (alteration in original).

**C.      ESI Is Plaintiff's Pharmacy Benefit Manager**

9.      Plaintiff alleges that beginning in 2012, it "contracted with Express Scripts to provide pharmacy benefit services, among other things."  *Id.* ¶ 76.  Plaintiff further alleges that it

---

[5] No Express Scripts Entity was a defendant in the FTC's lawsuit.

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

"agreed to" a Pharmacy Benefit Management ("PBM") Agreement with ESI in 2012, and that it later "entered into an ESI PBM Agreement dated June 1, 2015 [sic]," which "was then updated and amended in May 2015, and then again in February 2017." *Id.* ¶ 77.

10.     Plaintiff "agreed to pay ESI certain reimbursement rates for specialty pharmacy drugs." *Id.* ¶ 82.  For Acthar, ESI "charged [Plaintiff] at a discounted rate . . . off the AWP ["average wholesale price"], as set forth in the ESI PBM Agreement." *Id.*

11.     Although Plaintiff appears to assert that Accredo is the entity that dispensed the Acthar prescriptions to its members, *see id.* ¶ 68, Plaintiff further appears to allege that it received a larger discount off of AWP than it otherwise would have because Acthar was available "through CuraScript exclusively." *Id.* ¶ 81.

## II.        PRELIMINARY OBJECTIONS - DEMURRER

### PLAINTIFF'S CLAIMS ARE LEGALLY INSUFFICIENT AND SHOULD BE DISMISSED PURSUANT TO PA. R. CIV. P. 1028(a)(4)

12.     Rule 1028(a)(4) of the Pennsylvania Rules of Civil Procedure provides that a party may preliminarily object to a pleading for "legal insufficiency . . . (demurrer)."  Pa. R. Civ. P. 1028(a)(4).

13.     "Preliminary objections in the nature of demurrers are proper when the law is clear that a plaintiff is not entitled to recovery based on the facts alleged in the complaint." *Yocca v. Pitt. Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004).  "It is well-established that a plaintiff must provide sufficient factual averments in his or her complaint to sustain a cause of action." *Feingold v. Hendrzak*, 15 A.3d 937, 942 (Pa. Super. 2011).  "[W]hen considering a motion for a demurrer, the trial court must accept as true 'all well-pleaded material facts set forth in the complaint and all inferences fairly deducible from those facts.'" *Yocca*, 854 A.2d at 436 (citation omitted).  "[T]he Court need not accept as true conclusions of law, unwarranted

4

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

inferences from facts, argumentative allegations, or expressions of opinion." *Commonwealth v. Golden Gate Nat'l Senior Care LLC*, 158 A.3d 203, 213 (Pa. Comwlth. 2017).

## A.     The UTPCPL Claim (Count I) Fails as a Matter of Law

14.     The UTPCPL prohibits twenty-one (21) specified unfair or deceptive trade practices. *See Golden Gate*, 158 A.3d at 214 ("Section 3 of the UTPCPL states that '[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined [in Section 2(4)(i)-(xxi) of the UTPCPL] . . . are hereby declared unlawful.'" (quoting 73 Pa. Stat. § 201-3) (alterations in original)).

15.     Accordingly, "[i]n order to state a claim under the UTPCPL, a plaintiff must allege one of the 'unfair or deceptive practices' set forth in [Section 2(4)]." *Romeo v. Pitt. Assocs.*, 787 A.2d 1027, 1033 (Pa. Super. 2001).  In addition, a private "plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Yocca*, 854 A.2d at 438; *see also Weiss v. Fritch, Inc.*, No. 2332 EDA 2017, 2018 WL 1940109, at *8 n.10 (Pa. Super. Apr. 25, 2018) (affirming dismissal of UTPCPL claim because plaintiff "did not allege facts supporting a conclusion that he justifiably relied on the advertising statements indicating that Fritch could detect with 100% accuracy when his tank would fail").

16.     Plaintiff does not allege any prohibited act delineated in the UTPCPL as a basis for its UTPCPL claim.  Rather, the UTPCPL claim is based solely on purportedly anticompetitive conduct, *see* Compl. ¶ 172 (seeking "relief against [Defendants] for their scheme to fix the price of Acthar at supra-competitive levels and maintain Mallinckrodt's monopoly power"),[6] which is not prohibited by the UTPCPL unless "deception and fraud [are] part of the

---

[6] For the reasons outlined in the Express Scripts Entities' motion to dismiss in *City of Rockford v.*
*(cont'd)*

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

alleged anticompetitive conspiracies." *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 760 (E.D. Pa. 2014) (dismissing UTPCPL claim for lack of "allegations of deceit").

17.     Because Plaintiff does not allege any purportedly fraudulent or deceptive conduct identified as unlawful in the UTPCPL, or any other conduct prohibited by the UTPCPL, it does not state a cognizable UTPCPL claim.

18.     Furthermore, even if Plaintiff alleged here that the Express Scripts Entities engaged in prohibited conduct under the UTPCPL—which it does not—Plaintiff's UTPCPL claim would fail because:  (1) Plaintiff does not allege that it relied on any such prohibited conduct, and (2) Plaintiff does not allege facts to show that such prohibited conduct caused its alleged harm.

19.     Here, Plaintiff alleges that it "was injured as a direct result of the Defendants' conduct," Compl. ¶ 176, not that it ***relied on*** Defendants' conduct.  Indeed, Plaintiff's inability to identify a statement that it could have relied on, *see id.* ¶¶ 166-76, demonstrates that it is unsuccessfully attempting to bring an antitrust claim under the guise of the UTPCPL because— for whatever reason—it has decided against asserting a federal antitrust cause of action.

20.     In addition, Plaintiff alleges facts demonstrating that its purported harm—paying high AWPs for Acthar—resulted from Mallinckrodt's alleged monopoly power, not from any action by an Express Scripts Entity.  Specifically, Plaintiff alleges that given the absence of "competitive constraints" within the purported ACTH market, "Mallinckrodt has been able to raise prices unchecked." *Id.* ¶¶ 117-18.

---

*(cont'd from previous page)*
*Mallinckrodt*, No. 17-cv-50107 (N.D. Ill.), ECF No. 105—a case involving nearly identical factual allegations and the same lead plaintiff's counsel as this action—Plaintiff's factual averments do not suggest that any Express Scripts Entity engaged in anticompetitive conduct.

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

21.     Moreover, contrary to its deficient, conclusory assertion of a conspiracy between the Express Scripts Entities and Mallinckrodt to fix AWPs for Acthar, *see Brown v. Blaine*, 833 A.2d 1166, 1173 (Pa. Comwlth. 2003) ("bare allegations" of conspiracy are insufficient where plaintiff "does not allege facts indicating a conspiracy or an agreement to act unlawfully"), Plaintiff repeatedly pleads facts illustrating that ***Mallinckrodt unilaterally*** sets the AWP for Acthar.[7]

22.     Likewise, any conduct on the part of an Express Scripts Entity in the distribution of Acthar cannot have enhanced Mallinckrodt's ability to raise the AWPs for Acthar because the method of distribution cannot strengthen Mallinckrodt's alleged monopoly—i.e., the method of distribution does not make it more difficult for a pharmaceutical company to develop a competing product.  *See E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 29 (2d Cir. 2006) (exclusive distribution agreements "provide[] no monopolistic benefit to [the monopolist] that it does not already enjoy and would not continue to enjoy" absent the exclusive agreement); *see also CAE Inc. v. Gulfstream Aerospace Corp.*, 203 F. Supp. 3d 447, 455 (D. Del. 2016) ("One reason why exclusive agreements between a supplier and a service-provider are generally permissible is that they tend to have no greater anticompetitive effect than a situation in which [the supplier] . . . elects to move the disputed services in-house.").

23.     Thus, as alleged in the Complaint, the only conceivable causes of the purportedly high AWPs for Acthar are Mallinckrodt's alleged monopoly power and its unilateral decision to raise the price of the drug.

---

[7] *See, e.g.*, Compl. ¶ 82 ("***Mallinckrodt set the average wholesale prices*** of Acthar used by Express Scripts for reimbursement." (emphasis added)); *id.* ¶ 84 ("***Mallinckrodt . . . raise[d] the AWPs*** for Acthar each year . . . ." (emphasis added)); *id.* ¶ 94 ("***Mallinckrodt increased the price*** of Acthar . . . ." (emphasis added)); *id.* ¶ 118 ("***Mallinckrodt*** has encountered no competitive constraints on ***its ability to repeatedly increase Acthar's price*** . . . ." (emphasis added)).

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

24.     Accordingly, Plaintiff does not allege facts to suggest that any action by any Express Scripts Entity has caused its alleged harm, and the UTPCPL claim against the Express Scripts Entities fails. *See McCabe v. Marywood Univ.*, 166 A.3d 1257, 1263 (Pa. Super. 2017) (affirming dismissal of UTPCPL claim because plaintiff "has not shown that she suffered harm as a result of her reliance [on] the alleged deception of Marywood University. Rather, [her] harm[] come[s] from her decision to transfer schools.").[8]

**B.     The Negligent Misrepresentation Claim (Count II) Fails as a Matter of Law**

25.     Similarly, Plaintiff's negligent misrepresentation claim is legally deficient because Plaintiff has not pleaded, and cannot plead, the elements necessary to establish this claim.

26.     As an initial matter, this claim is barred by the economic loss doctrine. "[T]he economic loss doctrine generally precludes recovery in negligence actions for injuries which are solely economic." *Excavation Techs., Inc. v. Columbia Gas Co.*, 985 A.2d 840, 841 (Pa. 2009). And with a limited exception not relevant here, "the economic loss doctrine bars claims for negligent misrepresentation." *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 491 (E.D. Pa. 2016) (citation omitted); *see also Excavation Techs.*, 985 A.2d at 841 (affirming dismissal of negligent misrepresentation claim based on economic loss doctrine).

27.     Here, Plaintiff's negligent misrepresentation claim is barred by the economic loss doctrine because Plaintiff alleges only an economic loss—i.e., that it allegedly "overpaid for the

---

[8] To the extent that—notwithstanding the allegations in the UTPCPL count—Plaintiff argues its UTPCPL claim is based on the purported misrepresentations alleged in the negligent misrepresentation count, the UTPCPL claim would still fail. As discussed in Section II(B), *infra*, the Complaint does not allege facts to support the conclusions that: (1) any Express Scripts Entity engaged in a prohibited act—i.e., made a deceptive or fraudulent statement—or (2) Plaintiff relied on any such prohibited act to its detriment.

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Acthar because of the false representations."  Compl. ¶ 185.  Plaintiff does not allege any physical or property damage.  Accordingly, the negligent misrepresentation claim should be dismissed for this reason alone.

28.      Plaintiff's negligent misrepresentation claim also fails because Plaintiff does not allege that any Express Scripts Entity owed it a duty of care relating to Acthar.  *See Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999) ("[L]ike any action in negligence, there must be an existence of a duty owed by one party to another.").  To the contrary, Plaintiff alleges only arm's-length business relationships.  *See Abdul-Rahman v. Chase Home Fin. Co.*, No. 13-cv-5320, 2014 WL 3408564, at *5 (E.D. Pa. July 11, 2014) (dismissing negligent misrepresentation claim for lack of duty because plaintiff "has presented no factual allegations that demonstrate anything but arm's length transactions").

29.      Moreover, Plaintiff fails to allege facts to suggest that any Express Scripts Entity made a false statement, or that Plaintiff relied on any such misrepresentation to its detriment.

30.      A negligent misrepresentation claim requires factual allegations showing: "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation."  *Bortz*, 729 A.2d at 561.

31.      Plaintiff does not allege facts to show that any purported statement was false—i.e., what was said, by whom, to whom, or when.[9]  While Plaintiff alleges that "Defendants made material misrepresentations that those prices [for Acthar] represented a calculation of real and

_____

[9] For this reason, the negligent misrepresentation claim also fails for lack of factual allegations suggesting that "the misrepresenter ought to have known [of a statement's] falsity" or "inten[ded] to induce another to act on" a purported misrepresentation. *Bortz*, 729 A.2d at 561.

fact-based prices for their drugs, and that they represented the actual value of the product in the marketplace," the Complaint does not identify any statement made to Plaintiff by any Defendant regarding the price of Acthar being based on a "calculation of real and fact-based prices." Compl. ¶ 179.

32.     To the contrary, the Complaint alleges that the PBM Agreements expressly set the reimbursement rate for Acthar at a specified percentage discount off AWP, which is exactly what Plaintiff alleges it paid. *See id.* ¶ 82 ("For Acthar, Mallinckrodt charged [Plaintiff] at a discounted rate . . . off the AWP, as set forth in the ESI PBM Agreement."). There is simply no allegation that any Express Scripts Entity failed to accurately communicate the price of Acthar or the agreed-upon reimbursement rate.

33.     And Plaintiff's allegation that ***Mallinckrodt*** was offering Acthar at inflated prices does not render "false" or not "fact-based" the agreed-upon reimbursement rate set forth in the PBM Agreements. *See Thompson's Gas & Elec. Serv., Inc. v. BP Am. Inc.*, 691 F. Supp. 2d 860, 870 (N.D. Ill. 2010) ("The fact that Defendants were offering propane for sale at inflated prices does not mean those prices were somehow 'false.'").

34.     Plaintiff also fails to allege facts suggesting that it justifiably relied to its detriment on any misrepresentation. For instance, Plaintiff does not plead that it agreed to a specific reimbursement rate for Acthar or decided to provide prescription drug coverage for Acthar as a result of any purported misrepresentation.

35.     Because Plaintiff has not and cannot allege the required elements, its negligent misrepresentation claim fails as a matter of law.

**C.      The Aiding and Abetting Claim (Count III) Fails as a Matter of Law**

36.     Plaintiff's aiding and abetting claim fails as a matter of law because it relies on the same alleged misconduct as its deficient UTPCPL and negligent misrepresentation claims.

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

37.     "[T]here can be no claim for aiding and abetting unless plaintiff has also alleged a viable claim for the underlying tort." *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, No. 16-cv-665, 2017 WL 4235773, at *11 (E.D. Pa. Sept. 25, 2017) (alteration in original) (citation omitted).

38.     Plaintiff's aiding and abetting claim is based on the same purported scheme "to defraud and deceive the Plaintiff by causing it to pay more for Acthar than it otherwise would have paid" as its deficient UTPCPL and negligent misrepresentation claims.  Compl. ¶ 187.

39.     As a result, the aiding and abetting claim fails because Plaintiff has not alleged a viable underlying tort claim.

## D.     The Unjust Enrichment Claim (Count IV) Fails as a Matter of Law

40.     Likewise, Plaintiff's unjust enrichment claim fails because Plaintiff does not allege a viable underlying tort.

41.     "Where the unjust enrichment claim rests on the same improper conduct as the underlying tort claim, the unjust enrichment claim will rise or fall with the underlying claim." *Whitaker*, 198 F. Supp. 3d at 493.

42.     Plaintiff's unjust enrichment claim rests on the same purported "conduct [that allegedly] violated state consumer fraud and antitrust laws, as well as the common law of Pennsylvania."  Compl. ¶ 200.[10]

_____

[10] It is unclear what state antitrust laws Plaintiff references in Paragraph 200 of its Complaint.  In any event, alleged antitrust violations cannot form the basis of an unjust enrichment claim under Pennsylvania law.  *See Stutzle v. Rhonepoulenc S.A.*, No. 27608 Oct. Term 2002, 2003 WL 22250424, at *2 (Pa. Ct. Com. Pl. Phila. Cty. Sept. 26, 2003) (dismissing unjust enrichment claim where purportedly wrongful conduct "amounts to an antitrust violation" because "the Pennsylvania legislature and the courts have not created a cause of action for damages sustained as a result of the antitrust violations").

43.     As a result, the unjust enrichment claim fails because Plaintiff has not alleged a viable underlying tort claim.

**E.     The Breach of Contract Claim (Count VI) Fails as a Matter of Law**

44.     Plaintiff's breach of contract claim fails as a matter of law because Plaintiff has not alleged facts necessary to sustain this claim.

45.     "[T]hree elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms; (2) a breach of the contract; and, (3) resultant damages." *McCabe*, 166 A.3d at 1262.  An allegation that one party has a duty arising from a contract is a legal conclusion that should be disregarded in the absence of the full text of the contract or all relevant provisions that purportedly give rise to the allegedly breached duty. *See Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 884 (Pa. Super. 2000) (affirming dismissal of breach of contract claim that was "fatally flawed" because plaintiffs' complaint "merely assert[ed] that the duty exists without demonstrating how the duty arises" and did not "cite[] to pertinent contractual language that would establish a duty on the insurers promptly to pay 'undisputed amounts' of UM or UIM benefits" or "attach the pertinent parts of the insurance policies to their complaint"); *see also* Pa. R. Civ. P. 1019(i) ("When any claim or defense is based upon a writing, the pleader shall attach a copy of the writing, or the material part thereof . . . .").

46.     Plaintiff fails to adequately plead a breach of contract claim based on ESI's alleged "failure to provide 'cost containment' services either through nonfeasance or malfeasance." Compl. ¶ 213.  Plaintiff merely states the legal conclusion that through its purported "failure" regarding this phrase that Plaintiff includes in quotations but does not cite or define, ESI "breached," "repudiated its obligations under" and "is in default of" the PBM Agreements. *Id.*  But Plaintiff does not attach either PBM Agreement or the relevant provisions

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

of either PBM Agreement, nor does Plaintiff quote any contractual provision or other source of any duty—or provide any context for its allegation.

47.     Further, Plaintiff does not allege facts to show that ESI breached any "cost containment" obligation. Indeed, Plaintiff actually alleges that the PBM Agreements expressly set the reimbursement rate for Acthar at a specified percentage discount off AWP, which is exactly what Plaintiff alleges it paid. *See id.* ¶ 82. Moreover, Plaintiff's assertion that ESI "agreed with Mallinckrodt to inflate the AWPs for Acthar," *id.* ¶ 213, is not only unsupported by any factual allegation, it is contrary to the numerous instances in which Plaintiff alleges that Mallinckrodt unilaterally sets the AWP for Acthar, *see supra* p. 7 n.7.

48.     Plaintiff also fails to state a breach of contract claim based on its allegation that "ESI also diverted monies from Plaintiff that should have been paid as rebates." Compl. ¶ 213. Plaintiff apparently bases this conclusory allegation on the definition of "rebates" in the PBM Agreement and Plaintiff's additional conclusory assertion that "ESI did not pay to [Plaintiff] all the 'rebates . . . directly attributable to the utilization of' the Acthar paid for by Plaintiff." *Id.* ¶ 87 (quoting definition of rebates from PBM Agreement) (ellipsis in Complaint). But Plaintiff does not meet its burden to quote the full provision of the PBM Agreement that purportedly required ESI to pay Plaintiff all rebates directly attributable to the use of Acthar; rather, it merely quotes part of the definition of rebates. In any event, Plaintiff does not allege facts to show that it received less than it was entitled to—e.g., by alleging how much it received in amounts tied to rebates and how much it should have received.

49.     Accordingly, Plaintiff's breach of contract claim fails as a matter of law because Plaintiff has not sufficiently alleged the existence of a contractual duty or a breach of any such duty.

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

50.     Furthermore, to the extent Plaintiff brings its breach of contract claim against any Express Scripts Entity other than ESI, that claim fails because ESI is the only Express Scripts Entity that allegedly has a contractual relationship with Plaintiff.  *See Fleetway Leasing Co. v. Wright*, 697 A.2d 1000, 1003 (Pa. Super. 1997) ("In Pennsylvania, a person who is not a party to a contract cannot be held liable for a breach by one of the parties to a contract.").

**F.     The Promissory Estoppel Claim (Count VII) Fails as a Matter of Law**

51.     A claim for promissory estoppel requires the following elements:  "(1) the promisor made a promise that would reasonably be expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise." *Peluso v. Kistner*, 970 A.2d 530, 533 (Pa. Comwlth. 2009).

52.     Plaintiff's promissory estoppel claim is based on ESI's purported refusal to "fulfill its representations and promises concerning the terms and obligations under the ESI PBM Agreement, including the promise of cost containment with respect to Acthar."  Compl. ¶ 219.

53.     Because the promissory estoppel claim is based on the same alleged contractual obligations and purported breach as the breach of contract claim, it fails as a matter of law for the same reasons.

**G.     The Breach of the Implied Covenant Claim (Count VIII) Fails as a Matter of Law**

54.     Pennsylvania law "does not recognize an independent cause of action for breach of the implied duty of good faith and fair dealing." *Sharp v. Travelers Pers. Sec. Ins. Co.*, No. 12 CV 6483, 2014 WL 8863084, at *5 n.5 (Pa. Ct. Com. Pl. Lackawanna Cty. Mar. 7, 2014) (collecting cases).

55.     As a result, Plaintiff's breach of the implied covenant claim is not viable.

56.     Furthermore, this claim fails for the same reason as Plaintiff's breach of contract

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

claim because it is based on the same faulty allegations as its breach of contract claim.  *See* Compl. ¶ 225.

### III.   PRELIMINARY OBJECTIONS – INSUFFICIENT SPECIFICITY

**ALTERNATIVELY, PLAINTIFF'S NEGLIGENT MISREPRESENTATION, AIDING AND ABETTING, AND UNJUST ENRICHMENT CLAIMS ARE NOT PLEADED WITH SUFFICIENT SPECIFICITY PURSUANT TO PA. R. CIV. P. 1028(a)(3)**

57.     Pennsylvania Rule of Civil Procedure 1028(a)(3) provides that a party may object to a pleading due to insufficient specificity in that pleading.  Pa. R. Civ. P. 1028(a)(3).

58.     Pennsylvania Rule of Civil Procedure 1019(a) requires that "[t]he material facts on which a cause of action or defense is based shall be stated in a concise and summary form" in a pleading.  Pa. R. Civ. P. 1019(a).  Accordingly, complaints "must be sufficiently specific so that the defending party will know how to prepare his defense."  *Golden Gate*, 158 A.3d at 223 (citation omitted).

59.     Plaintiff has not met this burden.

60.     As the basis for its negligent misrepresentation, aiding and abetting, and unjust enrichment claims, Plaintiff alleges that "Defendants made material misrepresentations that th[e] prices [for Acthar] represented a calculation of real and fact-based prices for their drugs, and that they represented the actual value of the product in the marketplace."  Compl. ¶ 179 (negligent misrepresentation count); *see also id.* ¶ 188(f) (alleging in aiding and abetting count that defendants "agree[d] among themselves and with their co-conspirators that they would . . . us[e] a fraudulent scheme to market and sell Acthar at inflated prices"); *id.* ¶ 195 (alleging in unjust enrichment count that Plaintiff "reli[ed] on Express Scripts' conduct and representations described herein").

61.     According to the Complaint, at some unspecified point, one or more unidentified employees of one or more of the eight different Defendants in this action represented to one or

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

more unidentified persons that Acthar prices "represented a calculation of real and fact-based prices for their drugs." *Id.* ¶ 179.

62.     Such vague allegations do not inform Defendants of the specific basis of Plaintiff's claims that are based on this purported misrepresentation, thus depriving Defendants of the ability to prepare their defenses. *See Golden Gate*, 158 A.3d at 224 ("The general allegations of wrongdoing pertaining to unidentified Marketing Statements, resident care plans, billing statements and MDSs are not sufficiently specific to meet the pleading requirement, especially given that the documents were not attached to the Amended Complaint, and neither the patients nor the documents were sufficiently described to permit Golden Gate to prepare a defense.").

63.     Thus, Plaintiff's negligent misrepresentation, aiding and abetting, and unjust enrichment claims should be dismissed.[11]

## IV.     PRELIMINARY OBJECTIONS – FAILURE TO CONFORM

### ALTERNATIVELY, PLAINTIFF'S COMPLAINT FAILS TO CONFORM TO THE RULES OF COURT PURSUANT TO PA. R. CIV. P. 1028(a)(2)

64.     Pennsylvania Rule of Civil Procedure 1028(a)(2) provides that a party may object to a pleading for failure to "conform to law or rule of court." Pa. R. Civ. P. 1028(a)(2).

65.     The Pennsylvania Rules of Civil Procedure require that "[w]hen any claim or defense is based upon a writing, the pleader shall attach a copy of the writing, or the material part thereof . . . ." Pa. R. Civ. P. 1019(i).

66.     Plaintiff's negligent misrepresentation, unjust enrichment, breach of contract, promissory estoppel, and implied covenant claims all rely on at least one of the PBM

---

[11] In addition, to the extent that Plaintiff contends its UTPCPL claim is based on purported misrepresentations, that claim should also be dismissed for the same reason.

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Agreements between ESI and Plaintiff.  *See* Compl. ¶ 184 (alleging in negligent misrepresentation count that "all Defendants communicated these false prices directly to [Plaintiff] for the Acthar sold" purportedly through the PBM Agreements); *id.* ¶ 196 (alleging in unjust enrichment count that Plaintiff "at all times had a reasonable expectation that Express Scripts' conduct would result in affordable services, including 'cost containment'"); *id.* ¶ 211 (alleging in breach of contract count that "[t]his count alleges breach of the ESI PBM Agreement"); *id.* ¶ 218 (alleging in promissory estoppel count that Plaintiff "seeks enforcement of ESI's promise to continue with ESI's obligations under the ESI PBM Agreement"); *id.* ¶ 226 (alleging in implied covenant count that ESI breached the covenant implied in the ESI PBM Agreement).

67.     But Plaintiff does not attach either of these agreements to its Complaint.

68.     Thus, because Plaintiff did not conform to the rules of this Court, these claims should be dismissed under Pennsylvania Rules of Civil Procedure 1019(i) and 1028(a)(2).[12]  *See Brimmeier v. Pa. Turnpike Comm'n*, 147 A.3d 954, 968 (Pa. Comwlth. 2016) (striking breach of contract claim under Rules 1019(i) and 1028(a)(2) because plaintiff "failed to attach a copy of [a written agreement] to the Complaint"), *aff'd* 161 A.3d 253 (Pa. 2017); *Unifund v. Sheridan*, No. 2012 CV 4944, 2013 WL 10253095, at *7 (Pa. Ct. Com. Pl. Lackawanna Cty. June 24, 2013) (invoking Rules 1019(i) and 1028(a)(2) to dismiss breach of contract claim and "[a]ll of the other count or counts herein . . . which reference the written cardholder's agreement or credit card application neither of which was ever attached to any complaint or amended complaint").

---

[12] If Plaintiff files the aforementioned contracts with an amended complaint, it should be cognizant of any confidentiality provisions in those agreements, and file them under seal if necessary.

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**WHEREFORE,** the Express Scripts Entities respectfully request that the Court sustain their Preliminary Objections and dismiss all claims against them in Plaintiff's Complaint with prejudice.

Dated:  August 6, 2018                           Respectfully submitted,

                                                 By: /s/ Joanne C. Lewers
                                                 Joanne C. Lewers (ID No. 81195)
                                                 DRINKER BIDDLE & REATH LLP
                                                 One Logan Square, Suite 2000
                                                 Philadelphia, PA 19103-6996
                                                 Telephone: (215) 988-2700
                                                 Facsimile (215) 988-2757

                                                 Matthew M. Martino (admitted *pro hac vice*)
                                                 Michael H. Menitove (admitted *pro hac vice*)
                                                 Evan R. Kreiner (admitted *pro hac vice*)
                                                 SKADDEN, ARPS, SLATE,
                                                   MEAGHER & FLOM LLP
                                                 Four Times Square
                                                 New York, NY 10036
                                                 Telephone: (212) 735-3000
                                                 matthew.martino@skadden.com
                                                 michael.menitove@skadden.com
                                                 evan.kreiner@skadden.com

                                                 *Attorneys for Defendants Express Scripts Holding*
                                                 *Company, Express Scripts, Inc., CuraScript, Inc.,*
                                                 *CuraScript SD, Accredo Health Group, Inc., and United*
                                                 *BioSource Corporation, now known as United*
                                                 *BioSource LLC*

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee =$0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# IN THE COURT OF COMMON PLEAS
## FOR MONTGOMERY COUNTY, PENNSYLVANIA

|  |  |  |
|---|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 542, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2018-14059 |
| MALLINCKRODT ARD, INC., *et al.*, | ) ) | |
| Defendants. | ) ) | |

## [PROPOSED] ORDER

AND NOW, this ___, day of _____, 2018, upon consideration of Defendants

Express Scripts Holding Company's, Express Scripts, Inc.'s, CuraScript, Inc.'s, CuraScript SD's,

Accredo Health Group, Inc.'s, and United BioSource Corporation's (collectively, the "Express

Scripts Entities") Preliminary Objections to Plaintiff's Complaint, and any response thereto, the

Express Scripts Entities' Preliminary Objections are **SUSTAINED**, and it is hereby **ORDERED**

that all claims against the Express Scripts Entities in Plaintiff's Complaint are dismissed with

prejudice.

_____
                                    J.

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## CERTIFICATE OF SERVICE

Joanne C. Lewers hereby certifies that a true and correct copy of Defendants Express Scripts Holding Company's, Express Scripts, Inc.'s, Curascript, Inc.'s, Curascript SD's, Accredo Health Group, Inc.'s, and United BioSource Corporation's Preliminary Objections was forwarded to the following via notification from the Montgomery County Court of Common Pleas Electronic Filing system on August 6, 2018:

G. Patrick Watson, Esquire
Lindsay Sklar Johnson, Esquire
Bryan Cave Leighton Paisner LLP
One Atlantic Center, 14th Floor
1201 W. Peachtree Street, NW
Atlanta, GA 30309

Philip D. Bartz, Esquire
Bryan Cave Leighton Paisner LLP
1155 F Street, N.W.
Washington, DC 20004

Matthew M. Martino, Esquire
Michael H. Menitove, Esquire
Evan R. Kreiner, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036

Herbert R. Giorgio, Jr., Esquire
Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102

Donald E. Haviland, Jr., Esquire
William H. Platt, II, Esquire
Christina M. Philipp, Esquire
Haviland Hughes
201 South Maple Way, Suite 110
Ambler, PA 19002

Daniel T. Sherry, Esquire
Wendy J. Bracaglia, Esquire
Marshall, Dennehey, Warner,
Coleman & Goggin
620 Freedom Business Center
Suite 300
King of Prussia, PA 19406

**Drinker Biddle & Reath LLP**

/s/ Joanne C. Lewers
Joanne C. Lewers

*Attorney for Defendants Express Scripts Holding Company, Express Scripts, Inc., CuraScript, Inc., CuraScript SD, Accredo Health Group, Inc., and United BioSource Corporation, now known as United BioSource LLC*

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**IN THE COURT OF COMMON PLEAS
FOR MONTGOMERY COUNTY, PENNSYLVANIA**

|  |  |  |
|---|---|---|
| INTERNATIONAL UNION OF<br>OPERATING ENGINEERS LOCAL 542, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2018-14059 |
| MALLINCKRODT ARD, INC., *et al.*, | ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS EXPRESS SCRIPTS HOLDING
COMPANY'S, EXPRESS SCRIPTS, INC.'S, CURASCRIPT,
INC.'S, CURASCRIPT SD'S, ACCREDO HEALTH GROUP, INC.'S,
AND UNITED BIOSOURCE CORPORATION'S PRELIMINARY OBJECTIONS**

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## TABLE OF CONTENTS

MATTER BEFORE THE COURT .............................................................................1

STATEMENT OF QUESTIONS INVOLVED........................................................1

PRELIMINARY STATEMENT ..............................................................................2

RELEVANT FACTUAL ALLEGATIONS .............................................................5

    A.    Mallinckrodt's Alleged Monopoly in the Purported Market for ACTH Drugs.............................................................................................................5

    B.    The Services Provided by CuraScript SD, Accredo, and UBC ...............6

    C.    ESI Is Plaintiff's Pharmacy Benefit Manager........................................7

ARGUMENT ..........................................................................................................7

I.    PLAINTIFF'S CLAIMS ARE LEGALLY INSUFFICIENT AND SHOULD BE DISMISSED PURSUANT TO PA. R. CIV. P. 1028(a)(4) ....................................7

    A.    The UTPCPL Claim (Count I) Should Be Dismissed ............................8

        1.    Plaintiff Does Not Allege a Prohibited Act ................................8

        2.    Plaintiff Does Not Allege Reliance or Causation ......................9

    B.    The Negligent Misrepresentation Claim (Count II) Should Be Dismissed ..........11

        1.    The Economic Loss Doctrine Bars the Negligent Misrepresentation Claim.................................................................................12

        2.    Plaintiff Does Not Allege That Any Express Scripts Entity Owed It A Duty of Care, or Plead Facts Showing a Misrepresentation or Justifiable Reliance ....................................................................12

    C.    The Aiding and Abetting (Count III) and Unjust Enrichment (Count IV) Claims Should Be Dismissed......................................................................14

    D.    The Breach of Contract Claim (Count VI) Should Be Dismissed ........15

    E.    The Promissory Estoppel Claim (Count VII) Should Be Dismissed....17

    F.    The Breach of the Implied Covenant Claim (Count VIII) Should Be Dismissed.............................................................................................18

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

II.     PLAINTIFF'S NEGLIGENT MISREPRESENTATION AND RELATED
        CLAIMS ARE PLEADED WITH INSUFFICIENT SPECIFICITY AND
        SHOULD BE DISMISSED PURSUANT TO PA. R. CIV. P. 1028(a)(3).......................18

III.    PLAINTIFF'S CLAIMS FAIL TO CONFORM TO LAW OR RULE OF COURT
        AND SHOULD BE DISMISSED PURSUANT TO PA. R. CIV. P. 1028(a)(2).............20

RELIEF SOUGHT............................................................................................................21

ii

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# **TABLE OF AUTHORITIES**

## **CASES**

*412 North Front Street Associates v. Spector Gadon & Rosen, P.C.,*
  151 A.3d 646 (Pa. Super. 2016)..................................................................17

*Abdul-Rahman v. Chase Home Finance Co.,*
  No. 13-cv-5320, 2014 WL 3408564 (E.D. Pa. July 11, 2014) ........................13

*Bortz v. Noon,*
  729 A.2d 555 (Pa. 1999) ..........................................................................13

*Brimmeier v. Pennsylvania Turnpike Commission,*
  147 A.3d 954 (Pa. Comwlth. 2016) ............................................................20

*Brown v. Blaine,*
  833 A.2d 1166 (Pa. Comwlth. 2003) ..........................................................10

*CAE Inc. v. Gulfstream Aerospace Corp.,*
  203 F. Supp. 3d 447 (D. Del. 2016)............................................................11

*Commonwealth v. Golden Gate National Senior Care LLC,*
  158 A.3d 203 (Pa. Comwlth. 2017) ..............................................8, 16, 18, 19

*E & L Consulting, Ltd. v. Doman Industries Ltd.,*
  472 F.3d 23 (2d Cir. 2006)........................................................................11

*Excavation Technologies, Inc. v. Columbia Gas Co.,*
  985 A.2d 840 (Pa. 2009) ..........................................................................12

*Feingold v. Hendrzak,*
  15 A.3d 937 (Pa. Super. 2011)....................................................................7

*Fleetway Leasing Co. v. Wright,*
  697 A.2d 1000 (Pa. Super. 1997)................................................................17

*Lennon ex rel. Lennon v. Wyeth-Ayerst Laboratories, Inc.,*
  No. 1793 EDA 2000, 2001 WL 755944 (Pa. Super. June 14, 2001).................12

*In re Lidoderm Antitrust Litigation,*
  103 F. Supp. 3d 1155 (N.D. Cal. 2015) ........................................................8

*Lynch v. Smith,*
  No. 3511 EDA 2016, 2017 WL 4351060 (Pa. Super. Oct. 2, 2017) .................19

*McCabe v. Marywood University,*
  166 A.3d 1257 (Pa. Super. 2017)............................................................9, 15

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

*In re Niaspan Antitrust Litigation*,
    42 F. Supp. 3d 735 (E.D. Pa. 2014) ............................................................8

*Peluso v. Kistner*,
    970 A.2d 530 (Pa. Comwlth. 2009) ...........................................................18

*Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*,
    No. 16-cv-665, 2017 WL 4235773 (E.D. Pa. Sept. 25, 2017) ....................14

*In re Polyurethane Foam Antitrust Litigation*,
    799 F. Supp. 2d 777 (N.D. Ohio 2011) .........................................................8

*Romeo v. Pittsburgh Associates*,
    787 A.2d 1027 (Pa. Super. 2001) ..................................................................8

*Sharp v. Travelers Personal Security Insurance Co.*,
    No. 12 CV 6483, 2014 WL 8863084
    (Pa. Ct. Com. Pl. Lackawanna Cty. Mar. 7, 2014) ....................................18

*Stutzle v. Rhonepoulenc S.A.*,
    No. 0027608 Oct. Term 2002, 2003 WL 22250424
    (Pa. Ct. Com. Pl. Philadelphia Cty. Sept. 26, 2003) ..................................15

*Thompson's Gas & Electric Service, Inc. v. BP America Inc.*,
    691 F. Supp. 2d 860 (N.D. Ill. 2010) ..........................................................14

*Unifund v. Sheridan*,
    No. 2012 CV 4944, 2013 WL 10253095
    (Pa. Ct. Com. Pl. Lackawanna Cty. June 24, 2013) ...................................20

*Weiss v. Fritch, Inc.*,
    No. 2332 EDA 2017, 2018 WL 1940109 (Pa. Super. Apr. 25, 2018) ...........9

*Whitaker v. Herr Foods, Inc.*,
    198 F. Supp. 3d 476 (E.D. Pa. 2016) ....................................................12, 14

*Williams v. Nationwide Mutual Insurance Co.*,
    750 A.2d 881 (Pa. Super. 2000) ..................................................................15

*Yocca v. Pittsburgh Steelers Sports, Inc.*,
    854 A.2d 425 (Pa. 2004) ........................................................................7, 8, 9

**STATUTES**

73 Pa. Stat. § 201-2(4) ......................................................................................8

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# RULES

Pa. R. Civ. P. 1019(a) ................................................................................18

Pa. R. Civ. P. 1019(i) ................................................................5, 15, 20, 21

Pa. R. Civ. P. 1028(a)(2) ...........................................................2, 5, 20, 21

Pa. R. Civ. P. 1028(a)(3) ...........................................................1, 4, 18, 19

Pa. R. Civ. P. 1028(a)(4) ...............................................................1, 3, 7

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## MATTER BEFORE THE COURT

Pursuant to Pennsylvania Rule of Civil Procedure 1028 and Montgomery County Local Civil Rule 1028(c), Defendants Express Scripts Holding Company ("ESHC"), Express Scripts, Inc. ("ESI"), CuraScript, Inc., CuraScript SD,[1] Accredo Health Group, Inc. ("Accredo"), and United BioSource Corporation ("UBC")[2] (each, an "Express Scripts Entity" and collectively, the "Express Scripts Entities"), by and through their undersigned counsel, submit this Memorandum of Law in support of their Preliminary Objections to the Complaint filed by the International Union of Operating Engineers Local 542 ("Plaintiff"). For the reasons set forth below and in their Preliminary Objections, the Express Scripts Entities respectfully request that the Court sustain their Preliminary Objections and dismiss the Complaint as against them.

## STATEMENT OF QUESTIONS INVOLVED

1. Are Plaintiff's claims against the Express Scripts Entities under the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count I) and for negligent misrepresentation (Count II), aiding and abetting (Count III), unjust enrichment (Count IV), breach of contract (Count VI), promissory estoppel (Count VII), and breach of the implied covenant of good faith and fair dealing (Count VIII) legally insufficient, thereby requiring dismissal pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4)?

   Answer: Yes

2. Alternatively, did Plaintiff fail to plead with sufficient specificity its UTPCPL (Count I), negligent misrepresentation (Count II), aiding and abetting (Count III), and unjust enrichment (Count IV) claims, thereby requiring dismissal pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(3)?

   Answer: Yes

3. Alternatively, did Plaintiff fail to conform to the rules of this Court by failing to properly plead and/or attach the agreement or agreements on which its claims for

---

[1] The correct corporate name is Priority Healthcare Distribution, Inc.

[2] The Complaint names UBC as a defendant, but that entity ceased to exist in approximately 2013 when UBC became United BioSource LLC.

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

negligent misrepresentation (Count II), unjust enrichment (Count IV), breach of contract (Count VI), promissory estoppel (Count VII), and breach of the implied covenant of good faith and fair dealing (Count VIII) are based, thereby requiring the dismissal of these claims pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(2)?

Answer: Yes

## PRELIMINARY STATEMENT

This case arises from Defendant Mallinckrodt's[3] alleged exorbitant pricing of the prescription medication Acthar. The Complaint asserts that Mallinckrodt has monopolized a purported market for adrenocorticotropic hormone ("ACTH") drugs used to treat infantile spasms and other rare conditions because Acthar is the only medication containing ACTH that is approved by the U.S. Food & Drug Administration ("FDA"). Plaintiff alleges that Mallinckrodt has exercised its purported monopoly power to increase the price of Acthar by 85,000 percent, from $40 a vial in 2001 to more than $40,000 a vial today. The Complaint further alleges that Mallinckrodt has maintained its monopoly by, among other things: (i) acquiring the rights to develop and market Synacthen—a synthetic version of Acthar—in the United States and (ii) not developing Synacthen for approval by the FDA.

Notwithstanding the absence of factual allegations connecting any Express Scripts Entity to Mallinckrodt's purportedly anticompetitive conduct, Plaintiff asserts claims against the Express Scripts Entities related to their alleged individual roles as a pharmacy benefit manager ("PBM") or in Acthar distribution (or in the case of ESHC, its mere corporate relationship to other Express Scripts Entities). Plaintiff alleges that ESI is its PBM and that, pursuant to the terms of the parties' PBM Agreements, ESI charged it a discounted rate off of the average wholesale price ("AWP") of Acthar. Plaintiff further alleges that three Express Scripts

---

[3] This brief refers to Mallinckrodt ARD, Inc. and Mallinckrodt plc collectively as "Mallinckrodt."

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Entities—CuraScript SD, Accredo, and UBC—are involved in Acthar distribution:  CuraScript SD is alleged to be the exclusive distributor of Acthar to specialty pharmacies; Accredo is alleged to be one of the specialty pharmacies that dispenses Acthar to patients; and UBC allegedly provides services to patients through the Acthar Support & Access Program ("ASAP").

The Complaint does not allege facts to suggest that any Express Scripts Entity has engaged in any unlawful or tortious conduct.  Moreover, although the Complaint sounds in antitrust and contains nearly identical allegations to those that form the basis of federal antitrust claims brought against Defendants by Plaintiff's counsel in a purported class action, *City of Rockford v. Mallinckrodt*, No. 17-cv-50107 (N.D. Ill.),[4] Plaintiff "expressly and undeniably disavow[s] and disclaim[s]" that it is asserting any claims under federal law.  (Compl. ¶ 12.) Rather, Plaintiff brings claims against the Express Scripts Entities under the UTPCPL and for negligent misrepresentation, aiding and abetting, unjust enrichment, breach of contract, promissory estoppel, and breach of the implied covenant of good faith and fair dealing.

Plaintiff's claims against each Express Scripts Entity are legally insufficient and should be dismissed pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4).  ***First***, the UTPCPL claim (Count I) should be dismissed because Plaintiff does not identify any act by any Express Scripts Entity that is identified in that statute as unlawful.  While Plaintiff bases its claim on purportedly anticompetitive conduct, the UTPCPL does not prohibit such conduct unless it is accompanied by deceptive or fraudulent acts, which Plaintiff fails to allege.  The UTPCPL claim also fails because Plaintiff does not allege that it suffered damage resulting from reliance on any

---

[4] The putative class in that case includes Plaintiff.  *See City of Rockford*, Second Amended Class Action Complaint, ECF No. 98, at ¶ 165 (defining putative class as "[a]ll third party payors and their beneficiaries in the United States and its Territories that paid for Acthar from August 2007 through the present").

3

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

conduct prohibited by the UTPCPL.

**Second**, Plaintiff's negligent misrepresentation claim (Count II) should be dismissed for multiple independent reasons.  As an initial matter, this claim is barred by the economic loss doctrine.  In addition, Plaintiff fails to allege—even in a conclusory manner—that any Express Scripts Entity owed it a duty of care.  Moreover, Plaintiff does not allege facts to suggest that any Express Scripts Entity made a false statement, or that Plaintiff relied on—or suffered damages as a result of its reliance on—any such statement.

**Third**, Plaintiff's aiding and abetting (Count III) and unjust enrichment (Count IV) claims against the Express Scripts Entities should be dismissed because they are predicated on the same deficient theories as the UTPCPL and negligent misrepresentation claims.

**Fourth**, the breach of contract claim (Count VI) should be dismissed because Plaintiff does not provide the full text or essential terms of a single contractual provision that allegedly was breached and, therefore, has not alleged facts demonstrating the existence of any contractual duty.  The Complaint also fails to allege facts that could show that any purported contractual duty was breached.  The promissory estoppel (Count VII) and breach of the implied covenant of good faith and fair dealing (Count VIII) claims are based on the same purported, inadequately pleaded duties as the breach of contract claim and should be dismissed for the same reasons.  The implied covenant claim should also be dismissed because that cause of action does not exist under Pennsylvania law.

In addition to their legal insufficiency, Plaintiff's claims are pleaded with insufficient specificity and should also be dismissed pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(3).  Plaintiff fails to identify any specific false statement that could support its negligent misrepresentation, aiding and abetting, and unjust enrichment claims.  To the contrary, Plaintiff

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

states generally that "Defendants made material misrepresentations" (Compl. ¶ 179) without identifying which Defendants purportedly made a material misrepresentation or when and under what circumstances a material misrepresentation was made.

Finally, five of Plaintiff's seven claims against the Express Scripts Entities should be dismissed pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(2) for failure to conform to Pennsylvania Rule of Civil Procedure 1019(i) because these claims are based on ESI's PBM Agreements with Plaintiff, and Plaintiff did not attach those agreements to the Complaint.

**RELEVANT FACTUAL ALLEGATIONS**[5]

**A.     Mallinckrodt's Alleged Monopoly in the Purported Market for ACTH Drugs**

Mallinckrodt manufactures, markets, distributes and sells Acthar, an injection containing ACTH.  (Compl. ¶ 2.)  Mallinckrodt acquired the rights to Acthar in 2014 when it bought Questcor Pharmaceuticals, Inc. ("Questcor"), which obtained those rights in 2001.  (*Id.* ¶¶ 3, 23, 45.)  Among other conditions, Acthar is prescribed to treat infantile spasms, a rare seizure disorder.  (*Id.* ¶¶ 41, 46.)

Acthar is the only therapeutic ACTH product sold in the United States.  (*Id.* ¶ 2.)  According to the Complaint, "Acthar has a 100% share of the market for ACTH drugs in the United States.  No other ACTH drug is FDA-approved for therapeutic use."  (*Id.* ¶ 122.)  The alleged "ACTH market is characterized by high barriers to entry."  (*Id.* ¶ 123.)

In 2013, Questcor allegedly maintained its monopoly in the purported market for ACTH drugs by acquiring the rights to develop, market, and sell Synacthen, "a synthetically derived ACTH medication, which, like Acthar, could be injected intra-muscularly."  (*Id.* ¶¶ 109, 112.)

---

[5] The Express Scripts Entities accept the factual allegations in the Complaint as true only for purposes of these Preliminary Objections.

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Although it has not been approved by the FDA, Synacthen allegedly is used as an alternative to Acthar in other countries.  (*Id.* ¶ 109.)  Plaintiff alleges that neither Questcor nor Mallinckrodt ever sought "FDA approval to bring [Synacthen] to market."  (*Id.* ¶ 142.)  In January 2017, the Federal Trade Commission (the "FTC") sued Mallinckrodt for unlawful monopolistic conduct based on Questcor's acquisition of the Synacthen rights and entered a settlement pursuant to which Mallinckrodt paid $100 million.  (*Id.* ¶ 152.)[6]

Due to Mallinckrodt's alleged monopoly in the purported market for ACTH drugs and the absence of "competitive constraints" (*id.* ¶ 118), Plaintiff asserts that "Mallinckrodt has been able to raise prices unchecked" (*id.* ¶ 117).  Since 2001, Questcor and Mallinckrodt allegedly have raised the price of Acthar from $40 per vial to $43,658.40 per vial.  (*Id.* ¶¶ 92-96.)

**B.      The Services Provided by CuraScript SD, Accredo, and UBC**

Plaintiff alleges that CuraScript SD has been the exclusive distributor of Acthar since July 2007.  (*Id.* ¶¶ 49, 52, 59.)  CuraScript SD purchases Acthar from Mallinckrodt and distributes the drug to specialty pharmacies, including Accredo, which dispense the product to patients.  (*See id.* ¶ 72, Fig. 2.)  Plaintiff also vaguely avers that "Accredo dealt with [Plaintiff's] patient members."  (*Id.* ¶ 68.)

Plaintiff further alleges that in July 2007, Questcor began requesting that doctors submit new Acthar prescriptions through ASAP, which is administered by UBC.  (*Id.*)  Specifically, UBC "confirms the patient's insurance coverage or other source of payment, and then arranges for Acthar to be delivered" to the patient.  (*Id.* ¶ 52.)  The patient authorizes UBC "to provide certain services to [the patient], including reimbursement and coverage support, patient assistance and access programs, medication shipment tracking, and home injection training."

---

[6] No Express Scripts Entity was a defendant in the FTC's lawsuit.

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(*Id.* ¶ 54 (alteration in original).)

**C.    ESI Is Plaintiff's Pharmacy Benefit Manager**

Plaintiff alleges that beginning in 2012, Plaintiff "contracted with Express Scripts to provide pharmacy benefit services, among other things." (*Id.* ¶ 76.)  Plaintiff further alleges that it "agreed to" a PBM Agreement with ESI in 2012, and that it later "entered into an ESI PBM Agreement dated June 1, 2015 [sic]," which "was then updated and amended in May 2015, and then again in February 2017." (*Id.* ¶ 77.)

Plaintiff "agreed to pay ESI certain reimbursement rates for specialty pharmacy drugs." (*Id.* ¶ 82.)  For Acthar, ESI "charged [Plaintiff] at a discounted rate . . . off the AWP, as set forth in the ESI PBM Agreement." (*Id.*)  Although Plaintiff appears to assert that Accredo is the entity that dispensed the Acthar prescriptions to its members (*see id.* ¶ 68), Plaintiff further appears to allege that it received a larger discount off of AWP than it otherwise would have because Acthar was available "through CuraScript exclusively" (*id.* ¶ 81).

## ARGUMENT

**I.    PLAINTIFF'S CLAIMS ARE LEGALLY INSUFFICIENT AND
       SHOULD BE DISMISSED PURSUANT TO PA. R. CIV. P. 1028(a)(4)**

"Preliminary objections in the nature of demurrers are proper when the law is clear that a plaintiff is not entitled to recovery based on the facts alleged in the complaint." *Yocca v. Pitt. Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004).  "It is well-established that a plaintiff must provide sufficient factual averments in his or her complaint to sustain a cause of action." *Feingold v. Hendrzak*, 15 A.3d 937, 942 (Pa. Super. 2011).  "[W]hen considering a motion for a demurrer, the trial court must accept as true 'all well-pleaded material facts set forth in the complaint and all inferences fairly deducible from those facts.'" *Yocca*, 854 A.2d at 436 (citation omitted).  "[T]he Court need not accept as true conclusions of law, unwarranted

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

inferences from facts, argumentative allegations, or expressions of opinion." *Commonwealth v. Golden Gate Nat'l Senior Care LLC*, 158 A.3d 203, 213 (Pa. Comwlth. 2017).

**A.**     **The UTPCPL Claim (Count I) Should Be Dismissed**

The UTPCPL prohibits 21 specified unfair or deceptive trade practices. *See Golden Gate*, 158 A.3d at 214 ("Section 3 of the UTPCPL states that '[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined [in Section 2(4)(i)-(xxi) of the UTPCPL] . . . are hereby declared unlawful.'" (quoting 73 Pa. Stat. § 201-3) (alterations in original)). Accordingly, "[i]n order to state a claim under the UTPCPL, a plaintiff must allege one of the 'unfair or deceptive practices' set forth in [Section 2(4)]." *Romeo v. Pitt. Assocs.*, 787 A.2d 1027, 1033 (Pa. Super. 2001). In addition, a private "plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Yocca*, 854 A.2d at 438.

**1.**     **Plaintiff Does Not Allege a Prohibited Act**

The UTPCPL does not prohibit conduct that may violate federal antitrust law—i.e., anticompetitive conduct—unless it entails deception or fraud. *See* 73 Pa. Stat. § 201-2(4)(i)-(xi) (listing prohibited acts). Accordingly, UTPCPL claims that are based on allegations of purportedly anticompetitive agreements should be dismissed if the plaintiff does not also allege facts to show "deception and fraud as part of the alleged anticompetitive conspiracies." *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 760 (E.D. Pa. 2014) (dismissing UTPCPL claim for lack of "allegations of deceit"); *see also In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1165, 1171 (N.D. Cal. 2015) (dismissing UTPCPL claims based on allegations that "defendants deceived the public by selling Lidoderm patches at prices that were not the result of fair and open market competition, but rather the result of" an allegedly anticompetitive agreement); *In re Polyurethane Foam Antitrust Litig.*, 799 F. Supp. 2d 777, 786 (N.D. Ohio 2011) (dismissing

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

UTPCPL claim based on allegations of price fixing).

Here, Plaintiff does not allege any prohibited act delineated in the UTPCPL as a basis for that claim. Rather, the UTPCPL claim is based solely on purportedly anticompetitive conduct.[7] Specifically, Plaintiff "seeks relief against [Defendants] for their scheme to fix the price of Acthar at supra-competitive levels and maintain Mallinckrodt's monopoly power." (Compl. ¶ 172; *see also id.* ¶¶ 173-75.) Because Plaintiff does not allege any purportedly fraudulent or deceptive conduct identified as unlawful in the UTPCPL, or any other conduct prohibited by the UTPCPL, its claim should be dismissed.

### 2. Plaintiff Does Not Allege Reliance or Causation

A court should grant a demurrer to a UTPCPL claim if the complaint does "not allege facts supporting the conclusion that the plaintiff justifiably relied on" conduct prohibited by the UTPCPL, and also suffered harm resulting from that conduct. *Weiss v. Fritch, Inc.*, No. 2332 EDA 2017, 2018 WL 1940109, at *8 n.10 (Pa. Super. Apr. 25, 2018) (affirming dismissal of UTPCPL claim because plaintiff "did not allege facts supporting a conclusion that he justifiably relied on the advertising statements indicating that Fritch could detect with 100% accuracy when his tank would fail"); *see also Yocca*, 854 A.2d at 502 (affirming dismissal of UTPCPL claim because "any reliance on the SBL Brochure or any other representation preceding the SBL Agreement was *not* justifiable"). Accordingly, when a plaintiff fails to plead facts showing that its alleged harm resulted from reliance on an act prohibited by the UTPCPL, or alleges facts that show its harm resulted from another cause, its UTPCPL claim should be dismissed. *See McCabe*

---

[7] For the reasons outlined in the Express Scripts Entities' motion to dismiss Sherman Act claims in *City of Rockford v. Mallinckrodt*, No. 17-cv-50107 (N.D. Ill.), ECF No. 105—a case involving nearly identical factual allegations and the same lead plaintiff's counsel as this action— Plaintiff's factual averments do not suggest that any Express Scripts Entity engaged in anticompetitive conduct.

*v. Marywood Univ.*, 166 A.3d 1257, 1263 (Pa. Super. 2017) (affirming dismissal of UTPCPL claim because plaintiff "has not shown that she suffered harm as a result of her reliance [on] the alleged deception of Marywood University.  Rather, [her] harm[] come[s] from her decision to transfer schools." (first alteration in original)).

Here, Plaintiff does not allege that it ***relied on*** any prohibited conduct.  (*See* Compl. ¶ 176 (alleging only that Plaintiff "was injured as a direct result of the Defendants' conduct").) Indeed, Plaintiff's inability to identify a statement that it could have relied on (*see id.* ¶¶ 166-76) demonstrates that it is unsuccessfully attempting to bring an antitrust claim under the guise of the UTPCPL because—for whatever reason—it has decided against asserting a federal antitrust cause of action.  Accordingly, the UTPCPL claim should be dismissed because Plaintiff does not allege it relied on any prohibited conduct.

In addition, Plaintiff alleges facts demonstrating that its purported harm—paying high AWPs for Acthar—resulted from Mallinckrodt's alleged monopoly power, not from any action by an Express Scripts Entity.  Specifically, Plaintiff alleges that given the absence of "competitive constraints" within the purported ACTH market, "Mallinckrodt has been able to raise prices unchecked."  (*Id.* ¶¶ 117-18.)  Moreover, contrary to its deficient, conclusory assertion of a conspiracy between the Express Scripts Entities and Mallinckrodt to fix AWPs for Acthar, *see Brown v. Blaine*, 833 A.2d 1166, 1173 (Pa. Comwlth. 2003) ("bare allegations" of conspiracy are insufficient where plaintiff "does not allege facts indicating a conspiracy or an agreement to act unlawfully"), Plaintiff repeatedly pleads facts illustrating that ***Mallinckrodt unilaterally*** sets the AWP for Acthar.[8]  Likewise, any conduct on the part of an Express Scripts

---

[8] *See, e.g.*, Compl. ¶ 82 ("***Mallinckrodt set the average wholesale prices*** of Acthar used by Express Scripts for reimbursement." (emphasis added)); *id.* ¶ 84 ("***Mallinckrodt . . . raise[d] the AWPs*** for Acthar each year . . . ." (emphasis added)); *id.* ¶ 94 ("***Mallinckrodt increased the price***
*(cont'd)*

10

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Entity in the distribution of Acthar cannot have enhanced Mallinckrodt's ability to raise the AWPs for Acthar because the method of distribution cannot strengthen Mallinckrodt's alleged monopoly—i.e., the method of distribution does not make it more difficult for a pharmaceutical company to develop a competing product. *See E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 29 (2d Cir. 2006) (exclusive distribution agreements "provide[] no monopolistic benefit to [the monopolist] that it does not already enjoy and would not continue to enjoy" absent the exclusive agreement); *see also CAE Inc. v. Gulfstream Aerospace Corp.*, 203 F. Supp. 3d 447, 455 (D. Del. 2016) ("One reason why exclusive agreements between a supplier and a service-provider are generally permissible is that they tend to have no greater anticompetitive effect than a situation in which [the supplier] . . . elects to move the disputed services in-house.").

Thus, as alleged, the only conceivable causes of the high AWPs for Acthar are Mallinckrodt's alleged monopoly power and its unilateral decision to raise the price of the drug. Accordingly, Plaintiff does not allege facts to suggest that any action by an Express Scripts Entity has caused its alleged harm, and the UTPCPL claim against the Express Scripts Entities should be dismissed for this reason too.[9]

## B.    The Negligent Misrepresentation Claim (Count II) Should Be Dismissed

Plaintiff's negligent misrepresentation claim is legally deficient for multiple independent reasons. As an initial matter, this claim is barred by the economic loss doctrine because Plaintiff

---

*(cont'd from previous page)*
of Acthar . . . ." (emphasis added)); *id.* ¶ 118 ("***Mallinckrodt*** has encountered no competitive constraints on ***its ability to repeatedly increase Acthar's price*** . . . ." (emphasis added)).

[9] To the extent that—notwithstanding the allegations in the UTPCPL count—Plaintiff argues its UTPCPL claim is based on the purported misrepresentations alleged in the negligent misrepresentation count, the UTPCPL claim would still fail. As discussed in Part I.B.2, *infra*, the Complaint does not allege facts to support the conclusions that: (1) any Express Scripts Entity engaged in a prohibited act—i.e., made a deceptive or fraudulent statement—or (2) Plaintiff relied on any such prohibited act to its detriment.

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

alleges only economic injuries.  In addition, the claim fails because Plaintiff does not allege that any Express Scripts Entity owed it a duty of care.  Moreover, Plaintiff fails to allege facts to suggest that any Express Scripts Entity made a false statement, or that Plaintiff relied on any such misrepresentation to its detriment.

### 1.     The Economic Loss Doctrine Bars the Negligent Misrepresentation Claim

"[T]he economic loss doctrine generally precludes recovery in negligence actions for injuries which are solely economic." *Excavation Techs., Inc. v. Columbia Gas Co.*, 985 A.2d 840, 841 (Pa. 2009).  And with a limited exception not relevant here, "the economic loss doctrine bars claims for negligent misrepresentation." *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 491 (E.D. Pa. 2016) (citation omitted); *see also Excavation Techs.*, 985 A.2d at 841 (affirming dismissal of negligent misrepresentation claim based on economic loss doctrine); *Lennon ex rel. Lennon v. Wyeth-Ayerst Labs., Inc.*, No. 1793 EDA 2000, 2001 WL 755944, at *4 (Pa. Super. June 14, 2001) (same).[10]

Here, Plaintiff's negligent misrepresentation claim is barred by the economic loss doctrine because Plaintiff alleges only an economic loss—i.e., that it allegedly "overpaid for the Acthar because of the false representations." (Compl. ¶ 185.)  Plaintiff does not allege any physical or property damage.  Accordingly, the negligent misrepresentation claim should be dismissed for this reason alone.

### 2.     Plaintiff Does Not Allege That Any Express Scripts Entity Owed It A Duty of Care, or Plead Facts Showing a Misrepresentation or Justifiable Reliance

A negligent misrepresentation claim requires factual allegations showing: "(1) a

---

[10] That inapplicable exception involves misrepresentations made by "those in the business of supplying information to others for pecuniary gain." *Excavation Techs.*, 985 A.2d at 843 (citation omitted).

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999). "Moreover, like any action in negligence, there must be an existence of a duty owed by one party to another." *Id.*

Even if the economic loss doctrine did not bar Plaintiff's negligent misrepresentation claim, Plaintiff still fails to state a negligent misrepresentation claim for multiple reasons. ***First***, Plaintiff does not allege—even in a conclusory fashion—that any Express Scripts Entity owed it a duty of care relating to Acthar. To the contrary, Plaintiff alleges only arm's-length business relationships. *See Abdul-Rahman v. Chase Home Fin. Co.*, No. 13-cv-5320, 2014 WL 3408564, at *5 (E.D. Pa. July 11, 2014) (dismissing negligent misrepresentation claim for lack of duty because plaintiff "has presented no factual allegations that demonstrate anything but arm's length transactions").

***Second***, Plaintiff does not allege facts to show that any purported statement was false— i.e., what was said, by whom, to whom, or when.[11] Plaintiff alleges that "Defendants made material misrepresentations that those prices [for Acthar] represented a calculation of real and fact-based prices for their drugs, and that they represented the actual value of the product in the marketplace." (Compl. ¶ 179.) But the Complaint does not identify any statement made to Plaintiff by any Defendant regarding the price of Acthar being based on a "calculation of real and fact-based prices." To the contrary, the Complaint alleges that the PBM Agreements expressly set the reimbursement rate for Acthar at a specified percentage discount off AWP,

---

[11] For this reason, the negligent misrepresentation claim also fails for lack of factual allegations suggesting that "the misrepresenter ought to have known [of a statement's] falsity" or "inten[ded] to induce another to act on" a purported misrepresentation. *Bortz*, 729 A.2d at 561.

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

which is exactly what Plaintiff alleges it paid. (*See id.* ¶ 82 ("For Acthar, Mallinckrodt charged [Plaintiff] at a discounted rate . . . off the AWP, as set forth in the ESI PBM Agreement.").) There is simply no allegation that any Express Scripts Entity failed to accurately communicate the price of Acthar or the agreed-upon reimbursement rate.  And Plaintiff's allegation that ***Mallinckrodt*** was offering Acthar at inflated prices does not render "false" or not "fact-based" the agreed-upon reimbursement rate set forth in the PBM Agreements. *See Thompson's Gas & Elec. Serv., Inc. v. BP Am. Inc.*, 691 F. Supp. 2d 860, 870 (N.D. Ill. 2010) ("The fact that Defendants were offering propane for sale at inflated prices does not mean those prices were somehow 'false.'").

***Third***, Plaintiff fails to allege facts suggesting that it justifiably relied to its detriment on any misrepresentation.  Rather, Plaintiff alleges that it relied on the AWP for Acthar "as the basis for the amount to pay and/or reimburse for Acthar." (Compl. ¶ 180.)  For instance, Plaintiff does not plead that it agreed to a specific reimbursement rate for Acthar or decided to provide prescription drug coverage for Acthar as a result of any purported misrepresentation.

**C.    The Aiding and Abetting (Count III) and Unjust
Enrichment (Count IV) Claims Should Be Dismissed**

"[T]here can be no claim for aiding and abetting unless plaintiff has also alleged a viable claim for the underlying tort." *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, No. 16-cv-665, 2017 WL 4235773, at *11 (E.D. Pa. Sept. 25, 2017) (alteration in original) (citation omitted).  Likewise, "[w]here the unjust enrichment claim rests on the same improper conduct as the underlying tort claim, the unjust enrichment claim will rise or fall with the underlying claim." *Whitaker*, 198 F. Supp. 3d at 493.

Here, Plaintiff's aiding and abetting and unjust enrichment claims should be dismissed because they rely on the same alleged misconduct as its deficient UTPCPL and negligent

14

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

misrepresentation claims. Specifically, the aiding and abetting and unjust enrichment claims are based on the purported scheme "to defraud and deceive the Plaintiff by causing it to pay more for Acthar than it otherwise would have paid." (Compl. ¶ 187 (aiding and abetting claim); *see id.* ¶ 200 (unjust enrichment claim rests on the same purported "conduct [that allegedly] violated state consumer fraud and antitrust laws, as well as the common law of Pennsylvania").).)[12] Thus, the aiding and abetting and unjust enrichment claims should be dismissed because Plaintiff has not alleged a viable claim under the UTPCPL or for negligent misrepresentation.

**D.    The Breach of Contract Claim (Count VI) Should Be Dismissed**

"[T]hree elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." *McCabe*, 166 A.3d at 1262. An allegation that one party has a duty arising from a contract is a legal conclusion that should be disregarded in the absence of the full text of the contract or all relevant provisions that purportedly give rise to the allegedly breached duty. *See Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 884 (Pa. Super. 2000) (affirming dismissal of breach of contract claim that was "fatally flawed" because plaintiffs' complaint "merely assert[ed] that the duty exists without demonstrating how the duty arises" and did not "cite[] to pertinent contractual language that would establish a duty on the insurers promptly to pay 'undisputed amounts' of UM or UIM benefits" or "attach the pertinent parts of the insurance policies to their complaint"); *see also* Pa. R. Civ. P. 1019(i) ("When any claim or defense is

---

[12] It is unclear what state antitrust laws Plaintiff references in Paragraph 200 of its Complaint. In any event, alleged antitrust violations cannot form the basis of an unjust enrichment claim under Pennsylvania law. *See Stutzle v. Rhonepoulenc S.A.*, No. 27608 Oct. Term 2002, 2003 WL 22250424, at *2 (Pa. Ct. Com. Pl. Phila. Cty. Sept. 26, 2003) (dismissing unjust enrichment claim where purportedly wrongful conduct "amounts to an antitrust violation" because "the Pennsylvania legislature and the courts have not created a cause of action for damages sustained as a result of the antitrust violations").

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

based upon a writing, the pleader shall attach a copy of the writing, or the material part thereof . . . .").

Here, Plaintiff fails to allege the essential terms of any contract that would establish the purported contractual duties that ESI allegedly breached, or facts to support the conclusory assertion that ESI breached a purported duty.

*First*, Plaintiff fails to adequately plead a breach of contract claim based on ESI's alleged "failure to provide 'cost containment' services either through nonfeasance or malfeasance." (Compl. ¶ 213.)  Plaintiff merely states the legal conclusion that through its purported "failure" regarding this phrase that Plaintiff includes in quotations but does not cite or define, ESI "breached," "repudiated its obligations under" and "is in default of" the PBM Agreements.  (*Id.*) But Plaintiff does not attach either PBM Agreement or the relevant provisions of either PBM Agreement, nor does Plaintiff quote any contractual provision or other source of any duty—or provide any context for its allegation.  Further, not only does Plaintiff fail to allege any contractual provision sufficient to create a binding obligation, Plaintiff also does not allege facts to show that ESI breached any such obligation.  Indeed, Plaintiff actually alleges that the PBM Agreements expressly set the reimbursement rate for Acthar at a specified percentage discount off AWP, which is exactly what Plaintiff alleges it paid.  (*See id.* ¶ 82.)  Moreover, Plaintiff's assertion that ESI "agreed with Mallinckrodt to inflate the AWPs for Acthar" (*id.* ¶ 213) is not only unsupported by any factual allegation, it is contrary to the numerous instances in which Plaintiff alleges that Mallinckrodt unilaterally sets the AWP for Acthar (*see supra* p. 10 n.8).[13]

---

[13] Plaintiff's allegations concerning Daraprim (Compl. ¶¶ 88-91) likewise fail to demonstrate any agreement between Mallinckrodt and ESI.  Plaintiff speculates that ESI could have halted Acthar price increases because it supposedly was successful in doing so for a different specialty drug, Daraprim.  (*See id.* ¶¶ 88-90); *see also Golden Gate*, 158 A.3d at 213 (the court "need not accept as true . . . unwarranted inferences from facts").  However, as Plaintiff alleges, ESI was only able

*(cont'd)*

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**Second**, Plaintiff fails to state a breach of contract claim based on its allegation that "ESI also diverted monies from Plaintiff that should have been paid as rebates." (Compl. ¶ 213.) Plaintiff apparently bases this conclusory allegation on the definition of "rebates" in the PBM Agreement and Plaintiff's additional conclusory assertion that "ESI did not pay to [Plaintiff] all the 'rebates . . . directly attributable to the utilization of' the Acthar paid for by Plaintiff." (*Id.* ¶ 87 (quoting definition of rebates from PBM Agreement) (ellipsis in Complaint).) But Plaintiff does not meet its burden to quote the full provision of the PBM Agreement that purportedly required ESI to pay Plaintiff all rebates directly attributable to the use of Acthar; rather, it merely quotes part of the definition of rebates. In any event, Plaintiff does not allege facts to show that it received less than it was entitled to—e.g., by alleging how much it received in amounts tied to rebates and how much it should have received.

**Third**, to the extent Plaintiff brings its breach of contract claim against any Express Scripts Entity other than ESI, that claim should be dismissed because ESI is the only Express Scripts Entity that allegedly has a contractual relationship with Plaintiff. *See Fleetway Leasing Co. v. Wright*, 697 A.2d 1000, 1003 (Pa. Super. 1997) ("In Pennsylvania, a person who is not a party to a contract cannot be held liable for a breach by one of the parties to a contract.").

### E.    The Promissory Estoppel Claim (Count VII) Should Be Dismissed

A claim for promissory estoppel requires the following elements: "(1) the promisor made

_____

*(cont'd from previous page)*
to slow Daraprim's price increases by working with another manufacturer to develop a low-cost alternative to Daraprim. (Compl. ¶¶ 89-91.) Here, by contrast, Plaintiff alleges that creating an alternative to Acthar is not feasible because of the difficulty of developing ACTH drugs and receiving FDA approval. (*See id.* ¶¶ 121-24); *see also 412 N. Front St. Assocs. v. Spector Gadon & Rosen, P.C.*, 151 A.3d 646, 657 (Pa. Super. 2016) (affirming dismissal of breach of contract claim because allegations of causal harm were "conclusory," given that "Appellants failed to assert therein what practicable, good-faith attempts could have plausibly resulted in a superior outcome to the one obtained").

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

a promise that would reasonably be expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise." *Peluso v. Kistner*, 970 A.2d 530, 533 (Pa. Comwlth. 2009).

Plaintiff's promissory estoppel claim is based on ESI's purported refusal to "fulfill its representations and promises concerning the terms and obligations under the ESI PBM Agreement, including the promise of cost containment with respect to Acthar." (Compl. ¶ 219.) Because the promissory estoppel claim is based on the same alleged contractual obligations and purported breach as the breach of contract claim, it should be dismissed for the same reasons.

**F.     The Breach of the Implied Covenant Claim (Count VIII) Should Be Dismissed**

Plaintiff bases its breach of the implied covenant of good faith and fair dealing claim on the same faulty allegations as its breach of contract claim. (*See* Compl. ¶ 225.)

This claim should be dismissed for multiple reasons. ***First***, Pennsylvania "does not recognize an independent cause of action for breach of the implied duty of good faith and fair dealing." *Sharp v. Travelers Pers. Sec. Ins. Co.*, No. 12 CV 6483, 2014 WL 8863084, at *5 n.5 (Pa. Ct. Com. Pl. Lackawanna Cty. Mar. 7, 2014) (collecting cases). ***Second***, and in any event, this claim fails for the same reason as Plaintiff's breach of contract claim.

**II.     PLAINTIFF'S NEGLIGENT
MISREPRESENTATION AND RELATED
CLAIMS ARE PLEADED WITH INSUFFICIENT SPECIFICITY
AND SHOULD BE DISMISSED PURSUANT TO PA. R. CIV. P. 1028(a)(3)**

Pennsylvania Rule of Civil Procedure 1019(a) requires that "[t]he material facts on which a cause of action or defense is based shall be stated in a concise and summary form." Pa. R. Civ. P. 1019(a). Accordingly, complaints "must be sufficiently specific so that the defending party will know how to prepare his defense." *Golden Gate*, 158 A.3d at 223 (citation omitted). When

18

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

a complaint is not sufficiently specific, courts should sustain a preliminary objection under Pennsylvania Rule of Civil Procedure 1028(a)(3). *See id.*

As the basis for its negligent misrepresentation, aiding and abetting, and unjust enrichment claims, Plaintiff alleges that "Defendants made material misrepresentations that th[e] prices [for Acthar] represented a calculation of real and fact-based prices for their drugs, and that they represented the actual value of the product in the marketplace." (Compl. ¶ 179 (negligent misrepresentation count); *see also id.* ¶ 188(f) (alleging in aiding and abetting count that defendants "agree[d] among themselves and with their co-conspirators that they would . . . us[e] a fraudulent scheme to market and sell Acthar at inflated prices"); *id.* ¶ 195 (alleging in unjust enrichment count that Plaintiff "reli[ed] on Express Scripts' conduct and representations described herein").)

Plaintiff's allegations are insufficiently specific to allow Defendants to prepare their defenses. According to the Complaint, at some unspecified point, one or more unidentified employees of one or more of the eight different Defendants in this action represented to one or more unidentified persons that Acthar prices "represented a calculation of real and fact-based prices for their drugs." Such vague allegations do not inform Defendants of the specific basis of Plaintiff's claims that are based on this purported misrepresentation. *See Lynch v. Smith*, No. 3511 EDA 2016, 2017 WL 4351060, at *3 (Pa. Super. Oct. 2, 2017) (dismissing complaint for insufficient specificity because plaintiff "fail[ed] to plead when (or in some instances, where) these alleged assaults occurred"); *Golden Gate*, 158 A.3d at 224 ("The general allegations of wrongdoing pertaining to unidentified Marketing Statements, resident care plans, billing statements and MDSs are not sufficiently specific to meet the pleading requirement, especially given that the documents were not attached to the Amended Complaint, and neither the patients

19

nor the documents were sufficiently described to permit Golden Gate to prepare a defense."). Thus, Plaintiff's negligent misrepresentation, aiding and abetting, and unjust enrichment claims should be dismissed. In addition, to the extent that Plaintiff contends its UTPCPL claim is based on purported misrepresentations, that claim should also be dismissed.

### III.   PLAINTIFF'S CLAIMS FAIL TO CONFORM TO LAW OR RULE OF COURT AND SHOULD BE DISMISSED PURSUANT TO PA. R. CIV. P. 1028(a)(2)

Pennsylvania Rule of Civil Procedure 1028(a)(2) provides that a party may object to a pleading for failure to "conform to law or rule of court." Pa. R. Civ. P. 1028(a)(2). "When any claim or defense is based upon a writing, the pleader shall attach a copy of the writing, or the material part thereof . . . ." Pa. R. Civ. P. 1019(i). Accordingly, claims that are based on written contracts should be dismissed for failure to conform to law or rule of court if the plaintiff does not attach the contract to the complaint. *See Brimmeier v. Pa. Turnpike Comm'n*, 147 A.3d 954, 968 (Pa. Comwlth. 2016) (striking breach of contract claim under Rules 1019(i) and 1028(a)(2) because plaintiff "failed to attach a copy of [a written agreement] to the Complaint"), *aff'd* 161 A.3d 253 (Pa. 2017); *Unifund v. Sheridan*, No. 2012 CV 4944, 2013 WL 10253095, at *7 (Pa. Ct. Com. Pl. Lackawanna Cty. June 24, 2013) (invoking Rules 1019(i) and 1028(a)(2) to dismiss breach of contract claim and "[a]ll of the other count or counts herein . . . which reference the written cardholder's agreement or credit card application neither of which was ever attached to any complaint or amended complaint").

Here, Plaintiff's negligent misrepresentation, unjust enrichment, breach of contract, promissory estoppel, and implied covenant claims all rely on at least one of the PBM Agreements between ESI and Plaintiff. (*See* Compl. ¶ 184 (alleging in negligent misrepresentation count that "all Defendants communicated these false prices directly to [Plaintiff] for the Acthar sold" purportedly through the PBM Agreements); *id.* ¶ 196 (alleging in

20

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

unjust enrichment count that Plaintiff "at all times had a reasonable expectation that Express Scripts' conduct would result in affordable services, including 'cost containment'"); *id.* ¶ 211 (alleging in breach of contract count that "[t]his count alleges breach of the ESI PBM Agreement"); *id.* ¶ 218 (alleging in promissory estoppel count that Plaintiff "seeks enforcement of ESI's promise to continue with ESI's obligations under the ESI PBM Agreement"); *id.* ¶ 226 (alleging in implied covenant count that ESI breached the covenant implied in the ESI PBM Agreement).)  Thus, because Plaintiff did not attach these agreements to the Complaint, these claims should be dismissed under Pennsylvania Rules of Civil Procedure 1019(i) and 1028(a)(2).[14]

## RELIEF SOUGHT

For the foregoing reasons, the Express Scripts Entities respectfully request that the Court sustain their Preliminary Objections and dismiss all claims against them in the Complaint with prejudice.

---

[14] If Plaintiff files the aforementioned contracts with an amended complaint, it should be cognizant of any confidentiality provisions in those agreements, and file them under seal if necessary.

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Dated:  August 6, 2018                           Respectfully submitted,

By:  /s/ Joanne C. Lewers
Joanne C. Lewers (ID No. 81195)
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Facsimile (215) 988-2757

Matthew M. Martino (admitted *pro hac vice*)
Michael H. Menitove (admitted *pro hac vice*)
Evan R. Kreiner (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
Telephone: (212) 735-3000
matthew.martino@skadden.com
michael.menitove@skadden.com
evan.kreiner@skadden.com

*Attorneys for Defendants Express Scripts Holding*
*Company, Express Scripts, Inc., CuraScript, Inc.,*
*CuraScript SD, Accredo Health Group, Inc., and United*
*BioSource Corporation, now known as United*
*BioSource LLC*

22

Case# 2018-14059-63 Docketed at Montgomery County Prothonotary on 08/06/2018 2:57 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## CERTIFICATE OF SERVICE

Joanne C. Lewers hereby certifies that a true and correct copy of the Memorandum of Law in Support of Defendants Express Scripts Holding Company's, Express Scripts, Inc.'s, Curascript, Inc.'s, Curascript SD's, Accredo Health Group, Inc.'s, and United BioSource Corporation's Preliminary Objections was forwarded to the following via notification from the Montgomery County Court of Common Pleas Electronic Filing system on August 6, 2018:

G. Patrick Watson, Esquire
Lindsay Sklar Johnson, Esquire
Bryan Cave Leighton Paisner LLP
One Atlantic Center, 14th Floor
1201 W. Peachtree Street, NW
Atlanta, GA 30309

Philip D. Bartz, Esquire
Bryan Cave Leighton Paisner LLP
1155 F Street, N.W.
Washington, DC 20004

Matthew M. Martino, Esquire
Michael H. Menitove, Esquire
Evan R. Kreiner, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036

Herbert R. Giorgio, Jr., Esquire
Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102

Donald E. Haviland, Jr., Esquire
William H. Platt, II, Esquire
Christina M. Philipp, Esquire
Haviland Hughes
201 South Maple Way, Suite 110
Ambler, PA 19002

Daniel T. Sherry, Esquire
Wendy J. Bracaglia, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin
620 Freedom Business Center
Suite 300
King of Prussia, PA 19406

**Drinker Biddle & Reath LLP**

/s/ Joanne C. Lewers
Joanne C. Lewers

*Attorney for Defendants Express Scripts Holding Company, Express Scripts, Inc., CuraScript, Inc., CuraScript SD, Accredo Health Group, Inc., and United BioSource Corporation, now known as United BioSource LLC*