IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL
542

vs.

MALLINCKRODT ARD INC FKA QUESTCOR
PHARMACEUTICALS INC

NO.  2018-14059

## COVER SHEET OF MOVING PARTY

Date of Filing \_\_September 17  2018\_\_

Moving Party\_\_\_\_ACCREDO HEALTH GROUP INC; CURASCRIPT INC; CURASCRIPT SD; EXPRESS SCRIPTS
HOLDING COMPANY; EXPRESS SCRIPTS INC; UNITED BIOSOURCE CORPORATION NKA

Counsel for Moving Party \_\_JOANNE CELIA LEWERS, Esq., ID: 81195_____

Document Filed (Specify) \_\_PRELIMINARY OBJECTIONS TO PLAINTIFF'S AMENDED COMPLAINT_____

Matter is (Check One)         ☐ (Appealable)      ☒ (Interlocutory)

Discovery Needed     ☐ (Yes)    ☒ (No)

-------------------------------------------------------------------------------------------------

## CERTIFICATIONS - Check ONLY if appropriate:

Counsel certify that they have conferred in a good faith effort to resolve the subject <u>discovery</u> dispute.
**(Required by Local Rule 208.2(e) on motions relating to discovery.)**

☐ (Yes)   ☐ (No)   ☒ (Not a Discovery Motion)

☐ Counsel for moving party certifies that the subject **civil motion** is **uncontested** by all parties involved in the case.
(If checked, skip Rule to Show Cause section below.)

By: _____
Counsel  for Moving Party

-------------------------------------------------------------------------------------------------

**RULE TO SHOW CAUSE** - Check **ONE** of the Choice Listed Below:

_____ Respondent is directed to show cause why the moving party is not entitled to the relief requested by filing
an **answer** in the form of a **written response** at the **Office of the Prothonotary** on or before the
_____ day of _____, 20 _____

_____ Respondent is directed to show cause, in the form of a **written response**, why the attached Family
Court Discovery Motion is not entitled to the relief requested.  Rule Returnable and Argument the_____ day of
_____, 20\_\_\_\_at **1:00 p.m.** at **321 Swede Street, Norristown, Pa.**

_____ Respondent is directed to file a **written response** in conformity with the Pennsylvania Rules of Civil Procedure

_____Rule Returnable at time of trial.

By: _____
Court Administrator

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**IN THE COURT OF COMMON PLEAS
FOR MONTGOMERY COUNTY, PENNSYLVANIA**

|  |  |  |
|---|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 542, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2018-14059 |
| MALLINCKRODT ARD, INC., *et al.*, | ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS EXPRESS SCRIPTS HOLDING COMPANY'S,
EXPRESS SCRIPTS, INC.'S, CURASCRIPT, INC.'S, CURASCRIPT
SD'S, ACCREDO HEALTH GROUP, INC.'S, AND UNITED BIOSOURCE
CORPORATION'S PRELIMINARY OBJECTIONS TO THE AMENDED COMPLAINT**

Case# 2018-14056-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Pursuant to Pennsylvania Rule of Civil Procedure 1028 and Montgomery County Local Civil Rule 1028(c), Defendants Express Scripts Holding Company ("ESHC"), Express Scripts, Inc. ("ESI"), CuraScript, Inc., CuraScript SD,[1] Accredo Health Group, Inc. ("Accredo"), and United BioSource Corporation ("UBC")[2] (each, an "Express Scripts Entity" and collectively, the "Express Scripts Entities"), by and through their undersigned counsel, submit the following Preliminary Objections to the Amended Complaint filed by the International Union of Operating Engineers Local 542 ("Plaintiff").  In support of their Preliminary Objections, together with the accompanying Memorandum of Law that is incorporated by reference as if fully set forth herein, the Express Scripts Entities aver as follows:

## I.   RELEVANT FACTUAL ALLEGATIONS[3]

### A.   Mallinckrodt's[4] Alleged Monopoly in the Purported Market for ACTH Drugs

1.     Mallinckrodt manufactures, markets, distributes, and sells Acthar, an injection containing adrenocorticotropic hormone ("ACTH").  Am. Compl. ¶ 2.  Mallinckrodt acquired the rights to Acthar in 2014 when it bought Questcor Pharmaceuticals, Inc. ("Questcor"), which obtained those rights in 2001.  *Id.* ¶¶ 3, 24, 46.  Among other conditions, *id.* ¶ 42, Acthar is prescribed to treat infantile spasms, a rare seizure disorder, *id.* ¶ 47.

2.     Acthar is the only therapeutic ACTH product sold in the United States.  *Id.* ¶ 2.  According to the Amended Complaint, "Acthar has a 100% share of the market for ACTH drugs

---

[1] The correct corporate name is Priority Healthcare Distribution, Inc.

[2] The Amended Complaint names UBC as a defendant, but that entity ceased to exist in approximately 2013 when UBC became United BioSource LLC.

[3] The Express Scripts Entities accept the factual allegations in the Amended Complaint as true only for purposes of their Preliminary Objections.

[4] Mallinckrodt ARD, Inc. and Mallinckrodt plc are referred to collectively as "Mallinckrodt."

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

in the United States.  No other ACTH drug is FDA-approved for therapeutic use." *Id.* ¶ 122. The alleged "ACTH market is characterized by high barriers to entry." *Id.* ¶ 123.

3.      In 2013, Questcor allegedly maintained its monopoly in the purported market for ACTH drugs by acquiring the rights to develop, market, and sell Synacthen, *id.* ¶ 112, "a synthetically derived ACTH medication, which, like Acthar, could be injected intra-muscularly," *id.* ¶ 109.  Although it has not been approved by the FDA, Synacthen allegedly is used as an alternative to Acthar in other countries.  *Id.*  Plaintiff alleges that neither Questcor nor Mallinckrodt ever sought "FDA approval to bring [Synacthen] to market."  *Id.* ¶ 142.

4.      In January 2017, the Federal Trade Commission ("FTC") sued Mallinckrodt for unlawful monopolistic conduct based on Questcor's acquisition of the Synacthen rights and entered a settlement pursuant to which Mallinckrodt paid $100 million. *Id.* ¶ 152.[5]

5.      As a result of Mallinckrodt's alleged monopoly in the purported market for ACTH drugs and the absence of "competitive constraints," *id.* ¶ 118, Plaintiff asserts that "Mallinckrodt has been able to raise prices unchecked," *id.* ¶ 117.  Since 2001, Questcor and Mallinckrodt allegedly have raised the price of Acthar from $40 per vial to $43,658.40 per vial. *Id.* ¶¶ 92-96.

**B.      The Alleged Acthar Distribution Services**
**Provided By CuraScript SD, Accredo, and UBC**

6.      Plaintiff alleges that CuraScript SD has been the exclusive distributor of Acthar since Questcor publicly announced its exclusive agreement with CuraScript SD in July 2007. *Id.* ¶ 50.  CuraScript SD receives Acthar from Mallinckrodt and distributes the drug to specialty pharmacies, including Accredo, which dispense the product to patients. *See id.* ¶ 74, Fig. 2.

---

[5] No Express Scripts Entity was a defendant in the FTC's lawsuit.

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

7.      Plaintiff further alleges that in July 2007, Questcor began requesting that doctors submit new Acthar prescriptions through the Acthar Support & Access Program ("ASAP"), which is administered by UBC.  *Id* ¶ 70.  Specifically, UBC "confirms the patient's insurance coverage or other source of payment, and then arranges for Acthar to be delivered" to the patient. *Id.* ¶ 53.  The patient signs a form that authorizes "Mallinckrodt reimbursement support personnel and United BioSource Corporation" to perform certain functions, *id.* ¶ 54 (quoting Am. Compl., Ex. A), including "reimbursement and coverage support, patient assistance and access programs, medication shipment tracking, and home injection training," *id.* ¶ 55.

## C.      ESI Is Plaintiff's Pharmacy Benefit Manager

8.      Plaintiff alleges that beginning in 2003, Plaintiff "contracted with Express Scripts to provide pharmacy benefit services, among other things." *Id.* ¶ 78.  Plaintiff further alleges that it "agreed to" a PBM Agreement with ESI in 2012, and that it later "entered into an ESI PBM Agreement dated June 1, 2015," which "was then updated and amended in May 2015, and then again in February 2017." *Id.* ¶ 79.

9.      Plaintiff "agreed to pay ESI certain reimbursement rates for specialty pharmacy drugs." *Id.* ¶ 84.  For Acthar, ESI "charged [Plaintiff] at a discounted rate . . . off the AWP, as set forth in the ESI PBM Agreement." *Id.*  Plaintiff further alleges that Accredo is the "specialty pharmacy" that "dealt with [Plaintiff's] patient members," *id.* ¶ 70, and that it received a larger discount off of AWP than it otherwise would have because Acthar was available "through CuraScript exclusively" rather than "at [what the PBM Agreement purportedly labels] a Participating Pharmacy," *id.* ¶ 83.

10.      In addition to these allegations about Plaintiff's relationship with ESI and Plaintiff's payments for Acthar, Plaintiff alleges that certain ESI executives have made public statements concerning Acthar.

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

11.     Specifically, Plaintiff alleges that in 2007, ESI's "Chief Medical Officer Steve Miller stated that '[t]he increase [in the price of Acthar] was a manufacturing decision. I can't comment on it.'" *Id.* ¶ 97 (citation omitted). Plaintiff further alleges that in 2017, ESI's "Senior Vice President of Supply Chain and Specialty Pharma, Everett Neville, stated . . . '***that [Acthar] is vastly overpriced for the value***.'" *Id.* ¶ 100 (emphasis in original) (citation omitted).

## II.   **PRELIMINARY OBJECTIONS - DEMURRER**

### PLAINTIFF'S CLAIMS AGAINST THE EXPRESS SCRIPTS ENTITIES ARE LEGALLY INSUFFICIENT AND SHOULD BE DISMISSED PURSUANT TO PA. R. CIV. P. 1028(a)(4)

12.     Rule 1028(a)(4) of the Pennsylvania Rules of Civil Procedure provides that a party may preliminarily object to a pleading for "legal insufficiency . . . (demurrer)." Pa. R. Civ. P. 1028(a)(4).

13.     "Preliminary objections in the nature of demurrers are proper when the law is clear that a plaintiff is not entitled to recovery based on the facts alleged in the complaint." *Yocca v. Pitt. Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004). "It is well-established that a plaintiff must provide sufficient factual averments in his or her complaint to sustain a cause of action." *Feingold v. Hendrzak*, 15 A.3d 937, 942 (Pa. Super. 2011). "[W]hen considering a motion for a demurrer, the trial court must accept as true 'all well-pleaded material facts set forth in the complaint and all inferences fairly deducible from those facts.'" *Yocca*, 854 A.2d at 436 (citation omitted). "[T]he Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion." *Commonwealth v. Golden Gate Nat'l Senior Care LLC*, 158 A.3d 203, 213 (Pa. Comwlth. 2017).

## A.     The UTPCPL Claim (Count I) Fails as a Matter of Law

14.     The UTPCPL prohibits twenty-one (21) specified unfair or deceptive trade practices. *See id.* at 214 ("Section 3 of the UTPCPL states that '[u]nfair methods of competition

5

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined [in Section 2(4)(i)-(xxi) of the UTPCPL] . . . are hereby declared unlawful.'" (quoting 73 Pa. Stat. § 201-3) (alterations in original)).

15.     Accordingly, "[i]n order to state a claim under the UTPCPL, a plaintiff must allege one of the 'unfair or deceptive practices' set forth in [Section 2(4)]," *Romeo v. Pitt. Assocs.*, 787 A.2d 1027, 1033 (Pa. Super. 2001), and a private "plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Yocca*, 854 A.2d at 438; *see also Weiss v. Fritch*, No. 2332 EDA 2017, 2018 WL 1940109, at *8 n.10 (Pa. Super. Apr. 25, 2018) (affirming dismissal of UTPCPL claim because plaintiff "did not allege facts supporting a conclusion that he justifiably relied on the advertising statements indicating that Fritch could detect with 100% accuracy when his tank would fail").

### i.     Plaintiff Does Not Plead Facts Suggesting That Any Express Scripts Entity Engaged in an Act Prohibited By the UTPCPL

16.     In the Amended Complaint, Plaintiff now bases its deficient UTPCPL claim against the Express Scripts Entities on two categories of purportedly deceptive acts.[6]  *See Doherty v. Allstate Indemnity Co.*, No. 15-cv-5165, 2016 WL 5390638, at *5 (E.D. Pa. Sept. 27, 2016) ("A deceptive act is one that is 'likely to deceive a consumer acting reasonably under similar circumstances.'" (quoting *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 470

---

[6] In the original Complaint, Plaintiff based this claim solely on purportedly anticompetitive conduct. Both Defendants filed preliminary objections to the UTPCPL claim, explaining that anticompetitive conduct does not violate the UTPCPL absent factual allegations of deceptive conduct and that Plaintiff had not, in any event, alleged facts to suggest anticompetitive conduct. *See* Express Scripts Entities' Preliminary Objections to Plaintiff's Complaint, Doc. 63, at ¶¶ 16-17; Preliminary Objections of Defendants Mallinckrodt ARD Inc. and Mallinckrodt PLC, Doc. 64, at ¶ 17.  Now that Defendants have highlighted that Plaintiff's actual theory underlying its UTPCPL claim is deficient as a matter of law, Plaintiff has repackaged this claim so that it includes deficient allegations of deceptive conduct in furtherance of the same purportedly anticompetitive conduct.

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(E.D. Pa. 2009))).

17.     ***First***, Plaintiff asserts that Defendants failed to disclose that CuraScript would be the exclusive distributor of Acthar beginning in 2007 and that UBC operates ASAP, and that these failures to disclose were deceptive as to the source of Acthar or UBC's operation of ASAP. *See* Am. Compl. ¶ 169(a), (b), (c), (f).

18.     Plaintiff does not allege any act or statement by any Defendant concealing either of these relationships involving CuraScript or UBC.  Nor does Plaintiff allege that any Defendant made any statement that could have caused Plaintiff to expect that a distributor other than CuraScript would distribute Acthar or any entity other than UBC would operate ASAP.

19.     The absence of such factual allegations on its own defeats Plaintiff's UTPCPL claim based on CuraScript's exclusive distribution of Acthar and UBC's operation of ASAP. *See Goleman v. York Int'l Corp.*, No. 11-cv-1328, 2011 WL 3330423, at *8 (E.D. Pa. Aug. 3, 2011) ("A plaintiff must plead facts alleging a specific deceptive act rather than a general failure to disclose information.").

20.     Contrary to Plaintiff's assertion that Defendants concealed these relationships involving CuraScript and UBC, Plaintiff's own allegations and the exhibits it attached to the Amended Complaint highlight that the Defendants ***publicly disclosed*** Questcor's exclusive distribution agreement with CuraScript and the agreement with UBC concerning ASAP.  *See, e.g.*, Am. Compl. ¶ 54 (alleging that patients sign a form that authorizes "'Mallinckrodt reimbursement support personnel ***and United BioSource Corporation ("UBC")***' . . . to provide Acthar and receive payment, among other things" (quoting Am. Compl., Ex. A) (emphasis added)); *id.* Ex. B, at 1 ("Urgent Product Alert" states that "*[e]ffective August 1, 2007, Acthar Gel . . . will be available exclusively through Specialty Pharmacy Distribution*" and that

7

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

"[b]eginning July 16, 2007, hospitals should place all stock orders with CuraScript Specialty Distribution" (emphasis in original)); *id.* ¶ 50 ("[O]n July 2, 2007, Mallinckrodt restricted its distribution from three wholesalers, termed Wholesalers 'A', 'B', and 'C' in its 2007 10-K, to just Express Scripts.").

21.     Thus, Plaintiff's own allegations defeat its UTPCPL claim based on CuraScript's exclusive distribution of Acthar and UBC's operation of ASAP. *See Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331, 339 (E.D. Pa. 2012) (statements not deceptive where "the facts the plaintiffs have pled regarding the defendants' actions are consistent with the representations the plaintiffs claim to be deceptive").

22.     ***Second***, Plaintiff alleges that a statement by ESI's Chief Medical Officer ("CMO") in 2007 that Questcor's decision to raise the price of Acthar was a "manufacturing decision" and that ESI's purported silence "about Acthar's 'value' for years" were deceptive or misleading as to the existence of a purported price-fixing agreement between Questcor—and later Mallinckrodt—and ESI. *See* Am. Compl. ¶ 169(d), (e), (f).

23.     In addition, Plaintiff alleges that ESI "misled Plaintiff and deceived Plaintiff about its approval of Acthar and the benefits of Acthar as a valuable specialty drug 'worth' what" Plaintiff was being charged, *id.* ¶ 169(e), and that ESI began offering discounts for Acthar only after it made statements in 2017 about Acthar being overpriced without explaining why the discounts for Acthar were "far less than the discounts offered for either brands or generics." *Id.* ¶ 169(f).

24.     As with its other UTPCPL allegations, however, Plaintiff avers no facts to suggest that any Express Scripts Entity engaged in deceptive conduct.

25.     As an initial matter, Plaintiff alleges no facts to suggest that the price increases for

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Acthar were not a "manufacturing decision."

26.     Plaintiff's new theory that Questcor—later Mallinckrodt—and one or more unspecified Express Scripts Entities jointly decided the prices at which Questcor and Mallinckrodt sold Acthar is utterly implausible.

27.     Indeed, contrary to its bare assertion of such a conspiracy, *see Brown v. Blaine*, 833 A.2d 1166, 1172 (Pa. Comwlth. 2003) ("bare allegations" of conspiracy are insufficient where plaintiff "does not allege facts indicating a conspiracy or an agreement to act unlawfully"), Plaintiff repeatedly pleads facts illustrating that ***Questcor and Mallinckrodt unilaterally*** set the price of Acthar.[7]

28.     Plaintiff also alleges that "Mallinckrodt has encountered no competitive constraints," Am. Compl. ¶ 118, and thus "has been able to raise prices unchecked," *id.* ¶ 117.

29.     Accordingly, the alleged conspiracy is implausible because Mallinckrodt would have no reason to involve any other entity in its pricing decisions given its alleged 100% monopoly over the purported ACTH market.  *See id.* ¶ 116 ("At all relevant times material to this case, Mallinckrodt possessed monopoly power—the ability to profitably raise price significantly above competitive levels, without losing significant sales—in the relevant product market.").[8]

---

[7] *See, e.g.*, Am Compl. ¶ 108 ("Through ***its exorbitant Acthar price increases, Mallinckrodt*** was able to grow its revenue from Acthar . . . ." (emphasis added)); *id.* ¶ 116 ("None of the vast ***price increases taken by Mallinckrodt*** between 2007 and the present have caused a significant loss of sales." (emphasis added)); *id.* ¶ 117 ("***Mallinckrodt has*** repeatedly and profitably ***raised Acthar's price*** . . . ." (emphases added)); *id.* ("***Mallinckrodt has been able to raise prices*** unchecked . . . ." (emphasis added)).  For the reasons stated in paragraphs 27-29, Plaintiff's baseless shift from the factual allegations in the original Complaint that Mallinckrodt unilaterally set the AWPs of Acthar to its conclusory assertions in the Amended Complaint that Mallinckrodt involved ESI in these pricing decisions cannot save Plaintiff's UTPCPL claim.  *Compare, e.g.*, Compl. ¶ 82 ("***Mallinckrodt set the average wholesale prices*** of Acthar used by Express Scripts for reimbursement." (emphasis added)), *with* Am. Compl. ¶ 84 ("In direct consultation with Express Scripts in the summer of 2007, Mallinckrodt set the inflated average wholesale price of Acthar used by Express Scripts for reimbursement.").

[8] Plaintiff's allegations concerning Daraprim, *id.* ¶¶ 88-91, also fail to demonstrate any agreement

9

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

30.    Furthermore, Plaintiff does not allege that ESI made any statement about "its approval of Acthar," the "benefits of Acthar," or Acthar's "worth" or "value," *id.* ¶ 169(e), (f)—other than a statement in 2017 that Acthar was overpriced by Mallinckrodt, *see id.* ¶¶ 100-01.

31.    Even if ESI made no public statements before 2017 about Acthar being overpriced, that silence cannot be deceptive unless ESI made some contradictory statement, such as a statement that the AWPs for Acthar were worth the value that the drug provided.

32.    Plaintiff has alleged no such statement.[9]

33.    Finally, Plaintiff's false allegation that ESI only began to offer discounts for Acthar beginning in 2017 directly contradicts its factual allegation that "[f]or Acthar, [it was] charged . . . at a discounted rate . . . off the AWP, as set forth in the ESI PBM Agreement for all years between 2012 and the present." *Id.* ¶ 84.  And Plaintiff does not allege any statement by ESI about the price disparity between Acthar and brand or generic drugs—which also would have been evident from the PBM Agreements insofar as the alleged disparity concerns the discount off AWP agreed to by Plaintiff and ESI—that could have caused any confusion "as to the reasons for, existence of, or amounts of the Acthar price reductions."  *Id.* ¶ 169(f).

---

between Mallinckrodt and ESI.  Plaintiff speculates that ESI could have halted Acthar price increases because it supposedly was successful in doing so for a different specialty drug, Daraprim.  *See id.* ¶¶ 88-90.  However, as Plaintiff alleges, ESI was only able to slow Daraprim's price increases by working with another manufacturer to develop a low-cost alternative to Daraprim.  *Id.* ¶¶ 89-91.  Here, by contrast, Plaintiff alleges that creating an alternative to Acthar is not feasible because of the difficulty of developing ACTH drugs and receiving FDA approval.  *See id.* ¶¶ 121-24.  It is also notable that in the *Rockford* litigation, Plaintiff's counsel truthfully alleged that the FDA granted Acthar orphan drug status, which also prevented development of a competing drug to treat infantile spasms.  *See City of Rockford v. Mallinckrodt ARD, Inc.*, No. 17-cv-50107 (N.D. Ill.), Mem. of Law in Support of Express Scripts Entities' Motion to Dismiss, ECF No. 105, at 2, 5 & n.6, 12-13, 15 n.7.  For whatever reason, Plaintiff's counsel omitted that truthful allegation in this action.

[9] To the extent Plaintiff bases the UTPCPL claim on Acthar being listed as a "specialty drug," Am. Compl. ¶ 169(e), Plaintiff has not alleged facts—e.g., how the PBM Agreements define "specialty drugs"—to suggest that including a drug on a defined list in an agreement implies anything about the AWP set by the manufacturer.

Case# 2018-14058-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

ii. **Plaintiff Does Not Plead Facts Suggesting That It Relied On Any Express Scripts Entity's Allegedly Prohibited Conduct to Its Detriment**

34. Plaintiff also does not allege facts to suggest that it ***relied on*** any Express Scripts Entity's purportedly prohibited conduct to its detriment.

35. ***First***, Plaintiff does not allege that it read, heard, or was otherwise aware of any purportedly deceptive statement made by an Express Scripts Entity; thus, Plaintiff cannot have relied on any such statement. *See Steinberg*, 899 F. Supp. 2d at 341 (holding plaintiff failed to sufficiently allege justifiable reliance and dismissing UTPCPL claims because plaintiff "has failed to allege that he was aware of the defendants' [purportedly misleading or deceptive] representations in the Notice of Privacy Practices and Code of Conduct").

36. Specifically, Plaintiff does not allege that before deciding to reimburse for Acthar in 2011, it read, heard, or was even aware of the ASAP form, Mallinckrodt's announcement in 2007 of its distribution agreement with CuraScript, or the 2007 statement by ESI's CMO that the increase in the price of Acthar was a manufacturing decision.

37. ***Second***, based on Plaintiff's factual allegations, none of the allegedly prohibited conduct could conceivably have caused Plaintiff to pay "inflated" AWPs for Acthar. Am. Compl. ¶ 84. Rather, Mallinckrodt's alleged monopoly is the only conceivable cause of the "inflated" AWPs for Acthar.

38. Any conduct on the part of an Express Scripts Entity in the distribution of Acthar—or the purported concealment of any distribution relationship—cannot have enhanced Mallinckrodt's ability to raise the AWPs for Acthar because the method of distribution cannot strengthen Mallinckrodt's alleged monopoly. In other words, the method Mallinckrodt chose for distributing Acthar does not make it more difficult for another pharmaceutical company to develop a competing product. *See E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 29

11

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(2d Cir. 2006) (exclusive distribution agreements "provide[] no monopolistic benefit to [the monopolist] that it does not already enjoy and would not continue to enjoy" absent the exclusive agreement).

39.     Moreover, Mallinckrodt's alleged monopoly renders implausible any "scheme" pursuant to which Mallinckrodt would involve any Express Scripts Entity in Mallinckrodt's pricing decisions because Mallinckrodt's alleged monopoly allows it to set the price of Acthar unencumbered by competitive constraints. *See* Am. Compl. ¶ 118 ("Mallinckrodt has encountered no competitive constraints on its ability to repeatedly increase Acthar's price . . . .").

40.     Thus, the only conceivable causes of the "inflated" AWPs for Acthar are ***Mallinckrodt's*** alleged monopoly power and ***Mallinckrodt's*** unilateral decision to raise the price of the drug.

41.     Accordingly, Plaintiff does not allege facts to suggest that any action by any Express Scripts Entity has caused the alleged harm, and the UTPCPL claim against the Express Scripts Entities fails. *See McCabe v. Marywood Univ.*, 166 A.3d 1257, 1263 (Pa. Super. 2017) (affirming dismissal of UTPCPL claim because plaintiff "has not shown that she suffered harm as a result of her reliance [on] the alleged deception of Marywood University. Rather, [her] harm[] come[s] from her decision to transfer schools.").

**B.     The Negligent Misrepresentation Claim (Count II) Fails as a Matter of Law**

42.     Plaintiff's negligent misrepresentation claim against the Express Scripts Entities is legally deficient for multiple reasons.

**i.     The Economic Loss Doctrine Bars the Negligent Misrepresentation Claim**

43.     As an initial matter, this claim is barred by the economic loss doctrine. "[T]he economic loss doctrine generally precludes recovery in negligence actions for injuries which are solely economic." *Excavation Techs., Inc. v. Columbia Gas Co.*, 985 A.2d 840, 841 (Pa. 2009).

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

"[T]he economic loss doctrine bars claims for negligent misrepresentation." *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 491 (E.D. Pa. 2016) (citation omitted).

44.     Plaintiff's negligent misrepresentation claim is barred by the economic loss doctrine because Plaintiff alleges only an economic loss—i.e., that it allegedly "overpaid for the Acthar because of the misrepresentations." Am. Compl. ¶ 191.

45.     Because Plaintiff does not allege any physical or property damage, the negligent misrepresentation claim should be dismissed for this reason alone.

46.     While the Pennsylvania Supreme Court has applied a narrow exception to the economic loss doctrine for "claims of negligent misrepresentation sounding under § 552" of the Restatement (Second) of Torts, *Excavation Techs.*, 985 A.2d at 843 (quoting *Bilt-Rite Contractors, Inc. v. Architectural Studio*, 866 A.2d 270, 288 (Pa. 2005)), that exception does not apply here.

47.     That exception only applies "in cases where information is negligently supplied by one in the business of supplying information, such as an architect or design professional." *Bilt-Rite*, 866 A.2d at 287; *see also id.* ("Section 552 imposes a duty of reasonable care upon the supplier of professional information for use by others.").

48.     The exception does not apply to defendants that supply information that is ancillary to the products or services they sell. *See Slippery Rock Area Sch. Dist. v. Tremco, Inc.*, No. 15-cv-1020, 2016 WL 3198122, at *15 (W.D. Pa. June 9, 2016) (*Bilt-Rite* exception did not apply because "the information allegedly provided by defendants to plaintiff, i.e., the bidding specifications, resulted in plaintiff paying defendants more for defendants' products and [general contracting] services.  In other words, the information supplied was ***incidental*** to defendants selling to plaintiff its products at an increased cost." (emphasis in original)); *Elliott-Lewis Corp.*

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

*v. Skanska USA Bldg., Inc.*, No. 14-cv-3865, 2015 WL 4545362, at *5 (E.D. Pa. July 27, 2015)

("The sale of a product is fundamentally different than the sale of information, even if the seller

provides information about the product to consummate the sale.") (collecting cases refusing to

apply exception where defendants' business was to sell products or services rather than

information); *see also Excavation Techs.*, 985 A.2d at 843 ("[Appellant's] complaint fails to state

a claim within the parameters of Section 552(1) and (2) because [appellee] is not a defendant

who is akin to the architect in *Bilt-Rite* who was a professional information provider."

(alterations in original) (citation omitted)).

49.    Plaintiff has not alleged facts to suggest that the *Bilt-Rite* exception applies here

because Plaintiff does not—and cannot—allege that ESI's business is to sell information about

drugs.  To the contrary, Plaintiff alleges that ESI "provide[s Plaintiff] with pharmacy benefit

management services," Am. Compl. ¶ 80, which include "retail pharmacy claims processing,

formulary management, utilization management and home delivery pharmacy services," *id.* ¶ 59.

50.    Thus, as alleged, to the extent that ESI provides information about drug value and

pricing, providing that information is ancillary to the provision of pharmacy benefit management

services, and the *Bilt-Rite* exception to the economic loss doctrine does not apply.

51.    Moreover, Plaintiff has not alleged facts to state a claim under Section 552(1)

because Plaintiff has not alleged facts to show that ESI has "supplie[d] false information" or that

Plaintiff suffered "pecuniary loss caused . . . by [its] justifiable reliance upon the information."

Restatement (Second) of Torts § 552(1).  Accordingly, even if ESI were considered a

professional information provider, Plaintiff's claim would still be barred by the economic loss

doctrine.

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

ii.   **Plaintiff Does Not Plead Facts Suggesting That Any Express Scripts Entity Owed It a Duty of Care Relating to Acthar**

52.    Even ignoring the economic loss doctrine, Plaintiff still fails to state a negligent misrepresentation claim because it does not allege facts to suggest that any Express Scripts Entity owed it a duty of care relating to Acthar.

53.    "[L]ike any action in negligence," to establish a negligent misrepresentation claim, "there must be an existence of a duty owed by one party to another." *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999).

54.    Plaintiff asserts the following about the source of the purported duty of care: "Defendants knew or should have known of the falsity of their misrepresentations, especially as to the purported value of Acthar.  Mallinckrodt bought the drug[] for $100,000 when it cost only $40 [per vial].  And Express Scripts [is] in the business of understanding the value of drugs in order to make recommendations to its clients, like Plaintiff.  Thus, Defendants, having spoken about the purported value of Acthar in relation to i[t]s high pricing had a duty to speak the truth." Am. Compl. ¶ 183.

55.    These allegations are insufficient to allege a legally cognizable duty of care because ESI cannot incur a duty under Section 552 of the Restatement (Second) of Torts as a result of the nature of its "business." *See supra* ¶¶ 43-51.

56.    In addition, Plaintiff does not allege facts to suggest any misrepresentation—much less a misrepresentation Plaintiff heard or relied on—by any Express Scripts Entity about the value of Acthar that could have given rise to any subsequent duty to speak. *See infra* ¶¶ 61-64.

iii.   **Plaintiff Does Not Plead Facts Suggesting a Misrepresentation or Justifiable Reliance**

57.    A negligent misrepresentation claim also requires factual allegations showing:

15

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

"(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bortz*, 729 A.2d at 561.

58.    In the Amended Complaint, Plaintiff bases its negligent misrepresentation claim against the Express Scripts Entities on four purported misrepresentations, each of which is insufficient to sustain this claim:  (1) Defendants represented that "the AWP-based prices for Acthar . . . represented a calculation of real and fact-based prices for their drugs, [] that they represented the actual value of the product in the marketplace[, and that] Defendants called these prices 'average wholesale prices' and when they knew they were not," Am. Compl. ¶ 179; (2) in 2007, ESI's CMO said that the price increase for Acthar was "a manufacturing decision," *id.* ¶ 181; (3) the ASAP forms "were made to appear as if" an entity other than an Express Scripts Entity "was conducting the [ASAP] program," *id.*; and (4) "[i]n including Acthar among its list of 'specialty drugs' . . . [ESI] intentionally or negligently placed Acthar under a 'special' list so that Plaintiff would be deceived by relying upon such classification, and higher pricing," *id.*

59.    These allegations do not suggest that any Express Scripts Entity made a misrepresentation,[10] and Plaintiff has failed to show that it relied to its detriment on any purported misrepresentation.

60.    The Amended Complaint does not identify any statement made to Plaintiff by any Express Scripts Entity regarding the price of Acthar being based on a "calculation of real and fact-based prices."  Am. Compl. ¶ 179.  Nor does Plaintiff allege any facts to suggest that the

---

[10] For this reason, the negligent misrepresentation claim also fails for lack of factual allegations suggesting that "the misrepresenter ought to have known [of a statement's] falsity" or "inten[ded] to induce another to act on" a purported misrepresentation.  *Bortz*, 729 A.2d at 561.

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

AWPs that—pursuant to the PBM Agreements—formed the basis of Plaintiff's reimbursement rate for Acthar, were false.

61.     To the contrary, the Complaint alleges that the PBM Agreements expressly set the reimbursement rate for Acthar at a specified percentage discount off AWP, which is exactly what Plaintiff alleges it paid. *See id.* ¶ 84 ("For Acthar, Mallinckrodt charged [Plaintiff] at a discounted rate . . . off the AWP, as set forth in the ESI PBM Agreement.").

62.     Plaintiff's allegation that the AWP of Acthar was too high does not render "false" or not "fact-based" the agreed-upon reimbursement rate set forth in the PBM Agreements. *See Thompson's Gas & Elec. Serv., Inc. v. BP Am. Inc.*, 691 F. Supp. 2d 860, 870 (N.D. Ill. 2010) ("The fact that Defendants were offering propane for sale at inflated prices does not mean those prices were somehow 'false.'").  Accordingly, this allegation fails to sufficiently allege a misrepresentation or that Plaintiff relied on a misrepresentation.

63.     Plaintiff has also failed to allege facts to show that the statement by ESI's CMO and the ASAP forms are false, or that Plaintiff relied on them to its detriment. *See supra* ¶¶ 20-29.

64.     Plaintiff also does not allege facts to show that including Acthar on a list of specialty drugs in the PBM Agreements that Plaintiff and ESI negotiated was—or even could have been—false.  Notably, Plaintiff does not allege how the PBM Agreements define "specialty products"[11] or otherwise allege how including Acthar in the specialty products list could have been false.

65.     Because Plaintiff has not—and cannot—allege the required elements, its negligent

---

[11] As with the original Complaint and notwithstanding Defendants' preliminary objections to that Complaint on this ground, Plaintiff did not attach either PBM Agreement to the Amended Complaint.

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

misrepresentation claim fails as a matter of law.

**C.     The Aiding and Abetting/Conspiracy Claim (Count III) Fails as a Matter of Law**

66.     Plaintiff's aiding and abetting/conspiracy claim fails as a matter of law because it relies on the same alleged misconduct as Plaintiff's deficient UTPCPL and negligent misrepresentation claims.

67.     "[T]here can be no claim for aiding and abetting unless plaintiff has also alleged a viable claim for the underlying tort." *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, No. 16-cv-665, 2017 WL 4235773, at *11 (E.D. Pa. Sept. 25, 2017) (citation omitted).

68.     Likewise, "there can be no cause of action for civil conspiracy" without a valid underlying tort claim. *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. 2000).

69.     Plaintiff's aiding and abetting/conspiracy claim is based on the same alleged misconduct as Plaintiff's deficient UTPCPL and negligent misrepresentations claims, namely an alleged "common design pursuant to which Defendants carried out their tortious acts of negligently misrepresenting the truth about Acthar and their exclusive arrangements, and the acts or practices in violation of the UTPCPL." Am. Compl. ¶ 196.

70.     As a result, the aiding and abetting/conspiracy claim fails because Plaintiff has not alleged a viable underlying tort claim.

**D.     The Unjust Enrichment Claim (Count IV) Fails as a Matter of Law**

71.     Plaintiff's unjust enrichment claim fails because Plaintiff does not allege a viable underlying tort.

72.     "Where the unjust enrichment claim rests on the same improper conduct as the underlying tort claim, the unjust enrichment claim will rise or fall with the underlying claim." *Whitaker*, 198 F. Supp. 3d at 493.

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

73. Plaintiff's unjust enrichment claim rests on the same purported "conduct [that allegedly] violated state consumer fraud law, as well as the common law of Pennsylvania." Am. Compl. ¶ 210.[12]

74. Moreover, to the extent Plaintiff bases its unjust enrichment claim on ESI's purported failure to "fulfill[] its obligation to contain costs," *id.* ¶ 209, the unjust enrichment claim fails because Plaintiff alleges that duty arises from the PBM Agreements, *see infra* ¶ 80. *See Villoresi v. Femminella*, 856 A.2d 78, 84 (Pa. Super. 2004) (stating "[w]here an express contract already exists to define the parameters of the parties' respective duties, the parties may avail themselves of contract remedies and an equitable remedy for unjust enrichment cannot be deemed to exist," and affirming grant of preliminary objections to unjust enrichment claim because "the parties' transaction was delineated within the confines of the written option agreement").

75. For the foregoing reasons, the unjust enrichment claim fails.

**E.    The Breach of Contract Claim (Count VI) Fails as a Matter of Law**

76. Plaintiff's breach of contract claim fails as a matter of law because Plaintiff fails to plead the elements of this claim.

77. "[T]hree elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms; (2) a breach of the contract; and, (3) resultant damages." *McCabe*, 166 A.3d at 1262.

---

[12] To the extent Plaintiff bases its aiding and abetting/conspiracy and/or unjust enrichment claims on purportedly anticompetitive conduct, such claims would fail because there is no Pennsylvania law cause of action for damages for alleged antitrust violations. *See Stutzle v. Rhonepoulenc S.A.*, No. 27608 Oct. Term 2002, 2003 WL 22250424, at *2 (Pa. Ct. Com. Pl. Phila. Cty. Sept. 26, 2003) (dismissing unjust enrichment claim where purportedly wrongful conduct "amounts to an antitrust violation" because "the Pennsylvania legislature and the courts have not created a cause of action for damages sustained as a result of the antitrust violations").

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

78.     Furthermore, an allegation that a duty arises from a contract is a legal conclusion that should be disregarded in the absence of the full text of the contract or all relevant provisions that purportedly give rise to the allegedly breached duty. *See Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 884 (Pa. Super. 2000) (affirming dismissal of breach of contract claim that was "fatally flawed" because complaint "merely assert[ed] that the duty exists without demonstrating how the duty arises" and did not "cite[] to pertinent contractual language that would establish a duty on the insurers promptly to pay 'undisputed amounts' of UM or UIM benefits" or "attach the pertinent parts of the insurance policies to their complaint"); *see also* Pa. R. Civ. P. 1019(i) ("When any claim or defense is based upon a writing, the pleader shall attach a copy of the writing, or the material part thereof . . . .").

79.     Plaintiff fails to allege the essential terms of any contract that would establish the purported contractual duties that ESI allegedly breached, or facts to support the conclusory assertion that ESI breached a purported duty.

80.     ***First***, Plaintiff fails to adequately plead a breach of contract claim based on ESI's alleged "failure to provide 'cost containment' services either through nonfeasance or malfeasance." Am. Compl. ¶ 223. Rather, Plaintiff merely states the legal conclusion that through its purported "failure" regarding this phrase that Plaintiff includes in quotations but does not cite or define, ESI "breached," "repudiated its obligations under," and "is in default of" the PBM Agreements. *Id.*

81.     Plaintiff does not attach either PBM Agreement or the relevant provisions of either PBM Agreement, nor does Plaintiff quote any contractual provision or other source of any duty—or provide any context for its allegation.

82.     Further, not only does Plaintiff fail to allege any contractual provision sufficient

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

to create a binding obligation, Plaintiff also does not allege facts to show that ESI breached any such obligation.  Indeed, Plaintiff actually alleges that the PBM Agreements expressly set the reimbursement rate for Acthar at a specified percentage discount off AWP, which is exactly what Plaintiff alleges it paid.  *See id.* ¶ 84.

83.    Moreover, Plaintiff's assertion that ESI "agreed with Mallinckrodt to inflate the AWPs for Acthar," *id.* ¶ 223, is not only unsupported by any factual allegation, it is contrary to the numerous instances in which Plaintiff alleges that Mallinckrodt unilaterally sets the price for Acthar, *see supra* ¶¶ 26-29 & n.7.

84.    ***Second***, Plaintiff fails to state a breach of contract claim based on its allegation that "ESI also diverted monies from Plaintiff that should have been paid as rebates."  Am. Compl. ¶ 223.

85.    Plaintiff apparently bases this conclusory allegation on the definition of "rebates" in the PBM Agreement and Plaintiff's additional conclusory assertion that "ESI did not pay to [Plaintiff] all the 'rebates . . . directly attributable to the utilization of' the Acthar paid for by Plaintiff."  *Id.* ¶ 89 (quoting definition of rebates from PBM Agreement) (alteration in original).  But Plaintiff does not meet its burden to quote the full provision of the PBM Agreement that purportedly required ESI to pay Plaintiff all rebates directly attributable to the use of Acthar; rather, it merely quotes part of the definition of rebates.

86.    In any event, Plaintiff does not allege facts to show that it received less than it was entitled to—e.g., by alleging how much it received in amounts tied to rebates and how much it should have received.

87.    Accordingly, Plaintiff's breach of contract claim fails as a matter of law because Plaintiff has not sufficiently alleged the existence of a contractual duty or a breach of such duty.

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

88.     Furthermore, to the extent Plaintiff brings its breach of contract claim against any Express Scripts Entity other than ESI, that claim should be dismissed because ESI is the only Express Scripts Entity that allegedly has a contractual relationship with Plaintiff. *See Fleetway Leasing Co. v. Wright*, 697 A.2d 1000, 1003 (Pa. Super. 1997) ("In Pennsylvania, a person who is not a party to a contract cannot be held liable for a breach by one of the parties to a contract.").

**F.      The Promissory Estoppel Claim (Count VII) Fails as a Matter of Law**

89.     A claim for promissory estoppel requires the following elements:  "(1) the promisor made a promise that would reasonably be expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise." *Peluso v. Kistner*, 970 A.2d 530, 533 (Pa. Comwlth. 2009).

90.     Plaintiff's promissory estoppel claim is based on ESI's purported refusal to "fulfill its representations and promises concerning the terms and obligations under the ESI PBM Agreement, including the promise of cost containment with respect to Acthar." Am. Compl. ¶ 229.

91.      Because the promissory estoppel claim is based on the same alleged contractual obligations and purported breach as the breach of contract claim, it fails as a matter of law, as Plaintiff has failed to plead the elements of this claim.

**G.      The Breach of the Implied Covenant Claim (Count VIII) Fails as a Matter of Law**

92.     Pennsylvania law "does not recognize an independent cause of action for breach of the implied duty of good faith and fair dealing." *Sharp v. Travelers Pers. Sec. Ins. Co.*, No. 12 CV 6483, 2014 WL 8863084, at *5 n.5 (Pa. Ct. Com. Pl. Lackawanna Cnty. Mar. 7, 2014) (collecting cases).

93.     As a result, Plaintiff's breach of the implied covenant claim is not viable.

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

94.    Furthermore, this claim fails for the same reason as Plaintiff's breach of contract claim because it is based on the same faulty allegations. *See* Am. Compl. ¶ 235.

**H.    The Declaratory and Injunctive Relief Claim (Count IX) Fails as a Matter of Law**

95.    "The required elements of injunctive relief are: a clear right to relief; an urgent necessity to avoid an injury that cannot be compensated in damages; and a finding that greater injury will result from refusing, rather than granting, the relief requested." *Green v. Wolf*, 176 A.3d 362, 365 n.5 (Pa. Comwlth. 2017).

96.    Because Plaintiff has failed to sufficiently allege any of its substantive claims, its claim for injunctive relief also fails. *See Abrams v. Toyota Motor Credit Corp.*, No. 071049, 2001 WL 1807357, at *12 (Pa. Ct. Com. Pl. Phila. Cty. Dec. 5, 2001) (sustaining preliminary objections to injunctive relief claim because "[h]aving dispensed with all of the underlying substantive claims, it does not appear that Abrams would have a 'clear' right to relief or suffer imminent and irreparable harm, which are two requisite elements for being entitled to an injunction").

97.    Plaintiff's declaratory judgment claim likewise fails.

98.    Plaintiff requests that the Court declare that Defendants acted "unlawful[ly] under the UTPCPL and/or the common law of negligent misrepresentation." Am. Compl. ¶ 240. Because Plaintiff has failed to sufficiently allege these claims, Plaintiff also fails to state a claim for declaratory judgment. *See Gindlesperger v. Stayco Const., Inc.*, No.785 MDA 2012, 2013 WL 11261985, at *5-6 (Pa. Super. June 24, 2013) (unpublished table decision) (affirming grant of demurrer to declaratory relief claim seeking declaration that reference to warranty in contract "shall be null and void" because complaint failed to allege facts to support allegation that warranty was null and void).

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

### III.   PRELIMINARY OBJECTIONS – FAILURE TO CONFORM

**ALTERNATIVELY, PLAINTIFF'S CLAIMS AGAINST THE EXPRESS SCRIPTS ENTITIES FAIL TO CONFORM TO LAW OR THE RULES OF COURT PURSUANT TO PA. R. CIV. P. 1028(a)(2)**

99.     Pennsylvania Rule of Civil Procedure 1028(a)(2) provides that a party may object to a pleading for failure to "conform to law or rule of court."  Pa. R. Civ. P. 1028(a)(2).

100.     The Pennsylvania Rules of Civil Procedure require that "[w]hen any claim or defense is based upon a writing, the pleader shall attach a copy of the writing, or the material part thereof . . . ."  Pa. R. Civ. P. 1019(i).

101.     Plaintiff's negligent misrepresentation, unjust enrichment, breach of contract, promissory estoppel, and implied covenant claims all rely on at least one of the PBM Agreements between ESI and Plaintiff.  *See* Am. Compl. ¶ 187 (alleging in negligent misrepresentation count that "all Defendants communicated these false prices directly to [Plaintiff] for the Acthar sold" purportedly through the PBM Agreements); *id.* ¶ 205 (alleging in unjust enrichment count that Plaintiff "at all times had a reasonable expectation that Express Scripts' conduct would result in affordable services, including cost containment"); *id.* ¶ 221 (alleging in breach of contract count that "[t]his count alleges breach of the ESI PBM Agreement"); *id.* ¶ 228 (alleging in promissory estoppel count that Plaintiff "seeks enforcement of ESI's promise to continue with ESI's obligations under the ESI PBM Agreement"); *id.* ¶ 236 (alleging in implied covenant count that ESI breached the covenant implied in the ESI PBM Agreement).

102.     But Plaintiff does not attach either of these agreements to its Amended Complaint.[13]

---

[13] Plaintiff has failed to attach the PBM Agreements to the Amended Complaint despite the fact that the Express Scripts Entities filed preliminary objections to Plaintiff's original Complaint for this exact

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

103.     Thus, these claims should be dismissed under Pennsylvania Rules of Civil

Procedure 1019(i) and 1028(a)(2).  *See Brimmeier v. Pa. Turnpike Comm'n*, 147 A.3d 954, 968

(Pa. Comwlth. 2016) (striking breach of contract claim under Rules 1019(i) and 1028(a)(2)

because plaintiff "failed to attach a copy of [a written agreement] to the Complaint"), *aff'd* 161

A.3d 253 (Pa. 2017); *Unifund v. Sheridan*, No. 2012 CV 4944, 2013 WL 10253095, at *7 (Pa.

Ct. Com. Pl. Lackawanna Cty. June 24, 2013) (invoking Rules 1019(i) and 1028(a)(2) to dismiss

breach of contract claim and "[a]ll of the other count or counts herein . . . which reference the

written cardholder's agreement or credit card application neither of which was ever attached to

any complaint or amended complaint").

---

reason, and informed Plaintiff it could file these agreements under seal if it were to attach them to an
amended complaint.  *See* Express Scripts Entities' Preliminary Objections to Plaintiff's Complaint, Doc.
63, at ¶¶ 64-68 & n.12 ("If Plaintiff files the aforementioned contracts with an amended complaint, it
should be cognizant of any confidentiality provisions in those agreements, and file them under seal if
necessary.").  Any argument that Plaintiff could not attach these agreements to the Amended Complaint
because they are confidential would be frivolous.  This Court has granted motions to file under seal on
numerous occasions.  *See, e.g., Aetna Health Mgmt., LLC v. Davita, Inc.*, No. 2017-07795, Doc. 20 (Pa.
Ct. Com. Pl. Montgomery Cty. May 24, 2017) (granting motion to seal confidential agreement).

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**WHEREFORE,** the Express Scripts Entities respectfully request that the Court sustain their Preliminary Objections and dismiss all claims against them in the Amended Complaint with prejudice.

Dated:  September 17, 2018                           Respectfully submitted,

                                                    By: /s/ Joanne C. Lewers
                                                    Joanne C. Lewers (ID No. 81195)
                                                    Victoria L. Andrews (ID No. 321143)
                                                    DRINKER BIDDLE & REATH LLP
                                                    One Logan Square, Suite 2000
                                                    Philadelphia, PA 19103-6996
                                                    Telephone: (215) 988-2700
                                                    Facsimile (215) 988-2757
                                                    joanne.lewers@dbr.com
                                                    victoria.andrews@dbr.com

                                                    Matthew M. Martino (admitted *pro hac vice*)
                                                    Michael H. Menitove (admitted *pro hac vice*)
                                                    Evan R. Kreiner (admitted *pro hac vice*)
                                                    SKADDEN, ARPS, SLATE,
                                                    MEAGHER & FLOM LLP
                                                    Four Times Square
                                                    New York, NY 10036
                                                    Telephone: (212) 735-3000
                                                    matthew.martino@skadden.com
                                                    michael.menitove@skadden.com
                                                    evan.kreiner@skadden.com

                                                    *Attorneys for Defendants Express Scripts Holding*
                                                    *Company, Express Scripts, Inc., CuraScript, Inc.,*
                                                    *CuraScript SD, Accredo Health Group, Inc., and*
                                                    *United BioSource Corporation, now known as*
                                                    *United BioSource LLC*

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

INTERNATIONAL UNION OF
OPERATING ENGINEERS LOCAL 542   :

     VS.       :  NO.  2018-14059

MALLINCKRODT ARD, INC., *et al.*   :
               :

## **COVER SHEET OF MOVING PARTY**

Date of Filing __September 17, 2018__ Moving Party  Express Scripts Holding Company, Express Scripts, Inc., Curascript, Inc., Curascript SD, Accredo Health Group, Inc., and United Biosource Corporation

Counsel for Moving Party __Joanne C. Lewers__     I.D. No. __81195__

Document Filed (Specify) __Preliminary Objections to Plaintiff's Amended Complaint__

_____

Matter is: _____ (Appealable) __X__ (Interlocutory)

Oral Argument: _____ (Yes)__X__ (No) Discovery Needed: _____ (Yes) __X__ (No)
-----------------------------------------------------------------------------------------------------

**CERTIFICATIONS** - Check **ONLY** if appropriate:

_____ Counsel certify that they have conferred in a good faith effort to resolve the subject
discovery dispute. **(Required by Local Rule 208.2(e) on motions relating to discovery.)**

_____ Counsel for moving party certifies that the subject **civil motion** is **uncontested** by all
parties involved in the case.  (If checked, skip Rule to Show Cause section below.)

      By: _____
          Counsel for Moving Party
-----------------------------------------------------------------------------------------------------

**RULE TO SHOW CAUSE** - Check **ONE** of the Choices Listed Below:

_____ Respondent is directed to show cause why the moving party is not entitled to the relief
requested by filing an **answer** in the form of a **written response** at the **Office of the
Prothonotary** on or before the     day of       20___.

_____ Respondent is directed to show cause, in the form of a **written response**, why the
attached Family Court Discovery Motion is not entitled to the relief requested.  Rule
Returnable and Argument the     day of      , 20___
at **1:00 p.m.**  at **321 Swede Street, Norristown, Pa**.

_____ Respondent is directed to file a **written response** in conformity with the Pennsylvania
Rules of Civil Procedure.

_____ Rule Returnable at time of trial.

      By: _____
          Court Administrator

                    9/12

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# IN THE COURT OF COMMON PLEAS
# FOR MONTGOMERY COUNTY, PENNSYLVANIA

|  |  |  |
|---|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 542, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2018-14059 |
| MALLINCKRODT ARD, INC., *et al.*, | ) ) | |
| Defendants. | ) ) | |

## <u>NOTICE TO PLEAD</u>

**To:**
Donald E. Haviland, Jr., Esquire
William H. Platt, II, Esquire
Christina M. Philipp, Esquire
Haviland Hughes
201 South Maple Way, Suite 110
Ambler, PA 19002

You are hereby notified to file a written response to the enclosed Preliminary Objections of Defendants Express Scripts Holding Company, Express Scripts, Inc., Curascript, Inc., Curascript SD, Accredo Health Group, Inc., and United BioSource Corporation within twenty (20) days of the date of service hereof or the Objections may be sustained.

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Dated:  September 17, 2018        /s/ Joanne C. Lewers

Joanne C. Lewers (ID No. 81195)
Victoria L. Andrews (ID No. 321143)
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Facsimile (215) 988-2757
joanne.lewers@dbr.com
victoria.andrews@dbr.com

Matthew M. Martino (admitted *pro hac vice*)
Michael H. Menitove (admitted *pro hac vice*)
Evan R. Kreiner (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
Telephone: (212) 735-3000
matthew.martino@skadden.com
michael.menitove@skadden.com
evan.kreiner@skadden.com

*Attorneys for the Express Scripts Entities*

2

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**IN THE COURT OF COMMON PLEAS**
**FOR MONTGOMERY COUNTY, PENNSYLVANIA**

|  |  |  |
|---|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 542, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2018-14059 |
| MALLINCKRODT ARD, INC., *et al.*, | ) ) | |
| Defendants. | ) ) | |

**[PROPOSED] ORDER**

AND NOW, this ____, day of _____, 2018, upon consideration of Defendants

Express Scripts Holding Company's, Express Scripts, Inc.'s, CuraScript, Inc.'s, CuraScript SD's,

Accredo Health Group, Inc.'s, and United BioSource Corporation's (collectively, the "Express

Scripts Entities") Preliminary Objections to the Amended Complaint, and any response thereto,

the Express Scripts Entities' Preliminary Objections are **SUSTAINED**, and it is hereby

**ORDERED** that all claims against the Express Scripts Entities in Plaintiff's Amended

Complaint are dismissed with prejudice.

_____
                                        J.

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## **VERIFICATION**

I, Joanne C. Lewers, Esquire, state that I am an attorney for Defendants Express Scripts

Holding Company, Express Scripts, Inc., CuraScript, Inc., CuraScript SD, Accredo Health

Group, Inc., and United BioSource Corporation in this action and that I have authority to make

this verification on their behalf.  I further state that I am acquainted with the facts set forth in the

foregoing Preliminary Objections and the accompanying Memorandum of Law and that the same

are true and correct to the best of my knowledge, information, and belief.  This statement is made

subject to the penalties of 18 Ps. C. S. A. § 4904 relating to unsworn falsification to authorities.


Dated:  September 17, 2018                          /s/ Joanne C. Lewers
                                                     Joanne C. Lewers

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## CERTIFICATE OF SERVICE

Joanne C. Lewers hereby certifies that a true and correct copy of the foregoing

Defendants Express Scripts Holding Company's, Express Scripts, Inc.'s, Curascript, Inc.'s,

Curascript SD's, Accredo Health Group, Inc.'s, and United BioSource Corporation's Preliminary

Objections to the Amended Complaint was forwarded to the following via notification from the

Montgomery Country Court of Common Pleas Electronic Filing system on September 17, 2018:

G. Patrick Watson, Esquire
Lindsay Sklar Johnson, Esquire
Bryan Cave Leighton Paisner LLP
One Atlantic Center, 14th Floor
1201 W. Peachtree Street, NW
Atlanta, GA 30309

Philip D. Bartz, Esquire
Bryan Cave Leighton Paisner LLP
1155 F Street, N.W.
Washington, DC 20004

Matthew M. Martino, Esquire
Michael H. Menitove, Esquire
Evan R. Kreiner, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036

Herbert R. Giorgio, Jr., Esquire
Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102

Donald E. Haviland, Jr., Esquire
William H. Platt, II, Esquire
Christina M. Philipp, Esquire
Haviland Hughes
201 South Maple Way, Suite 110
Ambler, PA 19002

Daniel T. Sherry, Esquire
Wendy J. Bracaglia, Esquire
Marshall, Dennehey, Warner,
Coleman & Goggin
620 Freedom Business Center
Suite 300
King of Prussia, PA 19406

**Drinker Biddle & Reath LLP**

/s/ Joanne C. Lewers
Joanne C. Lewers

*Attorneys for Defendants Express Scripts Holding
Company, Express Scripts, Inc., CuraScript, Inc.,
CuraScript SD, Accredo Health Group, Inc., and
United BioSource Corporation, now known as
United BioSource LLC*

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**IN THE COURT OF COMMON PLEAS
FOR MONTGOMERY COUNTY, PENNSYLVANIA**

|  |  |  |
|---|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 542, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2018-14059 |
| MALLINCKRODT ARD, INC., *et al.*, | ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS EXPRESS SCRIPTS HOLDING COMPANY'S,
EXPRESS SCRIPTS, INC.'S, CURASCRIPT, INC.'S, CURASCRIPT
SD'S, ACCREDO HEALTH GROUP, INC.'S, AND UNITED BIOSOURCE
<u>CORPORATION'S PRELIMINARY OBJECTIONS TO THE AMENDED COMPLAINT</u>**

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## TABLE OF CONTENTS

MATTER BEFORE THE COURT ................................................................................1

STATEMENT OF QUESTIONS INVOLVED................................................................1

PRELIMINARY STATEMENT .....................................................................................2

RELEVANT FACTUAL ALLEGATIONS ....................................................................4

    A.    Mallinckrodt's Alleged Monopoly in the Purported Market for ACTH
            Drugs.............................................................................................................4

    B.    The Alleged Acthar Distribution Services Provided by CuraScript SD,
            Accredo, and UBC ......................................................................................6

    C.    ESI Is Plaintiff's Pharmacy Benefit Manager ...........................................6

ARGUMENT ...................................................................................................................7

I.      PLAINTIFF'S CLAIMS AGAINST THE EXPRESS SCRIPTS ENTITIES ARE
       LEGALLY INSUFFICIENT AND SHOULD BE DISMISSED PURSUANT TO
       PA. R. CIV. P. 1028(a)(4)........................................................................................7

    A.    The UTPCPL Claim (Count I) Should Be Dismissed ...............................8

            1.    Plaintiff Does Not Plead Facts Suggesting That Any Express
                   Scripts Entity Engaged in an Act Prohibited By the UTPCPL...................8

            2.    Plaintiff Does Not Plead Facts Suggesting That It Relied On Any
                   Express Scripts Entity's Allegedly Prohibited Conduct to Its
                   Detriment ...................................................................................................12

    B.    The Negligent Misrepresentation Claim (Count II) Should Be Dismissed ..........15

            1.    The Economic Loss Doctrine Bars the Negligent Misrepresentation
                   Claim.........................................................................................................15

            2.    Plaintiff Does Not Plead Facts Suggesting That Any Express
                   Scripts Entity Owed It a Duty of Care Relating to Acthar ......................17

            3.    Plaintiff Does Not Plead Facts Suggesting a Misrepresentation or
                 Justifiable Reliance ..................................................................................18

    C.    The Aiding and Abetting/Conspiracy (Count III) and Unjust Enrichment
             (Count IV) Claims Should Be Dismissed ................................................20

    D.    The Breach of Contract Claim (Count VI) Should Be Dismissed ..........21

i

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

E.     The Promissory Estoppel Claim (Count VII) Should Be Dismissed ............... 23

F.     The Breach of the Implied Covenant Claim (Count VIII) Should Be Dismissed ......................................................................................... 24

G.    The Declaratory and Injunctive Relief Claim (Count IX) Should Be Dismissed ......................................................................................... 24

II.    ALTERNATIVELY, PLAINTIFF'S CLAIMS AGAINST THE EXPRESS SCRIPTS ENTITIES FAIL TO CONFORM TO LAW OR RULE OF COURT AND SHOULD BE DISMISSED PURSUANT TO PA. R. CIV. P. 1028(a)(2) ............. 25

RELIEF SOUGHT ............................................................................................. 26

ii

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## TABLE OF AUTHORITIES

### CASES

*412 North Front Street Assocs. v. Spector Gadon & Rosen, P.C.*,
　　151 A.3d 646 (Pa. Super. 2016).................................................................. 11

*Abrams v. Toyota Motor Credit Corp.*,
　　No. 071049, 2001 WL 1807357 (Pa. Ct. Com. Pl. Phila. Cty. Dec. 5, 2001) ................. 24

*Aetna Health Mgmt., LLC v. Davita, Inc.*,
　　No. 2017-07795, Doc. 20 (Pa. Ct. Com. Pl. Montgomery Cty. May 24, 2017) ............... 26

*Bilt-Rite Contractors, Inc. v. Architectural Studio*,
　　866 A.2d 270 (Pa. 2005) .................................................................... 16

*Bortz v. Noon*,
　　729 A.2d 555 (Pa. 1999) ................................................................ 15, 19

*Brimmeier v. Pennsylvania Turnpike Commission*,
　　147 A.3d 954 (Pa. Comwlth. 2016) ...................................................... 25

*Brown v. Blaine*,
　　833 A.2d 1166 (Pa. Comwlth. 2003) .................................................... 11

*CAE Inc. v. Gulfstream Aerospace Corp.*,
　　203 F. Supp. 3d 447 (D. Del. 2016) ..................................................... 14

*Commonwealth v. Golden Gate National Senior Care LLC*,
　　158 A.3d 203 (Pa. Comwlth. 2017) .................................................... 8, 11

*Doherty v. Allstate Indemnity Co.*,
　　No. 15-cv-5165, 2016 WL 5390638 (E.D. Pa. Sept. 27, 2016)............................. 8

*E & L Consulting, Ltd. v. Doman Industries Ltd.*,
　　472 F.3d 23 (2d Cir. 2006)................................................................. 14

*Elliott-Lewis Corp. v. Skanska USA Building, Inc.*,
　　No. 14-cv-3865, 2015 WL 4545362 (E.D. Pa. July 28, 2015) ............................. 16

*Excavation Technologies, Inc. v. Columbia Gas Co.*,
　　985 A.2d 840 (Pa. 2009) ............................................................... 15, 16

*Feingold v. Hendrzak*,
　　15 A.3d 937 (Pa. Super. 2011).............................................................. 7

*Fleetway Leasing Co. v. Wright*,
　　697 A.2d 1000 (Pa. Super. 1997)......................................................... 23

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

*Gindlesperger v. Stayco Construction, Inc.*,
No.785 MDA 2012, 2013 WL 11261985 (Pa. Super. June 24, 2013)...........................25

*Goleman v. York International Corp.*,
No. 11-cv-1328, 2011 WL 3330423 (E.D. Pa. Aug. 3, 2011) ....................................9, 12

*Green v. Wolf*,
176 A.3d 362 (Pa. Comwlth. 2017) ........................................................................24

*Lennon ex rel. Lennon v. Wyeth-Ayerst Laboratories, Inc.*,
No. 1793 EDA 2000, 2001 WL 755944 (Pa. Super. June 14, 2001) ..............................15

*Lutz v. Springettsbury Township*,
667 A.2d 251 (Pa. Comwlth. 1995) ........................................................................26

*McCabe v. Marywood University*,
166 A.3d 1257 (Pa. Super. 2017)........................................................................13, 21

*McKeeman v. Corestates Bank, N.A.*,
751 A.2d 655 (Pa. Super. 2000)............................................................................20

*Peluso v. Kistner*,
970 A.2d 530 (Pa. Comwlth. 2009) ........................................................................23

*Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*,
No. 16-cv-665, 2017 WL 4235773 (E.D. Pa. Sept. 25, 2017)......................................20

*Romeo v. Pittsburgh Assocs.*,
787 A.2d 1027 (Pa. Super. 2001).............................................................................8

*Sharp v. Travelers Personal Security Insurance Co.*,
No. 12 CV 6483, 2014 WL 8863084
(Pa. Ct. Com. Pl. Lackawanna Cty. Mar. 7, 2014) ....................................................24

*Slippery Rock Area School District v. Tremco, Inc.*,
No.15-cv-1020, 2016 WL 3198122 (W.D. Pa. June 9, 2016) ......................................16

*Steinberg v. CVS Caremark Corp.*,
899 F. Supp. 2d 331 (E.D. Pa. 2012) .................................................................10, 13

*Stutzle v. Rhonepoulenc S.A.*,
No. 27608 Oct. Term 2002, 2003 WL 22250424
(Pa. Ct. Com. Pl. Phila. Cty. Sept. 26, 2003)............................................................21

*Thompson's Gas & Electric Service, Inc. v. BP America Inc.*,
691 F. Supp. 2d 860 (N.D. Ill. 2010) ......................................................................19

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

*Unifund v. Sheridan*,
  No. 2012 CV 4944, 2013 WL 10253095
  (Pa. Ct. Com. Pl. Lackawanna Cty. June 24, 2013)........................................ 25

*Villoresi v. Femminella*,
  856 A.2d 78 (Pa. Super. 2004) ....................................................................... 21

*Weiss v. Fritch, Inc.*,
  No. 2332 EDA 2017, 2018 WL 1940109 (Pa. Super. Apr. 25, 2018) ............. 13

*Whitaker v. Herr Foods, Inc.*,
  198 F. Supp. 3d 476 (E.D. Pa. 2016) ...................................................... 15, 20

*Williams v. Nationwide Mutual Insurance Co.*,
  750 A.2d 881 (Pa. Super. 2000)...................................................................... 21

*Yocca v. Pitt. Steelers Sports, Inc.*,
  854 A.2d 425 (Pa. 2004) ............................................................................... 7, 8

**RULES**

Pa. R. Civ. P. 1028.........................................................................................*passim*

Pa. R. Civ. P. 1019......................................................................... 4, 22, 25, 26

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 552........................................................ 16, 17, 18

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## MATTER BEFORE THE COURT

Pursuant to Pennsylvania Rule of Civil Procedure 1028 and Montgomery County Local Civil Rule 1028(c), Defendants Express Scripts Holding Company ("ESHC"), Express Scripts, Inc. ("ESI"), CuraScript, Inc., CuraScript SD,[1] Accredo Health Group, Inc. ("Accredo"), and United BioSource Corporation ("UBC")[2] (each, an "Express Scripts Entity" and collectively, the "Express Scripts Entities"), by and through their undersigned counsel, submit this Memorandum of Law in support of their Preliminary Objections to the Amended Complaint filed by the International Union of Operating Engineers Local 542 ("Plaintiff").  For the reasons set forth below and in their Preliminary Objections, the Express Scripts Entities respectfully request that the Court sustain their Preliminary Objections and dismiss the Amended Complaint as against them with prejudice.

## STATEMENT OF QUESTIONS INVOLVED

1. Are Plaintiff's claims against the Express Scripts Entities under the Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count I) and for negligent misrepresentation (Count II), aiding and abetting/conspiracy (Count III), unjust enrichment (Count IV), breach of contract (Count VI), promissory estoppel (Count VII), breach of the implied covenant of good faith and fair dealing (Count VIII), and declaratory and injunctive relief (Count IX) legally insufficient, thereby requiring dismissal pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(4)?

   Answer: Yes

2. Alternatively, did Plaintiff fail to conform to the rules of this Court by failing to properly plead and/or attach the agreement or agreements on which its claims for negligent misrepresentation (Count II), unjust enrichment (Count IV), breach of contract (Count VI), promissory estoppel (Count VII), and breach of the implied covenant of good faith and fair dealing (Count VIII) are based, thereby requiring the dismissal of these claims pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(2)?

---

[1] The correct corporate name is Priority Healthcare Distribution, Inc.

[2] The Amended Complaint names UBC as a defendant, but that entity ceased to exist in approximately 2013 when UBC became United BioSource LLC.

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Answer: Yes

## **PRELIMINARY STATEMENT**

Plaintiff's lawsuit is a copycat containing nearly identical allegations to those asserted in a federal class action antitrust litigation that Plaintiff's counsel filed against Defendants on behalf of different clients. In both this case and the federal class action, in which Plaintiff is a putative class member, the grievance arises from Defendant Mallinckrodt's[3] purported monopoly power and allegedly exorbitant pricing of the prescription medication Acthar. (*Compare* AC ¶ 4 ("This case does not seek to challenge the lawfulness of Mallinckrodt's monopoly. It seeks to challenge the lawfulness of Mallinckrodt's exercise of its monopoly power by taking actions to maintain and enhance that monopoly power in violation of Pennsylvania law that prescribes [*sic*] such conduct."), *with City of Rockford v. Mallinckrodt*, No. 17-cv-50107 (N.D. Ill.) (the "*Rockford* Litigation"), Second Amended Class Action Complaint, ECF No. 98, at ¶ 4 ("This case does not seek to challenge the lawfulness of Mallinckrodt's monopoly. It seeks to challenge the lawfulness of Mallinckrodt's exercise of its monopoly power by taking actions to maintain and enhance that monopoly power in violation of the antitrust laws.").)[4]

The Express Scripts Entities' Preliminary Objections to Plaintiff's original Complaint in this case highlighted the absence of factual allegations against any Express Scripts Entity and the myriad flaws in Plaintiff's attempt to recast the allegations from the *Rockford* Litigation into claims arising under Pennsylvania law. In response, Plaintiff filed its Amended Complaint,

---

[3] This brief refers to Mallinckrodt ARD, Inc. and Mallinckrodt plc collectively as "Mallinckrodt."

[4] The putative class in the *Rockford* Litigation is defined as "[a]ll third party payors and their beneficiaries in the United States and its Territories that paid for Acthar from August 2007 through the present." *Rockford* Litigation, Second Amended Class Action Complaint, ECF No. 98, at ¶ 165. Plaintiff is a putative class member in that litigation because it alleges that it paid for Acthar between 2011 and 2015. (AC ¶ 22.)

2

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

which seeks to remedy these deficiencies with a series of conclusory allegations.  For example, while Plaintiff's original Complaint repeatedly (and truthfully) alleged that Mallinckrodt unilaterally sets the price of Acthar, Plaintiff's Amended Complaint now alleges—without a shred of factual support—that Mallinckrodt sets the price of Acthar in consultation with the Express Scripts Entities.  (*See infra* p. 11 n.8.)  As further discussed below, Plaintiff utterly fails in its last-ditch effort to salvage its claims against the Express Scripts Entities and, therefore, these claims should be dismissed with prejudice.

As an initial matter, Plaintiff's claims against each Express Scripts Entity remain legally insufficient under Pennsylvania Rule of Civil Procedure 1028(a)(4).  *First*, the UTPCPL claim (Count I) should be dismissed because Plaintiff does not identify any deceptive act by any Express Scripts Entity.  This claim also fails because Plaintiff does not allege facts to show that it suffered damage resulting from reliance on any act that purportedly violates the UTPCPL.

*Second*, Plaintiff's negligent misrepresentation claim (Count II) should be dismissed because this claim is barred by the economic loss doctrine.  In addition, Plaintiff does not allege facts to suggest that any Express Scripts Entity owed it a duty of care relating to Acthar or made a false statement, or that Plaintiff relied on—or suffered damages as a result of its reliance on— any such statement.

*Third*, Plaintiff's aiding and abetting/conspiracy (Count III) and unjust enrichment (Count IV) claims against the Express Scripts Entities should be dismissed because they are predicated on the same deficient theories as the UTPCPL and negligent misrepresentation claims.  Moreover, to the extent Plaintiff bases its unjust enrichment claim on purported duties arising from its contracts with ESI, that claim should also be dismissed because an express contract defines the parameters of the parties' respective duties.

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**Fourth**, Plaintiff's breach of contract claim (Count VI) should be dismissed because Plaintiff does not provide the full text or essential terms of a single contractual provision that allegedly was breached and, therefore, has not alleged facts demonstrating the existence of any contractual duty.  The Amended Complaint also fails to allege facts that could show that any purported contractual duty was breached.  Indeed, Plaintiff alleges it paid the reimbursement rate for Acthar that was set forth in its contracts with ESI.  Moreover, the promissory estoppel (Count VII) and breach of the implied covenant of good faith and fair dealing (Count VIII) claims are based on the same purported, inadequately pleaded duties as the breach of contract claim and should be dismissed for the same reasons.  The implied covenant claim should also be dismissed because that cause of action does not exist under Pennsylvania law.

**Fifth**, the declaratory and injunctive relief claim (Count IX) should be dismissed because Plaintiff has failed to sufficiently allege any of the claims on which this claim for relief is based.

In addition to their legal insufficiency, five of Plaintiff's eight claims against the Express Scripts Entities should be dismissed pursuant to Pennsylvania Rule of Civil Procedure 1028(a)(2) for failure to conform to Pennsylvania Rule of Civil Procedure 1019(i) because these claims are based, in whole or in part, on ESI's contracts to provide pharmacy benefit management ("PBM") services to Plaintiff, and Plaintiff failed to attach those agreements to the Amended Complaint— just as it did when filing the original Complaint.

## RELEVANT FACTUAL ALLEGATIONS[5]

### A.   Mallinckrodt's Alleged Monopoly in the Purported Market for ACTH Drugs

Mallinckrodt manufactures, markets, distributes, and sells Acthar, an injection containing

---

[5] The Express Scripts Entities accept the factual allegations in the Amended Complaint as true only for purposes of their Preliminary Objections.

4

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

adrenocorticotropic hormone ("ACTH").  (AC ¶ 2.)  Mallinckrodt acquired the rights to Acthar in 2014 when it bought Questcor Pharmaceuticals, Inc. ("Questcor"), which obtained those rights in 2001.  (*Id.* ¶¶ 3, 24, 46.)  Among other conditions (*id.* ¶ 42), Acthar is prescribed to treat infantile spasms, a rare seizure disorder (*id.* ¶47).

Acthar is the only therapeutic ACTH product sold in the United States.  (*Id.* ¶ 2.)  According to the Amended Complaint, "Acthar has a 100% share of the market for ACTH drugs in the United States.  No other ACTH drug is FDA-approved for therapeutic use." (*Id.* ¶ 122.)  The alleged "ACTH market is characterized by high barriers to entry." (*Id.* ¶ 123.)

In 2013, Questcor allegedly maintained its monopoly in the purported market for ACTH drugs by acquiring the rights to develop, market, and sell Synacthen (*id.* ¶ 112), "a synthetically derived ACTH medication, which, like Acthar, could be injected intra-muscularly" (*id.* ¶ 109).  Although it has not been approved by the FDA, Synacthen allegedly is used as an alternative to Acthar in other countries.  (*Id.*)  Plaintiff alleges that neither Questcor nor Mallinckrodt ever sought "FDA approval to bring [Synacthen] to market." (*Id.* ¶ 142.)  In January 2017, the Federal Trade Commission ("FTC") sued Mallinckrodt for unlawful monopolistic conduct based on Questcor's acquisition of the Synacthen rights and entered a settlement pursuant to which Mallinckrodt paid $100 million.  (*Id.* ¶ 152.)[6]

As a result of Mallinckrodt's alleged monopoly in the purported market for ACTH drugs and the absence of "competitive constraints" (*id.* ¶ 118), Plaintiff asserts that "Mallinckrodt has been able to raise prices unchecked" (*id.* ¶ 117).  Since 2001, Questcor and Mallinckrodt allegedly have raised the price of Acthar from $40 per vial to $43,658.40 per vial.  (*Id.* ¶¶ 92-96.)

---

[6] No Express Scripts Entity was a defendant in the FTC's lawsuit.

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**B.**     **The Alleged Acthar Distribution Services**
           **Provided by CuraScript SD, Accredo, and UBC**

Plaintiff alleges that CuraScript SD has been the exclusive distributor of Acthar since

Questcor publicly announced its exclusive agreement with CuraScript SD in July 2007.

(*Id.* ¶ 50.)  CuraScript SD receives Acthar from Mallinckrodt and distributes the drug to specialty

pharmacies, including Accredo, which dispense the product to patients.  (*See id.* ¶ 74, Fig. 2.)

Plaintiff further alleges that in July 2007, Questcor began requesting that doctors submit

new Acthar prescriptions through the Acthar Support & Access Program ("ASAP"), which is

administered by UBC.  (*Id.* ¶ 70.)  Specifically, UBC "confirms the patient's insurance coverage

or other source of payment, and then arranges for Acthar to be delivered" to the patient.  (*Id.*

¶ 53.)  The patient signs a form that authorizes "Mallinckrodt reimbursement support personnel

and United BioSource Corporation" to perform certain functions (*id.* ¶ 54 (quoting AC, Ex. A)),

including "reimbursement and coverage support, patient assistance and access programs,

medication shipment tracking, and home injection training" (*id.* ¶ 55.)

**C.**     **ESI Is Plaintiff's Pharmacy Benefit Manager**

Plaintiff alleges that ESI is its pharmacy benefit manager and that, pursuant to the terms

of the parties' PBM Agreements, ESI charged it a discounted rate off of the average wholesale

price ("AWP") of Acthar.  Specifically, Plaintiff alleges that beginning in 2003, Plaintiff

"contracted with Express Scripts to provide pharmacy benefit services, among other things."  (*Id.*

¶ 78.)  Plaintiff further alleges that it "agreed to" a PBM Agreement with ESI in 2012, and that it

later "entered into an ESI PBM Agreement dated June 1, 2015," which "was then updated and

amended in May 2015, and then again in February 2017."  (*Id.* ¶ 79.)

Plaintiff "agreed to pay ESI certain reimbursement rates for specialty pharmacy drugs."

(*Id.* ¶ 84.)  For Acthar, ESI "charged [Plaintiff] at a discounted rate . . . off the AWP, as set forth

6

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

in the ESI PBM Agreement." (*Id.*)  Plaintiff further alleges that Accredo is the "specialty pharmacy" that "dealt with [Plaintiff's] patient members" (*id.* ¶ 70), and that Plaintiff received a larger discount off of AWP than it otherwise would have because Acthar was available "through CuraScript exclusively" rather than "at [what the PBM Agreement purportedly labels] a Participating Pharmacy" (*id.* ¶ 83).

In addition to the above allegations about Plaintiff's relationship with ESI and Plaintiff's Acthar payments, Plaintiff alleges that certain ESI executives made public statements concerning Acthar.  Plaintiff alleges that in 2007, ESI's "Chief Medical Officer Steve Miller stated that '[t]he increase [in the price of Acthar] was a manufacturing decision.  I can't comment on it.'" (*Id.* ¶ 97 (citation omitted).)  Plaintiff further alleges that in 2017, ESI's "Senior Vice President of Supply Chain and Specialty Pharma, Everett Neville, stated . . . '*that [Acthar] is vastly overpriced for the value*.'"  (*Id.* ¶ 100 (emphasis in original) (citation omitted).)

## ARGUMENT

**I.    PLAINTIFF'S CLAIMS AGAINST THE EXPRESS
       SCRIPTS ENTITIES ARE LEGALLY INSUFFICIENT AND
       SHOULD BE DISMISSED PURSUANT TO PA. R. CIV. P. 1028(a)(4)**

"Preliminary objections in the nature of demurrers are proper when the law is clear that a plaintiff is not entitled to recovery based on the facts alleged in the complaint." *Yocca v. Pitt. Steelers Sports, Inc.*, 854 A.2d 425, 436 (Pa. 2004).  "It is well-established that a plaintiff must provide sufficient factual averments in his or her complaint to sustain a cause of action." *Feingold v. Hendrzak*, 15 A.3d 937, 942 (Pa. Super. 2011).  "[W]hen considering a motion for a demurrer, the trial court must accept as true 'all well-pleaded material facts set forth in the complaint and all inferences fairly deducible from those facts.'" *Yocca*, 854 A.2d at 436 (citation omitted).  "[T]he Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion." *Commonwealth v.*

7

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

*Golden Gate Nat'l Senior Care LLC*, 158 A.3d 203, 213 (Pa. Comwlth. 2017).

**A.      The UTPCPL Claim (Count I) Should Be Dismissed**

The UTPCPL prohibits 21 specified unfair or deceptive trade practices. *See id.* at 214 ("Section 3 of the UTPCPL states that '[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined [in Section 2(4)(i)-(xxi) of the UTPCPL] . . . are hereby declared unlawful.'" (alterations in original) (quoting 73 Pa. Stat. § 201-3)). Accordingly, "[i]n order to state a claim under the UTPCPL, a plaintiff must allege one of the 'unfair or deceptive practices' set forth in [Section 2(4)]." *Romeo v. Pitt. Assocs.*, 787 A.2d 1027, 1033 (Pa. Super. 2001). In addition, a private "plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Yocca*, 854 A.2d at 438.

**1.      Plaintiff Does Not Plead Facts Suggesting That Any Express Scripts Entity Engaged in an Act Prohibited By the UTPCPL**

In the Amended Complaint, Plaintiff now bases its deficient UTPCPL claim against the Express Scripts Entities on two categories of purportedly deceptive acts.[7] "A deceptive act is one that is 'likely to deceive a consumer acting reasonably under similar circumstances.'" *Doherty v. Allstate Indem. Co.*, No. 15-cv-5165, 2016 WL 5390638, at *5 (E.D. Pa. Sept. 27, 2016) (quoting *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009)). Because the Amended Complaint does not allege facts to suggest any deceptive conduct,

---

[7] In the original Complaint, Plaintiff based this claim solely on purportedly anticompetitive conduct. Defendants filed preliminary objections to the UTPCPL claim, explaining that anticompetitive conduct does not violate the UTPCPL absent factual allegations of deceptive conduct and that Plaintiff had not, in any event, alleged facts to suggest anticompetitive conduct. (*See* Express Scripts Entities' Preliminary Objections to Plaintiff's Complaint, Doc. 63, at ¶¶ 16-17; Preliminary Objections of Defendants Mallinckrodt ARD Inc. and Mallinckrodt PLC, Doc. 64, at ¶ 17.) Now that Defendants have highlighted that Plaintiff's actual theory underlying its UTPCPL claim is deficient as a matter of law, Plaintiff has repackaged this claim so that it includes deficient allegations of deceptive conduct in furtherance of the same purportedly anticompetitive conduct.

8

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Plaintiff's UTPCPL claim should be dismissed.

(a)     Plaintiff Does Not Allege Deceptive
         Conduct Related to CuraScript's Exclusive
         Distribution of Acthar or UBC's Operation of ASAP

Plaintiff asserts that Defendants failed to disclose that CuraScript would be the exclusive

distributor of Acthar beginning in 2007 and that UBC operates ASAP, and that these failures to

disclose were deceptive as to the source of Acthar or UBC's operation of ASAP.  (*See* AC

¶ 169(a), (b), (c), (f).)  But Plaintiff does not allege any act or statement by any Defendant

concealing either of these relationships.  Nor does Plaintiff allege that any Defendant made any

statement that could have caused Plaintiff to expect that a distributor other than CuraScript

would distribute Acthar or that any entity other than UBC would operate ASAP.  The absence of

such factual allegations on its own defeats Plaintiff's UTPCPL claim based on CuraScript's

exclusive distribution of Acthar and UBC's operation of ASAP.  *See Goleman v. York Int'l*

*Corp.*, No. 11-cv-1328, 2011 WL 3330423, at *8 (E.D. Pa. Aug. 3, 2011) ("A plaintiff must

plead facts alleging a specific deceptive act rather than a general failure to disclose

information.").

Contrary to Plaintiff's assertion that Defendants concealed these relationships, Plaintiff's

own allegations and the exhibits it attached to the Amended Complaint highlight that Defendants

***publicly disclosed*** Questcor's exclusive distribution agreement with CuraScript and the

agreement with UBC concerning ASAP.  (*See, e.g.*, AC ¶ 54 (alleging that patients sign a form

that authorizes "'Mallinckrodt reimbursement support personnel ***and United BioSource***

***Corporation ("UBC")***' . . . to provide Acthar and receive payment, among other things" (quoting

AC, Ex. A) (emphasis added)); *id.* Ex. B, at 1 ("Urgent Product Alert" stating that "***[e]ffective***

***August 1, 2007, Acthar Gel . . . will be available exclusively through Specialty Pharmacy***

***Distribution***" and that "[b]eginning July 16, 2007, hospitals should place all stock orders with

9

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

CuraScript Specialty Distribution" (emphasis in original)); *id.* ¶ 50 ("[O]n July 2, 2007, Mallinckrodt restricted its distribution from three wholesalers, termed Wholesalers 'A', 'B', and 'C' in its 2007 10-K, to just Express Scripts.").) Thus, Plaintiff's own allegations defeat its UTPCPL claim based on CuraScript's exclusive distribution of Acthar and UBC's operation of ASAP. *See Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331, 339 (E.D. Pa. 2012) (statements not deceptive where "the facts the plaintiffs have pled regarding the defendants' actions are consistent with the representations the plaintiffs claim to be deceptive").

> (b) Plaintiff Does Not Allege Deceptive Conduct Related to Acthar AWP
> Increases or Value, or ESI's Provision to Plaintiff of Discounts off AWP

Plaintiff alleges that a statement by ESI's Chief Medical Officer ("CMO") in 2007 that Questcor's decision to raise the price of Acthar was a "manufacturing decision" and that ESI "remained silent about the truth about Acthar's 'value' for years" were deceptive or misleading as to the existence of a purported price-fixing agreement between Questcor—and later Mallinckrodt—and ESI. (*See* AC ¶ 169(d), (e), (f).) In addition, Plaintiff alleges that ESI "misled Plaintiff and deceived Plaintiff about its approval of Acthar and the benefits of Acthar as a valuable specialty drug 'worth' what" Plaintiff was being charged (*id.* ¶ 169(e)), and that ESI began offering discounts for Acthar only after it made statements in 2017 about Acthar being overpriced without explaining why the discounts for Acthar were "far less than the discounts offered for either brands or generics" (*id.* ¶ 169(f)).

As with its other UTPCPL allegations, Plaintiff avers no facts to suggest that any Express Scripts Entity engaged in deceptive conduct. ***First***, Plaintiff alleges no facts to suggest that the price increases for Acthar were not a "manufacturing decision." Plaintiff's new theory that Questcor—later Mallinckrodt—and one or more unspecified Express Scripts Entities jointly decided the prices at which Questcor and Mallinckrodt sold Acthar is utterly implausible.

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Indeed, contrary to its bare assertion of such a conspiracy, *see Brown v. Blaine*, 833 A.2d 1166, 1173 (Pa. Comwlth. 2003) ("bare allegations" of conspiracy are insufficient where plaintiff "does not allege facts indicating a conspiracy or an agreement to act unlawfully"), Plaintiff repeatedly pleads facts illustrating that ***Questcor and Mallinckrodt unilaterally*** set the price of Acthar.[8] Moreover, Plaintiff alleges that "Mallinckrodt has encountered no competitive constraints" (AC ¶ 118) and thus "has been able to raise prices unchecked" (*id.* ¶ 117).[9] Accordingly, the alleged conspiracy is implausible because Mallinckrodt would have no reason to involve any other entity in its pricing decisions given its alleged 100% monopoly over the purported ACTH market. (*See id.* ¶ 116 ("At all relevant times material to this case,

---

[8] *See, e.g.*, AC ¶ 108 ("Through *its exorbitant Acthar price increases, Mallinckrodt* was able to grow its revenue from Acthar . . . ." (emphasis added)); *id.* ¶ 116 ("None of the vast *price increases taken by Mallinckrodt* between 2007 and the present have caused a significant loss of sales." (emphasis added)); *id.* ¶ 117 ("*Mallinckrodt has* repeatedly and profitably *raised Acthar's price* . . . ." (emphases added)); *id.* ("*Mallinckrodt has been able to raise prices* unchecked . . . ." (emphasis added)). For the reasons stated in the above paragraph, Plaintiff's baseless shift from the factual allegations in the original Complaint that Mallinckrodt unilaterally set the AWPs of Acthar to its conclusory assertions in the Amended Complaint that Mallinckrodt involved ESI in these pricing decisions cannot salvage Plaintiff's UTPCPL claim. (*Compare, e.g.*, Compl. ¶ 82 ("*Mallinckrodt set the average wholesale prices* of Acthar used by Express Scripts for reimbursement." (emphasis added)), *with* AC ¶ 84 ("In direct consultation with Express Scripts in the summer of 2007, Mallinckrodt set the inflated average wholesale price of Acthar used by Express Scripts for reimbursement.").)

[9] Plaintiff's allegations concerning Daraprim (AC ¶¶ 88-91) likewise fail to demonstrate any agreement between Mallinckrodt and ESI. Plaintiff speculates that ESI could have halted Acthar price increases because it supposedly was successful in doing so for a different specialty drug, Daraprim. (*See id.* ¶¶ 88-90); *see also Golden Gate*, 158 A.3d at 213 (the court "need not accept as true . . . unwarranted inferences from facts" (citation omitted)). However, as Plaintiff alleges, ESI was only able to slow Daraprim's price increases by working with another manufacturer to develop a low-cost alternative to Daraprim. (AC ¶¶ 89-91.) Here, by contrast, Plaintiff alleges that creating an alternative to Acthar is not feasible because of the difficulty of developing ACTH drugs and receiving FDA approval. (*See id.* ¶¶ 121-24); *see also 412 N. Front St. Assocs. v. Spector Gadon & Rosen, P.C.*, 151 A.3d 646, 657 (Pa. Super. 2016) (affirming dismissal of breach of contract claim because allegations of causal harm were "conclusory," given that "Appellants failed to assert therein what practicable, good-faith attempts could have plausibly resulted in a superior outcome to the one obtained"). It is also notable that in the *Rockford* Litigation, Plaintiff's counsel truthfully alleged that the FDA granted Acthar orphan drug status, which gave Mallinckrodt market exclusivity preventing development of a competing drug to treat infantile spasms. *See Rockford* Litigation, Memorandum of Law in Support of Express Scripts Entities' Motion to Dismiss, ECF No. 105, at 2, 5 & n.6, 12-13, 15 n.17. For whatever reason, Plaintiff's counsel omitted that truthful allegation in this case.

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Mallinckrodt possessed monopoly power—the ability to profitably raise price significantly above competitive levels, without losing significant sales—in the relevant product market.").)

**Second**, Plaintiff does not allege that ESI made any statement about "its approval of Acthar," the "benefits of Acthar," or Acthar's "worth" or "value" (AC ¶ 169(e), (f))—other than a statement in 2017 that Acthar was overpriced by Mallinckrodt (*see id.* ¶¶ 100-01. And even if ESI made no public statements before 2017 about Acthar being overpriced, that silence cannot be deceptive unless ESI made some contradictory statement, such as a statement that the AWPs for Acthar were worth the value that the drug provided. *See Goleman*, 2011 WL 3330423, at *8 ("A plaintiff must plead facts alleging a specific deceptive act rather than a general failure to disclose information."). Plaintiff has alleged no such statement.[10]

**Third**, Plaintiff's false allegation that ESI only began to offer discounts for Acthar beginning in 2017 directly contradicts its factual allegation that "[f]or Acthar, [it was] charged . . . at a discounted rate . . . off the AWP, as set forth in the ESI PBM Agreement for all years between 2012 and the present." (AC ¶ 84.) And Plaintiff does not allege any statement by ESI about the price disparity between Acthar and brand or generic drugs—which also would have been evident from the PBM Agreements insofar as the alleged disparity concerns the discount off AWP agreed to by Plaintiff and ESI—that could have caused any confusion "as to the reasons for, existence of, or amounts of the Acthar price reductions." (*Id.* ¶ 169(f).)

### 2. Plaintiff Does Not Plead Facts Suggesting That It Relied On Any Express Scripts Entity's Allegedly Prohibited Conduct to Its Detriment

A court should grant a demurrer to a UTPCPL claim if the complaint does "not allege

---

[10] To the extent Plaintiff bases the UTPCPL claim on Acthar being listed as a "specialty drug" (AC ¶ 169(e)), Plaintiff has not alleged facts—e.g., how the PBM Agreements define "specialty drugs"—to suggest that including a drug on a defined list in an agreement implies anything about the AWP set by the manufacturer.

12

facts supporting the conclusion that the plaintiff justifiably relied on" conduct prohibited by the UTPCPL, and also suffered harm resulting from that conduct. *Weiss v. Fritch, Inc.*, No. 2332 EDA 2017, 2018 WL 1940109, at *8 n.10 (Pa. Super. Apr. 25, 2018) (affirming dismissal of UTPCPL claim because plaintiff "did not allege facts supporting a conclusion that he justifiably relied on the advertising statements indicating that [defendant] could detect with 100% accuracy when his tank would fail"). Accordingly, when a plaintiff fails to plead facts showing that its alleged harm resulted from reliance on an act prohibited by the UTPCPL, or alleges facts that show its harm resulted from another cause, its UTPCPL claim should be dismissed. *See McCabe v. Marywood Univ.*, 166 A.3d 1257, 1263 (Pa. Super. 2017) (affirming dismissal of UTPCPL claim because plaintiff "has not shown that she suffered harm as a result of her reliance [on] the alleged deception of [defendant]. Rather, [her] harm[] come[s] from her decision to transfer schools." (first alteration in original) (citation omitted)).

Here, Plaintiff does not plead facts to suggest that it ***relied on*** any Express Scripts Entity's allegedly prohibited conduct to its detriment. ***First***, Plaintiff does not allege that it read, heard, or was otherwise aware of any purportedly deceptive statement made by an Express Scripts Entity; thus, Plaintiff cannot have relied on any such statement. *See Steinberg*, 899 F. Supp. 2d at 341 (holding plaintiff failed to sufficiently allege justifiable reliance and dismissing UTPCPL claims because plaintiff "has failed to allege that he was aware of the defendants' [purportedly deceptive] representations in the Notice of Privacy Practices and Code of Conduct"). Specifically, Plaintiff does not allege that before deciding to reimburse for Acthar in 2011, it read, heard, or was even aware of the ASAP form, Mallinckrodt's announcement in 2007 of its distribution agreement with CuraScript, or the 2007 statement by ESI's CMO that the increase in the price of Acthar was a manufacturing decision.

13

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**Second**, based on Plaintiff's factual allegations, none of the allegedly prohibited conduct could conceivably have caused Plaintiff to pay "inflated" (AC ¶ 84) AWPs for Acthar. Rather, Mallinckrodt's alleged monopoly is the only conceivable cause of the "inflated" AWPs for Acthar. Any conduct on the part of an Express Scripts Entity in the distribution of Acthar—or the purported concealment of any distribution relationship—cannot have enhanced Mallinckrodt's ability to raise the AWPs for Acthar because the method of distribution cannot strengthen Mallinckrodt's alleged monopoly. In other words, the method Mallinckrodt chose for distributing Acthar does not make it more difficult for another pharmaceutical company to develop a competing product. *See E & L Consulting, Ltd. v. Doman Indus. Ltd.*, 472 F.3d 23, 29 (2d Cir. 2006) (exclusive distribution agreements "provide[] no monopolistic benefit to [the monopolist] that it does not already enjoy and would not continue to enjoy" absent the exclusive agreement); *see also CAE Inc. v. Gulfstream Aerospace Corp.*, 203 F. Supp. 3d 447, 455 (D. Del. 2016) ("One reason why exclusive agreements between a supplier and a service-provider are generally permissible is that they tend to have no greater anticompetitive effect than a situation in which [the supplier] . . . elects to move the disputed services in-house."). Moreover, Mallinckrodt's alleged monopoly renders implausible any "scheme" pursuant to which Mallinckrodt would involve any Express Scripts Entity in Mallinckrodt's pricing decisions because Mallinckrodt's alleged monopoly allows it to set the price of Acthar unencumbered by competitive constraints. (*See* AC ¶ 118 ("Mallinckrodt has encountered no competitive constraints on its ability to repeatedly increase Acthar's price . . . .").) Thus, because the only conceivable causes of the "inflated" AWPs for Acthar are Mallinckrodt's alleged monopoly power and its unilateral decision to raise the price of the drug, the UTPCPL claim should be dismissed for this reason too.

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**B.**     **The Negligent Misrepresentation Claim (Count II) Should Be Dismissed**

A negligent misrepresentation claim requires factual allegations showing: "(1) a misrepresentation of a material fact; (2) made under circumstances in which the misrepresenter ought to have known its falsity; (3) with an intent to induce another to act on it; and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Bortz v. Noon*, 729 A.2d 555, 561 (Pa. 1999). "Moreover, like any action in negligence, there must be an existence of a duty owed by one party to another." *Id.*

Plaintiff's negligent misrepresentation claim is legally deficient for multiple reasons. As an initial matter, its claim is barred by the economic loss doctrine because Plaintiff alleges only economic injuries. In addition, Plaintiff fails to allege facts to suggest that any Express Scripts Entity owed it a duty of care relating to Acthar or made a false statement, or that Plaintiff relied on any misrepresentation to its detriment.

**1.     The Economic Loss Doctrine Bars the Negligent Misrepresentation Claim**

"[T]he economic loss doctrine generally precludes recovery in negligence actions for injuries which are solely economic." *Excavation Techs., Inc. v. Columbia Gas Co.*, 985 A.2d 840, 841 (Pa. 2009). "[T]he economic loss doctrine bars claims for negligent misrepresentation." *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 491 (E.D. Pa. 2016) (citation omitted); *see also Excavation Techs.*, 985 A.2d at 841-42 (affirming dismissal of negligent misrepresentation claim based on economic loss doctrine); *Lennon ex rel. Lennon v. Wyeth-Ayerst Labs., Inc.*, No. 1793 EDA 2000, 2001 WL 755944, at *4 (Pa. Super. June 14, 2001) (unpublished table decision) (same).

Here, Plaintiff's negligent misrepresentation claim is barred by the economic loss doctrine because Plaintiff alleges only an economic loss—i.e., that it allegedly "overpaid for the Acthar because of the misrepresentations." (AC ¶ 191.) Plaintiff does not allege any physical or

property damage. Accordingly, the negligent misrepresentation claim should be dismissed for this reason alone.

The Pennsylvania Supreme Court has applied a narrow exception to the economic loss doctrine for "claims of negligent misrepresentation sounding under Section 552" of the Restatement (Second) of Torts. *Excavation Techs.*, 985 A.2d at 843 (quoting *Bilt-Rite Contractors, Inc. v. Architectural Studio*, 866 A.2d 270, 288 (Pa. 2005)). Relevant here, the Pennsylvania Supreme Court adopted Section 552 "as the law in Pennsylvania in cases where information is negligently supplied by one in the business of supplying information, such as an architect or design professional." *Bilt-Rite*, 866 A.2d at 287; *see also id.* ("Section 552 imposes a duty of reasonable care upon the supplier of professional information for use by others."). Thus, following *Bilt-Rite*, Pennsylvania courts have applied this exception to the economic loss doctrine only when the defendant's business is selling information, and not to those defendants that supply information that is ancillary to the products or services they sell. *See Slippery Rock Area Sch. Dist. v. Tremco, Inc.*, No. 15-cv-1020, 2016 WL 3198122, at *15 (W.D. Pa. June 9, 2016) (*Bilt-Rite* exception did not apply because "the information allegedly provided by defendants to plaintiff, i.e., the bidding specifications, resulted in plaintiff paying defendants more for defendants' products and [general contracting] services. In other words, the information supplied was ***incidental*** to defendants selling to plaintiff its products at an increased cost." (emphasis in original)); *Elliott-Lewis Corp. v. Skanska USA Bldg., Inc.*, No. 14-cv-3865, 2015 WL 4545362, at *5 (E.D. Pa. July 27, 2015) ("The sale of a product is fundamentally different than the sale of information, even if the seller provides information about the product to consummate the sale.") (collecting cases refusing to apply exception where defendants' business was selling products or services rather than information); *see also Excavation Techs.*, 985 A.2d

16

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

at 843 ("[Appellant's] complaint fails to state a claim within the parameters of Section 552(1) and (2) because [appellee] is not a defendant who is akin to the architect in *Bilt-Rite* who was a professional information provider." (alterations in original) (citation omitted)).

Plaintiff has not alleged facts to suggest that the *Bilt-Rite* exception applies here because Plaintiff does not—and cannot—allege that ESI's, or any other Express Scripts Entity's, business is to sell information about drugs. To the contrary, Plaintiff alleges that ESI "provide[s Plaintiff] with pharmacy benefit management services" (*id.* ¶ 80), which include "retail pharmacy claims processing, formulary management, utilization management and home delivery pharmacy services" (*id.* ¶ 59). Thus, as alleged, to the extent that ESI provides information about drug value and pricing, providing that information is ancillary to the provision of PBM services, and the *Bilt-Rite* exception to the economic loss doctrine does not apply.

Moreover, Plaintiff has not alleged facts to state a claim under Section 552(1) because, as more fully explained below (*see infra* pp. 18-20), Plaintiff has not alleged facts to show that ESI has "supplie[d] false information" or that Plaintiff suffered "pecuniary loss caused . . . by [its] justifiable reliance upon the information." Restatement (Second) of Torts § 552(1). Accordingly, even if ESI were considered a professional information provider, Plaintiff's claim would still be barred by the economic loss doctrine.

### 2. Plaintiff Does Not Plead Facts Suggesting That Any Express Scripts Entity Owed It a Duty of Care Relating to Acthar

Even ignoring the economic loss doctrine, Plaintiff still fails to state a negligent misrepresentation claim because it does not allege facts to suggest that any Express Scripts Entity owed it a duty of care relating to Acthar. Plaintiff asserts the following about the source of the purported duty of care:

> Defendants knew or should have known of the falsity of their misrepresentations, especially as to the purported value of Acthar. Mallinckrodt bought the drug[] for

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

> $100,000 when it cost only $40 [per vial].  And Express Scripts [is] in the
> business of understanding the value of drugs in order to make recommendations
> to its clients, like Plaintiff.  Thus, Defendants, having spoken about the purported
> value of Acthar in relation to i[t]s high pricing had a duty to speak the truth.

(AC ¶ 183.)

These allegations are insufficient to allege a legally cognizable duty of care because, as

discussed above (*see supra* pp. 15-17), ESI cannot incur a duty under Section 552 of the

Restatement (Second) of Torts as a result of the nature of its "business."  In addition, for the

reasons discussed below (see *infra* pp. 18-20), Plaintiff does not allege facts to suggest any

misrepresentation—much less a misrepresentation Plaintiff heard or relied on—by any Express

Scripts Entity about the value of Acthar that could have given rise to a subsequent duty to speak.

### 3.   Plaintiff Does Not Plead Facts Suggesting a Misrepresentation or Justifiable Reliance

In the Amended Complaint, Plaintiff bases its negligent misrepresentation claim against

the Express Scripts Entities on four purported misrepresentations, each of which is insufficient to

sustain its claim:  (1) Defendants represented that "the AWP-based prices for

Acthar . . . represented a calculation of real and fact-based prices for their drugs, [] that they

represented the actual value of the product in the marketplace[, and that] Defendants called these

prices 'average wholesale prices' and when they knew they were not" (AC ¶ 179); (2) in 2007,

ESI's CMO said that the price increase for Acthar was "a manufacturing decision" (*id.* ¶ 181);

(3) the ASAP forms "were made to appear as if" an entity other than an Express Scripts Entity

"was conducting the [ASAP] program" (*id.*); and (4) "[i]n including Acthar among its list of

'specialty drugs' . . . [ESI] intentionally or negligently placed Acthar under a 'special' list so that

Plaintiff would be deceived by relying upon such classification, and higher pricing" (*id.*).

The negligent misrepresentation claim should be dismissed because Plaintiff does not

allege facts to suggest that any Express Scripts Entity made a misrepresentation,[11] or that Plaintiff relied on any purported misrepresentation to its detriment. ***First***, the Amended Complaint does not identify any statement made to Plaintiff by any Express Scripts Entity regarding the price of Acthar being based on a "calculation of real and fact-based prices." Nor does it allege any facts to suggest that the AWPs that—pursuant to the PBM Agreements— formed the basis of Plaintiff's reimbursement rate for Acthar were false. To the contrary, the Amended Complaint alleges that the PBM Agreements expressly set the reimbursement rate for Acthar at a specified percentage discount off AWP, which is exactly what Plaintiff alleges it paid. (*See id.* ¶ 84 ("For Acthar, Mallinckrodt charged [Plaintiff] at a discounted rate . . . off the AWP, as set forth in the ESI PBM Agreement.").) And Plaintiff's allegation that the AWP of Acthar was too high does not render "false" or not "fact-based" the agreed-upon reimbursement rate set forth in the PBM Agreements. *See Thompson's Gas & Elec. Serv., Inc. v. BP Am. Inc.*, 691 F. Supp. 2d 860, 870 (N.D. Ill. 2010) ("The fact that Defendants were offering propane for sale at inflated prices does not mean those prices were somehow 'false.'"). Accordingly, this allegation fails to sufficiently allege a misrepresentation or that Plaintiff relied on a misrepresentation.

***Second*** and ***third***, for the reasons discussed above (*see supra* pp. 9-11), Plaintiff has failed to allege facts to show that the statement by ESI's CMO and the ASAP forms were false, or that Plaintiff relied on them to its detriment.

***Fourth***, Plaintiff does not allege facts to show that including Acthar on a list of "specialty drugs" in the PBM Agreements that Plaintiff and ESI negotiated was—or even could have

---

[11] For this reason, the negligent misrepresentation claim also fails for lack of factual allegations suggesting that "the misrepresenter ought to have known [of a statement's] falsity" or "inten[ded] to induce another to act on" a purported misrepresentation. *Bortz*, 729 A.2d at 561.

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

been—false. Notably, Plaintiff does not allege how the PBM Agreements define "specialty drugs"[12] or otherwise allege how including Acthar in a specialty drugs list could have been false.

### C.     The Aiding and Abetting/Conspiracy (Count III) and Unjust Enrichment (Count IV) Claims Should Be Dismissed

Plaintiff's aiding and abetting/conspiracy and unjust enrichment claims require that its claims for the torts underlying these causes of action be sufficiently pled. *See Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, No. 16-cv-665, 2017 WL 4235773, at *11 (E.D. Pa. Sept. 25, 2017) ("[T]here can be no claim for aiding and abetting unless plaintiff has also alleged a viable claim for the underlying tort." (alteration in original) (citation omitted)); *Whitaker*, 198 F. Supp. 3d at 493 ("Where the unjust enrichment claim rests on the same improper conduct as the underlying tort claim, the unjust enrichment claim will rise or fall with the underlying claim."); *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 660 (Pa. Super. 2000) ("Because we have concluded that preliminary objection was properly granted with regard to the conversion claim, there can be no cause of action for civil conspiracy here based on that claim.").

Here, Plaintiff's aiding and abetting/conspiracy and unjust enrichment claims should be dismissed because they rely on the same alleged misconduct as Plaintiff's deficient UTPCPL and negligent misrepresentation claims. Specifically, the aiding and abetting/conspiracy and unjust enrichment claims are based on "a common design pursuant to which Defendants carried out their tortious acts of negligently misrepresenting the truth about Acthar and their exclusive arrangements, and the acts or practices in violation of the UTPCPL." (AC ¶ 196 (aiding and abetting/conspiracy claim)); *see id.* ¶ 210 (unjust enrichment claim rests on the same purported "conduct [that allegedly] violated state consumer fraud law, as well as the common law of

---

[12] As with the original Complaint and notwithstanding Defendants' preliminary objections to that Complaint on this ground, Plaintiff did not attach either PBM Agreement to the Amended Complaint.

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Pennsylvania").)[13]  Thus, these claims should be dismissed because Plaintiff has not alleged a

viable claim under the UTPCPL or for negligent misrepresentation.

    Moreover, to the extent Plaintiff bases its unjust enrichment claim on ESI's purported

failure to "fulfill[] its obligation to contain costs" (*id.* ¶ 209), the unjust enrichment claim fails

because Plaintiff alleges that duty arises from the PBM Agreements (*see infra* p. 22).  *See*

*Villoresi v. Femminella*, 856 A.2d 78, 84 (Pa. Super. 2004) (stating "[w]here an express contract

already exists to define the parameters of the parties' respective duties, the parties may avail

themselves of contract remedies and an equitable remedy for unjust enrichment cannot be

deemed to exist," and affirming grant of preliminary objections to unjust enrichment claim

because "the parties' transaction was delineated within the confines of the written option

agreement").

## D.   The Breach of Contract Claim (Count VI) Should Be Dismissed

    "[T]hree elements are necessary to plead a cause of action for breach of contract: (1) the

existence of a contract, including its essential terms; (2) a breach of the contract; and,

(3) resultant damages."  *McCabe*, 166 A.3d at 1262 (alteration in original) (citation omitted).  An

allegation that a duty arises from a contract is a legal conclusion that should be disregarded in the

absence of the full text of the contract or all relevant provisions that purportedly give rise to the

allegedly breached duty.  *See Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 884 (Pa.

Super. 2000) (affirming dismissal of breach of contract claim that was "fatally flawed" because

---

[13] To the extent Plaintiff bases its aiding and abetting/conspiracy or unjust enrichment claim on purportedly anticompetitive conduct, such a claim would fail because there is no Pennsylvania law cause of action for damages for alleged antitrust violations. *See Stutzle v. RhonePoulenc S.A.*, No. 27608 Oct. Term 2002, 2003 WL 22250424, at *1-2 (Pa. Ct. Com. Pl. Phila. Cty. Sept. 26, 2003) (dismissing unjust enrichment claim where purportedly wrongful conduct "amounts to an antitrust violation" because "the Pennsylvania legislature and the courts have not created a cause of action for damages sustained as a result of the antitrust violations").

complaint "merely assert[ed] that the duty exists without demonstrating how the duty arises" and did not "cite[] to pertinent contractual language that would establish a duty on the [defendants] promptly to pay 'undisputed amounts' of UM or UIM benefits" or "attach the pertinent parts of the insurance policies to their complaint"); *see also* Pa. R. Civ. P. 1019(i) ("When any claim or defense is based upon a writing, the pleader shall attach a copy of the writing, or the material part thereof . . . .").

Here, Plaintiff fails to allege the essential terms of any contract that would establish the purported contractual duties that ESI allegedly breached, or facts to support the conclusory assertion that ESI breached a purported duty.

***First***, Plaintiff fails to adequately plead a breach of contract claim based on ESI's alleged "failure to provide cost containment services either through nonfeasance or malfeasance." (AC ¶ 223.)  Plaintiff merely states the legal conclusion that through its purported "failure" regarding this phrase that Plaintiff includes in quotations but does not cite or define, ESI "breached," "repudiated its obligations under," and "is in default of" the PBM Agreements.  (*Id.*) But Plaintiff does not attach either PBM Agreement or the relevant provisions of either PBM Agreement, nor does Plaintiff quote any contractual provision or other source of any duty—or provide any context for its allegation.  Further, not only does Plaintiff fail to allege any contractual provision sufficient to create a binding obligation, Plaintiff also does not allege facts to show that ESI breached any such obligation.  Indeed, Plaintiff actually alleges that the PBM Agreements expressly set the reimbursement rate for Acthar at a specified percentage discount off AWP, which is exactly what Plaintiff alleges it paid.  (*See id.* ¶ 84.)  Moreover, Plaintiff's assertion that ESI "agreed with Mallinckrodt to inflate the AWPs for Acthar" (*id.* ¶ 223) is not only unsupported by any factual allegation, it is contrary to the numerous instances in which

22

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee =$0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Plaintiff alleges that Mallinckrodt unilaterally sets the price for Acthar (*see supra* p. 11 & n.8).

**Second**, Plaintiff fails to state a breach of contract claim based on its allegation that "ESI also diverted monies from Plaintiff that should have been paid as rebates." (AC ¶ 223.) Plaintiff apparently bases this conclusory allegation on the definition of "rebates" in the PBM Agreement and Plaintiff's additional conclusory assertion that "ESI did not pay to [Plaintiff] all the 'rebates . . . directly attributable to the utilization of' the Acthar paid for by Plaintiff." (*Id.* ¶ 89 (quoting definition of rebates from PBM Agreement) (alteration in original).) But Plaintiff does not meet its burden to quote the full provision of the PBM Agreement that purportedly required ESI to pay Plaintiff all rebates directly attributable to the use of Acthar; rather, it merely quotes part of the definition of rebates. In any event, Plaintiff does not allege facts to show that it received less than it was entitled to—e.g., by alleging how much it received in amounts tied to rebates and how much it should have received.

**Third**, to the extent Plaintiff brings its breach of contract claim against any Express Scripts Entity other than ESI, that claim should be dismissed because ESI is the only Express Scripts Entity that allegedly has a contractual relationship with Plaintiff. *See Fleetway Leasing Co. v. Wright*, 697 A.2d 1000, 1003 (Pa. Super. 1997) ("In Pennsylvania, a person who is not a party to a contract cannot be held liable for a breach by one of the parties to a contract.").

**E.      The Promissory Estoppel Claim (Count VII) Should Be Dismissed**

A claim for promissory estoppel requires the following elements: "(1) the promisor made a promise that would reasonably be expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise." *Peluso v. Kistner*, 970 A.2d 530, 533 (Pa. Comwlth. 2009).

Plaintiff's promissory estoppel claim is based on ESI's purported refusal to "fulfill its

23

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

representations and promises concerning the terms and obligations under the ESI PBM Agreement, including the promise of cost containment with respect to Acthar." (AC ¶ 229.) Because the promissory estoppel claim is based on the same alleged contractual obligations and purported breach as the breach of contract claim, it should be dismissed for the same reasons.

**F.**   <u>**The Breach of the Implied Covenant Claim (Count VIII) Should Be Dismissed**</u>

Plaintiff's implied covenant of good faith and fair dealing claim should be dismissed for multiple reasons. *First*, Pennsylvania "does not recognize an independent cause of action for breach of the implied duty of good faith and fair dealing." *Sharp v. Travelers Pers. Sec. Ins. Co.*, No. 12 CV 6483, 2014 WL 8863084, at *5 n.5 (Pa. Ct. Com. Pl. Lackawanna Cty. Mar. 7, 2014) (collecting cases). *Second*, and in any event, Plaintiff's claim is based on the same faulty allegations as its breach of contract claim (*see* AC ¶ 235) and fails for the same reasons.

**G.**   <u>**The Declaratory and Injunctive Relief Claim (Count IX) Should Be Dismissed**</u>

"The required elements of injunctive relief are: a clear right to relief; an urgent necessity to avoid an injury that cannot be compensated in damages; and a finding that greater injury will result from refusing, rather than granting, the relief requested." *Green v. Wolf*, 176 A.3d 362, 365 n.5 (Pa. Comwlth. 2017). Because Plaintiff has failed to sufficiently allege any of its substantive claims, its claim for injunctive relief also fails. *See Abrams v. Toyota Motor Credit Corp.*, No. 071049, 2001 WL 1807357, at *12 (Pa. Ct. Com. Pl. Phila. Cty. Dec. 5, 2001) (sustaining preliminary objections to injunctive relief claim because "[h]aving dispensed with all of the underlying substantive claims, it does not appear that Abrams would have a 'clear' right to relief or suffer imminent and irreparable harm, which are two requisite elements for being entitled to an injunction").

Plaintiff's declaratory judgment claim likewise fails. Plaintiff requests that the Court declare that Defendants acted "unlawful[ly] under the UTPCPL and/or the common law of

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee =$0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

negligent misrepresentation." (AC ¶ 240.) Because Plaintiff has failed to sufficiently allege

these claims, Plaintiff also fails to state a claim for declaratory judgment. *See Gindlesperger v.*

*Stayco Constr., Inc.*, No.785 MDA 2012, 2013 WL 11261985, at \*5-6 (Pa. Super. June 24, 2013)

(unpublished table decision) (affirming grant of demurrer to declaratory relief claim seeking

declaration that reference to warranty in contract "shall be null and void" because complaint

failed to allege facts to support allegation that warranty was null and void).

## II.   ALTERNATIVELY, PLAINTIFF'S CLAIMS AGAINST THE EXPRESS SCRIPTS ENTITIES FAIL TO CONFORM TO LAW OR RULE OF COURT AND SHOULD BE DISMISSED PURSUANT TO PA. R. CIV. P. 1028(a)(2)

Pennsylvania Rule of Civil Procedure 1028(a)(2) provides that a party may object to a

pleading for failure to "conform to law or rule of court." Pa. R. Civ. P. 1028(a)(2). "When any

claim or defense is based upon a writing, the pleader shall attach a copy of the writing, or the

material part thereof . . . ." Pa. R. Civ. P. 1019(i). Accordingly, claims that are based on written

contracts should be dismissed for failure to conform to law or rule of court if the plaintiff does

not attach the contract to the complaint. *See Brimmeier v. Pa. Tpk. Comm'n*, 147 A.3d 954, 968

(Pa. Comwlth. 2016) (striking breach of contract claim under Rules 1019(i) and 1028(a)(2)

because plaintiff "failed to attach a copy of [a written agreement] to the Complaint"), *aff'd* 161

A.3d 253 (Pa. 2017); *Unifund v. Sheridan*, No. 2012 CV 4944, 2013 WL 10253095, at \*7 (Pa.

Ct. Com. Pl. Lackawanna Cty. June 24, 2013) (invoking Rules 1019(i) and 1028(a)(2) to dismiss

breach of contract claim and "[a]ll of the other count or counts herein . . . which reference the

written cardholder's agreement or credit card application neither of which was ever attached to

any complaint or amended complaint").

Here, Plaintiff's negligent misrepresentation, unjust enrichment, breach of contract,

promissory estoppel, and implied covenant claims all rely on at least one of the PBM

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Agreements between ESI and Plaintiff. (*See* AC ¶ 187 (alleging in negligent misrepresentation count that "all Defendants communicated these false prices directly to [Plaintiff] for the Acthar sold" purportedly through the PBM Agreements); *id.* ¶ 205 (alleging in unjust enrichment count that Plaintiff "at all times had a reasonable expectation that Express Scripts' conduct would result in affordable services, including cost containment"); *id.* ¶ 221 (alleging in breach of contract count that "[t]his count alleges breach of the ESI PBM Agreement"); *id.* ¶ 228 (alleging in promissory estoppel count that Plaintiff "seeks enforcement of ESI's promise to continue with ESI's obligations under the ESI PBM Agreement"); *id.* ¶ 236 (alleging in implied covenant count that ESI breached the covenant implied in the ESI PBM Agreement).) Thus, because Plaintiff did not attach these agreements to the Amended Complaint, these claims should be dismissed under Pennsylvania Rules of Civil Procedure 1019(i) and 1028(a)(2).[14]

## RELIEF SOUGHT

For the foregoing reasons, the Express Scripts Entities respectfully request that the Court sustain their Preliminary Objections and dismiss all claims against them in the Amended Complaint with prejudice. *See Lutz v. Springettsbury Township*, 667 A.2d 251, 254 (Pa. Comwlth. 1995) (affirming dismissal without leave to amend because "the initial pleadings reveal that the prima facie elements of the claim cannot be established and that the complaint's defects are so substantial that amendment is not likely to cure them").

---

[14] Plaintiff failed to attach the PBM Agreements to the Amended Complaint despite the fact that the Express Scripts Entities filed preliminary objections to Plaintiff's original Complaint for this exact reason, and informed Plaintiff it could file these agreements under seal if it were to attach them to an amended complaint. (*See* Express Scripts Entities' Preliminary Objections to Plaintiff's Complaint, Doc. 63, at ¶¶ 64-68 & n.12 ("If Plaintiff files the aforementioned contracts with an amended complaint, it should be cognizant of any confidentiality provisions in those agreements, and file them under seal if necessary.").) Any argument that Plaintiff could not attach these agreements to the Amended Complaint because they are confidential would be frivolous. This Court has granted motions to file under seal on numerous occasions. *See, e.g., Aetna Health Mgmt., LLC v. Davita, Inc.*, No. 2017-07795, Doc. 20 (Pa. Ct. Com. Pl. Montgomery Cty. May 24, 2017) (granting motion to seal confidential agreement).

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Dated:  September 17, 2018

Respectfully submitted,

By:  /s/ Joanne C. Lewers
Joanne C. Lewers (ID No. 81195)
Victoria L. Andrews (ID No. 321143)
DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Facsimile (215) 988-2757

Matthew M. Martino (admitted *pro hac vice*)
Michael H. Menitove (admitted *pro hac vice*)
Evan R. Kreiner (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
Telephone: (212) 735-3000
matthew.martino@skadden.com
michael.menitove@skadden.com
evan.kreiner@skadden.com

*Attorneys for Defendants Express Scripts Holding*
*Company, Express Scripts, Inc., CuraScript, Inc.,*
*CuraScript SD, Accredo Health Group, Inc., and United*
*BioSource Corporation, now known as United*
*BioSource LLC*

27

Case# 2018-14059-82 Docketed at Montgomery County Prothonotary on 09/17/2018 3:41 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## <u>CERTIFICATE OF SERVICE</u>

Joanne C. Lewers hereby certifies that a true and correct copy of the foregoing

Memorandum of Law in Support of Defendants Express Scripts Holding Company's, Express

Scripts, Inc.'s, Curascript, Inc.'s, Curascript SD's, Accredo Health Group, Inc.'s, and United

BioSource Corporation's Preliminary Objections to the Amended Complaint was forwarded to

the following via notification from the Montgomery Country Court of Common Pleas Electronic

Filing system on September 17, 2018:

| | |
|---|---|
| G. Patrick Watson, Esquire<br>Lindsay Sklar Johnson, Esquire<br>Bryan Cave Leighton Paisner LLP<br>One Atlantic Center, 14th Floor<br>1201 W. Peachtree Street, NW<br>Atlanta, GA 30309 | Herbert R. Giorgio, Jr., Esquire<br>Bryan Cave Leighton Paisner LLP<br>One Metropolitan Square<br>211 North Broadway, Suite 3600<br>St. Louis, MO 63102 |
| Philip D. Bartz, Esquire<br>Bryan Cave Leighton Paisner LLP<br>1155 F Street, N.W.<br>Washington, DC 20004 | Donald E. Haviland, Jr., Esquire<br>William H. Platt, II, Esquire<br>Christina M. Philipp, Esquire<br>Haviland Hughes<br>201 South Maple Way, Suite 110<br>Ambler, PA 19002 |
| Matthew M. Martino, Esquire<br>Michael H. Menilove, Esquire<br>Evan R. Kreiner, Esquire<br>Skadden, Arps, Slate, Meagher & Flom LLP<br>Four Times Square<br>New York, NY 10036 | Daniel T. Sherry, Esquire<br>Wendy J. Bracaglia, Esquire<br>Marshall, Dennehey, Warner,<br>Coleman & Goggin<br>620 Freedom Business Center<br>Suite 300<br>King of Prussia, PA 19406 |

**Drinker Biddle & Reath LLP**

/s/ Joanne C. Lewers
Joanne C. Lewers

*Attorneys for Defendants Express Scripts Holding Company,*
*Express Scripts, Inc., CuraScript, Inc., CuraScript SD, Accredo*
*Health Group, Inc., and United BioSource Corporation, now*
*known as United BioSource LLC*