Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

| | |
|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 542 <br><br> vs. <br><br> MALLINCKRODT ARD INC FKA QUESTCOR PHARMACEUTICALS INC | NO. 2018-14059 |

## <u>COVER SHEET OF MOVING PARTY</u>

Date of Filing <u>October 03  2019</u>

Moving Party <u>INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 542</u>

Counsel for Moving Party  <u>DONALD E HAVILAND JR, Esq., ID: 66615; WILLIAM H PLATT II, Esq., ID: 83585</u>

Document Filed (Specify) <u>MOTION TO COMPEL DISCOVERY</u>

Matter is: <u>X</u> (Appealable)              _ (Interlocutory)

Discovery Needed: __ (Yes)              __ (No)

If applicable, Civil Case Management Order Discovery Deadline: _____

--------------------------------------------------------------------------------

**CERTIFICATIONS** - Check **ONLY** if appropriate:
X Counsel certify that they have conferred in a good faith effort to resolve the subject
    <u>discovery</u> dispute. **(Required by Local Rule 208.2(e) on motions relating to discovery.)**

_ Counsel for moving party certifies that the subject **civil motion** is **uncontested** by all
    parties involved in the case.  (If checked, skip Rule to Show Cause section below.)

By: _____
    Counsel for Moving Party

--------------------------------------------------------------------------------

**RULE TO SHOW CAUSE** - Check **ONE** of the Choices Listed Below:

_____ Respondent is directed to show cause why the moving party is not entitled to the relief
    requested by filing an **answer** in the form of a **written response** at the **Office of the  Prothonotary** on or
    before the                day of                                20___.

_____ Respondent is directed to show cause, in the form of a **written response**, why the
    attached Family Court Discovery Motion is not entitled to the relief requested.  Rule    Returnable and
    Argument the                day of                                , 20___
    at **1:00 p.m.**  at **321 Swede Street, Norristown, PA**.

_____ Respondent is directed to file a **written response** in conformity with the Pennsylvania
    Rules of Civil Procedure.

_____ Rule Returnable at time of trial.

By: _____

Revised 06.19

Court Administrator

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Revised 06.19

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**IN THE COURT OF COMMON PLEAS
FOR MONTGOMERY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| **INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 542**<br><br>Plaintiff,<br><br>v.<br><br>**MALLINCKRODT ARD, INC.,** *et al.*<br><br>Defendants. | Civil Action No. 2018-14059 |

**[*PROPOSED*] ORDER**

AND, NOW, this _____ day of _____, 2019, upon consideration of the Plaintiff International Union of Operating Engineers Local 542's Motion to Compel the Depositions of Rob Osborne and Paul Grew, it is hereby ORDERED and DECREED that Defendants shall produce Mr. Osborne and Mr. Grew for a live deposition to be taken at the Montgomery County Courthouse within FIFTEEN (15) calendar days, or be subject to sanctions by this Court.

BY THE COURT,

_____
STEVEN C. TOLLIVER, SR.,      J.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Donald E. Haviland, Jr., Esquire (PA I.D. #66615)
*haviland@havilandhughes.com*
William H. Platt II, Esquire (PA I.D. #83585)
*platt@havilandhughes.com*
**HAVILAND HUGHES**
201 South Maple Way, Suite 110
Ambler, PA 19002
(215) 609-4661 Telephone
(215) 392-4400 Facsimile

*Counsel for Plaintiff,*
*International Union of Operating Engineers Local 542*

<div align="center">

**IN THE COURT OF COMMON PLEAS**
**FOR MONTGOMERY COUNTY, PENNSYLVANIA**

</div>

| | |
|---|---|
| **INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 542**<br><br>                              Plaintiff,<br><br>          v.<br><br>**MALLINCKRODT ARD, INC.,** *et al.*<br><br>                              Defendants. | Civil Action No. 2018-14059 |

<div align="center">

**PLAINTIFF INTERNATIONAL UNION OF OPERATING**
**ENGINEERS LOCAL 542'S MOTION TO COMPEL DISCOVERY**

</div>

Plaintiff, International Union of Operating Engineers Local 542 (***"Plaintiff"***), by and

through its undersigned counsel, hereby moves the Court to enter an Order pursuant to Pa.R.C.P.

4019(a)(1)(v) and 4019(b), compelling Defendants Express Scripts Holding Company, Express

Scripts, Inc., CuraScript, Inc., CuraScript SD, Accredo Health Group, Inc. and United BioSource

Corporation (***"ESI Defendants"***) to produce Mr. Rob Osborne, current V.P. of Pharma Trade

Relations (***"Osborne"***), and Mr. Paul Grew, current Senior Director for Express Scripts

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

("***Grew***"), for deposition at the Montgomery County Courthouse within fifteen (15) days of the Court's Order on this Motion.  In support of this Motion, Plaintiff avers as follows:

1.      On June 26, 2019, Plaintiff served Defendants with a Notice of Deposition and Request for Production of Documents and Things on July 24, 2019 at 1125 Walnut Street, Philadelphia, Pennsylvania at 10:00 a.m. (the ***"Osborne Notice"***).  ***A copy of the Osborne Notice is attached hereto as Exhibit "A".***

2.      Given that there was no objection to the Notice, or any communication from Defendants that Osborne was unavailable, Plaintiff's counsel retained a Court Reporter and began preparing for the deposition.

3.      Twenty-one days after the Notice was served, and one week prior to the deposition, counsel for the ESI Defendants emailed Plaintiff's counsel stating simply that "Mr. Osborne is not available for a deposition on July 24.  We are working with him to find alternate dates".  ***A copy of the July 17, 2019 email from E. Kreiner to Haviland Hughes is attached hereto as Exhibit "B".***

4.      Immediately upon receipt of Attorney Kreiner's email (Ex. B), counsel for Plaintiff responded that he is aware of Mr. Osborne's trip to Philadelphia on July 22 and 23 because he was speaking at a conference in Philadelphia, Pennsylvania regarding Patient Support Services and HUB Design.  ***A copy of the July 17, 2019 email from D. Haviland to E. Kreiner is attached hereto as Exhibit "C".***

5.      National counsel for Express Scripts never responded.  Instead, Express Scripts' local counsel wrote the next day, as follows:

**Please permit me to weigh in on this one.**

Plaintiff noticed Mr. Osborne's deposition for July 24 without asking about or conferring with Express Scripts on his availability.  Unfortunately, he is not

2

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

available on that unilateral date you proposed. **We will, however, meet and confer with you to find a mutually agreeable date and location for Mr. Osborne's deposition that works for all the parties.**

Although I am not involved with the federal court matter, I understand that you previously committed to coordinate depositions and discovery in the state cases with the Federal cases in Rockford. Given the overlapping allegations in the cases you've filed, we plan to make Mr. Osborne available for deposition only once, so please let us know how you propose to coordinate his deposition across the cases consistent with your commitment in Rockford. Toward this end, we are in the process of confirming Mr. Osborne's availability and will get back to you shortly. This [sic] is not emergent need to conduct the deposition next Wednesday, and **we will have a date on the books sooner than later.**

*A copy of the July 18, 2019 email from J. Walsh to D. Haviland is attached hereto as Exhibit "D" (emphasis added).*

6.      Plaintiff noticed Mr. Osborne's deposition for a date when it knew Mr. Osborne would be in Philadelphia, as a convenience to the witness and in accordance with the Pennsylvania Rules of Court requiring depositions to be conducted within 100 miles of the courthouse. *See, e.g.*, Pa. R. Civ. Proc. 4008 ("If a deposition is to be taken by oral examination more than one hundred miles from the courthouse, the court upon motion may make an order requiring the payment of reasonable expenses, including attorney's fees, as the court shall deem proper.")

7.      It is noteworthy that a prior deposition was conducted of the Express Scripts Defendants' United BioSource subsidiary at the Montgomery County Courthouse, on June 13, 2019, without issue.

8.      Defendants failed to timely file a Motion for Protective Order, as required by Rule 4012, as to either the date of the Osborne deposition or the proposed location in Philadelphia. Instead, they simply refused to appear.

3

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

9.      July 24 came and went without Mr. Osborne appearing for deposition and without Defendants filing a Motion for Protective Order, as required.

10.      Instead, in response to Plaintiff's email stating, "[s]ince the witness does not want to appear on the date noticed, we expect him to provide a date in the foreseeable future in Philadelphia, at his expense", Attorney Walsh responded: "We will provide you with available dates.  I am sure all can be amicably worked out in due time.  Gracias." **Exhibit "D".**

11.      Again, Defendants did not object to the *location* of the Osborne deposition in Philadelphia, only the date.  And, since no proper Motion for Protective Order was filed such objection was waived.

12.      Pa. R. C. P. 4007(a) provides:

 (a) **Any party may take the testimony of any person**, including a party, **for the purpose of discovery by deposition upon oral examination** or written interrogatories of the identity and whereabouts of witnesses . . . the deponent may also be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the action and will substantially aid in the preparation of the pleadings or the preparation or trial of the case.

(emphasis supplied).

13.      In Goodrich-Amram Procedural Rules Service, § 4007(a) 18, page 118, it is suggested that, in deciding what matters are relevant, "The best that the court can do is to see whether there is any basis on which the proposed matters *might* be relevant at the trial.  If there is no conceivable basis of relevancy, then the discovery should be restrained.  If there is any conceivable basis of relevancy, the discovery should be permitted."

14.      Defendants have never contested the relevancy of Osborne's deposition.  Indeed, Express Scripts has listed Osborne as a relevant witness in its discovery responses in this case.  Accordingly, the deposition notice was properly issued.

4

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

15.     Despite defense counsel's commitment to "provide [Plaintiff] with available dates" and "amicably work[] out" an agreeable date for the Osborne deposition, no such date was forthcoming.

16.     Instead, Plaintiff had to press.  On August 7, 2019, Plaintiff wrote, seeking dates. *A copy of the August 7, 2019 letter from D. Haviland is attached hereto as Exhibit "E".*

17.     Two days later, Express Scripts responded.  *A copy of the August 9, 2019 letter from E. Lyttle is attached hereto as Exhibit "F".*  For the first time, Express Scripts confirmed that Mr. Osborne was in Philadelphia on July 22 for the conference.  However, he left the same day.

18.     Despite the fact that the witness was in Philadelphia, the location for which his deposition was noticed, Express Scripts made no effort to coordinate his deposition – which had been noticed one month before.

19.     Still, Express Scripts filed no Motion for Protective Order.

20.     Instead, on August 14, 2019, defense counsel asked to "meet and confer this week." *A copy of the August 14, 2019 letter from E. Lyttle is attached hereto as Exhibit "G".*

21.     The parties did meet and confer, and Express Scripts agreed to get agreeable dates from the witness.  At no point did defense counsel insist on the deposition taking place in Orlando.

22.     Instead, on August 21, counsel wrote as follows:

**Mr. Osborne's Deposition**

You requested deposition dates for Mr. Osborne.  As we noted during our meet and confer, any deposition of Mr. Osborne at this stage is premature at best.  The parties are still discussing threshold discovery issues like custodians and search terms.  Moreover, you have refused to offer any proposal for how the parties can coordinate discovery across the various cases, despite your representations to the Court that such coordination is appropriate here.  Given

5

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

this, it is our position that it is not appropriate to proceed with Mr. Osborne's deposition at this time as noted in our August 7 letter.

**If, however, you continue to insist on moving forward, Mr. Osborne has dates available October 9, 10, 16, 17, 23, 24, 30.** Note, however, that Express Scripts will agree to make Mr. Osborne made available for deposition only once. Thus, if you insist on proceeding with his deposition now, and additional documents get produced as a function of the parties' current ongoing custodian and search term negotiations, Express Scripts will not agree to make Mr. Osborne available again for deposition in this case or any other one you have filed with similar allegations.

We look forward to your confirmation that the above at least resolves the parties' disputes as to custodians. We will close by reiterating our belief that there is a path forward for coordinating discovery across cases, just as you represented to the court previously, and we look forward to your proposals on that front.

*A copy of the August 21, 2019 email from D. Sohn is attached hereto as Exhibit "H" (emphasis added).*

23.     This communication is significant in two respects. First, it provides several dates when Osborne is available in October for his deposition. Second, it does <u>not</u> object to the noticed location in Philadelphia, or suggest any other location, including Orlando, Florida (where Osborne apparently resides).

24.     To clarify that agreement had been reached on Osborne's deposition, Plaintiff wrote that same day: "the below [email at Ex. "G"] does not resolve anything, but a date for Mr. Osborne's deposition." Separate counsel for Express Scripts responded, but never took issue that agreement had been reached as to Osborne's deposition. *A copy of the August 21, 2019 email from M. Bonnano is attached hereto as Exhibit "I".*

25.     On September 17, 2019, Plaintiff emailed Express Scripts' counsel a Second Notice of Deposition for Osborne, and a Notice of Deposition for Grew. *A copy of the*

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

*September 17, 2019 email from S. Dise, with cover letter and Notices, is attached hereto as Exhibit "J"*.

26.       The revised Second Notice for Osborne selected October 23, 2019 as the date for deposition. This was one of the dates proposed by defense counsel in their August 21 email (Ex. H).

27.       Express Scripts waited nine (9) days to email, falsely claiming, "the parties have not met and conferred regarding dates, locations or times for their depositions." *A copy of the September 26, 2019 email from C. Burrell is attached hereto as Exhibit "K"*. For the first time in three (3) months, Express Scripts claimed "[w]e will not produce these witnesses in Philadelphia as noticed. Neither witness works or resides in Pennsylvania, and requiring them to travel would subject them to unreasonable annoyance, burden and expense. We will produce Mr. Osborne for deposition in or around Orlando FL where he works and resides. We are able to meet and confer concerning dates, locations, and times on Monday."

28.       The next day, Plaintiff responded, "[a]s you should know, we noticed the Osborne deposition several months ago. Joe Walsh committed to setting a reasonable date, and we received the dates out of which we chose the October date. We are unwilling to move the deposition to Florida. The same is true for Buffalo. We are happy to speak with you on Monday, but that's our position." *A copy of the September 27, 2019 email from D. Haviland is attached hereto as Exhibit "L"*.

29.       On Monday, September 30, 2019, the parties met and conferred again about the Osborne deposition, and the Grew deposition. Significantly, counsel from Quinn Emanuel stated that Attorney Walsh "was not available", even though he had been copied on all transmittals about the issues, and was the lawyer for Express Scripts who committed to work "amicably".

7

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

30.    During that call, ESI Defendants' counsel, Quinn Emanuel, confirmed that the date for the Osborne deposition remained agreeable, but they insisted on moving the deposition to Florida. The same is true of the Grew deposition: they insisted on moving the deposition to Buffalo.

31.    Plaintiff explained that if the parties could not agree on the Philadelphia location – as originally noticed on June 26, and to which the ESI Defendants never timely objected – then the parties would have to agree on another location within 100 miles of the Montgomery County Courthouse.  Otherwise, the deposition would have to take place at the Montgomery County Courthouse, as the Rules provide and as was the prior location of the United BioSource deposition.[1]

32.    Plaintiff asked when Osborne and Grew would next be in Pennsylvania, in order to plan a future, agreeable date.  Quinn Emanuel could not provide that information as to either witness.

33.    Plaintiff pointed out that Grew had been in its client's offices just a few weeks earlier, and was in charge of multiple union fund clients of Express Scripts in the Philadelphia area.  Still, Quinn Emanuel could provide no answer to the question when – not if – Grew would next be here.

34.    Since Quinn Emanuel insisted on the depositions taking place more than 100 miles from the courthouse, Plaintiff inquired as to whether Express Scripts would agree to "pay[] the reasonable expenses, including attorney's fees", of attending the depositions at a different location than was noticed, and a different location than the Courthouse.  Pa.R.Civ.P. 4008.

---

[1] It is noteworthy that the UBC witness Express Script designated as the UBC corporate designee was Nicole Hebbert, who lives and works in Orlando, Florida and had to travel for the deposition.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

35.     Again, Quinn Emanuel could provide no answer to the question.  Instead, they agreed to respond by Wednesday.

36.     After the call, Plaintiff wrote as follows:

> As represented on our call, now concluded, we look forward to hearing from you about the 2 outstanding issues, about which you were unable to provide a response:
>
> 1.  Whether and when either witness [Mr. Osborne and Mr. Grew] will be in Pennsylvania in the next three months; and
>
> 2.  Whether your client will agree to pay the reasonable expenses, including attorney's fees, of requiring plaintiff counsel to take the depositions of these witnesses more than 100 miles from the courthouse.
>
> We look forward to hearing from you by Wednesday, which you said was sufficient time to respond.

***A copy of the October 2, 2019 email from D. Haviland is attached hereto as Exhibit "M".***

37.     On Wednesday, October 2, 2019, at 8:44p.m., Quinn Emanuel responded, "Express Scripts will not agree to pay your expenses or attorneys' fees in connection with deposing either Mr. Grew or Mr. Osborne in their respective hometowns.  We're not yet able to confirm Mr. Grew's availability in Philadelphia for the next 2-3 months, but will continue working to get you an answer. In the meantime, we'll be moving for a protective order."  Exhibit "M".

38.     A few hours before, Plaintiff counsel had inquired of the Plaintiff if they knew whether Mr. Grew would be available for deposition.  The client responded, "I'm with Paul Grew.  Anything you want me to tell him?"  Undersigned counsel said "no".

39.     Rule 4012 of the Pennsylvania rules of Civil Procedure reads as follows:

**Protective Orders, Depositions, Place of Taking.**

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(c) Taking Depositions – Place.  In the absence of an agreement between counsel for the parties, or unless otherwise allowed by special order of the Court, all depositions shall be taken in the Montgomery County Courthouse.

Pa.R.Civ.P. 4012(c).

40.     Rule 4008 of the Pennsylvania rules of Civil Procedure further advises:

If a deposition is to be taken by oral examination more than one hundred miles from the courthouse, the court upon motion may make an order requiring the payment of reasonable expenses, including attorney's fees, as the court shall deem proper.

Pa. R. Civ. Proc. 4008.

41.     In an effort to resolve, or narrow, the dispute before this Court, Plaintiff provided Express Scripts with the various options provided by the Rules for taking the Osborne and Grew depositions.  This was despite the fact that prior agreement had been reached as to the date and location for the Osborne deposition, with Attorney Walsh acting as intermediary.

42.     But, Express Scripts does not want to be reasonable in discovery in this case.  It wants to delay, avoid and obstruct, at any cost.

43.     Already, Express Scripts has been ordered not once, but twice, to comply with Plaintiff's written discovery requests.  *See* Court Orders dated April 16, 2019 and June 13, 2019.

44.     Undaunted, Express Scripts has fired its counsel, not once, but twice.  It fired the estimable Philadelphia firm of Drinker Biddle & Reath, LLP.  Then, it fired the national firm of Skadden Arps.

45.     It appears it hired Quinn Emanuel to do one thing: undue all prior agreements, avoid Court Orders, and obstruct, at any cost.

Just last year, Quinn Emanuel was found by the federal district judge to engage in willful "gamesmanship" respecting discovery.  *See In re Interest Rate Swaps Antitrust Litig.*, 2018 U.S.Dist. LEXIS 86732 (S.D.N.Y. May 23, 2018) at *81-95.  A copy of the *Interest Rates Swaps* decision is attached hereto as Exhibit "N".  Specifically, the Court held Quinn Emanuel's

10

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

"communications with the Court and defense during the extended period of discovery negotiations and litigation **conveyed a misleading impression …. On close review of the assembled communications, the Court is, regrettably, constrained to find an unwelcome degree of gamesmanship….**" *Id.* at * 68.

46.     More troubling is the fact that "[t]he Court [was] constrained to express its disappointment at counsel's lack of candor" to the tribunal, a breach of ethics. *Id.* at * 91.  "At each juncture, [Quinn Emanuel] -- deliberately – chose to not" promptly advise the court of a plan to not meet the court-ordered discovery deadlines in the case. *Id.* at * 92.  "The Court expected better of the estimable and experienced counsel" at Quinn Emanuel. *Id.*  Yet, the lawyers "were [] unacceptably coy in their dealings" with opposing counsel. *Id.* at * 93.

47.     In summary:

The Court therefore conclude[d], reluctantly but firmly and after considered attention to the question, that [Quinn Emanuel] engaged in unacceptable gamesmanship.  Presumably concerned that earlier disclosure of their intention to move to revive the dismissed claims might lead the defense to object or the Court to pretermit such a bid, plaintiffs kept mum until virtually the last possible minute.  The result of this tactical conduct was to mislead both the Court and opposing counsel as to a highly material dimension of this litigation and to cause both to expend significant time, and counsel to incur substantial costs and expenses, on work that the amended complaint stood to overtake.

*Id.* at * 93-94.

48.     Regrettably, such conduct appears to have been brought to this Court, in this case.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

For these reasons, Plaintiff respectfully requests that this Honorable Court grant the Plaintiff's Motion to Compel, and Order the depositions of Mr. Osborne to take place at the agreed-upon date, at the Montgomery County Courthouse.  Similarly, the deposition of Mr. Grew should take place within fifteen (15) days of this Court's Order, at the Montgomery County Courthouse.

Respectfully submitted,

Dated:  October 3, 2019

By:   *s/ Donald E. Haviland, Jr.*
Donald E. Haviland, Jr.
*haviland@havilandhughes.com*
William H. Platt II
*platt@havilandhughes.com*
**HAVILAND HUGHES**
201 South Maple Avenue, Suite 110
Ambler, PA 19002
Phone: (215) 609-4661
Fax:     (215) 392-4400

*Counsel for Plaintiff,*
*International Union of Operating*
*Engineers Local 542*

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## CERTIFICATE OF SERVICE

I, Donald E. Haviland, Jr., hereby certify that a true and correct copy of the foregoing Motion to Compel was electronically filed and served on all parties of record via the Court's Electronic Filing System.

Dated:  October 3, 2019                                  *s/ Donald E. Haviland, Jr.*

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT A

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Donald E. Haviland, Jr., Esquire (PA I.D. #66615)
*haviland@havilandhughes.com*
William H. Platt II, Esquire (PA I.D. #83585)
*platt@havilandhughes.com*
**HAVILAND HUGHES**
201 South Maple Way, Suite 110
Ambler, PA 19002                           *Counsel for Plaintiff,*
(215) 609-4661 Telephone                   *International Union of Operating Engineers*
(215) 392-4400 Facsimile                   *Local 542*

<div align="center">

**IN THE COURT OF COMMON PLEAS
FOR MONTGOMERY COUNTY, PENNSYLVANIA**

</div>

| | |
|---|---|
| **INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 542**<br><br>Plaintiff,<br><br>v.<br><br>**MALLINCKRODT ARD, INC.,** *et al.*<br><br>Defendants. | Civil Action No. 2018-14059<br><br>**NOTICE OF DEPOSITION AND REQUEST FOR THE PRODUCTION OF DOCUMENTS AND THINGS** |

TO:     **Rob Osborne, VP Pharma Trade Relations**
        **Express Scripts; Accredo; CuraScript SD**
        c/o Joseph P. Walsh, Esquire
        Walsh Pancio LLC
        2028 North Broad Street
        Lansdale, PA 19446

        Matthew M. Martino, Esquire
        Evan Kreiner, Esquire
        Michael Menitove, Esquire
        Skadden, Arps, Slate, Meagher & Flom, LLP
        Four Times Square
        New York, NY 10036-6522

        **PLEASE TAKE NOTICE** that, pursuant to Rule 4007.1 *et seq.* of the Pennsylvania

Rules of Civil Procedure, **YOU ARE HEREBY COMMANDED** to attend and give testimony

before the above named Court by way of deposition upon oral examination before a notary

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

public or some other officer authorized by law to administer oaths in the above-captioned matter on **July 24, 2019, at 9:00 a.m.**, and continuing thereafter from day to day until completed, at The Beasley Firm, 1125 Walnut Street, Philadelphia, Pennsylvania 19107 (or at such other time, or at such other place, as counsel and the witness agree upon).  The testimony will be recorded stenographically and/or by videotape.

*You are also required to bring with you and produce at the same time and place, pursuant to Pa.R.C.P. No. 4007.1 and Pa.R.C.P. No. 4009.1 et seq., all the documents, materials, books, papers and other tangible things in your possession or control identified in Exhibit "A," attached hereto.*

Failure to appear or comply with the notice shall subject you to the penalties provided by law.

Respectfully submitted,

Dated:  June 26, 2019

By:  *s/ Donald E. Haviland, Jr.*
Donald E. Haviland, Jr.
*haviland@havilandhughes.com*
William H. Platt II
*platt@havilandhughes.com*
HAVILAND HUGHES
201 South Maple Avenue, Suite 110
Ambler, PA 19002
Phone: (215) 609-4661
Fax:    (215) 392-4400

*Counsel for Plaintiff,
International Union of Operating
Engineers Local 542*

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## **DOCUMENTS TO BE PRODUCED**

1.   Documents in your possession, custody or control relating to the negotiation of the contracts, agreements or other arrangements or understandings between CuraScript and/or any subsidiary (including Healthbridge Reimbursement and Product Support, Inc.) and Mallinckrodt ARD f/k/a Questcor Pharmaceuticals, Inc., relating to the distribution and sale of Acthar, including the agreements attached hereto as Exhibit "A" and any amendments thereto.

2.   Documents in your possession, custody or control relating to your knowledge of or involvement in the "Acthar Support & Access Program" (or the "A.S.A.P.").

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the
Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT B

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

| From: | Kreiner, Evan R |
|---|---|
| To: | Stephanie Dise; Martino, Matthew M; Menitove, Michael H; "joe@walshpancio.com" |
| Cc: | Don Haviland; Bill Platt; djsherry@mdwcg.com; Wendy J. Bracaglia; herb.giorgio@bciplaw.com; Patrick.watson@bciplaw.com; lindsay.johnson@bciplaw.com; Philip.bartz@bciplaw.com |
| Subject: | RE: IUOE Local 542 v. Mallinckrodt ARD, Inc., et al. |
| Date: | Wednesday, July 17, 2019 5:23:16 PM |

Don,

Mr. Osborne is not available for a deposition on July 24.  We are working with him to find alternate dates.

Thanks,
Evan

**Evan R. Kreiner**
Associate
**Skadden, Arps, Slate, Meagher & Flom LLP**
Four Times Square | New York | 10036-6522
T: 212.735.2491 | F: 917.777.2491
evan.kreiner@skadden.com

**From:** Stephanie Dise [mailto:dise@havilandhughes.com]
**Sent:** Wednesday, June 26, 2019 12:49 PM
**To:** Martino, Matthew M (NYC); Kreiner, Evan R (NYC); Menitove, Michael H (NYC); 'joe@walshpancio.com'
**Cc:** Don Haviland; Bill Platt; djsherry@mdwcg.com; Wendy J. Bracaglia; herb.giorgio@bciplaw.com; Patrick.watson@bciplaw.com; lindsay.johnson@bciplaw.com; Philip.bartz@bciplaw.com
**Subject:** [Ext] IUOE Local 542 v. Mallinckrodt ARD, Inc., et al.

Counsel,

Please see the attached correspondence and Notice of Deposition in connection with the above-referenced matter.

Thank you.

**Stephanie A. Dise, Pa.C.P.**
**Paralegal**
Haviland Hughes | 215-609-4661
Ambler | Philadelphia | Lehigh Valley | Atlantic City

CONFIDENTIALITY NOTICE:  This Email and any attachments thereto are intended for the exclusive use of the addressee. The information contained herein may be privileged, confidential or otherwise exempt from disclosure by applicable laws, rules or regulations.  If you have received this Email in error and are not the intended recipient, you are hereby placed on notice that any use, distribution, copying or dissemination of this communication is strictly prohibited. If you have received this in error please notify the sender immediately at 215-609-4661 and delete this Email and any attachments immediately.  Thank you for your anticipated cooperation.

--------------------------------------------------------------------------

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

==============================================================================

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT C

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

| From: | Don Haviland |
|---|---|
| Sent: | Wednesday, July 17, 2019 5:34 PM |
| To: | Kreiner, Evan R; Stephanie Dise; Martino, Matthew M; Menitove, Michael H; 'joe@walshpancio.com' |
| Cc: | Bill Platt; djsherry@mdwcg.com; Wendy J. Bracaglia; herb.giorgio@bclplaw.com; Patrick.watson@bclplaw.com; lindsay.johnson@bclplaw.com; Philip.bartz@bclplaw.com |
| Subject: | RE: IUOE Local 542 v. Mallinckrodt ARD, Inc., et al. |

Evan, he is.

We know he is Philadelphia next week.

That you waited until now to say he is not is likely sanctionable.

If you don't agree to produce him, as noticed, we will file an emergency Motion with the Court.

You have until tmrw noon to advise us.

Donald E. Haviland, Jr., Esq.
Managing Member
*Haviland Hughes*
*"We push back"*
Ambler - Philadelphia
Atlantic City - Lehigh Valley
tel: 215-609-4661
fax: 215-392-4400



**From:** Kreiner, Evan R [mailto:Evan.Kreiner@skadden.com]
**Sent:** Wednesday, July 17, 2019 5:23 PM
**To:** Stephanie Dise; Martino, Matthew M; Menitove, Michael H; 'joe@walshpancio.com'
**Cc:** Don Haviland; Bill Platt; djsherry@mdwcg.com; Wendy J. Bracaglia; herb.giorgio@bclplaw.com; Patrick.watson@bclplaw.com; lindsay.johnson@bclplaw.com; Philip.bartz@bclplaw.com
**Subject:** RE: IUOE Local 542 v. Mallinckrodt ARD, Inc., et al.

Don,

Mr. Osborne is not available for a deposition on July 24.  We are working with him to find alternate dates.

Thanks,
Evan

**Evan R. Kreiner**
Associate
**Skadden, Arps, Slate, Meagher & Flom LLP**
Four Times Square | New York | 10036-6522

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

T: 212.735.2491 | F: 917.777.2491
evan.kreiner@skadden.com

**From:** Stephanie Dise [mailto:dise@havilandhughes.com]
**Sent:** Wednesday, June 26, 2019 12:49 PM
**To:** Martino, Matthew M (NYC); Kreiner, Evan R (NYC); Menitove, Michael H (NYC); 'joe@walshpancio.com'
**Cc:** Don Haviland; Bill Platt; djsherry@mdwcg.com; Wendy J. Bracaglia; herb.giorgio@bclplaw.com; Patrick.watson@bclplaw.com; lindsay.johnson@bclplaw.com; Philip.bartz@bclplaw.com
**Subject:** [Ext] IUOE Local 542 v. Mallinckrodt ARD, Inc., et al.

Counsel,

Please see the attached correspondence and Notice of Deposition in connection with the above-referenced matter.

Thank you.

**Stephanie A. Dise, Pa.C.P.**
**Paralegal**
Haviland Hughes | 215-609-4661
Ambler | Philadelphia | Lehigh Valley | Atlantic City

CONFIDENTIALITY NOTICE: This Email and any attachments thereto are intended for the exclusive use of the addressee. The information contained herein may be privileged, confidential or otherwise exempt from disclosure by applicable laws, rules or regulations. If you have received this Email in error and are not the intended recipient, you are hereby placed on notice that any use, distribution, copying or dissemination of this communication is strictly prohibited. If you have received this in error please notify the sender immediately at 215-609-4661 and delete this Email and any attachments immediately.  Thank you for your anticipated cooperation.

--------------------------------------------------------------------------

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

========================================================================
=========

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT D

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

| From: | Joseph Walsh |
|---|---|
| To: | Don Haviland; Kreiner, Evan R; Stephanie Dise; Martino, Matthew M; Menitove, Michael H |
| Cc: | Bill Platt; djsherry@mdwcg.com; Wendy J. Bracaglia; herb.giorgio@bclplaw.com; Patrick.watson@bclplaw.com; lindsay.johnson@bclplaw.com; Philip.bartz@bclplaw.com |
| Subject: | RE: IUOE Local 542 v. Mallinckrodt ARD, Inc., et al. |
| Date: | Thursday, July 18, 2019 12:07:44 PM |
| Attachments: | image001.png |
| | image002.png |

We will provide you with available dates. I am sure all can be amicably worked out in due time. Gracias

Joseph P Walsh, Esquire
**WALSH PANCIO LLC**
2028 North Broad Street
Lansdale PA 19446
215.368.8660 (Phone)
215.368.7990 (Facsimile)
joe@walshpancio.com
www.walshpancio.com



"_Each time a man stands up for an ideal or acts to improve the lot of others or strikes out against injustice, he sends forth a tiny ripple of hope._" (Robert Kennedy)

**From:** Don Haviland
**Sent:** Thursday, July 18, 2019 11:43 AM
**To:** Joseph Walsh <joe@walshpancio.com>; Kreiner, Evan R <Evan.Kreiner@skadden.com>; Stephanie Dise <dise@havilandhughes.com>; Martino, Matthew M <Matthew.Martino@skadden.com>; Menitove, Michael H <Michael.Menitove@skadden.com>
**Cc:** Bill Platt <platt@havilandhughes.com>; djsherry@mdwcg.com; Wendy J. Bracaglia <wjbracaglia@mdwcg.com>; herb.giorgio@bclplaw.com; Patrick.watson@bclplaw.com; lindsay.johnson@bclplaw.com; Philip.bartz@bclplaw.com
**Subject:** RE: IUOE Local 542 v. Mallinckrodt ARD, Inc., et al.

Joe,
My summer is going well. Thanks for asking.

First, I'm aware of no federal or state rule requiring a party to ask to take a deposition.
Second, I highly doubt you, or your co-counsel, have spoken to the witness about his availability next week since he is boarding a plane from Florida to Philadelphia on Sunday and will be here Monday and Tuesday. That's why we noticed him for Wednesday, for his convenience.
Finally, since you're not involved in the federal matter, or any other matter, let's keep it that way.

Since the witness does not want to appear on the date noticed, we expect him to provide a date in the foreseeable future to appear in Philadelphia, at his expense.
If that's too much to ask, just say so, and we will ask one of the fine jurists overseeing these matters to weigh in.
Your welcome,
Don

Donald E. Haviland, Jr., Esq.
Managing Member
_Haviland Hughes_
"_We push back_"
Ambler · Philadelphia
Atlantic City · Lehigh Valley
tel: 215-609-4661
fax: 215-392-4400



Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**From:** Joseph Walsh [mailto:joe@walshpancio.com]
**Sent:** Thursday, July 18, 2019 11:10 AM
**To:** Don Haviland; Kreiner, Evan R; Stephanie Dise; Martino, Matthew M; Menitove, Michael H
**Cc:** Bill Platt; disherry@mdwcg.com; Wendy J. Bracaglia; herb.giorgio@bclplaw.com; Patrick.watson@bclplaw.com; lindsay.johnson@bclplaw.com; Philip.bartz@bclplaw.com
**Subject:** RE: IUOE Local 542 v. Mallinckrodt ARD, Inc., et al.

*Hi Don. Hope your Summer is going well. Please permit me to weigh in on this one.*

*Plaintiff noticed Mr. Osborne's deposition for July 24th without asking about or conferring with Express Scripts on his availability. Unfortunately, he is not available on the unilateral date you proposed. We will, however, meet and confer with you to find a mutually agreeable date and location for Mr. Osborne's deposition that works for all the parties.*

*Although I am not involved with the federal court matter, I understand that you previously committed to coordinate depositions and discovery in the state cases with the Federal cases in Rockford. Given the overlapping allegations in the cases you've filed, we plan to make Mr. Osborne available for deposition only once, so please let us know how you propose to coordinate his deposition across the cases consistent with your commitment in Rockford. Toward this end, we are in the process of confirming Mr. Osborne's availability and will get back to you shortly. This is no emergent need to conduct the deposition next Wednesday, and we will have a date on the books sooner than later.*

*Thanks, Joe*

Joseph P Walsh, Esquire
**WALSH PANCIO LLC**
2028 North Broad Street
Lansdale PA 19446
215.368.8660 (Phone)
215.368.7990 (Facsimile)
joe@walshpancio.com
www.walshpancio.com



"<u>Each time a man stands up for an ideal or acts to improve the lot of others or strikes out against injustice, he sends forth a tiny ripple of hope.</u>" (Robert Kennedy)

**From:** Don Haviland
**Sent:** Wednesday, July 17, 2019 5:34 PM
**To:** Kreiner, Evan R <Evan.Kreiner@skadden.com>; Stephanie Dise <dise@havilandhughes.com>; Martino, Matthew M <Matthew.Martino@skadden.com>; Menitove, Michael H <Michael.Menitove@skadden.com>; Joseph Walsh <joe@walshpancio.com>
**Cc:** Bill Platt <platt@havilandhughes.com>; disherry@mdwcg.com; Wendy J. Bracaglia <wjbracaglia@mdwcg.com>; herb.giorgio@bclplaw.com; Patrick.watson@bclplaw.com; lindsay.johnson@bclplaw.com; Philip.bartz@bclplaw.com
**Subject:** RE: IUOE Local 542 v. Mallinckrodt ARD, Inc., et al.

Evan, he is.
We know he is Philadelphia next week.
That you waited until now to say he is not is likely sanctionable.
If you don't agree to produce him, as noticed, we will file an emergency Motion with the Court.
You have until tmrw noon to advise us.

Donald E. Haviland, Jr., Esq.
Managing Member
*Haviland Hughes*
*"We push back"*
Ambler · Philadelphia
Atlantic City · Lehigh Valley
tel: 215-609-4661
fax: 215-392-4400

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



**From:** Kreiner, Evan R [mailto:Evan.Kreiner@skadden.com]
**Sent:** Wednesday, July 17, 2019 5:23 PM
**To:** Stephanie Dise; Martino, Matthew M; Menitove, Michael H; 'joe@walshpancio.com'
**Cc:** Don Haviland; Bill Platt; djsherry@mdwcg.com; Wendy J. Bracaglia; herb.giorgio@bclplaw.com; Patrick.watson@bclplaw.com; lindsay.johnson@bclplaw.com; Philip.bartz@bclplaw.com
**Subject:** RE: IUOE Local 542 v. Mallinckrodt ARD, Inc., et al.

Don,

Mr. Osborne is not available for a deposition on July 24. We are working with him to find alternate dates.

Thanks,
Evan

**Evan R. Kreiner**
Associate
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square | New York | 10036-6522
T: 212.735.2491 | F: 917.777.2491
evan.kreiner@skadden.com

**From:** Stephanie Dise [mailto:dise@havilandhughes.com]
**Sent:** Wednesday, June 26, 2019 12:49 PM
**To:** Martino, Matthew M (NYC); Kreiner, Evan R (NYC); Menitove, Michael H (NYC); 'joe@walshpancio.com'
**Cc:** Don Haviland; Bill Platt; djsherry@mdwcg.com; Wendy J. Bracaglia; herb.giorgio@bclplaw.com; Patrick.watson@bclplaw.com; lindsay.johnson@bclplaw.com; Philip.bartz@bclplaw.com
**Subject:** [Ext] IUOE Local 542 v. Mallinckrodt ARD, Inc., et al.

Counsel,

Please see the attached correspondence and Notice of Deposition in connection with the above-referenced matter.

Thank you.

**Stephanie A. Dise, Pa.C.P.**
**Paralegal**

Haviland Hughes | 215-609-4661
Ambler | Philadelphia | Lehigh Valley | Atlantic City

**CONFIDENTIALITY NOTICE:** This Email and any attachments thereto are intended for the exclusive use of the addressee. The information contained herein may be privileged, confidential or otherwise exempt from disclosure by applicable laws, rules or regulations. If you have received this Email in error and are not the intended recipient, you are hereby placed on notice that any use, distribution, copying or dissemination of this communication is strictly prohibited. If you have received this in error please notify the sender immediately at 215-609-4661 and delete this Email and any attachments immediately. Thank you for your anticipated cooperation.

--------------------------------------------------------------------------------
This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.
================================================================================

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT E

# HAVILAND HUGHES

WWW.HAVILANDHUGHES.COM

August 7, 2019

*__Via Electronic Mail and First-Class Mail__*

Eric Lyttle, Esquire
Quinn Emanuel Urquhard & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005

Joseph P. Walsh, Esquire
Walsh Pancio, LLC
2028 North Broad Street
Lansdale, PA 19446

**Re: *IUOE Local 542 v. Mallinckrodt ARD, Inc., et al.***

Dear Counsel,

I am writing to follow up on the deposition of Rob Osborne, which defense counsel abruptly cancelled without cause.

As you know, on June 26, 2019, Plaintiff served Defendants sent a Notice of Deposition directed to Robert Osborne, VP of Pharma Trade Relations for Express Scripts, Accredo and CuraScript pursuant to Pa.R.C.P. 4007.1. The deposition was to take place on July 24, 2019 at 9:00 a.m. at The Beasley Firm located at 1125 Walnut Street, Philadelphia, PA 19107. Despite the fact that Mr. Osborne was in Philadelphia that week on an unrelated engagement, defense counsel waited until July 17 – a week before the deposition – to abruptly cancel, stating only that "Mr. Osborne is not available for a deposition on July 24. We are working with him to find alternate dates." *See* attached email from Kreiner dated July 17, 2019.

Despite Mr. Kreiner's patently false statement about Mr. Osborne's lack of availability, Express Scripts' counsel has yet to provide an alternate date. Joe, you committed on July 18 to provide alternate dates and to "amicably work[] out" this issue. *See* attached email. I'm sure you will agree, 20 days is more than enough time to find out an executive's schedule.[1]

In view of the unreasonable delays in resolving such a simple issue amicably, if we don't receive an agreeable date from Express Scripts for the Osborne deposition by this Friday, August 7, 2019, we will be forced to file a Motion to Compel and seek our costs. Further, since Osborne has been on Express Scripts' Rule 26 disclosures and electronic discovery custodian lists from the inception of this case and the *Rockford* case, all responsive documents from his files should have been produced by now. Certainly, they must be produced prior to the deposition. This

---

[1] Since the original Notice was sent, defense counsel has had over 40 days.

**HAVILAND HUGHES**

Ambler • Philadelphia • Lehigh Valley • Atlantic City

Please Respond to: 201 South Maple Way • Suite 110 • Ambler, PA 19002

P: 215-609-4661 • F: 215-392-4400

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Eric Lyttle, Esquire
Joseph P. Walsh, Esquire
August 7, 2019
Page 2

includes all documents relating to the contracts Osborne negotiated with Questcor, as have been separately ordered by the Court in *Rockford*. *See* March 13, 2015 Neville Dep. Tr. at 40:19-21 ("The original contracts [were] negotiated by Rob Osborne who still works for the company and reports to Bill Martin.")

I trust you will amicably resolve this matter without motions practice.

Sincerely,

DONALD E. HAVILAND, JR.

DEH/sd
Enclosure
cc:    William H. Platt II, Esq. (via email )(w/out enclosures)
       Daniel J. Sherry, Esq. (via email only)(w/enclosures)
       Wendy J. Bracaglia, Esq. (via email only)(w/enclosures)
       Herbert R. Giorgio, Jr., Esq. (via email only)(w/enclosures)
       G. Patrick Watson, Esq. (via email only)(w/enclosures)
       Lindsay Sklar Johnson, Esq. (via email only)(w/enclosures)
       Philip D. Bartz, Esq. (via email only)(w/enclosures)

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

| From: | Joseph Walsh [joe@walshpancio.com] |
|---|---|
| Sent: | Thursday, July 18, 2019 12:08 PM |
| To: | Don Haviland; Kreiner, Evan R; Stephanie Dise; Martino, Matthew M; Menitove, Michael H |
| Cc: | Bill Platt; djsherry@mdwcg.com; Wendy J. Bracaglia; herb.giorgio@bclplaw.com; Patrick.watson@bclplaw.com; lindsay.johnson@bclplaw.com; Philip.bartz@bclplaw.com |
| Subject: | RE: IUOE Local 542 v. Mallinckrodt ARD, Inc., et al. |

We will provide you with available dates.  I am sure all can be amicably worked out in due time.  Gracias

Joseph P Walsh, Esquire
**WALSH PANCIO LLC**
2028 North Broad Street
Lansdale PA 19446
215.368.8660 (Phone)
215.368.7990 (Facsimile)
joe@walshpancio.com
www.walshpancio.com



"Each time a man stands up for an ideal or acts to improve the lot of others or strikes out against injustice, he sends forth a tiny ripple of hope."  (Robert Kennedy)

**From:** Don Haviland
**Sent:** Thursday, July 18, 2019 11:43 AM
**To:** Joseph Walsh <joe@walshpancio.com>; Kreiner, Evan R <Evan.Kreiner@skadden.com>; Stephanie Dise <dise@havilandhughes.com>; Martino, Matthew M <Matthew.Martino@skadden.com>; Menitove, Michael H <Michael.Menitove@skadden.com>
**Cc:** Bill Platt <platt@havilandhughes.com>; djsherry@mdwcg.com; Wendy J. Bracaglia <wjbracaglia@mdwcg.com>; herb.giorgio@bclplaw.com; Patrick.watson@bclplaw.com; lindsay.johnson@bclplaw.com; Philip.bartz@bclplaw.com
**Subject:** RE: IUOE Local 542 v. Mallinckrodt ARD, Inc., et al.

Joe,
My summer is going well.  Thanks for asking.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

First, I'm aware of no federal or state rule requiring a party to ask to take a deposition.

Second, I highly doubt you, or your co-counsel, have spoken to the witness about his availability next week since he is boarding a plane from Florida to Philadelphia on Sunday and will be here Monday and Tuesday. That's why we noticed him for Wednesday, for his convenience.

Finally, since you're not involved in the federal matter, or any other matter, let's keep it that way.

Since the witness does not want to appear on the date noticed, we expect him to provide a date in the foreseeable future to appear in Philadelphia, at his expense.

If that's too much to ask, just say so, and we will ask one of the fine jurists overseeing these matters to weigh in.

Your welcome,

Don

Donald E. Haviland, Jr., Esq.
Managing Member
*Haviland Hughes*
"We push back"
Ambler - Philadelphia
Atlantic City - Lehigh Valley
tel: 215-609-4661
fax: 215-392-4400



**From:** Joseph Walsh [mailto:joe@walshpancio.com]
**Sent:** Thursday, July 18, 2019 11:10 AM
**To:** Don Haviland; Kreiner, Evan R; Stephanie Dise; Martino, Matthew M; Menitove, Michael H
**Cc:** Bill Platt; djsherry@mdwcg.com; Wendy J. Bracaglia; herb.giorgio@bclplaw.com; Patrick.watson@bclplaw.com; lindsay.johnson@bclplaw.com; Philip.bartz@bclplaw.com
**Subject:** RE: IUOE Local 542 v. Mallinckrodt ARD, Inc., et al.

*Hi Don. Hope your Summer is going well. Please permit me to weigh in on this one.*

*Plaintiff noticed Mr. Osborne's deposition for <u>July 24th</u> without asking about or conferring with Express Scripts on his availability. Unfortunately, he is not available on the unilateral date you proposed. We will, however, meet and confer with you to find a mutually agreeable date and location for Mr. Osborne's deposition that works for all the parties.*

*Although I am not involved with the federal court matter, I understand that you previously committed to coordinate depositions and discovery in the state cases with the Federal cases in Rockford. Given the overlapping allegations in the cases you've filed, we plan to make Mr. Osborne available for deposition only once, so please let us know how you propose to coordinate his deposition across the cases consistent with*

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

*your commitment in Rockford. Toward this end, we are in the process of confirming Mr. Osborne's availability and will get back to you shortly.  This is no emergent need to conduct the deposition next Wednesday, and we will have a date on the books sooner than later.*

*Thanks, Joe*

Joseph P Walsh, Esquire
**WALSH PANCIO LLC**
2028 North Broad Street
Lansdale PA 19446
215.368.8660 (Phone)
215.368.7990 (Facsimile)
joe@walshpancio.com
www.walshpancio.com



"Each time a man stands up for an ideal or acts to improve the lot of others or strikes out against injustice, he sends forth a tiny ripple of hope."  (Robert Kennedy)

**From:** Don Haviland
**Sent:** Wednesday, July 17, 2019 5:34 PM
**To:** Kreiner, Evan R <Evan.Kreiner@skadden.com>; Stephanie Dise <dise@havilandhughes.com>; Martino, Matthew M <Matthew.Martino@skadden.com>; Menitove, Michael H <Michael.Menitove@skadden.com>; Joseph Walsh <joe@walshpancio.com>
**Cc:** Bill Platt <platt@havilandhughes.com>; djsherry@mdwcg.com; Wendy J. Bracaglia <wjbracaglia@mdwcg.com>; herb.giorgio@bclplaw.com; Patrick.watson@bclplaw.com; lindsay.johnson@bclplaw.com; Philip.bartz@bclplaw.com
**Subject:** RE: IUOE Local 542 v. Mallinckrodt ARD, Inc., et al.

Evan, he is.
We know he is Philadelphia next week.
That you waited until now to say he is not likely sanctionable.
If you don't agree to produce him, as noticed, we will file an emergency Motion with the Court.
You have until tmrw noon to advise us.

Donald E. Haviland, Jr., Esq.
Managing Member

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

*Haviland Hughes*
*"We push back"*
Ambler - Philadelphia
Atlantic City - Lehigh Valley
tel: 215-609-4661
fax: 215-392-4400



**From:** Kreiner, Evan R [mailto:Evan.Kreiner@skadden.com]
**Sent:** Wednesday, July 17, 2019 5:23 PM
**To:** Stephanie Dise; Martino, Matthew M; Menitove, Michael H; 'joe@walshpancio.com'
**Cc:** Don Haviland; Bill Platt; djsherry@mdwcg.com; Wendy J. Bracaglia; herb.giorgio@bclplaw.com; Patrick.watson@bclplaw.com; lindsay.johnson@bclplaw.com; Philip.bartz@bclplaw.com
**Subject:** RE: IUOE Local 542 v. Mallinckrodt ARD, Inc., et al.

Don,

Mr. Osborne is not available for a deposition on July 24.  We are working with him to find alternate dates.

Thanks,
Evan

**Evan R. Kreiner**
Associate
**Skadden, Arps, Slate, Meagher & Flom LLP**
Four Times Square | New York | 10036-6522
T: 212.735.2491 | F: 917.777.2491
**evan.kreiner@skadden.com**

**From:** Stephanie Dise [mailto:dise@havilandhughes.com]
**Sent:** Wednesday, June 26, 2019 12:49 PM
**To:** Martino, Matthew M (NYC); Kreiner, Evan R (NYC); Menitove, Michael H (NYC); 'joe@walshpancio.com'
**Cc:** Don Haviland; Bill Platt; djsherry@mdwcg.com; Wendy J. Bracaglia; herb.giorgio@bclplaw.com; Patrick.watson@bclplaw.com; lindsay.johnson@bclplaw.com; Philip.bartz@bclplaw.com
**Subject:** [Ext] IUOE Local 542 v. Mallinckrodt ARD, Inc., et al.

Counsel,

Please see the attached correspondence and Notice of Deposition in connection with the above-referenced matter.

Thank you.

**Stephanie A. Dise, Pa.C.P.**

**Paralegal**
Haviland Hughes | 215-609-4661
Ambler | Philadelphia | Lehigh Valley | Atlantic City

CONFIDENTIALITY NOTICE: This Email and any attachments thereto are intended for the exclusive use of the addressee. The information contained herein may be privileged, confidential or otherwise exempt from disclosure by applicable laws, rules or regulations. If you have received this Email in error and are not the intended recipient, you are hereby placed on notice that any use, distribution, copying or dissemination of this communication is strictly prohibited. If you have received this Email in error please notify the sender immediately at 215-609-4661 and delete this Email and any attachments immediately.  Thank you for your anticipated cooperation.

--------------------------------------------------------------------------------

This email (and any attachments thereto) is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email (and any attachments thereto) is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original email (and any copy of any email) and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.

================================================================================
=========

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT F

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**quinn emanuel** trial lawyers | washington, dc

1300 I Street NW, Suite 900, Washington, District of Columbia 20005-3314 | TEL (202) 538-8000 FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(202) 538-8162**

WRITER'S EMAIL ADDRESS
**ericlyttle@quinnemanuel.com**

August 9, 2019

**VIA MAIL AND E-MAIL**

Don Haviland
Haviland Hughes
201 South Maple Avenue, Suite 110
Ambler, PA 19002
haviland@havilandhughes.com

Re:     *IUOE Local 542 v. Mallinckrodt ARD, Inc., et al.*

Mr. Haviland,

        We write in response to your August 7, 2019 letter regarding the deposition of Rob Osborne.

        At the outset, we will set the record straight regarding Mr. Osborne's deposition. You unilaterally noticed Mr. Osborne for deposition on July 24, 2019. You did so without asking about or conferring with Express Scripts regarding Mr. Osborne's availability. Had you done so, Express Scripts would have confirmed that Mr. Osborne was not available for deposition in Philadelphia on July 24. As you are aware, Mr. Osborne resides in Orlando, Florida, not Philadelphia, Pennsylvania. He happened to be in Philadelphia July 22 for what even you concede was an entirely "unrelated" professional obligation—namely, the World Congress' 6th Annual Patient Support Services and HUB Design Summit. Mr. Osborne spoke at the first panel, on the first day of the conference. It lasted one hour. After that panel concluded, Mr. Osborne headed to the airport, where he boarded a flight to San Francisco for work meetings from Tuesday, July 22 through Thursday, July 24. Mr. Osborne was not, therefore, available for deposition on the date you noticed and counsel for Express Scripts properly notified you of the same. That said, we are willing to meet and confer with you to find a mutually agreeable date and location for Mr. Osborne's deposition, consistent with our proposal discussed in greater detail below.

        To that end, we expect you to fulfill your commitment to the court in *Rockford* to coordinate discovery across the multiple litigations you've brought related to Acthar. This is

**quinn emanuel urquhart & sullivan, llp**

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

now the second time that Express Scripts asked you to provide a proposal for doing so, and to date you have failed to do so. Such coordinated discovery is absolutely critical to promote efficiency in the *now five* Acthar-related litigations you've filed in five different courts.[1] Each case you've filed centers around the same nucleus of facts and involves the same Express Scripts witnesses. Discovery, therefore, should be coordinated across all cases.

Express Scripts thus proposes that the parties agree to a single set of custodians and a single set of search terms across all litigations you've brought related to Acthar. Discovery dispute correspondence exchanged in one litigation will be binding across all Acthar cases you've brought. And lastly, Express Scripts witnesses will only be deposed once and depositions will be used across all cases.

Express Scripts therefore will not agree to produce Mr. Osborne more than once in this litigation or in any other litigations that you have filed, or may in the future file, based on substantially similar allegations. We propose that Mr. Osborne's deposition be scheduled after the parties have agreed on a coordinated discovery plan, including custodians and search terms, across the various Acthar litigations you've brought. If you choose to proceed with Mr. Osborne's deposition before that, we will not produce him regarding documents produced later in time or in other Acthar cases you've brought.[2]

Please let us know your availability to meet and confer next week on these issues and others pursuant to Judge Jensen's order. At that meet and confer, please also be prepared to discuss the deficiencies in Plaintiff's document production which, to date, consists of a mere 10 documents as compared to the more than 215,000 documents produced by Express Scripts.

Very truly yours,
/s/ Eric Lyttle
Eric Lyttle


cc:    Mike Lyle, Esq.
       Ethan Glass, Esq.
       Meghan A. McCaffrey, Esq.
       Joseph P. Walsh, Esq.

---

[1]   In addition to the above-captioned litigation, you have also filed: *City of Rockford, et al. v. Mallinckrodt ARD, Inc. et al.*, No. 3:17-cv-50107 (N.D. Ill.); *Washington County Board of Education v. Mallinckrodt ARD, Inc., et al.*, No. 1:19-cv-01854-JKB (D. Md.); *Steamfitters Local Union No. 420 v. Mallinckrodt ARD, LLC*, No. 2:19-cv-03047-BMS (E.D. Pa.); *Acument Global Technologies, Inc. v. Mallinckrodt ARD, Inc., et al.*, No. CT-2275-19 (Tenn. Cir.).

[2]   For the record, though, please note that Express Scripts completed production of all of Mr. Osborne's responsive, non-privileged custodial documents on July 12, 2019.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT G

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**quinn emanuel** trial lawyers | washington, dc

1300 I Street NW, Suite 900, Washington, District of Columbia 20005-3314 | TEL (202) 538-8000 FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(202) 538-8162**

WRITER'S EMAIL ADDRESS
**ericlyttle@quinnemanuel.com**

August 14, 2019

**VIA MAIL AND E-MAIL**

Don Haviland
Haviland Hughes
201 South Maple Avenue, Suite 110
Ambler, PA 19002
haviland@havilandhughes.com

Re:    *City of Rockford, et al. v. Mallinckrodt ARD, Inc., et al.*, No. 1:17-CV-50107

Mr. Haviland,

We write in response to your August 7, 2019 letter regarding the Express Scripts defendants' August 5, 2019 letter and production. We will address each issue in turn.

**Neville Deposition Transcript.** Express Scripts did not previously have "custody" of the transcript of Mr. Neville's FTC testimony. As Express Scripts' counsel explained at the July 22, 2019 hearing before Magistrate Judge Jensen, Express Scripts was unable to locate a copy of the transcript in its records. Express Scripts further committed to requesting a copy of the transcript from the FTC and producing a copy of the transcript if obtained. Express Scripts did just that.

Express Scripts disagrees with your challenge to the designation of Mr. Neville's FTC transcript as "Confidential – Subject to Protective Order." Mr. Neville provided testimony in response to a *confidential* Civil Investigative Demand by the FTC. Much of the information and testimony that Mr. Neville provided is not public and reflects Express Scripts' "commercial or financial information that [Express Scripts] has maintained as confidential." Thus, Express Scripts' designation of the transcript as "Confidential" is appropriate under the terms of the Court's protective order in this case. If, however, there are specific sections of testimony you would like to discuss de-designating in greater detail, we are willing to consider your request.

**Discovery Responses.** You are incorrect in stating that Express Scripts has not complied with the *Local 542* Court's order to serve amended responses to your requests for production in

**quinn emanuel urquhart & sullivan, llp**

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

that matter.  Prior counsel served amended responses on July 5, 2019 in correspondence which we have attached to this letter.  Our August 5 production of the Neville Transcript did not "affect[]" those responses.  Express Scripts accurately stated that it was "searching for a transcript of any testimony Everett Neville provided to the FTC" in the relevant investigation, which it did, has now obtained, and subsequently produced.  There is therefore no need to "certify" or amend those (or any other) responses.  We consider this issue resolved.

**Hebbert Deposition Confidentiality Designations.**  It appears that you have challenged the confidentiality designation for all but sixteen lines—32:19–33:9—of Ms. Hebbert's deposition.  While Express Scripts is willing to de-designate lines 220:13–25 of the transcript, it does not agree to effectively de-designate Ms. Hebbert's deposition in its entirety as you have requested.  The testimony recorded at pages 31–32, 36–111, 115–194, and 199–220 reveals commercially sensitive details regarding UBC's business operations and its confidential commercial agreements with third parties.  The testimony also centers around questions and answers regarding exhibits that are themselves confidential.  There is, therefore, no substantive difference between this testimony and the testimony at the sixteen lines of testimony that you yourself concede are confidential.  Further, pages 112–114 and 195–198 were appropriately designated as Attorneys' Eyes Only because they reveal specific, competitively sensitive details about UBC's strategies in pursuing, winning, and retaining its clients.  Such testimony therefore squarely meets the requirements of the protective order and is appropriately designated as Confidential and Attorneys' Eyes Only.  As with the Neville transcript, however, we are willing to discuss more specific, targeted challenges to Express Scripts' confidentiality designations for Ms. Hebbert's testimony.

**Meet and Confer.**  As we explained in our August 9, 2019 letter regarding the deposition of Rob Osborne, we propose that the parties meet and confer this week.  We will address your "challenge" during that discussion.

**Organization Charts.**  We are puzzled by your assertion that Express Scripts has failed to "answer" your "second request to produce #10."  In its April 15, 2019 Responses and Objections to Plaintiffs' Second Request for Production of Documents, Express Scripts explained that it would "conduct a reasonable search and produce existing directories and/or organizational charts maintained in the ordinary course of business."  On May 1, 2019, Express Scripts' counsel provided you with organizational charts, which they explained would also be included in Express Scripts' May 3, 2019 production.  As you are no doubt aware, those same organizational charts were indeed produced on May 3, 2019.  Two months later, counsel also directed you to specific BATES numbers for additional organizational charts produced by Express Scripts in not only that same May 3, 2019 production, but also additional productions made by Express Scripts on May 31, 2019 and June 5, 2019.  Finally, on July 19, 2019, Express Scripts produced *over 4,000 pages* of organizational charts at BATES numbers ExpressScripts0701068 through ExpressScripts705206.  Consistent with the *Rockford* Court's order, we have spoken with our client and confirmed that Express Scripts has conducted a "diligent search" and produced to plaintiffs all of the existing organizational charts that it can locate.  This too was all confirmed in writing, specifically in our August 5, 2019 letter,  Having met Express Scripts' discovery obligations as well as the Court's July 23 order, Express Scripts' search for, and production of, organizational charts is now complete.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**Express Scripts' Custodian Lists.**  In response to your proposal of 101 custodians—which includes countless individuals who cannot reasonably be expected to possess relevant material—Express Scripts provided a counter proposal on August 12, 2019 identifying an additional five custodians, bringing its total proposed custodians in this case to twenty.  We are happy to discuss our proposal during the meet and confer we have proposed for this week, but we will reiterate again here that we expect you to fulfill your commitment to the Court to coordinate discovery across the multiple litigations you have brought related to Acthar.  That includes custodians and search terms.  We note here only that (1) we see no connection between the number of depositions permitted by the Court and the number of *custodians for document production*; and (2) it is unsurprising that Mallinckrodt, Acthar's manufacturer and the central player in Plaintiff's allegations, may have more relevant custodians than Express Scripts.

We look forward to your confirmation of our proposed meet and confer for this week.

Very truly yours,
/s/ Eric Lyttle
Eric Lyttle


cc:     Mike Lyle, Esq.
        Ethan Glass, Esq.
        Meghan A. McCaffrey, Esq.
        Mike Bonanno, Esq.
        Jan H. Ohlander, Esq.

Case# 2018-14059-169 Docketed at Montgomery County Public Access Policy of the Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

| | |
|---|---|
| **From:** | Kreiner, Evan R (NYC) |
| **Sent:** | Friday, July 5, 2019 6:00 PM |
| **To:** | 'Don Haviland'; 'Bill Platt' |
| **Cc:** | Martino, Matthew M (NYC); Menitove, Michael H (NYC); Petkovich, Morgan L (NYC); Cicchese, Heather (NYC); 'Joseph Walsh'; 'Stephanie Dise' |
| **Subject:** | IUOE Local 542 v. Mallinckrodt: Amended Responses to Document Requests 1-8, 15-23 |
| **Attachments:** | Express Scripts Entities' Amended Responses to Requests 1-8, 15-23.pdf |

Don and Bill,

Attached are the Express Scripts Entities' amended responses to documents request numbers 1-8 and 15-23.

Thanks,
Evan

**Evan R. Kreiner**
**Associate**
**Skadden, Arps, Slate, Meagher & Flom LLP**
**Four Times Square | New York | 10036-6522**
**T: 212.735.2491 | F: 917.777.2491**
evan.kreiner@skadden.com

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**IN THE COURT OF COMMON PLEAS**
**FOR MONTGOMERY COUNTY, PENNSYLVANIA**

|  |  |  |
|---|---|---|
| INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 542, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 2018-14059 |
| MALLINCKRODT ARD, INC., *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS EXPRESS SCRIPTS HOLDING
COMPANY, EXPRESS SCRIPTS, INC., CURASCRIPT,
INC., CURASCRIPT SD, ACCREDO HEALTH GROUP,
INC., AND UNITED BIOSOURCE CORPORATION'S AMENDED
RESPONSES TO REQUESTS 1-8 AND 15-23 OF PLAINTIFF IUOE
LOCAL 542'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS**

Defendants Express Scripts Holding Company, Express Scripts, Inc., CuraScript, Inc.,

CuraScript SD, Accredo Health Group, Inc., and United BioSource Corporation (each

independently and collectively referred to as, the "Express Scripts Entities"), by and through

their undersigned counsel and pursuant to the Pennsylvania Rules of Civil Procedure, hereby

submit these Amended Responses to Requests 1-8 and 15-23 of Plaintiff's First Requests for

Production of Documents, served on January 16, 2019 addressed to all Defendants (the

"Requests").

These amended responses reflect only the present state of the Express Scripts Entities'

investigation regarding the requested information.  The Express Scripts Entities therefore reserve

the right to amend or supplement these amended responses.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

The Express Scripts Entities incorporate the General Objections and Responses and Objections to Definitions included in their initial responses and objections to the Requests, served on February 15, 2019, into each of the specific responses below.

<u>REQUEST FOR PRODUCTION NO. 1</u>:

Please produce all subpoenas, document requests or other discovery **served by or on, or issued by or to you, by or to any Government Entity** Referring or Relating to manufacture, distribution, pricing, marketing, or sale of Acthar, Including all requests made in the matter of *Federal Trade Commission et. al. v. Mallinckrodt ARD Inc., et. al.*, Civil Action No. 1:17-cv-00120, Dist. of Columbia ("*FTC Case*").

<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 1</u>:

The Express Scripts Entities object to this Request on the grounds that the term "discovery" is vague and will therefore interpret "discovery" to refer to discovery requests. Subject to this objection, the Express Scripts Entities respond as follows:

The Federal Trade Commission ("FTC") issued a subpoena *ad testificandum* to Everett Neville.  The subpoena can be found at ExpressScripts0471430.

The Office of the Attorney General of Texas (the "Texas AG") issued a Civil Investigative Demand ("CID") to CuraScript, Inc.  The CID can be found at the document with the beginning Bates number ExpressScripts0471410.

The Office of the Attorney General of California (the "California AG") issued an informal request for documents and information to Express Scripts, Inc.  By July 12, 2019, the Express Scripts Entities will produce this informal request.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

<u>REQUEST FOR PRODUCTION NO. 2</u>:

Please produce, in the form or order produced to said Government Entity, **all Documents previously produced by You** in response to any request or subpoena from any Government Entity Referring or Relating to manufacture, distribution, pricing, marketing, or sale of Acthar, Including all documents produced by You in the *FTC Case*.

<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 2</u>:

The Express Scripts Entities respond as follows:

The responses and objections to the Texas AG's CID can be found at the document with the beginning Bates number ExpressScripts0471405. The Express Scripts Entities are searching for the data produced to the Texas AG, and will produce the data once it is located.

A letter responding to the California AG's informal request for documents and information can be found at the document with the beginning Bates number ExpressScripts0471373. The documents produced to the California AG that do not require notice to be provided to a third party can be found at ExpressScripts0458468 to ExpressScripts0471264. The Express Scripts Entities will produce any documents produced to the California AG that require notice to be provided to a third party after such notice period has expired.

<u>REQUEST FOR PRODUCTION NO. 3</u>:

Please produce, in the form or order produced, **all Documents previously produced to You** from any Government Entity Referring or Relating to manufacture, distribution, pricing, marketing, or sale of Acthar, Including all documents produced to You in the *FTC Case*.

<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 3</u>:

The Express Scripts Entities respond as follows:

The Express Scripts Entities are not aware of any documents responsive to this Request.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

REQUEST FOR PRODUCTION NO. 4:

Please produce all transcripts of testimony, Including transcriptions of formal or informal proceedings, hearings, interviews, or depositions, written statements or testimony, affidavits, and summaries of any such testimony, given by You or Your Employee(s) to any Government Entity Referring or Relating to manufacture, distribution, pricing, marketing, or sale of Acthar, Including all such documents in the *FTC Case*.

RESPONSE TO REQUEST FOR PRODUCTION NO. 4:

The Express Scripts Entities object to this Request on the grounds that the term "written statements" is vague. The Express Scripts Entities will interpret "written statements" to mean affidavits or declarations. Subject to this objection, the Express Scripts Entities respond as follows:

The Express Scripts Entities are searching for a transcript of any testimony Everett Neville provided to the FTC pursuant to the subpoena *ad testificandum* that can be found at ExpressScripts0471430.

REQUEST FOR PRODUCTION NO. 5:

Please produce all subpoenas, document requests or other discovery **served by or on, or issued by or to, You by or to any private party** in any litigation involving the manufacture, distribution, pricing, marketing, or sale of Acthar, Including not limited to all requests made in the following matters:  (a) *Retrophin, Inc. v. Questcor Pharmaceuticals Inc.*, No. 8:14-CV-00026-JLS (JPR), C.D.Cal. ("*Retrophin Case*"); (b) *In re Questcor Pharmaceuticals, Inc. Securities Litig.*, No. 8:12-cv-01623-DMG (JPR), C.D.Cal. ("*Questcor Securities Case*"); (c) *Patricia A. Shenk v. Mallinckrodt PLC and Mark Trudeau*, No. 1:17-cv-00145, Dist. of Columbia, and all related cases, including but not limited to cases brought by Amalgamated Bank, State Teachers Retirement System of Ohio, ("*Mallinckrodt Securities Case*"); (d) *Barry Franks v. Mallinckrodt Enterprises LLC, et. al.*, Case No. 3:16-cv-07300-RS, N.D.Cal. ("*Franks Case*"); and (e) *Rasvinder Dhaliwal v. Mallinckrodt PLC a/k/a Mallinckrodt Pharmaceuticals, et. al.*, Case 1:18-cv-03146-VSB, S.D.N.Y. ("*Dhaliwal Case*").

RESPONSE TO REQUEST FOR PRODUCTION NO. 5:

The Express Scripts Entities object to this Request on the grounds that the term "discovery" and the phrase "any litigation involving the manufacture, distribution, pricing, marketing, or sale of Acthar" are vague. The Express Scripts Entities will therefore interpret

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

"discovery" to refer to discovery requests, and will respond to this Request for the listed matters only.  Subject to this objection, the Express Scripts Entities respond as follows:

For the *Retrophin Case*, the Express Scripts Entities are not aware of any documents responsive to this Request.

For the *Questcor Securities Case*, a subpoena served on CuraScript, Inc. can be found at the document with the beginning Bates number ExpressScripts0471389.

For the *Mallinckrodt Securities Case*, the Express Scripts Entities are not aware of any documents responsive to this Request.

For the *Franks Case*, a subpoena served on United BioSource Corporation can be found at the document with the beginning Bates number ExpressScripts0471376.

For the *Dhaliwal Case*, the Express Scripts Entities are not aware of any documents responsive to this Request.

REQUEST FOR PRODUCTION NO. 6:

Please produce **all Documents previously produced by You** in or Related to any private party in litigation involving Acthar, Including but not limited to all documents produced by You in the *Retrophin Case*, *Questcor Securities Case*, *Mallinckrodt Securities Case*, *Franks Case* and *Dhaliwal Case*.

RESPONSE TO REQUEST FOR PRODUCTION NO. 6:

The Express Scripts Entities object to this Request on the grounds that the phrases "in or Related to any private party in litigation" and "litigation involving Acthar" are vague.  The Express Scripts Entities will therefore respond to this Request for the listed matters only.  Subject to this objection, the Express Scripts Entities respond as follows:

For cases other than the *Franks Case*, the Express Scripts Entities are not aware of any documents responsive to this Request.  For the *Franks Case*, the Express Scripts Entities are

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

searching for any documents produced in response to the subpoena that can be found at the document with the beginning Bates number ExpressScripts0471376.

REQUEST FOR PRODUCTION NO. 7:

Please produce **all Documents previously produced to You** in or Related to any private party in litigation involving Acthar, Including but not limited to all documents produced by You in the *Retrophin Case*, *Questcor Securities Case*, *Mallinckrodt Securities Case*, *Franks Case* and *Dhaliwal Case*.

RESPONSE TO REQUEST FOR PRODUCTION NO. 7:

The Express Scripts Entities object to this Request because it inconsistently asks for documents "produced to You," including documents "produced by You." The Express Scripts Entities will interpret this Request to seek documents previously produced to the Express Scripts Entities. The Express Scripts Entities also object to this Request on the grounds that the phrases "in or Related to any private party in litigation" and "litigation involving Acthar" are vague. The Express Scripts Entities will therefore respond to this Request for the listed matters only. Subject to these objections, the Express Scripts Entities respond as follows:

The Express Scripts Entities are not aware of any documents responsive to this Request.

REQUEST FOR PRODUCTION NO. 8:

Please produce all transcripts of testimony, Including transcriptions of formal or informal proceedings, hearings, interviews, or depositions, written statements or testimony, affidavits, and summaries of any such testimony, given by You or Your Employee(s) to any private party in litigation involving Acthar, Including but not limited to all documents produced by You in the *Retrophin Case*, *Questcor Securities Case*, *Mallinckrodt Securities Case*, *Franks Case* and *Dhaliwal Case*.

RESPONSE TO REQUEST FOR PRODUCTION NO. 8:

The Express Scripts Entities object to this Request on the grounds that the phrases "written statements" and "litigation involving Acthar" are vague. The Express Scripts Entities will therefore interpret "written statements" to refer to affidavits or declarations, and will

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

respond to this Request for the listed matters only.  Subject to this objection, the Express Scripts Entities respond as follows:

The Express Scripts Entities are not aware of any documents responsive to this Request.

REQUEST FOR PRODUCTION NO. 15:

Please produce all Acthar Support and Access Program forms submitted or Sent by You during the Relevant Period, referring or relating to Plaintiff or any of Plaintiff's beneficiaries.

RESPONSE TO REQUEST FOR PRODUCTION NO. 15:

The Express Scripts Entities object to this Request on the grounds that the phrase "Acthar Support and Access Program forms" is vague.  The Express Scripts Entities will interpret this phrase to mean Acthar Support and Access Program Start Forms or Acthar Support and Access Program referral forms.  Subject to this objection, the Express Scripts Entities respond as follows:

Documents responsive to this Request can be found at ExpressScripts0332129; ExpressScripts0332134; and ExpressScripts0471320 to ExpressScripts0471321.

REQUEST FOR PRODUCTION NO. 16:

Please produce all Acthar Support and Access Program forms submitted or Sent to You during the Relevant Period, referring or relating to Plaintiff or any of Plaintiff's beneficiaries.

RESPONSE TO REQUEST FOR PRODUCTION NO. 16:

The Express Scripts Entities object to this Request on the grounds that the phrase "Acthar Support and Access Program forms" is vague.  The Express Scripts Entities will interpret this phrase to mean Acthar Support and Access Program Start Forms or Acthar Support and Access Program referral forms.  Subject to this objection, the Express Scripts Entities respond as follows:

Documents responsive to this Request can be found at ExpressScripts0332118 to ExpressScripts0332120; ExpressScripts0332129; ExpressScripts0332134;

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

ExpressScripts0332141 to ExpressScripts0332146; ExpressScripts0471279;

ExpressScripts0471302; ExpressScripts0471320 to ExpressScripts0471321;

ExpressScripts0471362; and ExpressScripts0471367 to ExpressScripts0471370.

<u>REQUEST FOR PRODUCTION NO. 17</u>:

  Please produce any and all database(s) and Documents You maintained as part of the Acthar Support and Access Program during the Relevant Period, referring or relating to Plaintiff or any of Plaintiff's beneficiaries.

<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 17</u>:

  The Express Scripts Entities object to this Request on the grounds that it is overbroad, unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence because it requires the production of "all database(s) and Documents You maintained as part of the Acthar Support and Access Program," over multiple years, without limitation to information relating to Plaintiff or Plaintiff's beneficiaries. The Express Scripts Entities object to this Request on the grounds that it is overbroad and unduly burdensome because the databases the Express Scripts Entities maintained as part of the Acthar Support and Access Program are unrelated to the claims or issues alleged in the Amended Complaint. Subject to these objections, the Express Scripts Entities respond as follows:

  The Acthar Support and Access Program Start Forms and Acthar Support and Access Program referral forms submitted or sent to or by the Express Scripts Entities, referring or relating to Plaintiff or any of Plaintiff's beneficiaries can be found at ExpressScripts0332118 to ExpressScripts0332120; ExpressScripts0332129; ExpressScripts0332134; ExpressScripts0332141 to ExpressScripts0332146; ExpressScripts0471279; ExpressScripts0471302; ExpressScripts0471320 to ExpressScripts0471321; ExpressScripts0471362; and ExpressScripts0471367 to ExpressScripts0471370. Other documents maintained as part of the Acthar Support and Access Program related to Plaintiff's

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

beneficiaries' Acthar prescriptions can be found at ExpressScripts0332121 to ExpressScripts0332128; ExpressScripts0332130 to ExpressScripts0332133; ExpressScripts0332135 to ExpressScripts0332140; ExpressScripts0332147 to ExpressScripts0332148; ExpressScripts0471265 to ExpressScripts0471278; ExpressScripts0471280 to ExpressScripts0471301; ExpressScripts0471303 to ExpressScripts0471319; ExpressScripts0471322 to ExpressScripts0471361; ExpressScripts0471363 to ExpressScripts0471366; and ExpressScripts0471371 to ExpressScripts0471372.

<u>REQUEST FOR PRODUCTION NO. 18</u>:

Please produce any and all database(s) and Documents of all Medical Provider information referring or relating to any medical provider who treated any of Plaintiff's beneficiaries.

<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 18</u>:

The Express Scripts Entities object to this Request on the grounds that it is overbroad, unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence because it requests "all database(s) and Documents of all Medical Provider information referring or relating to any medical provider who treated any of Plaintiff's beneficiaries," over multiple years, without limitation to documents relating to Plaintiff's beneficiaries who purchased Acthar. The Express Scripts Entities also object to this Request on the grounds that the term "Medical Provider information" is vague. The Express Scripts Entities will interpret "Medical Provider information" to mean background information about medical providers. Subject to these objections, the Express Scripts Entities respond as follows:

When provided on the Acthar Support and Access Program enrollment form, United BioSource Corporation maintains certain basic background information about prescribing physicians who submit referrals to the Acthar Support and Access Program. If any such

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

information exists relating to Plaintiff's beneficiaries' Acthar prescriptions, the Express Scripts Entities will produce such information concerning the medical providers who treated Plaintiff's beneficiaries.

REQUEST FOR PRODUCTION NO. 19:

Please produce any and all database(s) and Documents that Include payment information referring or relating to any payments made by Plaintiff or any of Plaintiff's beneficiaries.

RESPONSE TO REQUEST FOR PRODUCTION NO. 19:

The Express Scripts Entities object to this Request on the grounds that it is overbroad, unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence because it requests "all database(s) and Documents that Include payment information referring or relating to any payments made by Plaintiff or any of Plaintiff's beneficiaries," over multiple years, without limitation to information relating to payments Plaintiff or any of Plaintiff's beneficiaries made to the Express Scripts Entities relating to prescriptions for Acthar.  The Express Scripts Entities also object to this Request on the grounds that the phrase "payment information referring or relating to any payments" is vague.  The Express Scripts Entities will interpret this phrase to mean "information referring or relating to any payments."  Subject to these objections, the Express Scripts Entities respond as follows:

By July 12, 2019, the Express Scripts Entities will produce documents sufficient to show the payments Plaintiff and Plaintiff's beneficiaries made to the Express Scripts Entities relating to prescriptions for Acthar.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

REQUEST FOR PRODUCTION NO. 20:

Please produce any and all database(s) and Documents that Include billing information referring or relating to Plaintiff or any of Plaintiff's beneficiaries.

RESPONSE TO REQUEST FOR PRODUCTION NO. 20:

The Express Scripts Entities object to this Request on the grounds that it is overbroad, unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence because it requests "all database(s) and Documents that Include billing information referring or relating to Plaintiff or any of Plaintiff's beneficiaries," over multiple years, without limitation to information relating to bills the Express Scripts Entities sent to Plaintiff or any of Plaintiff's beneficiaries relating to prescriptions for Acthar. The Express Scripts Entities also object to this Request on the grounds that the term "billing information" is vague. The Express Scripts Entities will interpret this term to mean "amounts billed." Subject to these objections, the Express Scripts Entities respond as follows:

Documents sufficient to show the amounts billed to Plaintiff or Plaintiff's beneficiaries relating to prescriptions for Acthar for two of Plaintiff's beneficiaries can be found at ExpressScripts0471422 to ExpressScripts0471429 and ExpressScripts0471431 to ExpressScripts0471432. By July 12, 2019, the Express Scripts Entities will produce documents sufficient to show the amounts billed to Plaintiff or Plaintiff's beneficiaries relating to prescriptions for Acthar for Plaintiff's one other beneficiary who was prescribed Acthar during the relevant time period.

11

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

<u>REQUEST FOR PRODUCTION NO. 21</u>:

Please produce any and all database(s) and Documents that Include payor information referring or relating to Plaintiff or any of Plaintiff's beneficiaries.

<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 21</u>:

The Express Scripts Entities object to this Request on the grounds that it is overbroad, unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence because it requests "all database(s) and Documents that Include payor information referring or relating to Plaintiff or any of Plaintiff's beneficiaries," over multiple years, without limitation to information relating to payments Plaintiff or any of Plaintiff's beneficiaries made to the Express Scripts Entities relating to prescriptions for Acthar.  The Express Scripts Entities also object to this Request on the grounds that the phrase "payor information referring or relating to Plaintiff or any of Plaintiff's beneficiaries" is vague.  The Express Scripts Entities will interpret this phrase to mean "information referring or relating to any payments made by Plaintiff or Plaintiff's beneficiaries."  Subject to these objections, the Express Scripts Entities respond as follows:

By July 12, 2019, the Express Scripts Entities will produce documents sufficient to show payments Plaintiff or any of Plaintiff's beneficiaries made to the Express Scripts Entities relating to prescriptions for Acthar.

<u>REQUEST FOR PRODUCTION NO. 22</u>:

Please produce any and all database(s) and Documents that Include shipping and shipment information referring or relating to Plaintiff or any of Plaintiff's beneficiaries.

<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 22</u>:

The Express Scripts Entities object to this Request on the grounds that it is overbroad, unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

admissible evidence because it requests "all database(s) and Documents" even tangentially related to the subject matter of the Request over multiple years, without limitation to information relating to the Express Scripts Entities' shipment of Acthar for Plaintiff or any of Plaintiff's beneficiaries.  Subject to this objection, the Express Scripts Entities respond as follows:

By July 12, 2019, the Express Scripts Entities will produce documents sufficient to show records of the Express Scripts Entities' shipments of Acthar for Plaintiff or any of Plaintiff's beneficiaries.

REQUEST FOR PRODUCTION NO. 23:

Please produce all Documents and records of the distribution and sale of Acthar, Including distribution of free Acthar (maintained pursuant to internal practice, the Prescription Drug Marketing Act, § 21 U.S.C. 301, *et seq.*, other federal or state laws, or otherwise) to any medical provider who treated any of Plaintiffs beneficiaries with Acthar, Including customer invoices, activity reports on drug sales, sales call notes, and any other periodic sales reports or summaries that Identify patient and payor names and addresses and the prices, quantities, purchase volumes, rebates, price or other discounts, and any other sales terms and conditions provided to patients of these providers.

RESPONSE TO REQUEST FOR PRODUCTION NO. 23:

The Express Scripts Entities object to this Request on the grounds that it is overbroad, unduly burdensome, irrelevant, and not reasonably calculated to lead to the discovery of admissible because it requests "all Documents and records" even tangentially related to the "distribution and sale of Acthar" over multiple years.  Subject to this objection, the Express Scripts Entities respond as follows:

By July 12, 2019, the Express Scripts Entities will produce documents sufficient to show records of the distribution and sale of Acthar to Plaintiff or Plaintiff's beneficiaries.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Dated:  July 5, 2019


By: */s/ Matthew M. Martino*

Matthew M. Martino (admitted *pro hac vice*)
Michael H. Menitove (admitted *pro hac vice*)
Evan R. Kreiner (admitted *pro hac vice*)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036
Telephone: (212) 735-3000
matthew.martino@skadden.com
michael.menitove@skadden.com
evan.kreiner@skadden.com

Joseph P. Walsh (PA ID No. 64352)
WALSH PANCIO LLC
2028 North Broad Street
Lansdale, PA 19446
Telephone: (215) 368-8660

*Attorneys for Defendants Express Scripts Holding
Company, Express Scripts, Inc., CuraScript, Inc.,
CuraScript SD, Accredo Health Group, Inc., and
United BioSource Corporation, now known as
United BioSource LLC*

14

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## CERTIFICATE OF SERVICE

Matthew M. Martino hereby certifies that on July 5, 2019, a true and correct copy of the foregoing Amended Responses of Defendants Express Scripts Holding Company, Express Scripts, Inc., CuraScript, Inc., CuraScript SD, Accredo Health Group, Inc., and United BioSource Corporation to Requests 1-8 and 15-23 of Plaintiff IUOE Local 542's First Requests for Production of Documents was served via e-mail on the following counsel of record for Plaintiff:

Donald E. Haviland, Jr., Esquire (PA I.D. #66615)
*haviland@havilandhughes.com*
William H. Platt II, Esquire (PA I.D. #83585)
*platt@havilandhughes.com*
**Haviland Hughes**
201 South Maple Way, Suite 110
Ambler, PA 19002
(215) 609-4661 Telephone
(215) 392-4400 Facsimile

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

By: */s/ Matthew M. Martino*
      Matthew M. Martino

*Attorneys for Defendants Express Scripts Holding Company, Express Scripts, Inc., CuraScript, Inc., CuraScript SD, Accredo Health Group, Inc., and United BioSource Corporation, now known as United BioSource LLC*

15

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT H

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**From:** Derick Sohn
**To:** Don Haviland; Bill Platt; Stephanie Dise
**Cc:** Eric Lyttle; Meghan McCaffrey; Mike Bonanno
**Subject:** Rockford v. Mallinckrodt ARD, Inc., et al., No. 1:17-CV-50107
**Date:** Wednesday, August 21, 2019 3:40:42 PM

Don,

## Custodians

We've had an opportunity to review Plaintiff's suggestion to add an additional 14 custodians for the contract files. We have confirmed that the fifteen custodians from whom Express Scripts already produced, plus the additional five identified in our August 12 correspondence, represent the set of relevant custodians in this case, including for any relevant contract files. Plaintiffs' request to add an additional 14 custodians on top of Express Scripts' proposal for contract files alone is unlikely to yield additional responsive documents, disproportionate and unnecessarily burdensome. Nevertheless, and in the spirit of compromise, Express Scripts will agree to add the following custodians:

1. Kevin Cast
2. Jaime Manuel
3. Gayle Johnston
4. Andy Behm
5. Janine Burkett
6. Christine Houston
7. Earl English

During our August 16 meet and confer, you indicated you would provide a brief explanation as to why you were seeking documents from each of the 107 total custodians you have now proposed. We agreed to evaluate those explanations and consider additional custodians, but to date, we have not received them. Please provide these explanations as soon as possible so that we can further our discussions. To assist in those efforts, we note that your list identified several proposed custodians who left Express Scripts long ago - in some cases, almost a decade – and, in any event, well before Plaintiff's filed the Rockford action. As a result, and due to Express Scripts' normal business practices, Express Scripts does not have any custodial documents for the following custodians:

1. Nick Black - left 12/01/2011
2. Stephen Jensen - left 06/06/2008
3. Gerard Carino - left 03/03/2008
4. Brian Tatirosian - left 11/13/2009
5. James Hill - left 03/07/2008
6. Tom Andrade - left 7/25/2007

We also note that, while our August 12 correspondence suggested the addition of John Rivers as a custodian, we've now confirmed that Mr. Rivers left Express Scripts in March 2008 and similarly has no custodial documents as a function of Express Scripts' normal business practices.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**Search Terms**

Express Scripts provided a proposed list of search terms in our August 12 correspondence that will capture relevant documents and communications related to issues in this case, including relevant contract files (we have, of course, already produced all contracts and amendments). During our meet and confer, you rejected that proposal but stated that you were working with Mallinckrodt's counsel to develop search terms. We agreed to look at those terms and requested they be provided during both the meet and confer and in subsequent correspondence. To date, we have not received that list and thus, have not received a search term counter proposal from Express Scripts. Please provide that list or otherwise provide a counter proposal on search terms as soon as possible.

**Mr. Osborne's Deposition**

You requested deposition dates for Mr. Osborne. As we noted during our meet and confer, any deposition of Mr. Osborne at this stage is premature at best. The parties are still discussing threshold discovery issues like custodians and search terms. Moreover, you have refused to offer any proposal for how the parties can coordinate discovery across the various cases, despite your representations to the Court that such coordination is appropriate here. Given this, it is our position that it is not appropriate to proceed with Mr. Osborne's deposition at this time as noted in our August 7 letter.

If, however, you continue to insist on moving forward, Mr. Osborne has dates available October 9, 10, 16, 17, 23, 24, 30. Note, however, that Express Scripts will agree to make Mr. Osborne made available for deposition only once. Thus, if you insist on proceeding with his deposition now, and additional documents get produced as a function of the parties' current ongoing custodian and search term negotiations, Express Scripts will not agree to make Mr. Osborne available again for deposition in this case or any other one you have filed with similar allegations.

We look forward to your confirmation that the above at least resolves the parties disputes as to custodians. We will close by reiterating our belief that there is a path forward for coordinating discovery across cases, just as you represented to the court previously, and we look forward to your proposals on that front.

Best,

**Derick Sohn**
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP

1300 I Street NW, Suite 900
Washington, D.C. 20005
202.538.8313 Direct
202.538.8000 Main Office Number
202.538.8100 FAX
dericksohn@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT I

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

| | |
|---|---|
| **From:** | Mike Bonanno |
| **To:** | Don Haviland; Derick Sohn; Bill Platt; Stephanie Dise |
| **Cc:** | Eric Lyttle; Meghan McCaffrey |
| **Subject:** | RE: Rockford v. Mallinckrodt ARD, Inc., et al., No. 1:17-CV-50107 |
| **Date:** | Wednesday, August 21, 2019 5:28:25 PM |

Don,

For some reason it seems like you want to drive the custodian/search term discussions to an impasse without providing your reasons for insisting on additional custodians, or even identifying the additional contract-specific search terms that you want us to run. The custodians and search terms we have identified are more than adequate for the reasons we have explained in prior correspondence. You apparently disagree, but you have refused to substantiate your position. We cannot meaningfully respond to your proposal unless provide us with some explanation of your view. We hope you will not needlessly burden the Court with a discovery dispute by attempting to explain your stance for the first time in a Court filing.

With regard to search terms, we have now asked several times for you to provide the list of additional contract-specific search terms that you believe to be appropriate. You have not provided them, even though you indicated last Friday that you would provide us with the list that you are actively discussing with Mallinckdrodt. Please send us your proposed, contract-specific search terms.

With regard to custodians, I am not sure what you intend to say to "update" the Court. You still have not provided the information that you promised to provide us last Friday, ie, an explanation for why you believe Express Scripts should expand its existing list of 22 custodians to include each of the 100+ additional custodians you have identified. Please provide that information.

Thanks, and best,

Mike


**From:** Don Haviland [mailto:haviland@havilandhughes.com]
**Sent:** Wednesday, August 21, 2019 4:01 PM
**To:** Derick Sohn <dericksohn@quinnemanuel.com>; Bill Platt <platt@havilandhughes.com>; Stephanie Dise <dise@havilandhughes.com>
**Cc:** Eric Lyttle <ericlyttle@quinnemanuel.com>; Meghan McCaffrey <meghanmccaffrey@quinnemanuel.com>; Mike Bonanno <mikebonanno@quinnemanuel.com>
**Subject:** Re: Rockford v. Mallinckrodt ARD, Inc., et al., No. 1:17-CV-50107

### [EXTERNAL EMAIL]

Derek
The below does not resolve anything, but a date for Mr. Osborne's deposition. For the

reasons stated on our call, due to Express Scripts' current refusal to produce all relevant documents from all relevant custodians, using a complete list of search terms,  if relevant documents are produced after the Osborne deposition is taken, we may seek relief from a court and reserve the right to do so.

Since we agree to disagree as to the contract file issue, I suggest we prepare our separate positions to be included in a joint letter to the court tomorrow  for resolution at Monday's hearing.

We will send you a template in the morning for the inclusion of your section.

As for other custodians and search terms, as I stated on our call last Friday, we intend to provide an update to the Court on our negotiations, but also ask the Court about how to present any disputes for resolution, once the negotiation process is ended. Based on your team's statements last Friday, your letters (and those of prior counsel) and the below email, I think we are close to an impasse.

Donald E. Haviland, Jr. Esquire
Managing Partner
Haviland Hughes
"We push back"
Ambler - Philadelphia
Atlantic City - Lehigh Valley

Proudly sent from my blackberry dumbphone.

**From:** Derick Sohn
**Sent:** Wednesday, August 21, 2019 3:40 PM
**To:** Don Haviland; Bill Platt; Stephanie Dise
**Cc:** Eric Lyttle; Meghan McCaffrey; Mike Bonanno
**Subject:** Rockford v. Mallinckrodt ARD, Inc., et al., No. 1:17-CV-50107

Don,

## Custodians

We've had an opportunity to review Plaintiff's suggestion to add an additional 14 custodians for the contract files.  We have confirmed that the fifteen custodians from whom Express Scripts already produced, plus the additional five identified in our August 12 correspondence, represent the set of relevant custodians in this case, including for any relevant contract files. Plaintiffs' request to add an additional 14 custodians on top of Express Scripts' proposal for contract files alone is unlikely to yield additional responsive documents, disproportionate and unnecessarily burdensome. Nevertheless, and in the spirit of compromise, Express Scripts will agree to add the following custodians:

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

1. Kevin Cast
2. Jaime Manuel
3. Gayle Johnston
4. Andy Behm
5. Janine Burkett
6. Christine Houston
7. Earl English

During our August 16 meet and confer, you indicated you would provide a brief explanation as to why you were seeking documents from each of the 107 total custodians you have now proposed. We agreed to evaluate those explanations and consider additional custodians, but to date, we have not received them. Please provide these explanations as soon as possible so that we can further our discussions. To assist in those efforts, we note that your list identified several proposed custodians who left Express Scripts long ago - in some cases, almost a decade – and, in any event, well before Plaintiff's filed the Rockford action.  As a result, and due to Express Scripts' normal business practices, Express Scripts does not have any custodial documents for the following custodians:

1. Nick Black - left 12/01/2011
2. Stephen Jensen - left 06/06/2008
3. Gerard Carino - left 03/03/2008
4. Brian Tatirosian - left 11/13/2009
5. James Hill - left 03/07/2008
6. Tom Andrade - left 7/25/2007

We also note that, while our August 12 correspondence suggested the addition of John Rivers as a custodian, we've now confirmed that Mr. Rivers left Express Scripts in March 2008 and similarly has no custodial documents as a function of Express Scripts' normal business practices.

### Search Terms
Express Scripts provided a proposed list of search terms in our August 12 correspondence that will capture relevant documents and communications related to issues in this case, including relevant contract files (we have, of course, already produced all contracts and amendments).  During our meet and confer, you rejected that proposal but stated that you were working with Mallinckrodt's counsel to develop search terms.  We agreed to look at those terms and requested they be provided during both the meet and confer and in subsequent correspondence.  To date, we have not received that list and thus, have not received a search term counter proposal from Express Scripts.  Please provide that list or otherwise provide a counter proposal on search terms as soon as possible.

### Mr. Osborne's Deposition
You requested deposition dates for Mr. Osborne.  As we noted during our meet and confer, any deposition of Mr. Osborne at this stage is premature at best.  The parties are still discussing threshold discovery issues like custodians and search terms.  Moreover, you have refused to offer any proposal for how the parties can coordinate discovery across the various cases, despite your representations to the Court that such coordination is appropriate here.  Given this, it is our position that it is not appropriate to proceed with Mr. Osborne's deposition at this time as noted in our

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

August 7 letter.

If, however, you continue to insist on moving forward, Mr. Osborne has dates available October 9, 10, 16, 17, 23, 24, 30. Note, however, that Express Scripts will agree to make Mr. Osborne made available for deposition only once. Thus, if you insist on proceeding with his deposition now, and additional documents get produced as a function of the parties' current ongoing custodian and search term negotiations, Express Scripts will not agree to make Mr. Osborne available again for deposition in this case or any other one you have filed with similar allegations.

We look forward to your confirmation that the above at least resolves the parties disputes as to custodians. We will close by reiterating our belief that there is a path forward for coordinating discovery across cases, just as you represented to the court previously, and we look forward to your proposals on that front.

Best,

**Derick Sohn**
*Associate*
Quinn Emanuel Urquhart & Sullivan, LLP

1300 I Street NW, Suite 900
Washington, D.C. 20005
202.538.8313 Direct
202.538.8000 Main Office Number
202.538.8100 FAX
dericksohn@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the
Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT J

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

| | |
|---|---|
| **From:** | Stephanie Dise |
| **To:** | Michael Bonanno |
| **Cc:** | Don Haviland; Bill Platt; Eric C. Lyttle; Ethan C. Glass; Meghan A. McCaffrey, Esq; Michael J. Lyle; "joe@walshpancio.com" |
| **Subject:** | International Union of Operating Engineers Local 542 v. Mallinckrodt ARD, Inc. |
| **Date:** | Tuesday, September 17, 2019 3:49:30 PM |
| **Attachments:** | 2019.09.17 Notice of Deposition Paul Grew.pdf |
| | 2019.09.17 Second Notice of Deposition Rob Osborne.pdf |
| | 2019.09.17 Ltr to ESI Counsel encl. Osborne Grew Deposition Notices.pdf |

Mr. Bonanno,

Please see the attached correspondence and Notices of Deposition in connection with the above-referenced matter.

Thank you.

**Stephanie A. Dise, Pa.C.P.**
**Paralegal**
**Haviland Hughes | 215-609-4661**
**Ambler | Philadelphia | Lehigh Valley | Atlantic City**

CONFIDENTIALITY NOTICE:  This Email and any attachments thereto are intended for the exclusive use of the addressee. The information contained herein may be privileged, confidential or otherwise exempt from disclosure by applicable laws, rules or regulations.  If you have received this Email in error and are not the intended recipient, you are hereby placed on notice that any use, distribution, copying or dissemination of this communication is strictly prohibited. If you have received this in error please notify the sender immediately at 215-609-4661 and delete this Email and any attachments immediately.  Thank you for your anticipated cooperation.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.



### HAVILAND HUGHES

WWW.HAVILANDHUGHES.COM

September 17, 2019

**_Via Electronic Mail and First-Class Mail_**

Michael Bonanno, Esq.
Quinn Emanuel Urquhard & Sullivan, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005

**Re: _IUOE Local 542 v. Mallinckrodt ARD, Inc., et al._**

Dear Mike,

Enclosed please find Notices of Depositions directed to Rob Osborne and Paul Grew which we have scheduled for October 23 and 24, 2019, respectively, beginning at 9:00 a.m. at 1125 Walnut Street, Philadelphia, Pennsylvania.

Sincerely,

_s/ Donald E. Haviland, Jr._

DONALD E. HAVILAND, JR.

DEH/sd
Enclosures
cc:    Eric C. Lyttle, Esq. (via email only)
       Ethan C. Glass, Esq. (via email only)
       Meghan A. McCaffrey, Esq. (via email only)
       Michael J. Lyle, Esq. (via email only)
       Joseph P. Walsh, Esq. (via email only)

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Donald E. Haviland, Jr., Esquire (PA I.D. #66615)
*haviland@havilandhughes.com*
William H. Platt II, Esquire (PA I.D. #83585)
*platt@havilandhughes.com*
**HAVILAND HUGHES**
201 South Maple Way, Suite 110
Ambler, PA 19002                         *Counsel for Plaintiff,*
(215) 609-4661 Telephone                 *International Union of Operating Engineers*
(215) 392-4400 Facsimile                 *Local 542*

## IN THE COURT OF COMMON PLEAS
## FOR MONTGOMERY COUNTY, PENNSYLVANIA

| | |
|---|---|
| **INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 542**<br><br>Plaintiff,<br><br>v.<br><br>**MALLINCKRODT ARD, INC., *et al.***<br><br>Defendants. | Civil Action No. 2018-14059<br><br>**SECOND NOTICE OF DEPOSITION AND REQUEST FOR THE PRODUCTION OF DOCUMENTS AND THINGS** |

TO:     **Rob Osborne, VP Pharma Trade Relations**
        **Express Scripts; Accredo; CuraScript SD**
        c/o Joseph P. Walsh, Esq.
        Walsh Pancio LLC
        2028 North Broad Street
        Lansdale, PA 19446

        Eric C. Lyttle, Esq.
        Ethan C. Glass, Esq.
        Meghan A. McCaffrey, Esq.
        Michael J. Lyle, Esq.
        Michael Bonanno, Esq.
        Quinn Emanuel Urquhart & Sullivan, LLP
        1300 I Street, NW
        Washington D.C.  20005

     **PLEASE TAKE NOTICE** that, pursuant to Rule 4007.1 *et seq.* of the Pennsylvania

Rules of Civil Procedure, **YOU ARE HEREBY COMMANDED** to attend and give testimony

before the above named Court by way of deposition upon oral examination before a notary

1

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

public or some other officer authorized by law to administer oaths in the above-captioned matter on **October 23, 2019, at 9:00 a.m.**, and continuing thereafter from day to day until completed, at The Beasley Firm, 1125 Walnut Street, Philadelphia, Pennsylvania 19107 (or at such other time, or at such other place, as counsel and the witness agree upon). The testimony will be recorded stenographically and/or by videotape.

*You are also required to bring with you and produce at the same time and place, pursuant to Pa.R.C.P. No. 4007.1 and Pa.R.C.P. No. 4009.1 et seq., all the documents, materials, books, papers and other tangible things in your possession or control identified in Exhibit "A," attached hereto.*

Failure to appear or comply with the notice shall subject you to the penalties provided by law.

Respectfully submitted,

Dated: September 17, 2019

By: *s/ Donald E. Haviland, Jr.*
Donald E. Haviland, Jr.
*haviland@havilandhughes.com*
William H. Platt II
*platt@havilandhughes.com*
**HAVILAND HUGHES**
201 South Maple Avenue, Suite 110
Ambler, PA 19002
Phone: (215) 609-4661
Fax:    (215) 392-4400

*Counsel for Plaintiff,*
*International Union of Operating*
*Engineers Local 542*

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## EXHIBIT "A"

Documents to be produced:

1.       Documents in your possession, custody or control relating to the negotiation of any contracts, agreements or other arrangements or understandings between any Express Scripts Entity" (as defined in Defendants' Answer to the Complaint), including Curascript and/or any subsidiary (including Healthbridge, United BioSource and/or Accredo) and Mallinckrodt ARD f/k/a Questcor Pharmaceuticals, Inc., relating to the manufacturer, distribution, promotion, sale or prescription of Acthar, including any of the agreements produced by Express Scripts in this lawsuit.

2.       Documents in your possession, custody or control relating to your knowledge of, involvement in or the formation and conduct the "Acthar Support & Access Program" (or the "A.S.A.P.").

3.       Documents in your possession, custody or control relating to any changes in the prices of Acthar including, the Average Wholesale Price ("AWP"), Wholesale Acquisition cost ("WAC"), list price, ex-factory price, or other prices.

4.       Documents in your possession, custody or control relating to a "suitable price" and/or a "competitive price" for Acthar.

5.       All written communications (regardless of the electronic or paper media or form) between you and any individual employed by Express Scripts (or any subsidiary company), United BioSource, or BioSolutia during the relevant time period 2006 through 2014.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Donald E. Haviland, Jr., Esquire (PA I.D. #66615)
*haviland@havilandhughes.com*
William H. Platt II, Esquire (PA I.D. #83585)
*platt@havilandhughes.com*
**HAVILAND HUGHES**
201 South Maple Way, Suite 110
Ambler, PA 19002                          *Counsel for Plaintiff,*
(215) 609-4661 Telephone                  *International Union of Operating Engineers*
(215) 392-4400 Facsimile                  *Local 542*

<div align="center">

**IN THE COURT OF COMMON PLEAS
FOR MONTGOMERY COUNTY, PENNSYLVANIA**

</div>

| | |
|---|---|
| **INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 542** <br><br> Plaintiff, <br><br> v. <br><br> **MALLINCKRODT ARD, INC.,** *et al.* <br><br> Defendants. | Civil Action No. 2018-14059 <br><br> **NOTICE OF DEPOSITION AND REQUEST FOR THE PRODUCTION OF DOCUMENTS AND THINGS** |

TO:     **Paul J. Grew, MBA, RPh, Senior Director, National Labor Div.
        Express Scripts; Accredo; CuraScript SD**
        c/o Joseph P. Walsh, Esq.
        Walsh Pancio LLC
        2028 North Broad Street
        Lansdale, PA 19446

        Eric C. Lyttle, Esq.
        Ethan C. Glass, Esq.
        Meghan A. McCaffrey, Esq.
        Michael J. Lyle, Esq.
        Michael Bonanno, Esq.
        Quinn Emanuel Urquhart & Sullivan, LLP
        1300 I Street, NW
        Washington D.C. 20005

**PLEASE TAKE NOTICE** that, pursuant to Rule 4007.1 *et seq.* of the Pennsylvania

Rules of Civil Procedure, **YOU ARE HEREBY COMMANDED** to attend and give testimony

before the above named Court by way of deposition upon oral examination before a notary

<div align="center">1</div>

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

public or some other officer authorized by law to administer oaths in the above-captioned matter on **October 24, 2019, at 9:00 a.m.**, and continuing thereafter from day to day until completed, at The Beasley Firm, 1125 Walnut Street, Philadelphia, Pennsylvania 19107 (or at such other time, or at such other place, as counsel and the witness agree upon). The testimony will be recorded stenographically and/or by videotape.

*You are also required to bring with you and produce at the same time and place, pursuant to Pa.R.C.P. No. 4007.1 and Pa.R.C.P. No. 4009.1 et seq., all the documents, materials, books, papers and other tangible things in your possession or control identified in Exhibit "A," attached hereto.*

Failure to appear or comply with the notice shall subject you to the penalties provided by law.

Respectfully submitted,

Dated: September 17, 2019

By:  <u>s/ Donald E. Haviland, Jr.</u>
Donald E. Haviland, Jr.
*haviland@havilandhughes.com*
William H. Platt II
*platt@havilandhughes.com*
**HAVILAND HUGHES**
201 South Maple Avenue, Suite 110
Ambler, PA 19002
Phone: (215) 609-4661
Fax:    (215) 392-4400

*Counsel for Plaintiff,*
*International Union of Operating*
*Engineers Local 542*

2

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**EXHIBIT "A"**

Documents to be produced:

1.     Documents in your possession, custody or control relating to the Plaintiff in this case, including all communications with or concerning the Plaintiff.

2.     Documents in your possession, custody or control relating to the Delaware Valley Healthcare Coalition ("DVHCC"), including all communications with or concerning the DVHCC.

3.     Documents in your possession, custody or control relating to third party payor ("TPP"), other than the Plaintiff (including union funds, employers, municipalities, etc.), including any communications with such TPP, concerning the price, cost or value of specialty drugs, including Acthar.

4.     Documents in your possession, custody or control relating to Acthar.

5.     Documents in your possession, custody or control relating to the price or cost of Acthar.

6.     Documents in your possession, custody or control relating to the price or cost of specialty drugs, and their value for the treatment of disease.

7.     Documents in your possession, custody or control relating to the FDA-approved uses and doses of Acthar.

8.     Documents in your possession, custody or control relating to unapproved uses and doses of Acthar.

9.     Documents in your possession, custody or control relating to the mode of action of Acthar for the treatment of disease.

10.    Documents in your possession, custody or control relating to drugs other than Acthar used to treat the following diseases: infantile spasms, multiple sclerosis, nephrology syndrome and rheumatoid arthritis.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT K

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

| From: | Chase Burrell |
|---|---|
| To: | Don Haviland; Bill Platt |
| Cc: | Mike Lyle; Eric Lyttle; Ethan Glass; Meghan McCaffrey; Mike Bonanno; "joe@walshpancio.com"; Brian Rowe |
| Subject: | International Union of Operating Engineers Local 542 v. Mallinckrodt ARD, Inc. |
| Date: | Thursday, September 26, 2019 6:46:08 PM |

Counsel,

We received your notices of deposition for Mr. Osborne and Mr. Grew, but the parties have not met and conferred regarding dates, locations, or times for their depositions. We will not produce these witnesses in Philadelphia as noticed. Neither witness works or resides in Pennsylvania, and requiring them to travel there would subject them to unreasonable annoyance, burden, and expense. We will produce Mr. Osborne for deposition in or around Orlando, FL where he works and resides. We will produce Mr. Grew for deposition in or around Buffalo, NY where he works and resides. Please note, as we have stated on multiple occasions, that we will produce each witness for deposition only once.

We are able to meet and confer concerning dates, locations, and times on Monday.

Best,

**Chase Burrell**
*Associate,*
Quinn Emanuel Urquhart & Sullivan, LLP

1300 I Street, NW, Suite 900
Washington, D.C. 20005
202-538-8281 Direct
202.538.8000 Main Office Number
202.538.8100 FAX
chaseburrell@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT L

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

| From: | Chase Burrell |
|---|---|
| To: | Don Haviland; Bill Platt |
| Cc: | Mike Lyle; Eric Lyttle; Ethan Glass; Meghan McCaffrey; Mike Bonanno; "joe@walshpancio.com"; Brian Rowe; Bill Platt; Stephanie Dise |
| Subject: | RE: International Union of Operating Engineers Local 542 v. Mallinckrodt ARD, Inc. |
| Date: | Friday, September 27, 2019 6:01:38 PM |
| Attachments: | image001.png |

Counsel,

We are available to speak at 2 pm.  If that time works, I will circulate a dial-in.

Best,

**Chase Burrell**
*Associate,*
Quinn Emanuel Urquhart & Sullivan, LLP

1300 I Street, NW, Suite 900
Washington, D.C. 20005
202-538-8281 Direct
202.538.8000 Main Office Number
202.538.8100 FAX
chaseburrell@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**From:** Don Haviland [mailto:haviland@havilandhughes.com]
**Sent:** Friday, September 27, 2019 2:34 PM
**To:** Chase Burrell <chaseburrell@quinnemanuel.com>; Bill Platt <platt@havilandhughes.com>
**Cc:** Mike Lyle <mikelyle@quinnemanuel.com>; Eric Lyttle <ericlyttle@quinnemanuel.com>; Ethan Glass <ethanglass@quinnemanuel.com>; Meghan McCaffrey <meghanmccaffrey@quinnemanuel.com>; Mike Bonanno <mikebonanno@quinnemanuel.com>; 'joe@walshpancio.com' <joe@walshpancio.com>; Brian Rowe <brianrowe@quinnemanuel.com>; Bill Platt <platt@havilandhughes.com>; Stephanie Dise <dise@havilandhughes.com>
**Subject:** RE: International Union of Operating Engineers Local 542 v. Mallinckrodt ARD, Inc.

**[EXTERNAL EMAIL]**

Mr. Burrell,
There is no requirement in Pennsylvania to "meet and confer" prior to noticing a deposition.
As you should know, we noticed the Osborne deposition several months ago.
Joe Walsh committed to setting a reasonable date, and we received the dates out of which we chose the October date.
We are unwilling to move the deposition to florida.  The same is true for Buffalo.
We are happy to speak with you on Monday, but that's our position.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Let us know when you wish to speak.

Donald E. Haviland, Jr., Esq.
Managing Member
*Haviland Hughes*
*"We push back"*
Ambler - Philadelphia
Atlantic City - Lehigh Valley
tel: 215-609-4661
fax: 215-392-4400



**From:** Chase Burrell [mailto:chaseburrell@quinnemanuel.com]
**Sent:** Thursday, September 26, 2019 6:46 PM
**To:** Don Haviland; Bill Platt
**Cc:** Mike Lyle; Eric Lyttle; Ethan Glass; Meghan McCaffrey; Mike Bonanno; 'joe@walshpancio.com'; Brian Rowe
**Subject:** International Union of Operating Engineers Local 542 v. Mallinckrodt ARD, Inc.

Counsel,

We received your notices of deposition for Mr. Osborne and Mr. Grew, but the parties have not met and conferred regarding dates, locations, or times for their depositions. We will not produce these witnesses in Philadelphia as noticed. Neither witness works or resides in Pennsylvania, and requiring them to travel there would subject them to unreasonable annoyance, burden, and expense. We will produce Mr. Osborne for deposition in or around Orlando, FL where he works and resides. We will produce Mr. Grew for deposition in or around Buffalo, NY where he works and resides. Please note, as we have stated on multiple occasions, that we will produce each witness for deposition only once.

We are able to meet and confer concerning dates, locations, and times on Monday.

Best,

**Chase Burrell**
*Associate,*
Quinn Emanuel Urquhart & Sullivan, LLP

1300 I Street, NW, Suite 900
Washington, D.C. 20005
202-538-8281 Direct
202.538.8000 Main Office Number
202.538.8100 FAX
chaseburrell@quinnemanuel.com
www.quinnemanuel.com

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT M

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

| | |
|---|---|
| **From:** | Meghan McCaffrey |
| **To:** | Don Haviland |
| **Cc:** | Mike Lyle; Eric Lyttle; Ethan Glass; joe@walshpancio.com; Bill Platt; Stephanie Dise |
| **Subject:** | Re: International Union of Operating Engineers Local 542 v. Mallinckrodt ARD, Inc. |
| **Date:** | Wednesday, October 2, 2019 8:44:02 PM |
| **Attachments:** | image001.png |

Don,

Express Scripts will not agree to pay your expenses or attorneys' fees in connection with deposing either Mr. Grew or Mr. Osborne in their respective hometowns. We're not yet able to confirm Mr. Grew's availability in Philadelphia for the next 2-3 months, but will continue working to get you an answer. In the meantime, we'll be moving for a protective order.

Best,
Meghan

On Oct 2, 2019, at 1:19 PM, Don Haviland <haviland@havilandhughes.com> wrote:

[EXTERNAL EMAIL]

We trust we will hear from by day's end about the below two outstanding requests from Monday's meet and confer.

Donald E. Haviland, Jr., Esq.
Managing Member
*Haviland Hughes*
*"We push back"*
Ambler - Philadelphia
Atlantic City - Lehigh Valley
tel: 215-609-4661
fax: 215-392-4400
<image001.png>

**From:** Don Haviland
**Sent:** Monday, September 30, 2019 2:26 PM
**To:** Meghan McCaffrey
**Cc:** Mike Lyle; Eric Lyttle; Ethan Glass; 'joe@walshpancio.com'; Bill Platt; Stephanie Dise
**Subject:** RE: International Union of Operating Engineers Local 542 v. Mallinckrodt ARD, Inc.

Ms. McCaffrey,
As represented on our call, now concluded, we look forward to hearing from you about the 2 outstanding issues, about which you were unable to provide a response:

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

<!--[if !supportLists]-->1.   <!--[endif]-->Whether and when either witness [Mr. Osborne and Mr. Grew] will be in Pennsylvania in the next three months; and

<!--[if !supportLists]-->2.   <!--[endif]-->Whether your client will agree to pay the reasonable expenses, including attorney's fees, of requiring plaintiff counsel to take the depositions of these witnesses more than 100 miles from the courthouse.

We look forward to hearing from you by Wednesday, which you said was sufficient time to respond.

Donald E. Haviland, Jr., Esq.
Managing Member
*Haviland Hughes*
*"We push back"*
Ambler - Philadelphia
Atlantic City - Lehigh Valley
tel: 215-609-4661
fax: 215-392-4400
<image001.png>

**From:** Chase Burrell [mailto:chaseburrell@quinnemanuel.com]
**Sent:** Friday, September 27, 2019 6:01 PM
**To:** Don Haviland; Bill Platt
**Cc:** Mike Lyle; Eric Lyttle; Ethan Glass; Meghan McCaffrey; Mike Bonanno; 'joe@walshpancio.com'; Brian Rowe; Bill Platt; Stephanie Dise
**Subject:** RE: International Union of Operating Engineers Local 542 v. Mallinckrodt ARD, Inc.

Counsel,

We are available to speak at 2 pm.  If that time works, I will circulate a dial-in.

Best,

**Chase Burrell**
*Associate,*
Quinn Emanuel Urquhart & Sullivan, LLP

1300 I Street, NW, Suite 900
Washington, D.C. 20005
202-538-8281 Direct
202.538.8000 Main Office Number
202.538.8100 FAX
chaseburrell@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**From:** Don Haviland [mailto:haviland@havilandhughes.com]
**Sent:** Friday, September 27, 2019 2:34 PM
**To:** Chase Burrell <chaseburrell@quinnemanuel.com>; Bill Platt
<platt@havilandhughes.com>
**Cc:** Mike Lyle <mikelyle@quinnemanuel.com>; Eric Lyttle
<ericlyttle@quinnemanuel.com>; Ethan Glass <ethanglass@quinnemanuel.com>;
Meghan McCaffrey <meghanmccaffrey@quinnemanuel.com>; Mike Bonanno
<mikebonanno@quinnemanuel.com>; 'joe@walshpancio.com'
<joe@walshpancio.com>; Brian Rowe <brianrowe@quinnemanuel.com>; Bill Platt
<platt@havilandhughes.com>; Stephanie Dise <dise@havilandhughes.com>
**Subject:** RE: International Union of Operating Engineers Local 542 v. Mallinckrodt ARD,
Inc.

**[EXTERNAL EMAIL]**

Mr. Burrell,
There is no requirement in Pennsylvania to "meet and confer" prior to noticing a
deposition.
As you should know, we noticed the Osborne deposition several months ago.
Joe Walsh committed to setting a reasonable date, and we received the dates out of
which we chose the October date.
We are unwilling to move the deposition to florida.  The same is true for Buffalo.
We are happy to speak with you on Monday, but that's our position.
Let us know when you wish to speak.

Donald E. Haviland, Jr., Esq.
Managing Member
*Haviland Hughes*
*"We push back"*
Ambler - Philadelphia
Atlantic City - Lehigh Valley
tel: 215-609-4661
fax: 215-392-4400
<image001.png>

**From:** Chase Burrell [mailto:chaseburrell@quinnemanuel.com]
**Sent:** Thursday, September 26, 2019 6:46 PM
**To:** Don Haviland; Bill Platt
**Cc:** Mike Lyle; Eric Lyttle; Ethan Glass; Meghan McCaffrey; Mike Bonanno;
'joe@walshpancio.com'; Brian Rowe
**Subject:** International Union of Operating Engineers Local 542 v. Mallinckrodt ARD, Inc.

Counsel,

We received your notices of deposition for Mr. Osborne and Mr. Grew, but the parties have not met and conferred regarding dates, locations, or times for their depositions. We will not produce these witnesses in Philadelphia as noticed. Neither witness works or resides in Pennsylvania, and requiring them to travel there would subject them to unreasonable annoyance, burden, and expense. We will produce Mr. Osborne for deposition in or around Orlando, FL where he works and resides. We will produce Mr. Grew for deposition in or around Buffalo, NY where he works and resides. Please note, as we have stated on multiple occasions, that we will produce each witness for deposition only once.

We are able to meet and confer concerning dates, locations, and times on Monday.

Best,

**Chase Burrell**
*Associate,*
Quinn Emanuel Urquhart & Sullivan, LLP

1300 I Street, NW, Suite 900
Washington, D.C. 20005
202-538-8281 Direct
202.538.8000 Main Office Number
202.538.8100 FAX
chaseburrell@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT N

In re Interest Rate Swaps Antitrust Litig.

## *In re Interest Rate Swaps Antitrust Litig.*

United States District Court for the Southern District of New York

May 23, 2018, Decided; May 23, 2018, Filed

16-MD-2704 (PAE); 16-MC-2704 (PAE)

**Reporter**

2018 U.S. Dist. LEXIS 86732 *; 2018-1 Trade Cas. (CCH) P80,391; 2018 WL 2332069

IN RE: INTEREST RATE SWAPS *ANTITRUST* LITIGATION. This Document Relates to All Actions

**Prior History:** *In re Interest Rate Swaps Antitrust Litig., 2016 U.S. Dist. LEXIS 101959 (S.D.N.Y., Aug. 3, 2016)*

## Core Terms

Dealers, trading, platform, discovery, plaintiffs', allegations, all-to-all, negotiations, clearing, conspiracy, parties, amend, buy-side, deadline, restore, production of documents, swaps, pled, electronic, anonymous, issues, class plaintiff, entities, launched, discovery dispute, new allegation, *antitrust*, boycott, revive, concealment

**Counsel: [*1]** For Mayor and City Council of Baltimore, Mayor and City Council of Baltimore, Plaintiff (1:16-md-02704-PAE): Arun Srinivas Subramanian, Cory Spencer Buland, Elisha Brandis Barron, Seth D. Ard, William Christopher Carmody, Lucas Estlund Issacharoff, LEAD ATTORNEYS, Susman Godfrey LLP (NYC), New York, NY; Daniel Lawrence Brockett, LEAD ATTORNEY, Quinn Emanuel, New York, NY; Steven Jeffrey Toll, LEAD ATTORNEY, PRO HAC VICE, Cohen Milstein Sellers & Toll PLLC (DC), Washington, DC.

For Public School Teachers' Pension and Retirement Fund of Chicago, on behalf of itself and all others similarly situated, Plaintiff (1:16-md-02704-PAE): Carol V. Gilden, Cohen Milstein Sellers & Toll PLLC (IL), LEAD ATTORNEY, PRO HAC VICE, Chicago, IL; Daniel Lawrence Brockett, LEAD ATTORNEY, Quinn Emanuel, New York, NY; David Leray, LEAD ATTORNEY, Quinn Emanuel Urquhart & Sullivan (NYC), New York, NY; John Douglas Richards, Sharon Kunjumon Robertson, LEAD ATTORNEYS, Cohen Milstein Sellers & Toll P.L.L.C., New York, NY; Joseph M. Burns, LEAD ATTORNEY, PRO HAC VICE, Jacobs, Burns, Orlove & Hernandez, Chicago, IL; Sascha Nicholas Rand, LEAD ATTORNEY, Quinn Emanuel,

New York, NY; Steig Olson, LEAD ATTORNEY, Quinn [*2] Emanuel, New York, NY; Steven Jeffrey Toll, LEAD ATTORNEY, PRO HAC VICE, Cohen Milstein Sellers & Toll PLLC (DC), Washington, DC; William Walter Leathem, LEAD ATTORNEY, PRO HAC VICE, Jacobs Burns Orlove & Hernandez, Chicago, IL; Brent W. Johnson, Cohen Milstein Sellers & Toll PLLC (DC), Washington, DC; Kanika Shah, Thomas Popejoy, *Quinn Emanuel* Urquhart & Sullivan (NYC), New York, NY.

For Magnolia Regional Health Center, Cullman Regional Medical Center, Inc., *Plaintiffs* (1:16-md-02704-PAE): Michael John Guzman, LEAD ATTORNEY, Kellogg, Hansen, Todd, Figel & Frederick PLLC (DC), Washington, DC; R. Bryant McCulley, LEAD ATTORNEY, McCulley McCluer PLLC, Sullivans Island, SC; David Charles Frederick, Derek Tam Ho, Kellogg, Hansen, Todd, Figel & Frederick PLLC (DC), Washington, DC.

For Harrison County, Mississippi, Plaintiff (1:16-md-02704-PAE): Michael John Guzman, LEAD ATTORNEY, Kellogg, Hansen, Todd, Figel & Frederick PLLC (DC), Washington, DC; David Charles Frederick, Derek Tam Ho, Kellogg, Hansen, Todd, Figel & Frederick PLLC (DC), Washington, DC.

For Policemen's Annuity & Benefit Fund Of Chicago, Plaintiff (1:16-md-02704-PAE): Michael John Guzman, LEAD ATTORNEY, Kellogg, Hansen, Todd, [*3] Figel & Frederick PLLC (DC), Washington, DC; Christopher M. Burke, Scott Scott, LLP (CA), San Diego, CA; Peter Anthony Barile, III, Scott+Scott, Attorneys At Law, LLP, New York, NY; Yifan Kate Lv, ScottScott, Attorneys At Law, LLP, San Diego, CA.

For THE CITY OF PHILADELPHIA, Plaintiff (1:16-md-02704-PAE): Michael John Guzman, LEAD ATTORNEY, Kellogg, Hansen, Todd, Figel & Frederick PLLC (DC), Washington, DC; Peter Anthony Barile, III, Scott+Scott, Attorneys At Law, LLP, New York, NY; William Leonard, Obermayer Rebmann Maxwell & Hippel LLP, Philadelphia, PA; Yifan Kate Lv, ScottScott,

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Attorneys At Law, LLP, San Diego, CA.

For Tera Advanced Technologies, LLC, Tera Group, Inc., TeraExchange, LLC, Plaintiffs (1:16-md-02704-PAE): David H Wollmuth, James Joseph Brennan, Ryan Anthony Kane, Thomas P Ogden, LEAD ATTORNEYS, Wollmuth Maher & Deutsch LLP, New York, NY; Nicholas Grant Olear Veliky, Wollmuth Maher & Deutsch LLP, New York, NY.

For Javelin Capital Markets LLC, Javelin SEF, LLC, Plaintiffs (1:16-md-02704-PAE): David H Wollmuth, James Joseph Brennan, Ryan Anthony Kane, Thomas P Ogden, LEAD ATTORNEYS, Wollmuth Maher & Deutsch LLP, New York, NY; Nicholas Grant Olear Veliky, Wollmuth Maher [*4] & Deutsch LLP, New York, NY; Robert Cummins, PRO HAC VICE, Norman, Hanson & Detroy LLC, Portland, ME.

For Kansas City, Missouri Employees', Retirement System, Plaintiff (1:16-md-02704-PAE): Bonny E Sweeney, LEAD ATTORNEY, Hausfeld, San Francisco, CA; Scott Allan Martin, LEAD ATTORNEY, Hausfeld LLP, New York, NY; Benjamin Galdston, Blair Allen Nicholas, Brandon Marsh, David R. Kaplan, Lucas E. Gilmore, Bernstein Litowitz Berger & Grossmann LLP, San Diego, CA.

For Genesee County Employees' Retirement System, Plaintiff (1:16-md-02704-PAE): David J. Goldsmith, Gregory Scott Asciolla, Jay L. Himes, Karin Elizabeth Garvey, Matthew Joseph Perez, Robin Ann Van Der Meulen, LEAD ATTORNEYS, Labaton & Sucharow LLP (NYC), New York, NY; Daniel Lawrence Brockett, LEAD ATTORNEY, Quinn Emanuel, New York, NY.

For LD Construction LLC on behalf of themselves and all others similarly situated, LDLJ Associates, L.P. on behalf of themselves and all others similarly situated, David Gardner on behalf of himself and all others similarly situated, Plaintiffs (1:16-md-02704-PAE): Jason Allen Zweig, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP (NYC), New York, NY; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol [*5] Shapiro LLP (Seattle), Seattle, WA.

For Harrison County, Mississippi, Magnolia Regional Health Center, Cullman Regional Medical Center, Inc. on behalf of themselves and all others similarly situated, Plaintiffs (1:16-md-02704-PAE): George A. Zelcs, John Anton Libra, LEAD ATTORNEYS, Korein Tillery, LLC, Chicago, IL; Michael John Guzman, LEAD ATTORNEY, Kellogg, Hansen, Todd, Figel & Frederick PLLC (DC), Washington, DC; R. Bryant McCulley, LEAD ATTORNEY, McCulley McCluer PLLC, Sullivans Island, SC; David Charles Frederick, Derek Tam Ho, Kellogg,

Hansen, Todd, Figel & Frederick PLLC (DC), Washington, DC.

For THE CITY OF PHILADELPHIA On Behalf of Itself and All Others Similarly Situated, Plaintiff (1:16-md-02704-PAE): Chad Emerson Bell, George A. Zelcs, LEAD ATTORNEYS, PRO HAC VICE, Korein Tillery, Chicago, IL; John Anton Libra, LEAD ATTORNEYS, Korein Tillery, LLC, Chicago, IL; Kate Lv, LEAD ATTORNEY, PRO HAC VICE, Scott+Scott, Attorneys at Law, LLP, San Diego, CA; Michael John Guzman, LEAD ATTORNEY, Kellogg, Hansen, Todd, Figel & Frederick PLLC (DC), Washington, DC; Randall P. Ewing, Jr., LEAD ATTORNEY, PRO HAC VICE, Korein Tillery, LLC.

For Policemen's Annuity and Benefit Fund of Chicago, [*6] Plaintiff (1:16-md-02704-PAE): George A. Zelcs, John Anton Libra, LEAD ATTORNEYS, Korein Tillery, LLC, Chicago, IL; Kate Lv, LEAD ATTORNEY, PRO HAC VICE, Scott+Scott, Attorneys at Law, LLP, San Diego, CA; Michael John Guzman, LEAD ATTORNEY, Kellogg, Hansen, Todd, Figel & Frederick PLLC (DC), Washington, DC.

For Triangle T Partners, LLC On behalf of itself and all others similarly situated, Consolidated Plaintiff (1:16-md-02704-PAE): David A. Langer, Merrill G Davidoff, Berger & Montague, P.C, Philadelphia, PA; Michael C. Dell'Angelo, PRO HAC VICE, Berger & Montague, P.C., Philadelphia, PA.

For Lawrence W. Gardner on behalf of himself and all others similarly situated, Petitioner (1:16-md-02704-PAE): Jason Allen Zweig, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP (NYC), New York, NY; Steve W. Berman, LEAD ATTORNEY, Hagens Berman Sobol Shapiro LLP (Seattle), Seattle, WA.

For Bank Of America Corporation, Bank of America, N.A., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Defendants (1:16-md-02704-PAE): Adam Selim Hakki, Richard Franklin Schwed, LEAD ATTORNEYS, New York, NY.

For Barclays PLC, Barclays Bank PLC, Defendants (1:16-md-02704-PAE): Christopher J. Clark, James Ellis Brandt, [*7] Lawrence Edward Buterman, LEAD ATTORNEYS, Latham & Watkins LLP (NY), New York, NY; M. Theodore Takougang, LEAD ATTORNEY, PRO HAC VICE, Latham & Watkins LLP (NY), New York, NY; Margaret M. Zwisler, William H Rawson, LEAD ATTORNEYS, PRO HAC VICE, Latham & Watkins LLP (DC), Washington, DC.

For Barclays Capital Inc., Defendant (1:16-md-02704-PAE): Christopher J. Clark, James Ellis Brandt,

In re Interest Rate Swaps Antitrust Litig.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Lawrence Edward Buterman, LEAD ATTORNEYS, Latham & Watkins LLP (NY), New York, NY; M. Theodore Takougang, LEAD ATTORNEY, PRO HAC VICE, Latham & Watkins LLP (NY), New York, NY; Margaret M. Zwisler, William H Rawson, LEAD ATTORNEYS, PRO HAC VICE, Latham & Watkins LLP (DC), Washington, DC.

For BNP Paribas, S.A., BNP Paribas Securities Corp. Defendants (1:16-md-02704-PAE): Leah Friedman, LEAD ATTORNEY, Friedfields Bruckhaus Deringer US LLP, New York, NY; Marshall Howard Fishman, LEAD ATTORNEY, Christine Vanessa Sama, Goodwin Procter, LLP (NYC), New York, NY; Michael Lacovara, LEAD ATTORNEY, Freshfields Bruckhaus Deringer LLP, New York, NY.

For Citigroup, Inc., Citibank N.A., Citigroup Global Markets Inc., Citigroup Global Markets Limited, Defendants (1:16-md-02704-PAE): Brad Scott Karp, Julia Tarver-Mason Wood, [*8] William Clareman, LEAD ATTORNEYS, Paul, Weiss, Rifkind, Wharton & Garrison LLP (NY), New York, NY; Kenneth Anthony Gallo, LEAD ATTORNEY, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY; Ravi Sharma, LEAD ATTORNEY, PRO HAC VICE, Paul, Weiss, Rifkind, Wharton & Garrison, LLP (DC), Washington, DC; Roberto Gonzalez, LEAD ATTORNEY, Paul, Weiss, Rifkind, Wharton & Garrison, LLP (DC), Washington, DC.

For Credit Suisse Group AG, Credit Suisse AG, Credit Suisse International, Credit Suisse Securities (USA) LLC, Defendant (1:16-md-02704-PAE): David George Januszewski, Elai E. Katz, Herbert Scott Washer, Jason Michael Hall, Sheila Chithran Ramesh, LEAD ATTORNEYS, Cahill Gordon & Reindel LLP, New York, NY.

For Deutsche Bank AG, Deutsche Bank Securities Inc., Defendants (1:16-md-02704-PAE): Eric Peter Stephens, Rebekah E Blake, Tracy V. Schaffer, LEAD ATTORNEYS, Jones Day (NYC), New York, NY; Paula W. Render, LEAD ATTORNEY, PRO HAC VICE, Jones Day (CH), Chicago, IL.

For The Goldman Sachs Group, Inc., Defendant (1:16-md-02704-PAE): Elizabeth P. Papez, LEAD ATTORNEY, PRO HAC VICE, Winston & Strawn LLP, Washington, DC; Joseph Laurence Motto, LEAD ATTORNEY, PRO HAC VICE, Winston & Strawn LLP, [*9] Chicago, IL; Mark Steven Geiger, Richard C. Pepperman, II, LEAD ATTORNEYS, Sullivan and Cromwell, LLP(NYC), New York, NY; Robert Y. Sperling, LEAD ATTORNEY, PRO HAC VICE, Winston

& Strawn LLP (IL), Chicago, IL; Susannah Providence Torpey, LEAD ATTORNEY, Winston & Strawn LLP (NY), New York, NY.

For Goldman Sachs & Co., Goldman Sachs Bank USA, Goldman Sachs Financial Markets, L.P., Goldman Sachs International, Defendants (1:16-md-02704-PAE): Elizabeth P. Papez, LEAD ATTORNEY, PRO HAC VICE, Winston & Strawn LLP, Washington, DC; Joseph Laurence Motto, LEAD ATTORNEY, PRO HAC VICE, Winston & Strawn LLP, Chicago, IL; Richard C. Pepperman, II, Mark Steven Geiger, LEAD ATTORNEYS, Sullivan and Cromwell, LLP(NYC), New York, NY; Robert Y. Sperling, LEAD ATTORNEY, PRO HAC VICE, Winston & Strawn LLP (IL), Chicago, IL; Susannah Providence Torpey, LEAD ATTORNEY, Winston & Strawn LLP (NY), New York, NY.

For J.P. Morgan Chase & Co., J.P. Morgan Chase Bank, N.A., J.P. Morgan Securities LLC, J.P. Morgan Securities PLC, Defendants (1:16-md-02704-PAE): Andrew D. Lazerow, Katharine Mitchell-Tombras, Robert D. Wick, LEAD ATTORNEYS, PRO HAC VICE, Covington & Burling, L.L.P. (DC), Washington, DC; John S. Playforth, [*10] LEAD ATTORNEY, PRO HAC VICE, Covington & Burling LLP, Washington, DC.

For Royal Bank of Scotland PLC, The Royal Bank of Scotland Group PLC, RBS Securities Inc., Defendants (1:16-md-02704-PAE): Arthur J. Burke, LEAD ATTORNEY, Davis Polk & Wardwell, New York, NY; James Irving McClammy, Kelly Lynn McNamee, LEAD ATTORNEYS, Davis Polk & Wardwell LLP, New York, NY.

For UBS AG, UBS Securities LLC, Defendants (1:16-md-02704-PAE): David Charles Bohan, LEAD ATTORNEY, Katten Muchin Rosenman LLP (Chicago), Chicago, IL; Kristin Coveney, LEAD ATTORNEY, PRO HAC VICE, Katten Muchin Rosenman LLP (Chicago), Chicago, IL; Daniel G. Swanson, Gibson, Dunn & Crutcher LLP (CA2), Los Angeles, CA; Gil M. Soffer, Katten Muchin Rosenman LLP, Chicago, IL.

For HSBC Bank USA, N.A., HSBC Securities (USA) Inc., Defendants (1:16-md-02704-PAE): Andrew S. Marovitz, LEAD ATTORNEY, PRO HAC VICE, Mayer Brown LLP (Chicago), Chicago, IL; Britt Marie Miller, LEAD ATTORNEY, PRO HAC VICE, Mayer Brown LLP, Chicago, IL; Richard A. Spehr, LEAD ATTORNEY, Mayer Brown LLP (NY), New York, NY.

For Morgan Stanley, Morgan Stanley Bank, N.A., Morgan Stanley & Co. LLC, Morgan Stanley Capital Services LLC, Morgan Stanley Derivative Products [*11] Inc., Morgan Stanley & Co. International

DONALD HAVILAND

In re Interest Rate Swaps Antitrust Litig.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

plc, Morgan Stanley Bank International Limited, Defendants (1:16-md-02704-PAE): Daniel Slifkin, Michael A Paskin, LEAD ATTORNEYS, Cravath, Swaine & Moore LLP, New York, NY.

For ICAP SEF (US) LLC, ICAP Global Derivatives Limited, ICAP SEF (US) LLC, Defendants (1:16-md-02704-PAE): Harry T. Robins, LEAD ATTORNEY, Morgan, Lewis & Bockius LLP (New York), New York, NY; Jon Randall Roellke, LEAD ATTORNEY, Anthony R. Van Vuren, Morgan, Lewis & Bockius (DC), Washington, DC; Stacey Anne Mahoney, LEAD ATTORNEY, Morgan Lewis & Bockius, LLP (NY), New York, NY.

For IRS *Antitrust* MDL **_Plaintiffs_**, **_Plaintiff_** (1:16-mc-02704-PAE): Daniel Lawrence Brockett, **_Quinn Emanuel_**, New York, NY; Thomas P Ogden, Wollmuth Maher & Deutsch LLP, New York, NY.

For IRS *Antitrust* MDL Defendants, Defendant (1:16-mc-02704-PAE): Jon Randall Roellke, Morgan, Lewis & Bockius (DC), Washington, DC.

**Judges:** Paul A. Engelmayer, United States District Judge.

**Opinion by:** Paul A. Engelmayer

# Opinion

## OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves a motion by the putative class plaintiffs in this multi-district litigation for leave to file a Third Amended Complaint. For the reasons that follow, that motion **[*12]** is granted in part and denied in part.

## I. Background

This case centers on claims of *Sherman Act § 1* violations affecting the market for interest-rate swaps ("IRS" or "IRSs"). Plaintiffs' core factual allegations and liability theories, and the case's procedural background through July 28, 2017, are detailed in the 108-page decision the Court issued that day. *See In re Interest Rate Swaps Antitrust Litigation, 261 F. Supp. 3d 430 (S.D.N.Y. 2017)* ("*In re IRS*"). It resolved motions to dismiss the two Second Amended Complaints: one by the putative plaintiff class ("SAC"); the other by non-

class plaintiffs Javelin Capital Markets LLC ("Javelin") and Tera Group, Inc. ("Tera") ("JTSAC"). The Court incorporates that decision by reference and recites here only necessary background.

## A. Initial Proceedings

On November 25, 2015, the initial complaint before this Court was filed. *See* Complaint, (No. 15 Civ. 9319). On June 2, 2016, the United States Judicial Panel on Multidistrict Litigation ("JPML") transferred all related cases to this Court for coordinated or consolidated pretrial proceedings with the actions pending in this District. Dkt. 1.[1]

On July 26, 2016, the Court held an initial conference and stayed formal discovery. *See* Dkt. 92. On August 3, 2016, the Court appointed Quinn **[*13]** Emanuel Urquhart & Sullivan, LLP, and Cohen Milstein Sellers & Toll, PLLC, as interim co-lead counsel for the putative class. Dkt. 99.

On September 9, 2016, class plaintiffs, Dkt. 113, and the Javelin/Tera plaintiffs, Dkt. 114, each filed an Amended Complaint. On November 4, 2016, defendants filed motions to dismiss. *See* Dkts. 123-134.

On December 9, 2016, class plaintiffs filed the SAC, Dkt. 142, and the Javelin/Tera plaintiffs filed the JTSAC, Dkt. 145 ("JTSAC"). The SAC was 145 pages and 406 paragraphs long.

On May 23, 2017, after extensive briefing on motions to dismiss under *Federal Rule of Civil Procedure 12(b)(6)* by each of the then-13 groups of corporate defendants and their affiliates, the Court heard argument. *See* Dkt. 233 (transcript).

## B. July 28, 2017: The Court's Ruling on the Motions to Dismiss

---

[1] Docket references here are to 16-MD-2704, insofar as many filings pertinent to the motion to amend have not been filed on the docket in No. 16-MC-2704, the "master case" docket established for filings of significance, Dkt. 11, which is intended to encompass motions to dismiss and associated filings. The Court asks counsel henceforth to file substantive motions and supporting submissions, as well as letters relating to discovery disputes and to counsel's monthly status calls with the Court, on the dockets in both 16-MD-2704 and 16-MC-2704.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

In its ruling on the motions to dismiss, the Court drew a sharp distinction between the Sherman Act *§ 1* allegations regarding 2008-2012 (made by class plaintiffs only) and those regarding 2013-2016 (made by both sets of plaintiffs).

The Court dismissed the former claims and sustained the latter. That was for three distinct reasons: (1) the character, depth, and overall plausibility of plaintiffs' claims of collusive conduct among [*14] the investment banks who dealt in IRSs ("Dealer Defendants" or "Dealers") in violation of *§ 1* differed markedly across the two periods; (2) plaintiffs' claims based on injuries incurred before November 25,2011 fell outside the four-year statute of limitations and were time-barred; and (3) class plaintiffs lacked *antitrust* standing to pursue claims covering the pre-2013 period.

## 1. 2008-2012

The SAC's allegations of unlawful collusion during 2008-2012, the Court held, fell well short of plausibly alleging conduct violating *§ 1*. That was so whether the SAC was construed to allege parallel conduct by competitors occurring under circumstances giving rise to an inference of a *§ 1* conspiracy, direct evidence of a *§ 1* conspiracy, or both. *See generally In re IRS, 261 F. Supp. 3d at 463-472*.

As for parallel conduct by the Dealer Defendants, the Court noted, the SAC contained scant allegations of such during this period. The main parallel conduct alleged—choosing in various ways not to support the eventual emergence of electronic all-to-all trading of IRS—did not give rise to an inference of collusion. That was because there was good reason, as a matter of "rational and competitive business strategy," *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*, "for any individual Dealer independently [*15] to have sought to maintain the status quo and to discourage, not facilitate, all-to-all IRS exchange trading," because, as alleged, "such platforms presented an existential threat to the Dealers' profit margins as market makers," *In re IRS, 261 F. Supp. 3d at 463-464*.

The inference urged by the SAC of an all-Dealer conspiracy to inhibit future electronic all-to-all trading platforms from eventually coming into being was made all the less plausible, the Court held, given the state of the industry during 2008-2012. Key infrastructure to support electronic anonymous all-to-all IRS trading was

not yet in place. These included mechanisms for central clearing accessible to and financially supported by the buy-side. *Id. at 465*.

Rather, the regulatory impetus for the development of all-to-all trading had come from the Dodd-Frank statute, enacted July 21, 2010, and its 2012-2013 implementing regulations. *See Id. at 445-447*. These established a comprehensive regulatory framework for swaps including IRSs; required that swaps be traded on platforms ("swap execution facilities," or "SEFs"); required the buy side to trade IRSs via these new platforms; and mandated the central clearing of IRS trades. *See id.* The CFTC itself, the Court observed, had recognized [*16] that mandating central clearing would promote participation by the buy-side in anonymous all-to-all IRS trading in these new trading fora that Dodd-Frank had brought about. *See id. at 446* (citing Clearing Requirements Determination Under *Section 2(h)* of the *CEA, 77 Fed. Reg. 74,284, 74,287 (Dec. 13, 2012)* ("CFTC Clearing Rule")). At the same time, the CFTC had recognized, buy-side participants would face significant costs and burdens adapting to such platforms. These included infrastructural, technological, and financial costs (*e.g.*, posting of financial collateral to enable clearing of their trades).

Further, during 2008-2012, the companies that later came to offer all-to-all anonymous trading platforms for IRSs—Javelin, Tera, and three others—did not yet offer such platforms. There were thus no extant all-to-all trading platforms for the Dealers to boycott. *See generally Id. at 465* ("Before Dodd-Frank made this vital infrastructure a looming reality, there would have been no urgency for collective action to block all-to-all exchange trading from emerging.").

As to purported direct evidence of a conspiracy, the Court noted, the SAC mainly relied on allegations regarding "Project Fusion." *See id. at 465-466*. There, Dealers had purchased a controlling interest in Tradeweb—an entity [*17] which had developed a dealer-to-client request-for quotes ("RFQ") platform that operated consistent with the day's norms—allegedly to ensure that it would not expand to introduce all-to-all anonymous trading to the IRS market. *Id.* But the SAC's claims as to that venture fell well short of plausibly alleging a *§ 1* conspiracy. The SAC's claim of a plot to terminate a Tradeweb plan to open an all-to-all IRS platform was highly conclusory, both because the existence of such a plan was summarily pled, *id. at 466*, and because the SAC did not allege direct evidence of a conspiracy to quash such a plan, *id. at 466-467*.

In re Interest Rate Swaps Antitrust Litig.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Further, the Court held, to the extent collective action was alleged in connection with Dealers' joint ownership in Tradeweb, this claim did not describe *per se* unlawful conduct. It described a joint venture among horizontal competitors that, as pled, was well-funded and had legitimate business objectives and potentially redeeming justifications. Under settled § 1 doctrine, it thus could be held unlawful only under the Rule of Reason. But, the Court held, the SAC failed to plead key facts to make out a Rule of Reason claim (including defining Tradeweb's product or geographic market and its market share or [*18] power within that market). The SAC also did not allege why Tradeweb's decision to focus its resources on trading platforms and asset classes other than a novel platform for all-to-all IRS trading had been, on balance, anti-competitive. *Id. at 467-469*.

Independently, the Court held that most of the SAC's § 1 claims as to 2008-2012 were time-barred. Rejecting plaintiffs' claim of fraudulent concealment, the Court held outside the four-year statute of limitations the SAC's claims based on injuries incurred before November 25, 2011. That ruling effectively supplied an alternative basis to dismiss the SAC's § 1 claim to the extent it covered 2008 through November 25,2011. *See id. at 487-490*.

Finally, the Court held, class plaintiffs lacked ***antitrust*** standing to pursue claims of injury suffered before 2013. The putative plaintiff must be an "efficient enforcer" of the ***antitrust*** laws, and a central factor in that inquiry is whether the plaintiff's claimed injury is speculative. *Id. at 491*. But in the years before 2013—when Dodd-Frank's mandates had yet to take effect and the SEFs that first offered all-to-all IRS trading had yet to emerge—the SAC's § 1 claims failed this standard. The SAC's theory was the Dealers had blocked from emerging [*19] the species of IRS trading fora that emerged in 2013-2014: platforms enabling electronic all-to-all anonymous trading. It postulated that, had these platforms arisen in 2008-2012, the prices at which class plaintiffs would have traded IRSs would have been superior. This theory of injury, the Court held, was "extraordinarily conjectural," as the SAC's "alternative history of IRS trading for the first five years of the class period (2008-2012) requires too many leaps of imagination and guesswork for a claim of class injury to be viable." *Id. at 494*. That ruling provided a third basis for the dismissal of the claims covering 2008-2012. *See id. at 490-495*.

**2. 2013-2016**

In contrast, as to 2013-2016, the Court held, the SAC stated a viable § 1 claim of a group boycott. So did the JTSAC, which brought claims to the same effect on behalf of Javelin and Tera, which claimed to have been targeted by a Dealer boycott of the platforms they opened in 2013 and 2014. *See id. at 472*.

As to plausibility, by 2013-2016, the Court noted, platforms for all-to-all anonymous IRS trading had emerged, facilitated by Dodd-Frank and its implementing regulations. The background conditions and market infrastructure thus now made claims of a conspiracy [*20] to destroy or marginalize these platforms more plausible. In this period, as alleged, five such platforms emerged. These included three (Tera, Javelin, and TrueEx) that plaintiffs claimed were targets of a Dealer conspiracy. *See id.*

Further, unlike in the 2008-2012 period, the SAC alleged numerous acts of parallel conduct by competing Dealers suggestive of a conspiracy to boycott these platforms, not merely a common decision not to support or trade on these platforms. These included similar Dealer tactics at meetings with Javelin and Tera, parallel withholdings by Dealers of affiliated clearing services, common excuses and vocabulary, parallel conduct towards the exchanges' customers, and parallel refusals to consent to smaller "inter-dealer brokers" doing business with the new exchanges. *Id. at 472-474*. Strikingly, the SAC alleged parallel ruses by four Dealers towards Tera the day after Tera's first IRS trade. The four Dealers feigned sudden interest in "auditing" Tera—in an apparent attempt to block Tera's progress. *Id. at 473-474*. Other alleged incidents and statements by individual Dealers supported the claim of collusion. *Id. at 476-477*. Viewed in total, these allegations made plausible the claim that the Dealers had [*21] conspired to stunt emergent exchanges, which threatened Dealers' profit margins. *See generally id. at 472-481*.

Nor did the other deficiencies of the 2008-2012 claims preclude the 2013-2016 claims. The later claims were undisputedly timely. And, as to ***antitrust*** standing, class plaintiffs' theory of injury from 2013-2016 was not inherently unduly speculative. The Court, however, did caution—including in a later order clarifying the scope of trades that class plaintiffs could pursue—that due attention to the mechanics of trading would be necessary as the case progressed to assure that plaintiffs' theories of injury were not unduly speculative. *Id. at 494-495*; *see also* Dkt. 251 (August 29, 2017

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

order).[2]

## C. Subsequent Progress of This Litigation

Following resolution of the motions to dismiss, this litigation moved productively forward. The parties negotiated, and in August 2017 the Court approved, a case management plan governing, *inter alia*, fact discovery. *See* Dkt. 246 (August 21, 2017 order); Dkt. 250 (August 28, 2017 order). The plan set a May 21, 2018 deadline for the substantial completion of document production and a December 21, 2018 deadline for the completion of fact discovery.

To meet these [*22] deadlines, the parties and the Court worked intensively. In brief:

Counsel engaged in extensive negotiations over discovery parameters. These involved counsel for numerous entities, including the putative class; non-class plaintiffs Javelin and Tera; the 11 groups of Dealer Defendants that remained in the case; and third-party institutions to whom discovery was directed. These negotiations addressed such matters as custodians, topics, search terms, and time-frames.

Multiple times, the parties briefed discovery disputes, which the Court resolved in a series of written decisions. *See, e.g.*, Dkt. 266 (October 10, 2017 decision); Dkt. 296 (October 25, 2017 decision); Dkt. 322 (January 8, 2018 decision).

The Court also convened a monthly telephone conference with counsel. Each call was preceded by a joint letter from lead counsel giving a status update on the case, primarily focusing on discovery. These letters and calls enabled the Court to take stock of the progress of the case, including discovery; to give counsel direction on open issues; to receive a preview of unresolved discovery disputes; and to set briefing

---

[2] The balance of the July 28, 2017 decision involved issues not relevant here. On defendant-specific grounds, the Court dismissed plaintiffs' claims against three defendants or groups: a Dealer (HSBC Bank PLC), an inter-dealer broker (ICAP Capital Markets LLC), and an entity (TradeWeb Markets LLC) which allegedly first refrained from opening an all-to-all IRS platform and later opened such a platform but kept it minimally active. *See generally In re IRS, 261 F. Supp. 3d at 483-487*. The Court also rejected defendants' argument that the Dodd-Frank statute impliedly precluded plaintiffs' § 1 claims, *id. at 495-498*, and resolved challenges to state-law claims, *id. at 498-501*.

schedules as to discovery disputes. *See, e.g.*, Dkt. 302 (November 15, 2017 [*23] joint letter); Dkt. 308 (transcript of November 17, 2017 call); Dkt. 315 (December 13, 2017 joint letter); Dkt. 320 (transcript of December 15, 2017 call); Dkt. 324 (January 24, 2018 joint letter); Dkt. 331 (transcript of January 26, 2018 call).

Important here, these activities—and the production of documents, now well underway—were conducted against the backdrop of the decision on the motions to dismiss. The Court's rulings as to discovery were premised on—and took as durable—the Court's central holding that the surviving claims in the case were limited to the 2013-2016 period. Two examples illustrate the point.

***October 10, 2017 discovery ruling***: On October 10, 2017, the Court resolved a dispute as to the start date of the period as to which defendants were obliged to produce documents on topics relevant to the alleged conspiracy in 2013-2016. Plaintiffs argued that defendants should produce documents created on or after January 1, 2009, arguing that events before 2013 might be germane to the formation of the 2013-2016 conspiracy. Defendants proposed a start date of January 1, 2012.

The Court chose an intermediate start date: July 21, 2010, the date of Dodd-Frank's passage. This date, [*24] the Court held, balanced plaintiffs' interest in discovering defendants "pre-conspiracy dealings" against the burdens of obliging the 11 defendant groups to make pre-conspiracy discovery. Explaining why documents created after July 21, 2010 were more likely to be relevant than those created before, the Court explained: "[A]fter Dodd-Frank was enacted, it became materially more foreseeable that electronic all-to-all platforms for IRSs would one day develop." Dkt. 266 at 2. The extensive negotiations and agreements among counsel that ensued regarding document production parameters—including the selection of custodians and the assessment of the burdens yielded by particular electronic-review search terms—were premised on this ruling.

***January 8, 2018 discovery rulings***: On January 8, 2018, the Court resolved an omnibus set of seven discovery disputes that the parties had briefed, after notifying the Court that they had reached an impasse on these issues. *See* Dkt. 311 (notice of impasse); Dkt. 319 (December 19, 2017 joint letter-brief); Dkt. 322 (January 8, 2018 decision). The disputes involved events that had occurred or entities that had existed before 2013. The

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

parties centrally disputed **[*25]** whether these topics were relevant to the surviving (2013-2016) conspiracy claims, and, if so, whether the burden of producing materials as to these topics outweighed the benefits of ordering production.

Resolving these disputes, the Court noted that all seven topics "either exclusively or largely involved the pre-2013 period," with defendants contending that the topics were therefore wholly or largely irrelevant, and plaintiffs "argu[ing] that these topics remain relevant to . . . the alleged Sherman Act § 1 conspiracy in 2013-2016 that the Court has held adequately pled." See Dkt. 322 at 2. The Court recognized that discovery from earlier years might remain relevant to the 2013-2016 claims (as reflected in the July 21, 2010 discovery cut-off date). But, the Court noted, "requests for discovery as to pre-2013 events" must "be critically evaluated for relevance and. . . any discovery that is ordered [must] be carefully tailored to viable theories of relevance." Id. at 3.

Balancing the importance of each category of records sought against the burden and expense of its production, see Fed. R. Civ. P. 26(b)(1), the Court precluded discovery as to some topics altogether as irrelevant or scantly relevant to the surviving claims. **[*26]** As to others, the Court allowed discovery or targeted discovery where an adequate showing of relevance to the 2013-2016 period had been made. See Dkt. 322 at 4-13. The parties' ensuing negotiations and agreements regarding document production parameters turned on these rulings, too.

### D. February 21, 2018: Plaintiffs Disclose the PTAC

On February 21, 2018, in a letter submitted in advance of a monthly status call, plaintiffs' counsel disclosed their intention to move for leave to file a Proposed Third Amended Complaint ("PTAC"). See Dkt. 335 (February 21, 2018 joint letter). The motion, a memorandum of law in support, and the 198-page, 549-paragraph PTAC were filed later that day. See Dkt. 337 ("Pl. Mem."), 338-1 ("PTAC").[3] These were filed on the last day on which, under the case management plan, motions seeking leave to amend were permitted.

The PTAC proposed to amend the SAC in three ways. First, plaintiffs proposed to add a plaintiff—the Los Angeles County Employees Retirement Association ("LACERA")—to serve alongside the existing class plaintiff, the Public School Teachers' Pension and Retirement Fund of Chicago ("CPTF"). Second, plaintiffs proposed to amplify their allegations with **[*27]** respect to 2013-2016. Third, most consequentially, plaintiffs proposed to restore their claims as to 2008-2012. In support, the PTAC proposed to add approximately 150 new paragraphs of pre-2013 allegations.

Before February 21, 2018, plaintiffs had not alerted the Court to the possibility of an amendment to revive the five years of dismissed claims. In contrast, plaintiffs had notified the Court in January 2018 of their intention to seek leave to amend to add LACERA as a plaintiff See Dkt. 324 at 2.

The PTAC's new allegations as to 2008-2012 largely related to two topics as to which the Court had dismissed claims in July 2017 and denied discovery in January 2018.

**"Project Fusion"**: The first topic involved the 2007 "Project Fusion," addressed above, involving Tradeweb. The Court had dismissed the SAC's claims based on this episode. And in January 2018, the Court had precluded plaintiffs' bid for discovery on "Project Fusion" as irrelevant to the surviving claims. Dkt. 322 at 6.[4]

**Swapstream**: The second topic was a trading platform, Swapstream, which the Chicago Mercantile Exchange ("CME") had operated in 2008-2010. The SAC had alleged that, in 2008, CME had announced plans to introduce **[*28]** a clearing product called "CME Cleared Swaps" for all over-the-counter ("OTC") swaps executed on Swapstream. SAC ¶¶ 184-185. The Dealers, concerned that introduction of this product could lead CME one day to develop "successful clearinghouses and exchanges for other asset classes," id. ¶ 186, had "boycotted" Swapstream and relied instead on a different clearing entity, SwapClear, that cleared only inter-dealer trades, id. ¶ 188. In its ruling on the motions to dismiss, the Court had held that the Dealers' common decisions not to use CME's new clearing product did not make out a claim of collusion. In re IRS, 261 F. Supp.

---

[3] Javelin and Tera have not moved to amend their Second Amended Complaints. The Court hereafter uses "plaintiffs" to refer to class plaintiffs.

---

[4] The Court had allowed more limited discovery, after July 21, 2010, into the "Dealers' communications and collaboration in connection with operating Tradeweb." Id. This was to enable plaintiffs to test whether Tradeweb, in which Dealer personnel had served as directors or officers, had provided a forum in which Dealers had conspired to further the 2013-2016 conspiracy. Id. at 6-7.

In re Interest Rate Swaps Antitrust Litig.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

_3d at 464 & n.13_. And, in January 2018, after plaintiffs had sought extensive discovery as to Swapstream and its clearing products on the theory that Swapstream had been a "SEF precursor," the Court had declined to authorize such discovery. Dkt. 322 at 4.

### E. The February 23, 2018 Status Call

A monthly status call was held two days later. _See_ Dkt. 345 (transcript of February 23, 2018 call). The Court questioned class plaintiffs' counsel about the PTAC.

Counsel acknowledged that, apart from the addition of LACERA, counsel had not notified the defense about a possible amendment of the complaint until February **[*29]** 14, 2018. Dkt. 345 at 19-20. Plaintiffs' counsel further acknowledged that they had been considering filing a PTAC that would revive the dismissed claims from the date (July 28, 2017) of the Court's ruling dismissing those claims. _Id._ at 20.

Plaintiffs' counsel further acknowledged that a decision had been made _not_ to notify the defense or the Court earlier of the possibility of a motion to amend to restore the 2008-2012 claims: "We wanted to make sure the amended complaint was in a near final form so that we could tell them with certainty what the new allegations would be." _Id._ at 21. Asked whether counsel had given thought during the preceding six-to-seven months to whether a possible amendment to revive the 2008-2012 claims might bear on the ongoing discovery discussions and negotiations, plaintiffs' counsel stated that they had not viewed their silence as "an affirmative decision to withhold information," but as a decision "to make sure this complaint was in a near final form and that we were set on filing." _Id._ at 21-22. Plaintiffs' counsel admitted that, were the 2008-2012 claims revived, it "would have an effect on the scope of discovery." _Id._ at 22.

Asked whether it had occurred to counsel that the PTAC might moot **[*30]** "the substantial investment of time" that counsel and the Court had spent since August "resolving and discussing discovery issues," plaintiffs' counsel stated: "It did." _Id._ Plaintiffs' counsel added: "We apologize for any inconvenience to the Court and defense counsel." _Id._ Counsel added that "[c]ertain critical witnesses only came to light recently and were still being talked to up through the time period that we notified defendants." _Id._ Reminded that they had given notice a month earlier to the proposed addition of LACERA, plaintiffs' counsel reiterated that while they had considered alerting the Court and defense in earlier status letters to the possible amendment to revive the

dismissed claims, "we wanted to make sure it was something we were going to go through with . . . . And we again apologize for any inconvenience to the Court." _Id._ at 23.

Finally, plaintiffs' counsel clarified that, despite the PTAC's listing as defendants two entities (HSBC and ICAP) whom the Court had dismissed, plaintiffs had not intended to restore claims against those parties. But, plaintiffs' counsel stated, the PTAC was intended to restore claims against Tradeweb, another dismissed defendant. _Id._ at 26. Plaintiffs' **[*31]** counsel stated that they had not yet notified Tradeweb of the amended complaint that had been filed to restore claims against it. _Id._ at 26-28.

### F. Later Submissions Relating to the PTAC

On March 30, 2018, defense counsel filed a memorandum of law opposing the PTAC to the extent it sought to restore dismissed claims, Dkt. 353 ("D. Mem."), and a declaration of Richard F. Schwed in support, Dkt. 354 ("Schwed Decl."). The same day, counsel for Tradeweb submitted a letter opposing the restoration of claims against it. Dkt. 355.

On April 2, 2018, plaintiffs' counsel filed a letter seeking leave to file a reply, noting that the defense had filed with their brief a document (the Project Magellan Agreement) relating to Swapstream which plaintiffs had only recently seen, Dkt. 356, and a declaration of counsel addressing the filing of the PTAC, Dkt. 356-1. The Court authorized a reply on that point. Dkt. 357. On April 3, 2018, plaintiffs filed a reply. Dkt. 359.

### III. Discussion

The PTAC proposes to amend the SAC by (1) adding LACERA as a plaintiff; (2) amplifying the factual allegations regarding the 2013-2016 period as to which plaintiffs' _§ 1_ claims have been held viable; and (3) adding extensive new factual allegations **[*32]** regarding 2008-2012 and on that basis reviving plaintiffs' claims as to that period. The Court reviews these three categories of proposed amendments in turn, after first reviewing the governing legal standards.

### A. Applicable Legal Standards

"Although _Rule 15(a) of the Federal Rules of Civil Procedure_ provides that leave to amend 'shall be freely

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

given when justice so requires,' it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007)*. "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Id.* (citing *Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)*). Leave to amend is properly denied upon a showing of prejudice or bad faith, and an "[a]mendment may be prejudicial when, among other things, it would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute.' *AEP Energy Servs. Gas Holding Corp. v. Bank of Am., NA., 626 F.3d 699, 725-26 (2d Cir. 2010)* (quoting *State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981)); see also Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990)* ("The Court plainly has discretion . . . to deny leave to amend when the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant").

**B. Leave to Add LACERA as a Plaintiff**

Plaintiffs seek leave [*33] to add LACERA, a California municipal pension fund, as a plaintiff. Defendants do not oppose this, while reserving the right later to challenge LACERA's standing depending on discovery.

The Court grants this motion. The PTAC alleges facts about LACERA that make it a suitable plaintiff: As of June 30, 2016, late in the class period, LACERA held net assets in trust for pension benefits totaling $53.8 billion, and during this period, "LACERA entered into IRS transactions directly with multiple Dealer Defendants." PTAC ¶ 39. Adding LACERA has the benefit of assuring, on the anticipated motion for class certification, that the universe of IRS trades involving putative class plaintiffs will be broader, more diverse, and potentially more representative of the variety of covered trades. Defendants, who have had notice of LACERA's prospective addition since January 2018, do not claim that adding LACERA would meaningfully add to discovery burdens or affect the existing schedule.

**C. Leave to Amplify the 2013-2016 Allegations**

Plaintiffs seek leave to elaborate on the factual allegations regarding the 2013-2016 period as to which

the Court has upheld the SAC's claims as viable. Defendants also do [*34] not oppose this amendment.

The Court grants this motion. The PTAC's new allegations about the 2013-2016 period fortify—and give defendants fuller notice of the nature of—plaintiffs' claims.

For example, the PTAC newly alleges: (1) a March 2013 meeting at which Tera demonstrated its trading platform, and after which an identified J.P. Morgan collateralized default swap trader warned a Tera employee that if Tera launched an anonymous central limit order book for swaps, the employee "would need personal security and should check his car for bombs," PTAC ¶ 357; (2) Javelin's October 2013 filing of the SEF industry's first "Made Available-to-Trade" ("MAT") application to the CFTC, which, if granted, would have enabled a wide range of cleared IRSs to be executed on SEFs, *id.* ¶ 408, but which prompted complaints and a withdrawal of liquidity from a Dealer, RBS, *id.* ¶ 409; (3) a warning by a Dealer employee to a Javelin representative, following Javelin's MAT application, that he "would never work on Wall Street again," *id.* ¶ 411; (4) the existence of buy-side support as of November 2013 for Javelin's platform and the expressed hope of these firms that Javelin's new "phased-in approach" for [*35] certain swaps might appease the Dealer Defendants, but which proved a "non-starter" because the Dealers reacted with "hostility," *id.* ¶¶ 412-413; and (5) an October 2014 meeting with Barclay's at which a Javelin representative was told that the Dealer Defendants had already "boxed out" Javelin's platform and at which "Barclays personnel expressly warned against any further MAT application, and even raised the prospect of physical intimidation," *id.* ¶ 415.

The PTAC also adds an allegation that appears aimed at clarifying the scope of damages plaintiffs intend to pursue if liability is established as to the 2013-2016 period. It alleges that had the three SEFs against which plaintiffs claim the Dealer Defendants conspired not been impeded, there would have been greater transparency and price competition not only on all-to-all IRS trades, but also, derivatively, more beneficial pricing on trades executed over the counter and on non-anonymous RFQ platforms. *See id.* ¶¶ 477-478.

Defendants do not argue that these new allegations would impose material burdens, meaningfully affect ongoing discovery, or disrupt the existing schedule. The Court accordingly permits those proposed amendments that [*36] amplify plaintiffs' claims as to 2013-2016.

In re Interest Rate Swaps Antitrust Litig.

Case 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## D. Leave to Revive Plaintiffs' Claims as to 2008-2012

The thrust of the PTAC's new allegations as to 2008-2012 is that the Dealer Defendants colluded to impede from emerging two electronic-trading platforms that would have supported all-to-all anonymous trading of IRSs. One would have been operated by Tradeweb, *see, e.g., id.* ¶¶ 212-227, 238-240, 242, 277-282; the other, Swapstream, would have been operated by CME, *see, e.g., id.* ¶¶ 119-211; *see also id.* P 14 (CME and Tradeweb, as of 2007, were "two threats to the Dealer Defendants' hold on the IRS market"). The PTAC attempts to cure the SAC's pleading deficiencies as to these potential platforms. It also includes new allegations to the effect that the buy-side would have responded favorably during 2008-2012 had an all-to-all platform for IRS trading existed, and that the "pillars" needed to support such all-to-all trading (such as mechanisms for central clearing, order routing, and post-trade processing) were being used for inter-Dealer trades before Dodd-Frank and were adaptable to the buy-side's use. *See, e.g., id.* ¶¶ 92, 100-101, 104-118.

For multiple independent reasons, the Court denies plaintiffs [*37] leave to file the PTAC to the extent that it attempts to revive plaintiffs' claims as to 2008-2012.

## 1. Futility

The PTAC does not remedy the gauntlet of deficiencies that led the Court to dismiss the SAC's claims as to 2008-2012 for failure to state a claim. Amending these claims would thus be futile. Four points in particular merit discussion:

*Antitrust standing/speculative injury*: Even assuming a *§ 1* conspiracy were now well-pled based on the episodes alleged regarding the potential Tradeweb and CME platforms—and the Court does not so find—plaintiffs' theory of injury as to 2008-2012 would remain far too conjectural to survive.

A court determining whether a plaintiff is an "efficient enforcer" of the *antitrust* laws so as to have *antitrust* standing must consider factors including "the speculativeness of the [plaintiff's] alleged injury." *See In re IRS, 261 F. Supp. 3d at 490-491* (quoting *Gatt Commc'ns, Inc. v. PMC Assocs., LLC, 711 F.3d 68, 78 (2d Cir. 2013)* (internal quotations omitted)). On this basis, the Court previously held that even were the SAC's claims as to 2008-2012 otherwise viable, they would fail this requirement:

[C]lass plaintiffs' theory of pre-2013 injury is extraordinarily conjectural, such that, had the *§ 1* claim as to that period not otherwise have been dismissed as implausible [*38] (and had the pre-2012 aspects of that claim not been dismissed as time-barred), the claim would not satisfy the requirements of *antitrust* standing. Among other infirmities, it is "entirely uncertain," *Gatt, 711 F.3d at 79*, that, absent the scheme, the necessary infrastructural preconditions for all-to-all trading, such as central clearing of IRS trades, would have developed before Dodd-Frank willed them into being in 2013. Plaintiffs' alternative history of IRS trading for the first five years of the class period (2008-2012) requires too many leaps of imagination and guesswork for a claim of class injury to be viable. *See Reading [Indus., Inc. v. Kennecott Copper Corp.]*, 631 F.2d [10], at [14] [(2d Cir. 1980)] (no *antitrust* standing where indirect purchaser at end of vertical distribution line "predicate[d] its claim of injury on a basis too tenuous and conjectural for a valid causal finding of anticompetitive effect and damages"); *see also Paycom [Billing Servs. Inc. v. MasterCard Int'l Inc.]*, 467 F.3d [283,] 293 [(2d Cir. 2006)] (no *antitrust* standing where chain of causation was "highly speculative" and was built on "conclusory allegations").

*Id. at 494*.

The new allegations in the PTAC do not cure this fundamental problem. Plaintiffs' claim is still that, that but for defendants' conduct, all-to-all anonymous trading platforms would have developed [*39] years prior to Dodd-Frank, such that defendants' conduct caused them injury on their 2008-2012 IRS trades. But in various ways including the following, plaintiffs' 2008-2012 theory of injury remains a product of speculation, imagination, and guesswork.

First, the PTAC does not allege that any such platform actually developed in the pre-2013 period, or came anywhere close. In this respect, the PTAC's allegations as to 2008-2012, like the SAC's, sharply contrast with those regarding 2013-2016. With respect to 2013-2016, plaintiffs concretely allege collusion to boycott and otherwise stymie three extant all-to-all anonymous IRS trading platforms (Javelin, Tera, and TrueEx) accessible to the buy-side. Plaintiffs are joined in so alleging by two entities that operated such platforms, Javelin and Tera. In contrast, the PTAC does not allege that either CME or Tradeweb ever launched such a platform during

DONALD HAVILAND

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

2008-2012. *See* discussion *infra*, at 23-29. Nor does the PTAC allege that—despite such a platform's ostensible business logic, its ostensible appeal at the time to the buy-side, and the ostensible existence of the technological and infrastructural "pillars" that could be adapted to support such a platform—any **[\*40]** entity, including ones like Bloomberg that are not alleged to have been boycotted, ever launched or came close to launching such a platform until after Dodd-Frank's mandates took effect in 2013.

Second, while the PTAC adds detail to its allegations as to the existence *among Dealers* of clearing arrangements, post-trade processing technology, and the necessary legal infrastructure in the pre-2013 period, *see* PTAC ¶¶ 104-118, its repeated allegation that these building blocks would have been seamlessly *adapted* to the all-to-all context, *see, e.g., id.* ¶¶ 100, 110-111,117, is conclusory. Plaintiffs posit the ready adaptation of such infrastructure as central clearing of trades from an inter-dealer environment in which swaps were traded among highly capitalized, repeat players to one that facilitated trading of sophisticated derivatives by any market participant, no matter how small, thinly capitalized, or inexperienced. But the PTAC does not concretely allege why this process would have been natural, fluid, or at all likely. On the contrary, the PTAC—tracking the observations of the CFTC when it later guided this process—elsewhere notes some of the formidable hurdles to such an evolution. **[\*41]** *See, e.g.,* PTAC ¶¶ 98, 100, 110, 115, 334, 345 (acknowledging that buy-side clearing would require "operational changes," "connections," legal arrangements, collateral arrangements, and retention of clearing agents).

Third, the PTAC's claim that buy-side firms would have participated in an anonymous, all-to-all platform had one been introduced before Dodd-Frank is an *ipse dixit.* Although the PTAC alleges that buy-side firms were interested conceptually in such a potential platform, the PTAC does not allege that any buy-side firm, before Dodd-Frank's mandates took effect, had invested in any of the collateral, technological, or legal arrangements needed to facilitate such participation in anonymous all-to-all trading.[5] Class plaintiffs CPTF and LACERA, large public pension funds, do not allege that they did so. And while the PTAC lists large buy-side firms that had expressed interest in using central clearing so as to

permit trading on an all-to-all platform, *see, e.g.,* PTAC ¶¶ 133-134 (listing Allstate, BlackRock, DE Shaw, Freddie Mac and PIMCO as firms to whom CME "successfully reached out," and stating that Citadel, Countrywide Financial Corporation, Nomura, and other "asset managers, **[\*42]** hedge funds, and proprietary trading firms" had committed to "an Early Adopter Program for clearing via Swapstream"), it does not allege that any such firm made any investment or took other concrete action toward this end pre-Dodd-Frank. None of these firms is party to this lawsuit.

Indeed, even after Dodd-Frank had *mandated* the central clearing and collateralization arrangements necessary to enable all-to-all swap trading, compliance with these obligations by buy-side participants proved challenging: Ultimately, the CFTC delayed implementation of its mandates, recognizing as late as December 2012 that buy-side firms were still scrambling to achieve "operational readiness" to clear their trades.[6] As the Court earlier observed: "The CFTC delayed implementation of this mandate to 2013, in part due to 'multiple requests from buy-side entities for extra time to cope with the costs and burdens imposed by implementing mandatory clearing, which one commenter described as 'overwhelming." *See In re IRS, 261 F. Supp. 3d at 446* (quoting CFTC Clearing Rule at 74,320).

Fourth and finally, to resolve reliably class plaintiffs' claim to have experienced pricing injuries on their 2008-2012 trades as a result of the absence of the IRS trading platforms they **[\*43]** imagine, a jury presumably would have to do more than merely posit the existence of some such platform. A jury would also have to conjure features of the platform or platforms that might have been, such as their design, mechanics, costs, entry barriers, efficiencies, limitations, regulatory constraints, and trading metrics and modalities. The PTAC scarcely addresses such matters, even as to the platforms that it claims CME and Tradeweb, but for the alleged boycott, would have introduced.[7] Nor can the

---

[5] *See* CFTC Clearing Rule at 74,323 (IRS clearing requires "startup and ongoing costs relating to technology and infrastructure, new or updated legal agreements, . . . and costs related to collateralization").

[6] *See* CFTC Clearing Rule, at 74,324 (stating in December 2012 that, "[i]n response to . . . concerns about legal documentation and operational readiness, the Commission. . . clarified that compliance with the clearing requirement will not be required for any swaps until March 11, 2013").

[7] In contrast to the 2013-2016 allegations, the owner-operators of the two platforms allegedly quashed in earlier years do not join in this lawsuit. (CME is a non-party. Tradeweb was sued in the SAC but dismissed; the PTAC would restore the claims

In re Interest Rate Swaps Antitrust Litig.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM. Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

structural features of the allegedly aborted platforms be inferred from later events. While Dodd-Frank put in place a "SEF" framework for swaps trading, it cannot be assumed that the free market—but for the Dealers' allegedly illegal actions to quell CME and Tradeweb—would organically have arrived at the same place. The PTAC leaves these important parameters, which may well be inherently unknowable, to speculation.

In light of these and other factors, a jury evaluating plaintiffs' claims to have experienced injuries between 2008-2012 from the alleged conspiracy would thus be required to imagine a mode of market trading that—until mandated by a landmark federal statute and its implementing [*44] regulations aimed at stabilizing this corner of the financial system—never came to be (or even close). The PTAC's 2008-2012 claims would unavoidably require a jury to conjure an alternative history in which a form of marketplace that took federal legislation to bring about would have organically sprung up. Such would require an unacceptable amount of conjecture.

The PTAC's claim of injury as to 2008-2012, anchored in an imagined alternate history, therefore remains unacceptably speculative. It is "too tenuous and conjectural for a valid causal finding of anticompetitive effect and damages." _Reading, 631 F.2d at 13_.

**_Tradeweb/"Project Fusion" allegations_**: The PTAC also fails to rehabilitate the claim that "Project Fusion" violated _§ 1_. The Court held conclusory the SAC's allegation that "Tradeweb was planning to introduce electronic all-to-all trading to the IRS market" by "late 2007." The PTAC abandons that claim. In its stead, the PTAC asserts that (1) Tradeweb was gradually upgrading its swap trading capabilities and by 2006 "was in a race with CME and Bloomberg to develop the most advanced swaps execution platform," PTAC ¶ 212; (2) introducing all-to-all IRS trading was a "competitive necessity" for Tradeweb, [*45] because its "formidable adversaries" Bloomberg and CME were capable of, and exploring, doing so, _id._ ¶ 219; (3) Tradeweb was "primed to adopt all-to-all trading with central clearing," _id._ ¶ 102, and (4) unidentified Tradeweb executives, at unspecified times, "discussed the threat" presented by Bloomberg and CME and "discussed whether Tradeweb should upgrade its IRS trading platform to an all-to-all anonymous platform to fend off these threats," _id._ ¶ 223.

These reconfigured allegations about amorphous "discuss[ions]" and Tradeweb's being "primed" to adopt all-to-all trading, _id._ ¶ 102, again fall far short of plausibly alleging plaintiffs' "critical background premise," _In re IRS, 261 F. Supp. 3d at 466_: that Tradeweb was planning in 2007 to launch all-to-all IRS trading. Such a plan cannot be inferred, either, from the PTAC's general claims that Tradeweb intended to offer "efficient electronic trading," PTAC ¶¶ 215, 218, or that, but for a conspiracy, competitive pressure from Bloomberg and CME would have led Tradeweb to offer this form of IRS trading platform, _Id._ ¶¶ 219, 221. CME never launched such a platform, _see id._ ¶¶ 135, 159, and Bloomberg—which plaintiffs do not claim was the subject of a boycott or anything [*46] other than a total free agent—elected not to do so until Dodd-Frank compelled it to, _id._ ¶¶ 226, 442 & n.166. The PTAC's theory of a plot to block a Tradeweb plan to introduce all-to-all IRS trading thus starts with the ill-pled premise that there ever was such a plan.

The PTAC also fails to rectify the other pleading deficiencies in the Project Fusion allegations. The Court earlier held that Project Fusion, as a joint venture, was subject to review only under the Rule of Reason. To elude this ruling, plaintiffs dub the Project Fusion joint venture a "sham" and a "formalistic shell," PTAC ¶¶ 271, 282. But as the Court has explained, the facts pled in the SAC were inconsistent with those labels. Rather, the SAC alleged that:

> (1) The Dealers invested $280 million in Tradeweb; (2) they owned Tradeweb alongside existing owner Thomson; (3) Tradeweb, post-acquisition, was organized consistent with customary corporate formalities; (4) Tradeweb proceeded to expand other aspects of its trading platforms; and (5) its decision not to offer an all-to-all trading platform until 2013 put it on par with all other trading platforms of the day, including . . . Tera, Javelin, TrueEx, and Bloomberg.

_In re IRS, 261 F. Supp. 3d at 468 n.17_. Notably, [*47] the PTAC continues to plead these facts. _See_ PTAC ¶¶ 241-251,268-276. Accordingly, even assuming a well-pled agreement among owners to terminate a Tradeweb plan to open an all-to-all IRS trading platform, the Project Fusion joint venture as alleged remains subject to review only under the Rule of Reason. _In re IRS, 261 F. Supp. 3d at 467-468_ (collecting cases).[8]

---

against it.) The PTAC does not allege that, prior to Dodd-Frank, concrete specifications were ever developed for a CME or Tradeweb all-to-all trading platform for IRSs.

---

[8] In a separate bid to avoid Rule of Reason review, the PTAC labels the Tradeweb joint venture a "naked restraint" that was

DONALD HAVILAND

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

The PTAC adds two paragraphs of allegations as to application of the Rule of Reason. *See* PTAC ¶¶ 281-282. These are far too spare and incomplete to close the gaps in the SAC's pleadings on this point. *See In re IRS, 261 F. Supp. 3d at 468-469*. Like the SAC, the PTAC lacks allegations defining Tradeweb's product or geographic market, *id. at 469*. It loosely recites that "[t]he relevant market is the market for IRS," PTAC ¶ 281; *compare* IN 398-400, but that allegation is a mismatch for Tradeweb's function as alleged, which was not as a buyer or seller of (nor a market marker for) IRSs, but as a provider of electronic trading platforms, *In re IRS, 261 F. Supp. 3d at 468*. As to that market, the PTAC does not make any allegations as to Tradeweb's market power, let alone regarding its actual or potential competitors and/or the barriers to other entrants. It is silent as to the market share of Tradeweb's then-competitors (*e.g.*, Bloomberg, the New [*48] York Stock Exchange, Nasdaq, CME, or others). The assembled pleadings again do not allege "that Tradeweb had any presence, let alone power, in *any* market." *Id. at 469*.

The PTAC's failure to situate Tradeweb in any relevant market, as required, again leaves to conjecture the impact of this one market participant's alleged decision not to introduce a novel product (a new IRS trading platform) in favor of other business priorities. *See id. at 469*. And while the PTAC recites that this decision was anti-competitive because it "reduce[d] output," PTAC ¶ 280, it lacks non-conclusory allegations as to the pro-competitive benefits and anti-competitive harms of the joint venture's decision to focus Tradeweb's offerings (like those of competitor Bloomberg) on other products and platforms. Measured against the standards applicable to Rule of Reason claims, *see In re IRS, 261 F. Supp. 3d at 468*, the PTAC, like its predecessor, falls well short.

***CME/Swapstream allegations***: The vast majority of plaintiffs' new factual allegations concern CME's Swapstream platform. The PTAC substantially overhauls the SAC's claim of a Dealer boycott of that platform and an affiliated fledgling clearing mechanism,

the product of collusion between the Dealer investors and Tradeweb itself On this basis, it alleges that Tradeweb's decisions after Project Fusion to forgo a plan to open an all-to-all IRS platform warrant per se condemnation. PTAC ¶ 277. This label notwithstanding, on the facts pled, as under the SAC, Tradeweb was not a horizontal competitor of the Dealers, as "it was a provider of electronic trading platforms, not a market maker." *In re IRS, 261 F. Supp. 3d at 468*. The label "naked restraint," which **_antitrust_** law uses in connection with horizontal competitors, therefore, does not fit.

CME Cleared Swaps. While the new allegations significantly [*49] flesh out plaintiffs' claims, they do not, in the end, viably plead a *§ 1* violation.

The PTAC alleges that, in 2006, CME, an operator of derivatives exchanges and trading platforms, PTAC ¶¶ 121-122, acquired a trading platform known as Swapstream, which until then had focused on a limited set of dealer-to-dealer IRS swaps in Europe, *id.* ¶¶ 124-127. It alleges that CME envisioned transforming Swapstream into a worldwide electronic platform for all-to-all anonymous IRS trading, *id.* ¶¶ 125,127,194, and that "[b]uy-side firms were clamoring to trade on Swapstream," *id.* ¶¶ 132-133. But, it alleges, CME realized the platform needed "a critical mass" of Dealer support to succeed. *Id.* ¶ 135. CME approached multiple Dealers and offered them "equity in the platform and an opportunity for revenue sharing." Supplemental Declaration of Richard Cohen, Dkt. 319-2 ("Cohen Suppl. Decl."), at ¶ 11 (cited at PTAC ¶ 105 n.19); *see also* PTAC ¶ 136. It did not find takers: certain Dealers (including Bank of America, Citi, Credit Suisse, Goldman Sachs, and JPMorgan) initially stated that they would "not support an IRS execution platform," PTAC ¶ 144, while others "were less overtly hostile to Swapstream, but [*50] still would not support it," *id.* ¶ 145. The PTAC alleges that "[p]rior to the[ir] meetings with the CME, the Dealer Defendants met and coordinated their positions and messaging." *Id.* ¶ 145. It further alleges that Dealers articulated "pretextual" concerns with CME's platform. *Id.* ¶¶ 183-184. CME tried to induce smaller dealers to participate by extending them preferred "founding member" status, but these efforts also did not bear fruit. *Id.* ¶¶ 150-151.

In fall 2008, CME's discussions with individual Dealers entered a second phase. By that time, CME's negotiations had "morphed into a group discussion" between CME and multiple Dealers, Cohen Suppl. Decl. ¶ 11, as a result, the PTAC alleges, of Dealers' insistence on "collective negotiations" as a means to "monitor and control Swapstream's development," *id.* ¶ 152. The Dealers were represented in these negotiations by a common lawyer, Edward Rosen from the Cleary Gottlieb firm. *Id.* ¶ 153. In the negotiations, the Dealers allegedly took common positions, sought "governance" over the platform as a means "to ensure they could control [its] development," and discouraged CME from operating a joint trading-and-clearing platform. *Id.* ¶ 155. Ultimately, [*51] CME "was unable to secure a critical mass of liquidity providers" and therefore "abandon[ed] Swapstream" as a trading platform, focusing instead on IRS clearing. *Id.* ¶¶ 158-

In re Interest Rate Swaps Antitrust Litig.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

159.

The PTAC alleges that CME next initiated joint negotiations with the Dealers regarding a "clearing-only solution" that would be "open to the buy-side." *Id.* ¶¶ 160-161. During these "Project Magellan" discussions, CME offered Dealers "revenue sharing" and "equity" in exchange for commitments to send trades to the new clearing platform. *Id.* ¶ 165. In these negotiations, the Dealers again took common positions, including insisting on means of control over CME's clearing platform. *Id.* ¶¶ 174-177. The negotiations led to a written "Clearing Revenue Share Agreement" between CME and most Dealer Defendants (save BPS). *See id.* ¶¶ 179-180. Under that agreement, the participating Dealers agreed to provide minimum clearing volume to CME in exchange for revenue sharing. *Id.* ¶ 179; *see also* Schwed Decl. Exh. K ("Magellan Agreement") §§ 2.01, 2.03, 4.02(e).[9] The PTAC terms the revenue-sharing provision a "poison pill" that provided that, "should CME ever launch an execution platform, the Dealer Defendants would capture nearly all the profits." **[*52]** PTAC ¶ 179.

The PTAC's allegations regarding Swapstream are more substantial than those regarding Tradeweb. And the PTAC pointedly presents the Swapstream allegations in a manner that plaintiffs argue "mirror[s] those already found sufficient by the Court as to the 2013-2016 period," including allegations of parallel conduct beyond refusing to agree to use the IRS platform that CME proposed to roll out. *See* Pl. Mem. 12-13. However, despite the PTAC's attempt to pattern the new allegations on those involving later years that the Court has sustained, the new allegations as to Swapstream differ materially from—and far less plausibly indicate a § 1 conspiracy than—plaintiffs' well-pled allegations of a 2013-2016 plot to boycott Javelin, Tera and TrueEx.

*First*, a number of the PTAC's core allegations as to the scheme against Swapstream must be discounted or disregarded altogether, because they are contradicted either by pled or cognizable facts and/or because they fail pleading standards.

Plaintiffs, for example, claim that CME was driven to open an all-to-all IRS trading platform in 2007 because

it, "Tradeweb, and Bloomberg [were] racing to be the first to launch such a platform." Pl. Mem. at **[*53]** 7; *see* PTAC ¶¶ 212, 220-224. However, this figure of speech aside, the PTAC does not allege such a "race" with these competitors, neither of whom is non-conclusorily pled to have then, or at any time before Dodd-Frank, planned or intended any such platform.[10]

Plaintiffs also imply that CME launched the Swapstream IRS trading platform before abandoning it. *See* Pl. Mem. at 8. In fact, on close reading, the PTAC confirms that no such platform was built or launched. *See, e.g.,* PTAC ¶¶ 119, 131, 135, 159. The PTAC's Swapstream theory is thus best described not as a Dealer boycott of an extant platform—as plaintiffs adequately plead with respect to Javelin, Tera, and TrueEx—but of a plot to deter CME from rolling out a new offering.

Plaintiffs also claim that the Project Magellan Agreement contained a "poison pill" aimed at pretermitting any attempt by CME to open an all-to-all anonymous IRS trading platform. *Id.* ¶ 179. Defendants attached the Project Magellan Agreement to their papers opposing leave to add these new claims. It is undisputedly cognizable here. The agreement demonstrably does *not* contain a "poison pill" or anything close. Rather, as defendants observe, the provision at issue **[*54]** states only that if the CME "establish[es] a new Electronic Trading Platform for IRS," it will grant the Magellan dealers a limited right to try to negotiate a Magellan-like agreement with the new trading platform. Magellan Agreement, § 5.05(b)(i). Specifically, CME agreed to:

> Negotiate in good faith with the Dealer Founding Members [i.e., the Magellan dealers] the terms of their participation in the Electronic Trading Platform on the most favorable terms offered to any other prospective participant supporting IRS Products on such Electronic Trading Platform (including . . . rights at least as favorable as the terms set forth in this Agreement, unless CME or such Electronic Trading Platform can demonstrate a reasonable commercial or regulatory basis for requiring adjustment of such terms) . . . .

---

[9] The Defendants filed the Magellan Agreement under seal pursuant to the protective order governing confidential material entered in this case, see Dkt. 300, and this Court's order, Dkt. 351.

[10] As noted above, the PTAC abandons the SAC's express claim of a Tradeweb plan to introduce such a platform in lieu of a generalized claim of "discussions" of such among its executives. *Id.* ¶ 223. The PTAC does not allege any plan by Bloomberg prior to Dodd-Frank to enter this space. Rather, it alleges that in 2011—a year after Dodd-Frank mandated SEF trading—a Bloomberg executive stated that Bloomberg was "very ready to commence SEF trading." PTAC ¶ 117.

In re Interest Rate Swaps Antitrust Litig.

*Id.* By its plain terms, the Magellan Agreement did *not* "poison" CME's plans to launch an IRS clearinghouse. And the contractual requirement that CME enter into good-faith negotiations towards a similar agreement in the event it launched an IRS clearinghouse cannot plausibly be painted as a "poison pill," either.

The PTAC also contains a significant number of conclusory allegations. These include the PTAC's [*55] central allegation relating to the period before joint discussions between the Dealers and CME began (*i.e.*, before the fall of 2008)—that some Dealers sought to bring other Dealers into line with respect to Swapstream. *See, e.g.*, PTAC ¶¶ 145, 151-152, 158. The PTAC's allegations on this score do not allege "a specific time, place or person involved." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 565 n.10, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*.

Finally, the PTAC's persistent claims as to the motivations or actions of "the Dealer Defendants" as a general collective bloc, or generalized claims of parallel conduct, must also be set aside, like the similar claims in the SAC, as impermissible group pleading. *See In re IRS, 261 F. Supp. 3d at 478*; *see also* discussion *infra*, at 32-33 (listing examples). In contrast, the claims of a conspiracy to boycott Javelin, Tera, and Tradeweb were held viable because they were backed by specifically pled acts of common conduct, most strikingly, that four Dealers on the same day—the business day after Tera's first trade—had separately notified Tera that they would not clear trades on its platform until they had conducted a review of its rulebook, a move which was later mimicked by other Dealers and which the SAC credibly alleged was pretextual. *See In re IRS, 261 F. Supp. 3d at 473-474*.

*Second*, and significant, although the PTAC [*56] does plead collective action regarding Swapstream, the well-pled allegations of concerted action among Dealers are centered on the period *after* joint negotiations between CME and the Dealers are alleged to have begun (*i.e.*, from the fall of 2008 onwards). In that period, as pled, discussions and lawyered negotiations had begun between CME and the Dealers to reach agreement regarding the terms under which participating Dealers collectively would participate in CME's Swapstream platform. As reviewed above, the parleys during this period occurred in two phases: regarding (1) CME's initial proposal to revamp Swapstream; and (2) CME's ensuing proposal—which resulted in a negotiated business arrangement memorialized in the Magellan Agreement—to launch a stand-alone clearinghouse.

This paradigm of collective negotiations between multiple collaborating competitors and a shared counterparty or counterparties to explore facially legitimate business arrangements does not lend itself to *per se* condemnation. *See, e.g., Allied Tube & Conduit Corp. v. Indian Head, Inc., 486 U.S. 492, 501, 108 S. Ct. 1931, 100 L. Ed. 2d 497 (1988)* (standard setting is subject to the Rule of Reason). As the Court reviewed in its discussion of Tradeweb, legitimate joint business ventures, including at the point of their creation, [*57] are subject to the Rule of Reason, and "business practice[s]" involving the "core activity of [a] joint venture . . . do not fall within the narrow category of activity that is *per se* unlawful." *Texaco, Inc. v. Dagher, 547 U.S. 1, 8, 126 S. Ct. 1276, 164 L. Ed. 2d 1 (2006)*; *see id.* at n.1; *Nw. Wholesaler Stationers, Inc. v. Pac. Stationery & Printing Co., 472 U.S. 284, 298, 105 S. Ct. 2613, 86 L. Ed. 2d 202 (1985)* ("mere allegation of a concerted refusal to deal does not suffice" to merit *per se* condemnation "because not all concerted refusals to deal are predominantly competitive"); *Major League Baseball Props., Inc. v. Salvino, 542 F.3d 290, 316 (2d Cir. 2008)* ("*Per se* treatment is not appropriate. . . where the economic and competitive effects of the challenged practice are unclear"); *see also In re IRS, 261 F. Supp. 3d at 467* (collecting cases and holding Project Fusion subject to Rule of Reason review).

The facts pled reveal potential pro-competitive justifications from the collaboration here in connection with the Dealers' negotiations with CME, enough to persuade the Court that the conduct alleged—in contrast to a horizontal price-fixing conspiracy or the boycott pled against Javelin, Tera, and TrueEx—is not by nature suitable to condemnation *per se*. Both sets of discussions among the Dealers and CME had the potential, *inter alia*, (1) to launch a new venture by assuring CME of the critical mass of Dealer support it claimed to need; (2) to help CME set standards for a new modality of IRS [*58] trading acceptable to a broad range of market participants; and, (3) as in other business contexts involving negotiations with a swath of industry players, to avoid the inefficiencies associated with duplicative one-on-one negotiations. *See, e.g.*, PTAC ¶ 135 (noting CME's goal to enlist one or more Dealers from each of "Tier 1" and "Tier 2").

That the second stage of Dealer/CME negotiations led to a counseled agreement between CME and most (although not all) Dealer Defendants also weighs against finding *per se* anti-competitiveness. The Magellan Agreement's text, too, reveals a pro-competitive justification: The revenue-sharing pact

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

DONALD HAVILAND

In re Interest Rate Swaps Antitrust Litig.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

enabled the introduction of a novel clearing platform whose standing was enhanced by the agreed participation of reputable Dealers who agreed to provide minimum clearing volume to the CME. *See id.* ¶¶ 160, 179-180.[11]

That leaves the Rule of Reason. Potentially, a viable Rule of Reason claim could have been pled with respect to the Dealers' collective action as to CME, attempting to show overall anti-competitive effect in a defined market. But unlike with respect to Tradeweb, the PTAC does not even gesture in that direction with respect to Swapstream, **[*59]** confining itself to a theory of *per se* illegality.

In any event, the PTAC does not make the requisite pleadings to enable a Rule of Reason claim. It does not define the product or geographic market of the company, CME, whose offerings were allegedly skewed by the defendants' collective refusal to support an all-to-all IRS trading platform. Nor, although touting CME's capabilities, does it allege that CME had power in any market, including that for electronic exchanges with respect to swap trading generally or IRS trading in particular. *See* In re IRS, 261 F. Supp. 3d at 469. And while the PTAC denounces the Dealers' conduct as anti-competitive, *id.* ¶¶ 193-196, it does not assess these anti-competitive impacts against the potential pro-competitive benefits of the agreement that the collaborating Dealers negotiated towards, and eventually struck with CME, including those identified above.

The Court, finally, considers the PTAC's allegations of a boycott predating the initiation of "joint negotiations" (*id.* ¶ 156) with CME. By definition, the line of authority subjecting concerted activity in connection with

---

[11] The above facts preclude the claim (PTAC ¶ 152) that the joint negotiations (*id.* ¶ 156) with respect to which the Dealers collaborated were an illegitimate sham that offered no efficiency enhancements so as to make Rule of Reason review unwarranted. That the Dealers had, and coordinated privately with, common Cleary Gottlieb counsel, took common positions in the joint negotiations, and sought governance rights in the CME clearinghouse, *id.* ¶¶ 152-157, 161-167, 183, 186, likewise do not signal a sham. Under the circumstances pled, seeking "governance" of the platform was understandable given each Dealer's interest in control of the new clearinghouse. The Dealers were being asked to take an investment stake in the clearinghouse, stood to receive potential returns from the clearing services the clearinghouse offered, and could face financial exposure in the event the clearinghouse defaulted. *See, e.g.*, PTAC ¶¶ 98, 100, 106.

competitors' joint ventures to Rule of Reason review does not apply to actions within this time window.

The limited **[*60]** allegations within this window, *see, e.g., id.* ¶¶ 136-151, however, do not adequately plead a § 1 conspiracy. The Dealers' parallel actions, motivations, perspectives, and intentions are largely pled generically and in undifferentiated fashion, with the PTAC not specifying a particular defendant or defendants. *See, e.g., id.* ¶ 139 ("[T]he Dealer Defendants became extremely concerned about losing valuable asset manager clients to a new CME-run IRS trading platform."); *id.* ¶ 141 ("Some of the Dealer Defendants' trading-desks initially expressed interest in Swapstream."); *id.* ¶ 143 ("The Dealer Defendants' strategic investment groups each responded to CME in a similar fashion."); *id.* ¶ 145 ("Prior to these meetings with the CME, the Dealer Defendants met and coordinated their position and messaging.").

As to this time window, the PTAC several times repeats the allegation that "the Dealer Defendants" traded on the Swapstream platform before, but not after, its acquisition by the CME. *Id.* ¶ 120, 124, 147. That allegation—if pled concretely—could certainly be telltale of illicit coordination among Dealers aimed at icing Swapstream, lest it expand in a manner threatening to the Dealers' interest. **[*61]** But this allegation is problematic, because, closely analyzed, the PTAC's factual allegations on this issue prove elusive. In all its 549 paragraphs, the PTAC identifies by name only two defendants (RBS and BNPP) that allegedly traded (or participated as market makers) on Swapstream before its acquisition by CME. *Id.* ¶ 124. And even if the PTAC's broad allegations to the effect that "the Dealer Defendants," *id.*, "many of the Dealer Defendants," *id.* ¶ 120, and/or "all of the Dealer Defendants," *id.* ¶ 147, had executed inter-dealer trades on Swapstream at some point before its acquisition by CME sufficed to implicate the 11 Dealer Defendants in such pre-CME trading, the PTAC nowhere alleges that Swapstream was facilitating more than *de minimus* trades as of the time of the CME acquisition, or, notably, that *any* entity (defendant or otherwise) was trading on the platform as of the time the "Dealer Defendants" allegedly ceased doing so in August 2007. *Id.* ¶ 147. The facts pled are too generalized, threadbare, and question-begging to permit the inference of a coordinated plot among the Dealers, in this way, to neutralize Swapstream.

The PTAC, finally, alleges that the Dealer Defendants were **[*62]** unsupportive of Swapstream and that they communicated to CME—either at the outset, *id.* ¶ 144,

In re Interest Rate Swaps Antitrust Litig.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

or thereafter, *id.* ¶ 145—that they would not "support an IRS execution platform," *id.* ¶ 144. But the Dealers' parallel lack of interest is not indicative of an inter-Dealer agreement. As pled, such conduct was consistent with any Dealer's independent self-interest. *See id.* ¶ 29 (the Dealer Defendants "want[ed] desperately to preserve the status quo' of the OTC market"). As the Court earlier explained in assessing why the SAC's similar allegation of the Dealers' common lack of support for all-to-all IRS trading was not indicative of collusion, "each Dealer had good reason to independently discourage . . . and not encourage, development of a new trading paradigm that threatened, someday, to cannibalize their trading profits." *In re IRS, 261 F. Supp. 3d at 464*; *see also Mayor and City Council of Baltimore v. Citigroup, 709 F.3d 129, 135 (2d Cir. 2009)* (inference of conspiracy will not arise when the coconspirators' parallel conduct "made perfect business sense").

As with its Tradeweb allegations, the PTAC's allegations as to CME and Swapstream therefore do not plead unlawful collusion among the Dealer Defendants. And viewing the PTAC's allegations in their entirety, it, like the SAC, does not plausibly plead **[*63]** a § 1 conspiracy among the Dealers.

**The statute of limitations**: A Sherman Act § 1 claim is subject to a four-year statute of limitations that runs from the date of injury. Class plaintiffs filed their initial Complaint on November 25, 2015. As in connection with the SAC, plaintiffs argue that the limitations period should be equitably tolled due to fraudulent concealment. This bid for relief from the statutory time bar is again unpersuasive.

In dismissing the SAC's claims of injury incurred prior to November 25, 2011, the Court found two required elements of fraudulent concealment lacking. *In re IRS, 261 F. Supp. 3d at 487-490*. First, as to the element of concealment, central facts as to the SAC's claim of a plot to block from emerging an all-to-all Tradeweb platform had *not* been concealed. These included the Dealers' collective ownership stake in Tradeweb and the visible nature of that platform's offerings. *Id. at 488-489*. Also in tension with a theory of concealment, the SAC's thesis was that, before 2012, the benefits of all-to-all IRS trading had been "widely recognized by market participants, regulators and economists" such that "absent a conspiracy . . . [e]volution to all-to-all trading that would have been open to the entire market **[*64]** would have been inevitable." *Id. at 488* (quoting SAC ¶¶ 87, 342); *see id.* (quoting SAC ¶ 99 that "[t]here were. . .

no natural or technological reasons why the IRS market did not evolve by 2008, at the latest, to allow the buy side to conduct all-to-all trading of IRS on electronic platforms"). Second, for similar reasons, the Court rejected plaintiffs' claim that they had not been on inquiry notice as to pre-2012 claims. *Id. at 489* ("[A]ccepting class plaintiffs' premise that only a plot can explain the missing platform, class plaintiffs had every basis, in real time, to smell a rat."). As to a third element, diligence, defendants had raised substantial questions about the diligence of the class plaintiff, CPTF, before June 2014, when it claimed to have discovered that a conspiracy was afoot. The Court, however, had no occasion to resolve that element. *Id. at 489-490*.

The PTAC's new claims, focused on CME's decision not to introduce a Swapstream platform for all-to-all anonymous trading of IRSs, are subject to a similar critique.

Plaintiffs' theory remains that the failure of the IRS market to move towards such a trading model "was unnatural and contrary to expectations," as to suggest conspiratorial manipulation. *Id. at 489* **[*65]** ; *see* PTAC ¶¶ 89, 102-103. And while the CFTC's post-Dodd-Frank assessments call into question plaintiffs' claims that the buy-side before Dodd-Frank was ready, willing, and able to move to such a trading model, *see, e.g., In re IRS, 261 F. Supp. 3d at 446, 465*, the Court must take the PTAC at face value in claiming that the failure of such a platform to emerge was unnatural. The PTAC doubles down on that thesis, insofar as it adds the claim that the "pillars" or "pieces" needed to facilitate such a platform were all in place, "being utilized by the IRS Dealers well before Dodd-Frank," and adaptable to support an all-to-all IRS trading platform hospitable to the buy-side. *See, e.g.*, PTAC ¶¶ 92, 95, 102-103.

As to the element of inquiry notice, Swapstream's failure to evolve in this direction, as pled, occurred in broad daylight, putting plaintiffs on unusually acute inquiry notice. The PTAC alleges that, in 2007, CME had publicly announced a plan to offer all-to-all anonymous trading with central clearing for the buy-side. *Id.* ¶ 125 & nn.27-29 (quoting and citing July 2007 press release to this effect and prior news coverage). The PTAC further alleges that "[b]uy-side firms were clamoring to trade on Swapstream," *id.* ¶ 132, and that Swapstream had advertised these firms' interest in doing so, ¶ 133 (quoting Swapstream press release). But, the PTAC alleges, once the Dealers declined to participate, Swapstream aborted this plan. *Id.* ¶¶ 158-159. This too

DONALD HAVILAND

In re Interest Rate Swaps Antitrust Litig.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

was a public event—CME announced it in a 2010 CME press release. *See* CME Group, Annual Report (Form 10-K) (February 26, 2010), available at https://www.sec.gov/Archives/edgar/data/1156375/0001 19312510043180/d10k.htm (CME "began the process of winding down [its] Swapstream operations" in 2009); D. Mem. at 23 n.14. On plaintiffs' theory that only a conspiracy—as opposed to a common lack of [*66] interest among Dealers in moving their IRS trading to such a platform, or a lack of buy-side readiness, or other lawful causes—can explain this event, plaintiffs, like the buy-side firms who assertedly had been awaiting Swapstream's rollout, had "reason to suspect the probability of any manner of wrongdoing," which is "all that is necessary to cause the tolling period to cease." *In re IRS, 261 F. Supp. 3d at 489* (quoting *131 Main St. Assocs. v. Manko, 179 F. Supp. 2d 339, 348 (S.D.N.Y. 2002))*.

As to the element of concealment, the PTAC generally alleges that there were secret meetings and other clandestine communications among Dealers both before and during the collective negotiations with CME. *See* PTAC ¶ 145 (Dealer Defendants "coordinated their position and messaging. . . through email, electronic chat messages, formal and informal industry events, dinners, and during and following meetings of Tradeweb's board of directors"); *Id.* ¶ 146. But these general allegations, unspecific as to time and content, are, like their similar forebears in the SAC, insufficient to show affirmative concealment. *See In re IRS, 261 F. Supp. 3d at 489* ("The SAC's claims of secret meetings under the aegis of such groups to further the pre-2012 plot are general and conclusory. These ill-pled allegations cannot discharge plaintiffs' burden to [*67] show concealment.") (internal citation omitted).[12]

---

[12] The PTAC, finally, alleges that the Magellan Agreement contains a non-disclosure clause which prevented outsiders from discovering its secret "poison pill provision." PTAC ¶ 199. In fact, as noted, the Agreement does not contain a poison pill provision. Depending on the facts, a non-disclosure agreement can serve as an affirmative act of concealment. *Compare In re Copper Antitrust Litig., 436 F.3d 782, 790-791 (7th Cir. 2006)* (nondisclosure agreement supported equitable tolling), *with GO Comp. v. Microsoft Corp., 508 F.3d 170, 179 (4th Cir. 2007)* (finding claim time-barred and rejecting claim that nondisclosure agreements kept anti-competitive activities secret). Here, however, the Magellan agreement is facially benign, post-dates the alleged plot to terminate an all-to-all IRS trading platform, and governs a separate subject matter: the operation of and financial stakes of participants in CME's separate clearing platform. A non-disclosure clause in the

Because the PTAC fails adequately to plead the elements of either concealment or of inquiry notice, the Court again has no occasion to address the third element: whether plaintiffs acted with the required diligence in inquiring into pre-November 25,2011 events, including with respect to why Tradeweb and Swapstream did not open the trading platforms that plaintiffs prefer. *See In re IRS, 261 F. Supp. 3d at 490*. As with the SAC, defendants raise substantial questions as to the adequacy of CPTF and LACERA's claims to have conducted such diligence, including noting that many of the new allegations in the PTAC rely on citations to public-record material. However, the burdens of undertaking this inquiry are, again, unjustified given the independent deficiencies found in plaintiffs' claims. *See id.*

For all the above reasons, granting the motion for leave to amend to restore plaintiffs' claims as to 2008-2012 would, therefore, be futile.

## 2. Delay, Prejudice, and Gamesmanship

Independent of the finding of futility, the Court finds that granting leave to restore the claims covering 2008 through 2012 would substantially delay this litigation. It would also unduly prejudice [*68] the defense. Further, the Court holds, plaintiffs' counsel's communications with the Court and defense during the extended period of discovery negotiations and litigation conveyed a misleading impression—that plaintiffs' claims were fixed at 2013-2016—whereas in fact counsel had in mind, and were actively pursuing, a transformative amendment to restore plaintiffs' claims as to the five prior years. On close review of the assembled communications, the Court is, regrettably, constrained to find an unwelcome degree of gamesmanship meriting denial of the motion for leave to amend. Because these considerations of delay, prejudice, and gamesmanship arise out of common events, the Court addresses them together.

*Delay*: Reviving the 2008-2012 claims would upend the schedule for discovery carefully negotiated by the parties and approved by the Court.

Relevant here, the case management plan set a May 21,2018 deadline for substantial completion of document production and a December 21,2018 deadline for the completion of all fact discovery. Most imaginable

---

agreement, therefore, lends no support to plaintiffs' claim of concealment.

DONALD HAVILAND

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the
Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

In re Interest Rate Swaps Antitrust Litig.

amendments, even if disclosed on the last date for a motion for leave to amend, could comfortably have been accommodated under this schedule. **[*69]** For example: an amendment adding claims of a fourth or fifth platform—alongside Javelin, Tera, and TrueEx—which the Dealers purportedly conspired in 2013-2016 to inhibit. Or the amendments to the 2013-2016 claims that plaintiffs separately pursue without objection, which add allegations of the Dealers' means and methods during 2013-2016 and sharpen or broaden theories of damages arising from the 2013-2016 conspiracy. Amendments of this nature would—and/or will—add to the parties' document production and other discovery obligations. But they can be accomplished within the framework of the parties' carefully negotiated agreements as to trading data, custodians, databases, and search terms. And they are not in tension with the Court's rulings as to the time frame of document production. The addition of plaintiff LACERA is, similarly, readily accommodated to the case schedule.

In contrast, allowing the PTAC's pre-2013 claims would be functionally tantamount—or close to it—to allowing a new MDL-sized lawsuit to be hitched to the existing claims. To be sure, at a concept level, plaintiffs' core theory across 2008-2016 is the same: that Dealers at all times coordinated to thwart all-to-all **[*70]** trading platforms, whether potential (2008-2012) or extant (2013-2016). But, in practice, the PTAC's narrative and its claims regarding 2008-2012 implicate a host of events, entities, concepts, and personnel outside the scope of the 2013-2016 claims and outside the scope of the post-Dodd-Frank discovery that the Court has allowed on those claims.

Among other things, the claims as to the earlier period uniquely implicate:

• the Dealers' acquisition of an ownership interest in, and stewardship of, Tradeweb, beginning in 2007, including Tradeweb's earlier business plans and its decisions following the acquisition as to which platforms and asset classes to pursue, and the role of individual Dealers' personnel in those decisions, PTAC ¶¶ 212-282;

• the Dealers' dealings with CME, beginning in 2007, as relevant to IRS trading and Swapstream, including CME's evolving plans for that platforms, the steps the Dealers took ostensibly to influence Swapstream, and the two rounds of negotiations between the Dealers and CME, culminating in the Project Magellan Agreement, *id.* ¶¶ 119-211;

• the state of the IRS market as of 2007 and the extent to which it was ready for all-to all trading, including the **[*71]** state of clearing and various post-trade services, the services offered by providers such as SwapClear, SwapsWire (today, MarkitSERV), and the International Derivatives Clearing Group, and the utility to potential buy-side clearing of the software system Calypso, *id.* ¶¶ 104-118;

• the interactions relevant to IRS trading between 2007 and enactment of Dodd-Frank among all Dealer groups (including numerous individual personnel named in the PTAC), both directly with one another and as accomplished through industry fora like the ISDA, the Futures Industry Association, and working and drafting groups of these associations, *id.* ¶¶ 283-291;

• the conduct and communications of the Dealers, and numerous of their personnel named in the PTAC, relating to IRS trading between 2007 and enactment of Dodd-Frank towards interdealer brokers, including GFI Group, ICAP, and platforms under development in Europe such as i-Swap, *id.* ¶¶ 292-308; and

• the actions of the Dealers between 2007 and enactment of Dodd-Frank in allegedly erecting artificial barriers to buy-side clearing of IRS trades, including in connection with the Dealers' influence over OTCDerivNet (on whose board named representatives of various **[*72]** Dealers sat), LCH.Cleamet, and SwapClear, *Id.* ¶¶ 309-334.

Under these circumstances, allowing the PTAC's claims as to 2008-2012 to be added would require that the time-consuming and laborious process of framing the document discovery to be produced for that period begin from something close to a standing start. For many reasons, the parties' agreements as to document production parameters in 2013-2016 would not, logically, control discovery relevant to the 2008-2012 claims.

As to document custodians, at particular Dealers, given natural turnover and promotions and reassignments, there were assuredly different personnel responsible for IRS-related matters during the two periods. Beyond that, the many issues and incidents novel to the earlier period (*e.g.*, interactions with and exercise of influence over Tradeweb and CME/Swapstream) likely involved substantially different personnel at particular Dealers from those as to whom discovery has been authorized as to 2013-2016.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

As to the delineations of topics and search terms that would guide document collection and review, the many distinct events, issues, entities, and players at issue in 2008-2012 similarly would require a fresh assessment **[\*73]** of these parameters. So would the fact that plaintiffs' claims involve a materially different (pre-Dodd-Frank) regulatory environment than during 2013-2016. It is likely, too, that there would be rounds of discovery disputes requiring judicial intervention, including as to the start date for document review (numerous allegations in the PTAC date to 2007 and years before) and as to the permissibility of discovery into particular topics.

There would also be an overarching question as to the proper scale of overall discovery, which the Court would likely be called upon to resolve. Adding five years of claims to the existing four years would not ineluctably entitle plaintiffs to the receipt of 125% more discovery. A nine-year conspiracy claim implicating numerous episodes, issues, and personnel would by its nature require thoughtful application of the proportionality command of *Federal Rule of Civil Procedure 26(b)(1)*. To the extent that defense discovery for 2013-2016 had not already been produced to plaintiffs, a fair question would arise whether to revisit the agreed parameters of that discovery in the interests of keeping the overall discovery burden manageable.

The PTAC's expanded claims also implicate third parties. Those **[\*74]** identified on the face of the PTAC include numerous clearinghouses, interdealer brokers, other service providers, and industry associations. Plaintiffs have pursued third-party discovery as to the 2013-2016 claims and could be expected to seek discovery from various entities named in the 2008-2012 claims. As to these third parties, the scope of discovery—potentially as sought by both sides—would be an issue. Extended negotiations (and/or discovery litigation) with these parties would be likely, possibly complicated by the greater age of the materials sought.

Finally, independent of electronic and hard-copy document discovery, the 2008-2012 claims would require—as have the 2013-2016 claims—the locating and harvesting of IRS trading data throughout the period. Such data is relevant, *inter alia*, to liability (including the existence of a pricing injury from the alleged conspiracy) and damages. Even assuming that such discovery demands did not give rise to disputes requiring extended negotiation and resolution, identifying and collecting this data, which before Dodd-Frank's SEF mandate took effect was likely held in

decentralized locales, would likely take substantial time.

For these reasons, **[\*75]** an amendment to add the industry-wide, complex, and half-decade-long claims proposed by the PTAC, if allowed to stand, would obliterate the May 21, 2018 deadline for substantial completion of document production.[13] In connection with the 2013-2016 period, it took counsel for the many parties (and third parties) seven months of focused work, beginning from the date of the ruling on the motion to dismiss, to formulate and narrow discovery demands, negotiate discovery parameters including as to custodians and search terms and strings, and to litigate to completion most discovery disputes as to matters pertinent to that period.[14] A similar exercise would now be necessitated as to plaintiffs' new claims.

All factors considered, the Court's judgment is that permitting the PTAC to be amended to add back five years of claims as to 2008-2012 would cause, at a bare minimum, a six-month delay of the substantial completion deadline for document production. A more realistic (yet still conservative) estimate is that, given the scale and splay of the added charges, reviving the 2008-2012 claims would require moving that deadline back by nine or more months.

Further, because plaintiffs' claims as **[\*76]** to the two periods implicate common personnel and circumstances, in the event the PTAC were accepted, the deposition discovery scheduled to occur between May 21, 2018 and December 21, 2018, as a practical matter, would have to be shelved and put over, to

---

[13] This would have been so even if, improbably, all defendants had immediately acceded to the entire PTAC, such that negotiations over the scope of document production could have begun shortly after the PTAC's filing on February 21, 2018. A more realistic assumption for the start date of any negotiations over post-PTAC document production parameters is the date on which the Court realistically could have resolved the parties' dispute as to the viability of the PTAC's 2008-2012 claims. It took the Court two months after argument to resolve the motions to dismiss the SAC. As to the PTAC, the Court, on May 10, 2018, issued a bottom-line order notifying counsel as to how it had determined to resolve the motion for leave to amend and that a decision (this) would follow. Dkt. 386.

[14] One discrete dispute—only recently briefed—remains in the process of resolution as to cellphone records of Dealer employees, sought by plaintiffs. *See* Dkt. 384. The Court has also recently received briefing on, and resolved at a hearing, a dispute as to discovery plaintiffs have propounded on an inter-dealer broker. *See* Dkt. 382.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

In re Interest Rate Swaps Antitrust Litig.

enable expanded document discovery first to be completed. Otherwise, deponents relevant to both periods could face multiple depositions; and deposition preparation and questioning might be impeded by incomplete document discovery. The added five years of claims covering expanded topics, in the Court's assessment, would also likely require elongating the period for deposition discovery. While the Court would press to move expeditiously, a realistic estimate is that an additional three months for deposition discovery would be necessary.

All in, therefore, this Court's conservative estimate, informed by its experience managing this MDL and by its experience presiding over—and, earlier, litigating—other complex financial cases is that permitting the 2008-2012 claims to stand would cause a delay of—at the very least-12 months for the completion of fact discovery.

**Prejudice**: Apart from the inherent casualties of a long delay—which may compromise **[*77]** the truth-seeking process and parties' and witnesses' interest in closure—the amendment here, if granted, would palpably prejudice the defendants.

For seven months, defendants expended time, money, and energy in the discovery phase of this litigation on the only rational assumption as to this case's temporal scope: that plaintiffs' surviving claims were limited to 2013-2016.

On that premise, counsel exchanged several hundred discovery communications, held dozens of meet-and-confers addressing discovery, and "devoted enormous effort to reaching agreement on matters such as the scope of discovery, search terms, and custodians." D. Mem. at 6. Counsel also, after a series of meet-and-confers failed to yield resolution, litigated a series of disputes that turned on this temporal premise. One dispute involved the document-discovery start date; another involved whether pre-Dodd-Frank events and entities that had been implicated by the dismissed claims were fair game for discovery. The Court's resolution of these disputes in turn shaped the time-intensive discovery efforts that followed—including the identification of custodians, the formulation of search terms and search strings, the tabulation **[*78]** of "hit counts" aimed at measuring efficacy and burden and ensuing negotiations, and the collection of millions of documents. *Id.* It is safe to assume that, on these efforts, each of the 11 defendant groups devoted very substantial time and incurred very substantial legal

fees.[15]

Reviving the 2008-2012 claims would negate this work, waste these efforts, and largely send the parties back to the discovery drawing board. It would effectively overrule the Court's rulings setting the document-discovery start date and excluding (in whole or large part) a host of pre-Dodd Frank topics from the scope of permitted discovery.[16] It would require counsel to start negotiating anew the expanded universe of discovery issues. It would require developing and testing new potential search terms to gauge the utility and burden of each. It would require counsel to revisit prior compromises based on aggregate burdens for each defendant in light of the added burdens presented by the amended allegations and extended time period. It would almost certainly open up new rounds of protracted litigation over discovery disputes. It is safe to assume that the duplicative fees (of counsel and litigation support) and costs **[*79]** wasted by the need for this do-over, when measured across the 11 defense firms, would extend well into seven figures, to say nothing of the wasted time of client personnel.

In these circumstances, plaintiffs' terse incantation of regret for "any inconvenience," Dkt. 345 at 22, 23, that may have been caused by the last-minute disclosure of this most consequential proposed amendment is quite unequal to the moment. It reflects a lack of appreciation, or perhaps denial, of the scale of the work that the proposed amendment would moot. *Cf. BNP Paribas Mortg. Corp. v. Bank of Am., N.A., No. 09 CIV. 9783 RWS, 2013 U.S. Dist. LEXIS 174580, 2013 WL 6484727, at *6 (S.D.N.Y. Dec. 9, 2013)* (denying motion to amend, based on prejudice stemming from length of case and because amendment would have "interfere[d] with ongoing expert discovery and trial preparation"); *In re "Agent Orange" Prod. Liab. Litig., 220 F.R.D. 22, 26 (E.D.N.Y. 2004)* ("Leave to amend must nonetheless be denied because of the large additional expenditures of

---

[15] The time spent by the Court resolving the discovery disputes alone—which was substantial—gives the Court insight as to the formidable amount of time that counsel for each party expended on the range of discovery matters summarized above.

[16] The pre-Dodd-Frank topics as to which the Court substantially or wholly precluded discovery as irrelevant or marginally so included CME's Swapstream platform, *see* Dkt. 322, at 4, Project Fusion, *id.* at 6, SwapClear's rulebook restrictions, *id.* at 8-9, and the Dealers' activities with respect to OTCDerivNet, SwapClear, and LCH.Clearnet, *id.* at 12-13.

DONALD HAVILAND

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

In re Interest Rate Swaps Antitrust Litig.

time and effort that would be required by the court and parties.").

Plaintiffs' arguments against finding prejudice miss the mark. Plaintiffs note that that the new claims "address subjects that were raised in previous complaints." Pl. Mem. at 24. But that **[*80]** observation does not grapple with the sunk costs that would largely go to waste were discussions as to discovery parameters required to start anew. And the fact that plaintiffs have repeatedly attempted to refine their claims as to these subjects—the PTAC is plaintiffs' fourth complaint—*disfavors* granting leave to amend. The principal subjects of the amendment (Project Fusion and CME/Swapstream) were at the heart of the claims the Court dismissed. Plaintiffs then sought discovery on these subjects, which the Court denied. It is thus the third time that plaintiffs have litigated in an attempt to insert these subjects into this case. *See, e.g., State Trading Corp. of India v. Assuranceforeningen Skuld, 921 F.2d 409, 418 (2d Cir. 1990)* ("[A] busy district court need not allow itself to be imposed upon by the presentation of theories seriatim.") (internal quotation omitted).

Plaintiffs also note that as of when they moved to amend, no "substantive" documents had been produced or any depositions held. Pl. Mem. at 24. But that argument trivializes the intensive pre-production work by all counsel over the preceding seven months that the PTAC would supervene. In any event, defendants, executing on the negotiated discovery plan, have since made voluminous document productions, **[*81]** *see* Dkt. 388 at 1 (May 16, 2018 status letter) and, following a recent limited extension of the substantial completion deadline, are on track to achieve substantial completion of document production by late June.[17]

***Gamesmanship***: The Court, finally, addresses plaintiffs' counsels' conduct towards the Court and the defense in connection with the bid to restore the 2008-2012 claims.

Plaintiffs' counsel began to consider amending to restore these claims on July 28, 2017, *see* Dkt. 345 at 20, and thereafter investigated such an amendment, Dkt. 356 at ¶ 5. Many of the PTAC's new allegations as to 2008-2012 are sourced to publicly available materials, which plaintiffs' counsel appear to have accessed between July 28, 2017 and February 2018. *See, e.g.,* PTAC ¶¶ 100 & nn.17-18, 112 & n.20, 117 &

n.21, 118 & n.22, 122 & nn.23-24, 124 & nn.25-26, 125 & nn.27-29, 131 & n.30, 133 & nn.31-32, 169 & nn.33-34, 172 & n.36, 213 & n.38, 214 & n.39, 215 & nn.40-41, 216 & nn.42-43, 217 & nn.44-45, 218 & nn.46-47, and 238 & n.62; *see also* Dkt. 356-1 ¶ 5 ("We had already pled all of the relevant facts of which we had knowledge in our prior pleading."). Counsel also conducted interviews or follow-up interviews **[*82]** regarding the 2008-2012 claims: three in September 2017, four in October 2017, two in December 2017, five in January 2017, and eight between February 1 and 21, 2018. Dkt. 343 at 3.

Plaintiffs' counsel first disclosed their intention to move for leave to restore the 2008-2012 claims to the defense on February 14, 2018 and to the Court on February 21, 2018—the latter being the deadline for so moving. Plaintiffs' counsel admit having made an affirmative decision not to disclose earlier the prospect of moving to so amend. Dkt. 345 at 21. Plaintiffs' counsel explain that they did not have a legal duty to disclose a possible amendment. And they represent that they did not make a "final decision" to file a proposed amended complaint along these lines until February 12, 2018. *See* Dkt. 345 at 24 (status call of February 23, 2018); Dkt. 343 (letter of February 23, 2018) ("[W]e did not make a final decision to proceed until we were satisfied, based on interviews and other research conducted in late January and February 2018, that our allegations were well-founded."); Dkt. 356-1 (declaration of April 2, 2018) ("On or around February 12, 2018, following these interviews, we believed we had learned **[*83]** enough key facts to support the proposed amendment.").

Plaintiffs' counsel are correct that there was no freestanding duty—under the law or the case management plan—to reveal in advance a forthcoming amendment, even a sweeping one. Plaintiffs' silence on that point, however, did not occur in a vacuum. During the seven months while plaintiffs' counsel were actively working towards an amendment that would vastly expand the temporal and substantive contours of this litigation, a separate work-stream was underway. Specifically, counsel for all parties—drawing heavily at times on the resources of the Court— were intensively negotiating, litigating, and implementing, at great time and expense, an MDL discovery plan premised on the current contours of the case.

A question therefore is presented by plaintiffs' counsel's communications with the Court and defense during this process. Having reviewed those communications, the Court, regrettably, concludes this: In ways large and

---

[17] In a status call with counsel held May 18, 2018, the Court, on consent, extended the substantial completion deadline until June 29, 2018.

In re Interest Rate Swaps Antitrust Litig.

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

small, plaintiffs' counsel throughout these seven months fed the false impression that the temporal scope of plaintiffs' claims was fixed at 2013-2016. The result was to mislead the Court and the defense and to occasion **[*84]** extensive work and expense that—had the retooled 2008-2012 claims proven viable—would have largely gone wasted. And, even crediting as true the representation that the "final decision" to file a PTAC was made shortly before the filing deadline, counsel's choice not to reveal earlier the substantial prospect of such a game-changing amendment while counsel's conduct and statements suggested otherwise prevented the Court and experienced counsel for all parties from assessing the impact of—and adapting the case management plan to accommodate—the possibility of such a consequential event.

The following communications with the Court are illustrative:

• *August 2017 case management plan*: On August 18, 2017, the parties submitted a jointly proposed case management plan, Dkt. 245-1, which the Court approved, Dkts. 246, 250. At the Court's direction, the plan set prompt but achievable deadlines for fact discovery and for intermediate activities foundational to the fact-discovery process. In addition to those reviewed above regarding substantial completion of document production and fact discovery, these included that the parties: (a) designate "outside counsel data representatives" "to begin a **[*85]** meet and confer process regarding the scope of data productions in this proceeding within twenty-one (21) days" of court approval of the plan; (b) provide "a preliminary document custodian list" within 21 days and "preliminary search terms" within 30 days; and (c) "determine whether there are in agreement or disagreement on document custodians" within 45 days. This agreed-upon schedule sits uneasily alongside counsel's contemporaneous pursuit of claims whose addition would inherently make it obsolete—and all the more obsolete were the motion for leave to amend to be filed on the last permissible date.

• *August 2017 motion for clarification*: On August 11, 2017, plaintiffs moved for clarification of "a narrow aspect" of the July 28 ruling, to wit, that the Court had not limited their 2013-2016 claims to "order book trading" alone but instead had preserved claims as to all anonymous request-for-quotes ("RFQ") trading on the three exchanges at issue (Javelin, Tera, and TrueEx). *See* Dkts. 241-242. The Court so clarified. Dkt. 251 at 1. Although not directed to the temporal scope of claims, a fair implication of this request, given plaintiffs' silence, was that plaintiffs did not intend to **[*86]** take issue with the other parameters of their claims as resolved by the July 28 ruling.

• *October 2017 dispute regarding defense discovery*: As noted, plaintiffs sought pre-2013 discovery as relevant to their 2013-2016 claims. They asked the Court to order the defense to produce documents from January 2009 forward, Dkt. 254 at 3, while stating that—"to address any reasonable burden objections"—they were willing to receive documents from January 2010 forward if defendants agreed also to produce their regulatory production from a CFTC investigation and their document production from a separate MDL involving credit default swaps, *id.* A natural implication of plaintiffs' motion and negotiating position was that plaintiffs would not later ask for production of documents dating to January 2008 (or earlier), as the amendment that plaintiffs then had under consideration, to add claims dating to 2008, would necessarily contemplate.

• *October 2017 dispute regarding CPTF's standing*: On October 18, 2017, defendants sought formal discovery from CPTF, to substantiate that CPTF had participated in IRS trades within the case's scope as narrowed. Dkt. 270. In opposition, plaintiffs argued that expediting **[*87]** discovery would "disregard the schedule in the case, which the parties negotiated and the Court ordered," and "disrupt the orderly flow of discovery." Dkt. 295 at 1. In contrast, plaintiffs noted, CPTF "has been diligently meeting every deadline under this schedule." *Id.* The Court ruled for plaintiffs. Dkt. 296 at 1. A natural implication of these statements was that plaintiffs were committed to "the schedule in the case" and did not foresee events that might "disrupt the orderly flow of discovery."

• *November 15-17, 2017 status letter/call*: The parties' November 15, 2017 joint letter reported on discovery negotiations and an agreement to extend certain interim deadlines, and, referring to discovery disputes as to pre-2013 events, that "some disagreements relating to the scope of discovery may require resolution by the Court." Dkt. 302 at 1-2. In the ensuing call, the Court asked whether there was "anything else that class plaintiffs have to

DONALD HAVILAND

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the
Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

report to me other than what's in the November 15 letter?" Plaintiffs' counsel said no, noting only that these discovery disputes were nearing an impasse. Dkt. 308 at 4, 9-10. The Court asked counsel, upon an impasse, promptly to brief "gating issues," **[*88]** to allow the Court to resolve "threshold issues that are holding us up"; counsel stated that they remained hopeful that the schedule in the case management plan was realistic. *Id.* at 8, 14-15. That schedule, of course, would be wholly *unrealistic* in the event that the motion plaintiffs were then considering to restore the 2008-2012 claims were made and granted. And the Court fairly read counsel's negative response to its question whether class plaintiffs had "anything else" to report to imply the absence of any unreported matters of consequence, which an amendment to more than double the case's scale surely would be.

• *December 13-15, 2017 status letter/call*: The parties' December 13, 2017 joint letter reported an impasse on the pre-2013 discovery issues, but anticipated that the resolution of these issues would likely resolve disagreements over defendants' document custodians. Dkt. 315 at 1. In the ensuing call, plaintiffs' counsel expressed confidence that, after those rulings, "we hopefully can hit the ground running." Dkt. 320 at 7. The Court asked counsel: "Does any party anticipate any other issue being brought in reasonably short order to the Court's attention?" *Id.* at 10-11. Other than possible disputes **[*89]** regarding search terms after the Court's ruling, plaintiffs' counsel said no. *Id.* at 11. Counsel's Statements—and negative response to the Court's inquiry about whether other issues might arise in reasonably short order—again sit uncomfortably alongside their ongoing consideration of moving to restore the 2008-2012 claims, the deadline for which was two months away and as to which plaintiffs' counsel had by then conducted nine interviews. *See* Dkt. 343 at 3.

• *December 2017 omnibus discovery disputes*: On December 19, 2017, plaintiffs moved for discovery on numerous pre-Dodd Frank subjects, including Tradeweb/Project Fusion and CME/Swapstream. In a joint letter setting out each side's position, Dkt. 319, plaintiffs argued only that these subjects were germane to the existing 2013-2016 claims. Plaintiffs said nothing about potential restoration of the 2008-2012 claims (to which these subjects also related). As discussed earlier, the entire exercise of litigating and resolving these

issues stood to be mooted by the amendment that plaintiffs then had under consideration to restore the 2008-2012 claims. On top of the time counsel spent negotiating and briefing these disputes, the Court, to keep the **[*90]** case on schedule, spent significant time in late December 2017 and early January 2018 resolving them. *See* Dkt. 322 (January 8, 2018 order resolving disputes).

• *January 24-26, 2018 status letter/call*: The parties' January 24, 2018 joint letter stated that, in light of the resolution of the omnibus discovery disputes, "it appears that any further disputes regarding the scope of document discovery will primarily involve party-specific issues, as opposed to gating issues." Dkt. 324 at 1. It added that plaintiffs had asked "each defendant" whether "it is on track to meet the substantial completion deadline" for document productions. *Id.* The letter further reported that plaintiffs anticipated seeking leave to add LACERA, and, if defendants agreed, the parties would submit a proposed order to that effect. *Id.* at 2. In the ensuing call, the Court asked defense counsel if there was any prejudice to adding LACERA; the defense responded that, subject to reserving the right to challenge standing, it did not expect to object to this amendment. Dkt. 331 at 17-18. Various of plaintiffs' counsel's statements are problematic in light of the amendment then under consideration to revive the 2008-2012 claims, **[*91]** as to which counsel had by then conducted 14 interviews. The statement that future discovery issues were likely to be "party-specific" is coherent only upon the assumption that the claims at issue not expand beyond 2013-2016. The statement that plaintiffs' counsel had asked each defendant whether it was "on track to meet the substantial completion deadline" presupposes that *plaintiffs* did not have in mind a motion to be filed three weeks later that would vitiate that deadline. Plaintiffs' volunteering of their intention to seek to add LACERA by the February 21 deadline fairly implied the absence of other intended amendments. And the Court's inquiry whether that addition might cause any prejudice was a natural opportunity for responsible counsel to alert the Court to the far more consequential amendment that plaintiffs were pursuing.

The Court is constrained to express its disappointment at counsel's lack of candor. The assembled record reflects a series of points over a half-year period at which responsible counsel, to assure that the Court was

Case# 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

not badly misled as to the direction that counsel anticipated for this complex and important multi-district litigation, would and should have [*92] disclosed the real and presumably growing prospect of pursuing a game-changing amendment. At each juncture, however, plaintiffs' counsel—deliberately—chose not to do so. Plaintiffs' counsel instead repeatedly assured the Court that this litigation was on track to meet the deadlines in the case management plan and that counsel were dedicated to meeting those deadlines. Audaciously, in correspondence with the Court, plaintiffs' counsel even chided the defense for filing a discovery motion that could disrupt the orderly case schedule to which plaintiffs professed to be "diligently" committed, see Dkt. 295, and touted that they had inquired of each defendant whether it was on track to meet the deadline for substantial completion of document production, see Dkt. 324. Plaintiffs' counsel also foisted on the Court and the defense costly and time-consuming discovery motions that the expanded claims, which counsel were actively exploring, would have rendered obsolete. The Court expected better of the estimable and experienced counsel whose applications to lead the putative class the Court was pleased to grant.

Plaintiffs' counsel were also unacceptably coy in their dealings with the defense. [*93] The discovery negotiations and litigation here centrally turned on the aggregate burden presented by plaintiffs' discovery requests. Plaintiffs' counsel's decision to keep under wraps the possibility of a momentous amendment, and to feign that the claims to be litigated were fixed at 2013-2016, enabled plaintiffs to lock in commitments as to aggregate discovery pertinent to the 2013-2016 claims. Only when those negotiations had essentially reached fruition did plaintiffs disclose their bid to expand their claims by five years.

Presumably concerned that earlier disclosure of their intention to move to revive the dismissed claims might lead the defense to object or the Court to pretermit such a bid, plaintiffs kept mum until virtually the last possible minute. The result of this tactical conduct was to mislead both the Court and opposing counsel as to a highly material dimension of this litigation and to cause both to expend significant time, and counsel to incur substantial costs and expenses, on work that the amended complaint [*94] stood to overtake. This conduct independently warrants denial of the motion for leave to restore the 2008-2012 claims. Cf. State Trading

Corp., 921 F.2d at 418 (denying leave to amend based on tactical decision not to earlier plead new allegations; "not unreasonable to impute lack of good faith" to plaintiff where tactical delay appeared undertaken to reduce chance of forum non conveniens dismissal).[18]

The Court finally addresses two justifications plaintiffs' counsel give for not alerting the Court earlier to the prospect of the amendment.

First, counsel assert that their silence was necessitated "by the work-product doctrine." Dkt. 356-1 ¶ 7. That is wrong. While that doctrine might shield from discovery the substance of counsel's legal work, that doctrine would not be implicated by providing earlier notice of a potential tectonic amendment, any more than it was implicated by plaintiffs' courtesy of giving the Court and defense advance notice of their intention to add LACERA as a class plaintiff.

Second, counsel claim to have feared witness tampering, based on an incident in which an in-house lawyer for defendant Bank of America attempted to contact Richard Cohen, a former executive whom plaintiffs' filings had identified [*95] as a consultant. Id. ¶ 8. Plaintiffs extrapolate that the defense groups would have responded to notice of a potential PTAC by "persuading or coercing former employees not to cooperate with us." Id. ¶ 7. There is, however, a world of difference between disclosing an intention to move for leave to amend and disclosing witness identities. And had this concern been raised, the Court, upon a proper showing, stood ready to use its supervisory powers to enjoin or otherwise guard against witness tampering. Further, had the need arisen for the Court to test plaintiffs' bona fides in pursuing an amendment, the obvious solution was for plaintiffs to make an in camera submission to the extent that witness names or other confidential material were implicated. See, e.g., Dkt. 343

---

[18] For avoidance of doubt, although the case law identifies counsel's bad faith as a basis to deny a motion for leave to amend, the Court has chosen not to reach the issue of whether the conduct in question is properly termed such. The Court's judgment is that the finding of gamesmanship, on the facts here, is sufficient to support denial of leave to amend and that no productive purpose would be served by inquiring further into bad faith. The Court's discussion of gamesmanship above, therefore, should not be taken as reflecting a finding of bad faith with respect to any firm or individual, as the Court has not so found. The Court is further deeply respectful of the vigor and top quality of plaintiffs' counsel's overall representation of the putative class in this case, and is confident that this episode will prove aberrational.

In re Interest Rate Swaps Antitrust Litig.

Case 2018-14059-169 Docketed at Montgomery County Prothonotary on 10/03/2019 6:48 PM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

at 3 (listing—in redacted form, with the Court's authorization—witnesses interviewed in connection with the PTAC).

Accordingly, the Court holds that, independent of the proposed amendment's futility, the factors of delay, undue prejudice, and plaintiffs' counsel's gamesmanship support denial of the motion to amend to restore the 2008-2012 claims.[19]

---

[19] In light of these findings, and the distinct procedural posture of this case, the cases on which plaintiffs rely are far afield. _Pasternack v. Shrader, 863 F.3d 162 (2d Cir. 2017)_, held that "the denial of leave to amend, based solely on delay and litigation expense, was an abuse of discretion." _Id. at 174_. Unlike in _Pasternack_, the Court's findings here of delay and prejudicial incurring of expenses are not generalized but are solidly anchored in a detailed record and the Court has also found gamesmanship. Further, although in _Pasternack_ "essentially no discovery had been undertaken," here, counsel had engaged in more than six months of intensive and expensive negotiations and litigation over discovery (as well as initial rounds of document production) which, along with the scheduling order, the amendment would subvert. Also inapposite is _Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160 (2d Cir. 2015)_. The Second Circuit there reversed a denial of leave to amend because the district court had put plaintiffs to "a Hobson's choice: agree to cure deficiencies not yet fully briefed and decided or forfeit the opportunity to replead." _Id. at 190_. The Circuit held that the district court had abused its discretion under _Rule 15_ to deny leave to amend in finding that a plaintiff had forfeited its right to amend by standing by its allegations after defendant's objections were previewed at an informal pre-motion conference. Nothing of the sort happened here: Prior to the PTAC, plaintiffs filed three successive complaints, including an SAC filed after defendants filed a proper motion to dismiss an initial amended complaint. Although the case management plan set a deadline for motions for leave to amend, _Rule 15_ did not afford plaintiffs an entitlement to file a _fourth_ complaint, let alone one that proposed to more than double the temporal reach of plaintiffs' claims. _See, e.g., F5 Capital v. Pappas, 856 F.3d 61, 90 (2d Cir. 2017)_; _Lopez v. Ctpartners Exec. Search Inc., 173 F. Supp. 3d 12, 42-44 (S.D.N.Y. 2016)_. In any event, the findings here of long delay, undue prejudice, and gamesmanship distinguish _Loreley_. For the same reasons—and also because the amendment here was not based on discovery that yielded new evidence—_WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc., 655 F.3d 1039, 1059 (9th Cir. 2011)_ is of no help to plaintiffs here. Finally, the district court decisions on which plaintiffs rely are inapposite. _See, e.g., Boiling v. Gold, No. C13-0872JLR, 2015 U.S. Dist. LEXIS 66063, 2015 WL 2406487, at *4-6 (W.D. Wash. May 19, 2015)_ (addressing only futility of proposed third amended complaint, not other considerations); _United States v. Int'l Bus. Machs. Corp., 66 F.R.D. 223, 227 (S.D.N.Y. 1975)_ (allowing

**CONCLUSION**

For the reasons reviewed above, the Court grants in part and denies in part plaintiffs' motion to file the Proposed Third Amended Complaint. The Court directs plaintiffs, within one week of this order, to file a Third Amended Complaint consistent with the rulings herein.[20]

SO ORDERED.

Dated: May 23, 2018

New York, New York

/s/ Paul A. Engelmayer

Paul A. Engelmayer

United States District Judge

---

**End of Document**

---

amendment which court found unnecessary given its conclusion that the allegations therein were already embraced by the existing complaint); _Kissing Camels Surgery Ctr., LLC v. Centura Health Corp., No. 12-CV-3012-WJM-BNB, 2014 U.S. Dist. LEXIS 156357, 2014 WL 5599127, at *3 (D. Colo. Nov. 4, 2014)_ [*96] (allowing amendment where plaintiffs promptly sought leave to amend after dismissal order, amendments were based on information learned in discovery, and no showing of delay, undue prejudice, or gamesmanship had been made).

[20] In light of this ruling, there is no factual basis for plaintiffs' proposed restoration of claims against Tradeweb. The Third Amended Complaint, as filed, is not to include such claims.

DONALD HAVILAND